# EXHIBIT A
# PART 5





**Cufflinks with di...**

**5155** points

**BUY**

## GOLD LEVEL

**Vertu Ascent Ti**

**3590** points

**BUY**

**iMac 27 '' Retina...**

**2890** points

**BUY**

**3D LED TV Sony ...**

**2800** points

**BUY**

**iPad Pro 9,7 '' 25...**

**1225** points

**BUY**

**MacBook Air 20...**

**1130** points

**BUY**

**Apple iPhone 6s ...**

**1075** points

**BUY**

**Canon EOS 750D**

**995** points

**Robot vacuum cl...**

**875** points

vulcan club online casino vulcan

**BUY**        **BUY**

Samsung Galaxy ...

**700** points

**BUY**

Samsung SM-N9...

**665** points

**BUY**

iPad Air

**620** points

**BUY**

Portable speaker...

**595** points

**BUY**

iPad mini on Apr...

**545** points

**BUY**

iPhone SE 16GB

**525** points

**BUY**

## SILVER LEVEL

Sony Xperia Z3 C...

**490** points

**BUY**

Canon EOS 1200...

**435** points

**BUY**

Set DeLonghi

**415** points

**BUY**

Lenovo IdeaPad ...

**365** points

**BUY**

SUPPORT 24/7

Headphones Be...

**310** points

BUY

Alcatel OT-6045...

**275** points

BUY

MP3 player Cow...

**270** points

BUY

Telescope Celest...

**230** points

BUY

Sony SmartWatc...

**210** points

BUY

Avtomagnitola P...

**205** points

BUY

Monitor LG 24M...

**200** points

BUY

Epson Expressio...

**165** points

BUY

RugGear Explore...

**165** points

BUY

RugGear RG150 ...

**160** points

BUY

Multivarka Vitek...

**140** points

Breadmaker Red...

**135** points

**BUY**    **BUY**

Electric driers fo...    DVR HP f210b

**130** points    **130** points

**BUY**    **BUY**

USB flash drive 8...    Humidifier Red...

**115** points    **115** points

**BUY**    **BUY**

Prestigio MultiP...    Juicer Vitek VT-1...

**110** points    **90** points

**BUY**    **BUY**

Elari CardPhone    Aerogrill First FA...

**85** points    **80** points

**BUY**    **BUY**



iPod shuffle    Ovens

**75** points    **60** points

**BUY**    **BUY**

Cooler bag Ezetil



60 **points**

BUY

## BRONZE LEVEL

Bluetooth Heads...

**45** points

BUY

Nokia 108

**40** points

BUY

Senseit L108

**40** points

BUY

Talking Hamster

**thirty** points

BUY

Clock radio Vitek...

**thirty** points

BUY

Steamer Zimber ...

**20** points

BUY

ИГРАТЬ  БОНУСЫ  БАЛЛЫ  КАССА  НОВОСТИ  ПОМОЩЬ

24/7
SUPPORT

QIWI   Яндекс деньги   VISA   MasterCard   WebMoney   Альфа-Клик

СБЕРБАНК   PrivatBank   Единый кошелёк   МегаФон   МТС

777    Терминалы России    PerfectMoney   *Just perfect*    bitcoin    РУБ

ОРИГИНАЛЬНЫЕ СЛОТЫ    КРУГЛОСУТОЧНАЯ ПОДДЕРЖКА 24/7    МОМЕНТАЛЬНЫЕ ВЫПЛАТЫ

Articles   Terms and Conditions   Privacy Policy   Payment Policy   O Policy   Download Slots   Questions Answers   Contact   Horoscope Player   Casino on your mobile

Copyright 2009 - 2016, the gaming club "Volcano" slot machines online - All rights reserved. "Volcano" is a registered trademark. Software developed by AceKing Holding Ltd. We are ready to answer your questions by phone: + 7-499-999-1234, + 38-044-594-6939, you can also take the help of online.





Download information icon on the computer, Vulcan

? [Installing Opera plugin](#)

Help to install the plug-in Opera browser

? [Installing Internet Explorer plug-in](#)

Help to install the plugin in Internet Explorer browser

? [Installing Safari plugin](#)

Help to install the plug-in Safari browser

## THE MAIN ADVANTAGES OF THE APPLICATION VOLCANO

Casino Vulcan has developed its own application for the computer to provide uninterrupted access to our online casino. The "casino on the computer" we have retained all of the website functionality, and expanded opportunities for the players.

Record in the downloadable casino account or Login to your account, manage your account, play in any free cell phones, as well as make real bets and win!

## WHY DOWNLOAD THE APP?

Main advantages:

1. Uninterrupted access to the online casino Volcano.
2. Download Casino faster.
3. Full security of personal data.

Download Slots Volcano on the PC - the right decision, which gives access to all the resources of our institution.

## WHY THE NEED FOR PLUG-IN VOLCANO



If you can not go to the casino site Volcano, the special plug-in for the browser will solve this problem in a jiffy.

See detailed instructions for installing the plugin, who painted all popular browsers. Installation takes less than a minute.

Also, for stable access to slot machines, you can use one of the following options:

 activate the special regime "Turbo" in Yandex browser and Opera;

 use a new user-friendly browser Tor.



ИГРАТЬ    БОНУСЫ    БАЛЛЫ    КАССА    НОВОСТИ    ПОМОЩЬ

      
      
  

ОРИГИНАЛЬНЫЕ
СЛОТЫ

КРУГЛОСУТОЧНАЯ
ПОДДЕРЖКА 24/7

РУБ

МОМЕНТАЛЬНЫЕ
ВЫПЛАТЫ

Articles   Terms and Conditions   Privacy Policy   Payment Policy   O Policy   Download Slots   Questions Answers   Contact   Horoscope Player   Casino on your mobile

Copyright 2009 - 2016, the gaming club "Volcano" slot machines online - All rights reserved. "Volcano" is a registered trademark. Software developed by AceKing Holding Ltd. We are ready to answer your questions by phone: + 7-499-999-1234, + 38-044-594-6939, you can also take the help of online.



# WIPO

**WORLD INTELLECTUAL PROPERTY ORGANIZATION**

# WIPO Arbitration and Mediation Center

## ADMINISTRATIVE PANEL DECISION

## Ritzio Purchase Limited v. Whoisguard Protected, Whoisguard, Inc / Zhoselin-Patrick Mandzela

## Case No. D2015-0295

### 1. The Parties

The Complainant is Ritzio Purchase Limited of Nicosia, Cyprus, represented by Mapa Trademarks SL, Spain.

The Respondent is Whoisguard Protected, Whoisguard, Inc of Panama, Panama / Zhoselin-Patrick Mandzela of Vernon, France.

### 2. The Domain Name and Registrar

The disputed domain name <volcano-online.com> is registered with eNom (the "Registrar").

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on February 23, 2015. On February 24, 2015, the Center transmitted by email to the Registrar a request for registrar verification in connection with the disputed domain name. On February 26, 2015, the Registrar transmitted by email to the Center its verification response disclosing registrant and contact information for the disputed domain name which differed from the named Respondent and contact information in the Complaint. The Center sent an email communication to the Complainant on February 27, 2015 providing the registrant and contact information disclosed by the Registrar, and inviting the Complainant to submit an amendment to the Complaint. The Complainant filed an amendment to the Complaint on February 27, 2015.

The Center verified that the Complaint together with the amendment to the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondent of the Complaint, and the proceedings commenced on March 2, 2015. In accordance with the Rules, paragraph 5(a), the due date for Response was March 22, 2015. The Respondent was filed an informal Response with the Center on March 20, 2015, and with a subsequent email dated March 25, 2015, the Respondent confirmed that its submission of March 20, 2015 contained all the information that it intended to provide.

The Center appointed Assen Alexiev as the sole panelist in this matter on March 27, 2015. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

### 4. Factual Background

The Complainant is part of the Ritzio International Group, which has offered gaming, casino and entertainment products and services under the Вулкан and Vulkan brands for more than 20 years. Ritzio is one of the leading gaming operators with more than 200 branded gaming clubs and more than 5,800 gaming machines deployed throughout Europe. The Group has more than 2,000 employees, and operates in Germany, Romania, Latvia, Belarus, Croatia and Italy. Between 2006 and 2010, Ritzio's operating revenue was in excess of USD 5.5 billion.

The Complainant is the owner of a number of trademark registrations containing the term Вулкан, Vulkan, or Volcano (the "VOLCANO trademark"), including the following registrations:

- the word trademark VOLCANO with registration number 307879, registered on June 2, 2006 in the Russian Federation for goods and services in International Classes 09, 16, 21, 28, 35, 38, 39, 41, 42, 43 and 45;

- the combined trademark ВУЛКАН ("VULKAN" in Latin transliteration) with a lightning bolt logo, with registration number 342290, registered on January 28, 2008 in the Russian Federation for goods and services in International Classes 03, 09, 16, 18, 21, 24, 25, 26, 27, 28, 30, 32, 33, 34, 35, 36, 37, 38, 39, 41, 42, 43 and 45;

- the word trademark VOLCANO with registration number IR 989103, registered as an International trademark on August 11, 2008 for goods and services in International Classes 09, 16, 21, 25, 28, 35, 38, 39, 41, 42, 43 and 45;

- the word trademark VULKAN with registration number IR 984297, registered as an International trademark on August 11, 2008 for goods and services in International Classes 09, 16, 21, 28, 32, 35, 38, 39, 41, 42, 43 and 45; and

- the combined trademark ВУЛКАН ("VULKAN" in Latin transliteration) with registration number IR 791038, registered as an International trademark on September 3, 2002 for services in International Class 41.

The disputed domain name was registered on March 7, 2013 and is linked to a website offering online gambling and casino services.

## 5. Parties' Contentions

### A. The Complainant

The Complainant contends that its VOLCANO trademark enjoys a worldwide reputation in connection with high quality products and services in the gaming and entertainment industries. According to the Complainant, the disputed domain name is confusingly similar to the VOLCANO trademarks, as it fully incorporates the VOLCANO word element. The only difference is the addition of the descriptive word "online" which is not distinctive. The website at the disputed domain name copies the design of the Complainant's ВУЛКАН ("VULKAN" in Latin transliteration) trademark, which makes it likely that Internet users may be confused into believing that there is some relation between the Respondent and the Complainant when no such relation exists.

The Complainant submits that the Respondent has no rights or legitimate interests in the disputed domain name. The Complainant has not authorized the Respondent to use the VOLCANO trademark. The Complainant has commenced to use the VOLCANO trademark about 20 years before the registration of the disputed domain name in 2013. The disputed domain name is not derived from the Respondent's name, and the Respondent does not appear to hold any trademark rights for it. The Complainant points out that the Respondent is using the disputed domain name for a website that offers online gaming services which are not authorized by the Complainant. The Respondent's website copies the look and feel of the Complainant's gaming clubs, copies the Вулкан ("VULKAN" in Latin transliteration) trademark with lightning bolt logo exactly, and misrepresents that the disputed domain name and the website associated to it are affiliated to the Complainant. The Respondent attempts to benefit from the goodwill of the VOLCANO trademarks, and its conduct is not a *bona fide* offering of goods or services for the purposes of the Policy.

The Complainant contends that the disputed domain name was registered and is being used in bad faith. The Respondent was aware of the VOLCANO trademarks when it registered the disputed domain name, because the website at the disputed domain name copies the design of the VOLCANO trademarks and offers identical services to the services offered by the Complainant under the VOLCANO trademark. By using the Complainant's VOLCANO trademark, the Respondent has intentionally attempted to attract, for commercial gain, Internet users to the website at the disputed domain name by creating a likelihood of confusion.

### B. The Respondent

The Respondent did not submit a formal Response in this proceeding. The only statement made by it is that after the submission of the Complaint, the Respondent has removed from the website at the disputed domain name the content described in the Complaint, and that the website is now "used by [the Respondent's] partners for commercial purposes and doesn't infringe any intellectual rights".

## 6. Discussion and Findings

Pursuant to Policy, paragraph 4(a), the Complainant must prove each of the following to justify the transfer of the disputed domain name:

(i) the disputed domain name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights; and

(ii) the Respondent has no rights or legitimate interests in respect of the disputed domain name; and

(iii) the Respondent has registered and is using the disputed domain name in bad faith.

In this case, the Center has employed the required measures to achieve actual notice of the Complaint to the Respondent, in compliance with Rules, paragraph 2(a), and the Respondent was given a fair opportunity to present its case.

By Rules, paragraph 5(b)(i), it is expected of a respondent to: "[r]espond specifically to the statements and allegations contained in the complaint and include any and all bases for the Respondent (domain name holder) to retain registration and use of the disputed domain name..."

### A. Identical or Confusingly Similar

The Complainant has provided evidence and has thus established its trademark rights in the VOLCANO trademark. The Panel notes that the trademarks referred to by the Complainant contain either the word element "volcano", or the word element "вулкан" or "vulkan", which means "volcano" in Russian and in other languages. Therefore, these trademarks can be regarded as protecting essentially the same concept with different language localizations.

The Panel notes that there is a common practice under the Policy to disregard in appropriate circumstances the generic Top-Level Domain ("gTLD") such as ".com" for the purposes of the comparison under the Policy, paragraph 4(a)(i). Therefore, the relevant part of the disputed domain name that has to be analyzed is its "volcano-online" section, which is a combination of the elements "volcano" and "online". The first of these elements is identical to the Complainant's VOLCANO word trademark and confusingly similar to the Complainant's ВУЛКАН and VULKAN trademarks. The second element is descriptive of the online offering of products and services, and thus do not render the disputed domain name dissimilar to the VOLCANO trademark. Rather, it is more likely that Internet users would mistakenly regard the disputed domain name as related to the Complainant's business and to the products and services it offers to customers.

For these reasons, the Panel finds that the disputed domain name is confusingly similar to the VOLCANO trademark in which the Complainant has rights, and the Complainant has established the first element of paragraph 4(a) of the Policy in relation to the disputed domain name.

## B. Rights or Legitimate Interests

The Complainant is required to make at least a *prima facie* showing that the Respondent has no rights or legitimate interests in the disputed domain name. Once the Complainant makes such a showing, the Respondent may provide evidence to demonstrate that it has rights or legitimate interests in the disputed domain name. The burden of proof, however, always remains on the Complainant to establish that the Respondent lacks rights or legitimate interests in the disputed domain name. See paragraph 2.1 of the WIPO Overview of WIPO Panel Views on Selected UDRP Questions, Second Edition ("WIPO Overview 2.0").

The Complainant has contended that the Respondent has no rights or legitimate interests in the disputed domain name, stating that it is not authorized or licensed to use the VOLCANO trademark, that there is no relationship between the Complainant and the Respondent, and that the disputed domain name is used for a website that copies the Complainant's VOLCANO trademarks and the design of the Complainant's website, and offers services that compete with those of the Complainant, misrepresenting that this website is related to the Complainant. Thus, the Complainant has established a *prima facie* case that Respondent lacks rights or legitimate interests in the disputed domain name.

The Respondent, although given a fair opportunity to do so, chose not to present to the Panel a formal response in accordance with the Rules, paragraph 5(b)(i) and 5(b)(ix), despite the consequences that the Panel may extract from the fact of a default (Rules, paragraph 14). If the Respondent had any legitimate reason for the registration and use of the disputed domain name, it could have brought it to the attention of the Panel. In particular, the Respondent has failed to deny the contentions of the Complainant and to contend that any of the circumstances described in Policy, paragraph 4(c), is present in its favor. The only statement made by the Respondent was that it had replaced the content of the website at the disputed domain name with other content. Notably, the Respondent has not denied any of the statements made in the Complaint.

In this situation, the only information available about the Respondent is the contentions of the Complainant and the evidence submitted with the Complaint, the WhoIs information for the disputed domain name, provided by the Registrar and the content of the website at the disputed domain name. The WhoIs information for the disputed domain name contains no indication that the Respondent is or has been commonly known by the disputed domain name. The disputed domain name itself is confusingly similar to the VOLCANO trademark of the Complainant, which was registered and used long before the registration of the disputed domain name. As contended by the Complainant and undisputed by the Respondent, the Respondent has used the disputed domain name for a website that copies the Complainant's VOLCANO trademarks and the design of the Complainant's website, and offers services that compete with those of the Complainant, while misrepresenting that this website is somehow related to the Complainant. In this situation, it is more likely than not that Internet users may be confused as to the source of services offered on the Respondent's website or led to wrongly believe that the Respondent's website is related to or endorsed by the Complainant.

In the Panel's view, these circumstances show that the Respondent must have been well aware of the Complainant and of its VOLCANO trademark when the disputed domain name was registered. The registration and use of the disputed domain name took place without the consent of the Complainant. The Panel finds it more likely than not that this registration was made in an attempt to benefit from the reputation of the VOLCANO trademark to attract customers to the Respondent's website and then offer them services that compete with the Complainant's products and services. The Panel is of the opinion that such conduct cannot give rise to rights or legitimate interests in the disputed domain name, and finds that the Complainant's *prima facie* case has not been rebutted. Therefore, the Panel finds that the Respondent has no rights or legitimate interests in the disputed domain name.

## C. Registered and Used in Bad Faith

Paragraph 4(b) of the Policy lists four illustrative alternative circumstances that shall be evidence of the registration and use of a domain name in bad faith by a respondent, namely:

"(i) circumstances indicating that you have registered or you have acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of your documented out of pocket costs directly related to the domain name; or

(ii) you have registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that you have engaged in a pattern of such conduct; or

(iii) you have registered the domain name primarily for the purpose of disrupting the business of a competitor; or

(iv) by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your website or location or of a product or service on your website or location."

The provisions of paragraph 4(b) of the Policy are without limitation, and bad faith registration and use may be found on grounds otherwise satisfactory to the Panel.

The Complainant has provided evidence of the scope of its activities internationally. The disputed domain name is confusingly similar to the VOLCANO trademark and was registered without the consent of the Complainant, and the Respondent has failed to show any rights or legitimate interests in it. The VOLCANO trademark of the Complainant was registered and used long before the registration of the disputed domain name, and the website at the disputed domain name was linked to a website that copies the Complainant's VOLCANO trademarks and the design of the Complainant's website, and offers services that compete with those of the Complainant, while misrepresenting that this website is somehow related to the Complainant. In these circumstances, the Panel is satisfied that the disputed domain name was registered with knowledge of, and in view of the popularity of, the Complainant and its VOLCANO trademark and the goodwill attached to it. Therefore, the Panel accepts that the disputed domain name was registered in bad faith.

The disputed domain name is linked to a website that offers online gaming services which are not authorized by the Complainant. The Respondent's website copies the look and feel of the Complainant's gaming clubs, copies exactly the ВУЛКАН ("VULKAN" in Latin transliteration) trademark with a lightning bolt logo, and on top of this does not feature a disclaimer for the lack of relation with or endorsement by the Complainant. The Panel does not regard such conduct as being made in good faith. Rather, it appears that the Respondent, by using the disputed domain name, attempts to attract to its own website for commercial gain the consumers that are looking for the online gaming services offered by the Complainant by creating a likelihood of confusion with the Complainant's VOLCANO trademark as to the source or affiliation of the Respondent's website.

Therefore, and in the lack of any denial or allegation to the contrary, the Panel finds that the Respondent has registered and used the disputed domain name in bad faith.

## 7. Decision

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain name <volcano-online.com> be transferred to the Complainant.

Assen Alexiev
Sole Panelist
Date: April 14, 2015

# WIPO

**WORLD INTELLECTUAL PROPERTY** ORGANIZATION

## WIPO Arbitration and Mediation Center

### ADMINISTRATIVE PANEL DECISION

### Ritzio Purchase Limited v. Legato LLC / V. Zaharchenko / Jimmy McColin / Chernovsky Vladimir Sergeevich / Domain Admin, PrivacyProtect.org

### Case No. D2015-1182

#### 1. The Parties

The Complainant is Ritzio Purchase Limited of Nicosia, Cyprus, represented by Mapa Trademarks SL, Spain.

The Respondents are Legato LLC of Samara, the Russian Federation / V. Zaharchenko of Prague, Czech Republic / Jimmy McColin of Gibraltar / Chernovsky Vladimir Sergeevich of Luzhsky, the Russian Federation / Domain Admin, PrivacyProtect.org of Queensland, Australia (collectively the "Respondent") represented by Boston Law Group, United States of America.

#### 2. The Disputed domain names and Registrars

The disputed domain names <volcano-slot-online.com>, <slot-volcano-online.com>, <slotvolcano.com>, <slot-online-volcano.com>, <online-volcano-slot.com> and <volcano-club-online.com> are registered with PDR Ltd. d/b/a PublicDomainRegistry.com.

The disputed domain names <volcano-club.com>, <volcanoclub-slots.com>, <volcano-slot-club.com> and <volcano-slots-club.com> are registered with Regtime Ltd. (collectively the "Registrars").

#### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on July 8, 2015. On July 9, 2015, the Center transmitted by email to the Registrars a request for registrar verification in connection with the disputed domain names. On July 10, 2015, the Registrars transmitted by email to the Center its verification response disclosing registrant and contact information for the disputed domain names which differed from the named Respondent and contact information in the Complaint. The Center sent an email communication to the Complainant on July 15, 2015 providing the registrant and contact information disclosed by the Registrars, and inviting the Complainant to submit an amendment to the Complaint. The Complainant filed an amended Complaint on July 21, 2015.

Further to the Center's language of proceedings communication in both English and Russian of July 24, 2015, both parties agreed on English as the language of the proceedings.

The Center verified that the Complaint together with the amended Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondent of the Complaint, and the proceedings commenced July 31, 2015. In accordance with the Rules, paragraph 5(a), the due date for Response was August 20, 2015. The Response was filed with the Center on August 20, 2015.

On September 9, 21 and October 1, 2015, the Center received the Complainant's supplemental filings. On September 13 and September 30, 2015, the Center received the Respondent's supplemental filings.

The Center appointed Willem J. H. Leppink, Matthew S. Harris and Paul M. DeCicco as panelists in this matter on September 17, 2015. The Panel finds that it was properly constituted. Each member of the Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

## 4. Factual Background

The parties submitted a large number of documents and, in particular, exhibits in this case. The Panel need not, and will not, summarize the massive record submitted here beyond what is necessary to reach and explain its decision in this case.

The Complainant is a company registered in Cyprus and is part of a business group that has been engaged in gaming and casino operations for over 20 years.

It would appear that until the mid-1990's this group had substantial operations in the Russian Federation. However, (according to the uncontested claims of the Respondent in this respect), in 2009 all bricks and mortar gambling operations in the Russian Federation became illegal save in a limited number of government approved locations. At that point the Complainant withdrew its on-the-ground operations in that country.

Notwithstanding this physical withdrawal, the Complainant's business group has continued to operate elsewhere in the world. Undisputed evidence which has been provided shows that it still has operations in the form of 200 branded gaming clubs throughout Europe; in particular in Germany, Italy, Croatia, Romania, Belarus and Latvia. From 2006 to 2010 its revenues amounted to in excess of USD 5.5 billion.

It would appear that some, if not all, of these various operations have been conducted under variants of a single VOLCANO brand. ВУЛКАН was used in the Russian Federation. ВУЛКАН in Cyrillic is the equivalent of "Vulkan" in roman script. VULKAN STERN was and is still used in Germany, while VULCANO DELLA FORTUNA has been used in Italy and VULCAN has been used in Belarus.

The Complainant is also the owner of a number of registered trademarks around the world that incorporate or comprise variants of this brand. Many of these trademarks are registered in the Russian Federation. However, they also include the following marks:

(i) International trademark no 791038 dated September 3, 2002 (based upon a Russian registration no. 216203 dated July 3, 2002) in class 41 designating 14 different states, all of which either form part of the Commonwealth of Independent States (CIS) or were historically part of the Soviet Union.

(ii) International trademark no 989103 dated August 11, 2008 (based upon a Russian registration no. 307879 dated June 2, 2006) for the word mark VOLCANO in classes 9, 16, 21, 25, 28, 35, 38, 39, 41, 42, 43 and 45, designating Belarus, the European Community, Croatia, Kazakhstan, Serbia and the Ukraine. The mark proceeded to grant unchanged in Belarus, Croatia and Serbia. In Kazakhstan it has been subject to provisional refusal. It has proceeded to grant in all other designated countries save for in respect of a modified set of goods and services. For example, the application proceeded to grant as a Community Trademark on September 3, 2012 in respect of goods and services in classes 16, 21, 25, 28, 35, 39, 41, 43, 45.

(iii) International trademark no 984297 dated August 11, 2008 (based upon a Russian registration no. 353692 dated June 25, 2008) for the word mark VULKAN in classes 9, 16, 21, 28, 32, 35, 38, 39, 41, 42, 43 and 45, designating Belarus, the European Community, Croatia, Kazakhstan, Serbia and the Ukraine. The mark proceeded to grant unchanged in Croatia but has been provisionally refused in Kazakhstan. It has proceeded to

grant in all other designated countries in respect of a modified set of goods and services. For example, the application proceeded to grant as a Community Trademark on October 1, 2012 in respect of goods and services in classes 9, 16, 21, 28, 35, 38, 39, 41, 42, 43 and 45.

The disputed domain names were registered on the following dates:

<volcanoclub-slots.com> February 12, 2013

<volcano-slot-club.com> February 4, 2013

<volcano-club.com> September 17, 2010

<volcano-slots-club.com> February 12, 2013

<volcano-slot-online.com> October 1, 2014

<slot-volcano-online.com> October 1, 2014

<slotvolcano.com> October 1, 2014

<slot-online-volcano.com> October 1, 2014

<online-volcano-slot.com> October 1, 2014

<volcano-club-online.com> June 19, 2013

The websites operating from the disputed domain names prominently feature the VOLCANO (design) marks.

Further, the following text appears on the "about" page of all of the websites:

"For many years, "Volcano" has held the position of the largest national network of gaming clubs. Name of the club has become almost synonymous with excitement, known to everyone who was somehow connected to the gaming industry. Due to the introduction in the Russian Federation of legislative restrictions, we focused on the World Wide Web. After the transfer of the main staff of the company abroad, our clubs have moved to a new level and became positioned as the online casino, because our clients are people who appreciate a truly interesting vacation, stay with us! We will continue our work in Germany, Italy, the Czech Republic, Latvia, Belarus and many other countries."

and

"The basis of our work has always been and will be our players, because it is with you we have built a perfect reputation and a name that is known all over the world."

and

"Numerous one-day sites for the rapid and easy money often use the symbolism of our online casino, using well-known brand and reputation, but with us you can not worry. In order to fully protect yourself - Use only official service of our online casino, the list of which you can find here."

There have been a number of previous UDRP decisions involving similar disputed domain names to those that are the subject matter of the current proceedings. In particular:

(i) *EvoPlay LLC v. Mr Timur Ziganshin / Moniker Privacy Services / Timur*, <u>WIPO Case No. D2015-0222</u> in which the Complainant's licensee brought proceedings in relation to the disputed domain names <casino-vulcan.com>, <clubvulcan.com>, <vulcan-casino.com>, <vulcan-casino.net> and <vulcan-casino.org> and <vulcan-cazino.com>; and

(ii) *EvoPlay LLP v. Mardiros Haladjian / GGS Ltd*, <u>WIPO Case No. D2015-0252</u> in which the Complainant's licensee brought proceedings in relation to the disputed domain names <bestvulkan.com> and <myvulkan.com>.

In each of these cases the complaint was denied.

In contrast, the Complainant succeeded in *Ritzio Purchase Limited v. Whoisguard Protected, Whoisguard, Inc / Zhoselin-Patrick Mandzela*, <u>WIPO Case No. D2015-0295</u> in relation to the domain name <volcano-online.com>. However, in that case the Respondent does not appear to have been involved and no response was filed.

The Complainant also succeeded in *Ritzio Purchase Limited v. Domain Admin, PrivcayProtect.org / Timur Ziganshin / Lianna Tall, Escave Ltd / Private Whois, Global Domain Privacy Services Inc / Moniker Privacy Services*, <u>WIPO Case No. D2015-0875</u> in relation to the disputed domain names <casino-vulcan.co>, <vulcan-casino.co>, <club-vulcan.com>, <vulcan-cazino.org>, <vulcan-casino2.com>, <casino-vulcan.com> and <vulcan-cazino.net>.

## 5. Parties' Contentions

### A. Complainant

The Complainant refers to its various registered trademarks and claims that by reason of its activities these marks are famous worldwide. It claims that each of the disputed domain names is confusingly similar to those marks.

The Complainant contends that the Respondent is not a licensee of Complainant, and that the Complainant has not authorized or consented to the Respondent's use of any of its trademarks. It maintains instead "that [the] Respondent simply acquired the [disputed domain names] in hopes of intentionally attracting, for commercial gain, Internet users to Respondent's website by creating a likelihood of confusion". Further, it contends that none of the factors identified in paragraph 4(c) of the Policy apply in this cases. It, therefore, claims that the Respondent has no right, or legitimate interests in the disputed domain names.

Similarly the Complainant contends that each of the disputed domain names was registered and used in bad faith. It claims that the use of the disputed domain names infringes its trademark rights. Further, it maintains that it is apparent from the websites operating from the disputed domain names that the Respondent is effectively pretending to be the Complainant, when it is not.

The Complainant also contends that the Respondent's use of the disputed domain names falls within the scope of paragraph 4(b)(iv) of the Policy. Further, the Complainant contends that the Respondent has sought to hide its true identity, *inter alia*, through the use of privacy services and that this is again an indicator of bad faith.

### B. Respondent

The Respondent begins its substantive response with referring to the two previous decisions in which claims against the Respondent or related parties in respect of similar disputed domain names failed. It claims that the arguments raised by the complainant in those cases were nearly identical to those in the current proceedings. The Respondent claims that for the same reasons given by the panels in those cases, the Complaint should be rejected. It also relies on the comments in <u>paragraph 4.1</u> of the <u>WIPO Overview of WIPO Panel Views on Selected UDRP Questions</u>, Second Edition (the "WIPO Overview 2.0") as to the desirability that panel decisions under the policy are "consistent with prior panel decisions dealing with similar fact situations".

So far as the substantive issues in this case are concerned, the Respondent contends that for many years gambling has been illegal in the Russian Federation. As a consequence of this, it is claimed that the Complainant's Russian marks have not been used in Russia since at least 2009 and that to "the extent they claim protection for gambling services, the Russian Registrations are invalid due to abandonment and non-use and are subject to cancellation". In this respect, the Respondent makes extensive submissions in relation to Russian gaming and intellectual property law.

The Respondent further claims that the Complainant's various international registrations rely upon those invalid registrations and "may still be 'dependent' (and thus vulnerable to cancellation) upon the validity of their underlying Russian registrations". The Respondent also appears to claim that the international registrations are invalid because the Complainant is a Cyprus corporation and therefore did not have "a real and effective industrial or commercial establishment in Russia" at the time the marks were registered.

The Respondent also contends that outside of the Russian Federation many other entities use VOLCANO trademarks in respect of these services and this has "prevented [the] Complainant from registering such marks in several jurisdictions".

The Respondent claims that when it registered the disputed domain names it did so "with the knowledge that trademark rights no longer could exist in the Russian Federation for any gambling-related activities".

Further, the Respondent claims that the Complainant for many years either explicitly consented to third parties using its putative trademarks without any oversight or licensing, or simply did not care that third parties did so. The Respondent claims that Respondent and Asocial Games registered the disputed domain names and operated the websites at the disputed domain names for years in full view of the Complainant, who has taken no action until its putative licensee EvoPlay began to use the UDRP process to wrench away domain names from its legitimate competitors. GGS's websites, EvoPlay's websites and Asocial Games websites are very similar. Having at the very least impliedly consented to so many third parties using the marks for so many years in the same way that the Respondent and Asocial Games has been operating, the Complainant should not now be able to hijack the disputed domain names of successful websites to use for its own purposes. The Respondent therefore states that to the extent that the Complainant may possess any legitimate trademark right in the trademarks shown in the disputed registrations, the Complainant's pattern of actions and inaction over the past four years constitute acquiescence and implied consent to the Respondent's and Asocial Games' use of those marks in the registration and operation of the disputed domain names.

The Respondent contends that the use of a privacy service in relation to the domain name registrations is of "no relevance" since there are legitimate reasons for using such services (citing *WWF-World Wide Fund for Nature aka WWF International v. Moniker Online Services LLC and Gregory Ricks*, WIPO Case No. D2006-0975).

Finally, the Respondent contends that this is a case where the Panel should make a finding of Reverse Domain Name Hijacking.

**C. The Parties Supplemental Submissions**

Both parties have submitted supplemental submissions in these proceedings. None of these were called for by the Panel. The position as to the admissibility of unsolicited supplemental submissions is addressed in paragraph 4.2 of the WIPO Overview 2.0 as follows:

"Consensus view: As the UDRP Rules grant the panel sole discretion to request further statements and determine the admissibility of evidence which may include an unsolicited filing, such filings, when received from a party, would typically be put before the panel upon the panel's appointment - at no additional charge - for determination as to admissibility, and assessment of need for further procedural steps (if any). Normally in such cases, a panel would include a ruling on admissibility of any such received filings in its decision, or in the event that an opportunity to reply is offered to the other party, in an administrative panel order. Panels have discretion whether to accept an unsolicited supplemental filing from either party, bearing in mind the need for

procedural efficiency, and the obligation to treat each party with equality and ensure that each party has a fair opportunity to present its case. The party submitting its filing would normally need to show its relevance to the case and why it was unable to provide that information in the complaint or response. Most panels that have allowed unsolicited filings have also tended to require some showing of 'exceptional' circumstances. Panels which accept a supplemental filing from one side typically allow the other party the opportunity to file a reply to such supplemental filing. In either scenario, or on its own initiative, a panel may in its discretion request further evidence, information or statements from one or other of the parties by way of administrative panel order."

It should again be noted that the parties submitted a large number of documents, including exhibits in this matter. The Panel considers that many of these documents have or seem to have some relationship with the previous domain name disputes referred to above. The Complainant has been the same in some matters and at the time of filing the Complaint must have been aware of the cases in which its licensee was the complainant. Although there seems to be a strong relation between the respondents in all these dispute, including the Respondent in this Proceeding, the Panel will not take this as a fact. Those circumstances do not convince the Panel that the parties were not able to provide this information in the Complaint or the Response. The Panel will therefore not accept these unsolicited supplemental filings pursuant to paragraph 10 and 12 of the Rules. The parties are reminded that such unnecessary exchange of submissions is not only burdensome for the Panel, but also for the Center and this seriously jeopardizes the intended efficiency of the dispute resolution mechanism under the UDRP.

## 6. Discussion and Findings

To succeed in these proceedings the Complainant must make out its case in all respects under paragraph 4(a) of the Policy. Namely, the Complainant must prove that:

(i) the domain names are identical or confusingly similar to a trademark or service mark in which the Complainant has rights (paragraph 4(a)(i)); and

(ii) the Respondent has no rights or legitimate interests in respect of the domain names (paragraph 4(a)(ii)); and

(iii) the domain names have been registered and are being used in bad faith (paragraph 4(a)(iii)).

### A. Identical or Confusingly Similar

The Complainant must demonstrate that it has rights in a trademark and, if so, the disputed domain names must be shown to be identical or confusingly similar to the trademarks.

Each of the disputed domain names, can only be sensibly read as the term "Volcano" in combination with some non-distinguishing ordinary word such as "online" or "club" and "slot" which identify the core services rendered under the ".com" generic Top-Level-Domains (gTLDs).

The Panel also accepts that the term "Volcano" is virtually identical to the Complainant's VULKAN word trademarks. Given this, the disputed domain names are each "confusingly similar" (as that term is understood under the Policy), with a trademark in which the Complainant has rights.

This international registration and the marks that flow from it were initially based upon a Russian trademark. That Russian registration now appears (at least in part) to be subject to challenge. However, the Respondent's attempt to cast doubt on the validity of the non-Russian marks because they "may still be" dependent on the original Russian registration is wholly unconvincing. The relevant international registration is over 5 years old and therefore under Article 6 of the Madrid Protocol these registrations are no longer dependent upon the

original Russian marks. Therefore, even if the current invalidity proceedings are successful, the Complainant will still have registered trademarks for the term "Vulcan" elsewhere. The Respondent does not contend that these other marks are invalid for any other reason.

The ownership of a trademark registered with a recognized trademark office is sufficient for the purposes of paragraph 4(a)(i) of the Policy to show rights in a mark. As is recorded at paragraph 1.1 of the WIPO Overview 2.0:

"If the complainant owns a trademark, then it generally satisfies the threshold requirement of having trademark rights. The location of the trademark, its date of registration (or first use)...and the goods and/or services for which it is registered, are all irrelevant for the purpose of finding rights in a trademark under the first element of the UDRP. However, such factors may bear on a panel's determination whether the respondent has registered and used the domain name in bad faith under the third element of the UDRP."

In the circumstances, the Complainant has made out the requirements of paragraph 4(a)(i) of the Policy.

The Panel notes that in both *EvoPlay LLC v. Mr Timur Ziganshin / Moniker Privacy Services / Timur*, WIPO Case No. D2015-0222 and *EvoPlay LLP v. Mardiros Haladjian / GGS Ltd.*, WIPO Case No. D2015-0252 one of the issues that concerned the panels was the fact that the complainant in those cases (a putative licensee of the Complainant here) was not the owner of the marks relied upon. Instead, it claimed to be a licensee of the relevant marks and the scope and validity of that license appeared to be contested. This is not an issue in the present case as the Complainant is the registered owner of the relevant registered marks.

## B. Rights or Legitimate Interests

The Respondent's claim in support of their having rights or legitimate interests is essentially that as the Complainant's trademark rights are liable to revocation in the Russian Federation for non-use, the Respondent can as a matter of Russian law, legitimately adopt those trademarks in connection with its business in the Russian Federation without infringing any right of the Complainant. The Respondent therefore contends that it can lawfully use these disputed domain names in the Russian Federation and that consequentially the Respondent has rights or legitimate interests in the same.

As explained above, the Panel considers it inappropriate to venture upon a discussion as to whether the Complainant's marks are, or are not, valid in the Russian Federation. In any event, it is prepared to assume (without deciding) in the Respondent's favour that these marks are indeed invalid and unenforceable in the Russian Federation by reason of their non-use. However, it does not necessarily and inevitably follow from this that the Respondent has rights or legitimate interests in the disputed domain names.

This Respondent's argument assumes that simply because the use of a domain name cannot be stopped as a matter of local law in a particular country then the registrant must have a right or legitimate interest in that domain name. However, the Panel does not think this is right. It is not uncommon under the Policy for a complainant to own registered trademark rights in a term in a large number of countries and for that term also to be known in other countries where a mark has not yet been obtained. Should someone register and use a domain name that incorporates that term in a country where trademark rights do not yet exist with a view to taking unfair advantage of that reputation (for example to sell a competing product), it is unlikely that under the Policy the registrant will have a relevant right or legitimate interest. This is so, even if the complainant cannot demonstrate that the registrant's use of the domain name is unlawful in a particular jurisdiction.

Of course, the present case is not one where the Complainant has not got round to applying for a mark in the Russian Federation. It is one where those marks have been obtained but are claimed to be invalid. But the point is that the existence of a right or legitimate interest for the purposes of the Policy and whether the use of a domain name is unlawful as a matter of local law is not necessarily the same thing.

This is a point that is also addressed in paragraph 4.15 of the WIPO Overview 2.0. This states as follows:

"Paragraph 15(a) of the UDRP provides that a panel shall decide a complaint on the basis of the statements and documents submitted and in accordance with the UDRP, the UDRP Rules, and any rules and principles of law that it deems applicable. Rooted in generally-recognized principles of trademark law, and designed to operate in the context of the world wide web, the decision framework of the UDRP generally does not require resort to concepts or jurisprudence specific to national law (other than with respect to the question of whether trademark rights exist). For example, WIPO panels have recognized that bad faith under the UDRP may be assessed by reference to the consistent body of prior UDRP decisions."

For rights or legitimate interests to exist under the Policy, usually something else other than mere absence of illegality is required. Non-exclusive examples of that "something else" are to be found in paragraph 4(c) of the Policy. This states that any one of the following will demonstrate rights or legitimate interests:

"(i) before any notice to you of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a bona fide offering of goods or services;

(ii) you (as an individual, business, or other organization) have been commonly known by the domain name, even if you have acquired no trademark or service mark rights; and

(iii) you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue."

Paragraph 4(c)(iii) is not relevant in this case since the Respondent's use of the disputed domain names is commercial in nature. So far as paragraph 4(c)(ii) is concerned, the Respondent does not contend that it is commonly known by any of the disputed domain names or the term "Vulcan" nor is there any evidence in the record that supports such a position. Indeed, as the Panel goes on to address in greater detail in the context of the discussion of bad faith later on in this decision, it seems to be undisputed that the way in which the Respondent (or those to whom it has handed control of the disputed domain names) has conducted business is to represent to the Russian speaking public that the person responsible for the websites operating from the disputed domain names either is the Complainant or is in some manner the legitimate successor in business to the Complainant, when in reality it is not. One cannot claim to be commonly known by a name in circumstances where one is using that name to impersonate someone else.

Further, so far as paragraph 4(c)(i) is concerned, it appears to be undisputed that the Respondent was aware of the Complainant's claimed rights when it registered and started to use the disputed domain names. Accordingly, it is highly questionable whether the Respondent's use was before notice of the relevant dispute. Further and in any event, the Panel is of the view that the use of a name or trademark so as to impersonate another does not constitute a *bona fide* offering of goods or services under the Policy. Indeed, such activity is usually seen as an indicator that rights or legitimate interests do not exist (see, for example, *Saks & Company v. saksfifthavenue-hours.net*, <u>WIPO Case No. D2014-1194</u>).

The Panel also notes that the Respondent contends at great length that gambling in the Russian Federation is illegal. The Panel is not in a position to conclude as to whether this is right or wrong. This is precisely the sort of issue which is ill suited to determination under the UDRP. Nevertheless, it is worth recording that this is an argument which if correct, undermines rather than supports the Respondent's case.

As far as the Panel can tell, this argument as to the legality of gambling law is advanced to provide the reason why the Complainant cannot have used its marks in the Russian Federation for a number of years and therefore why its Russian marks must be invalid. As has already been explained, even if the Panel would be prepared to accept for the purposes of these proceedings that the Complainant's marks are invalid based on the illegality of gambling in the Russian Federation, given that the Respondent's activities also involve gambling and are primarily directed to persons in the Russian Federation, it follows that the Respondent's own activities are also illegal.

Therefore, it would appear that the Respondent is trying to contend that it has rights or legitimate interests in the disputed domain names because its activities are not contrary to Russian trademark law even though it posits that those same activities are illegal as a matter of Russian law. The Respondent cannot simultaneously have its cake and eat it.

In the circumstances, the Panel finds that Complainant has made out the requirements of paragraph 4(a)(ii) of the Policy.

## C. Registered and Used in Bad Faith

Despite the extensive arguments put forward by the Respondent, there appears to be no real dispute that the Respondent was aware of the Complainant's marks at the time that the disputed domain names were registered and has essentially set up websites that are intended to lead Internet users to believe that these have been set up by the Complainant or by an entity that is the Complainant's successor in business.

This is apparent not only from the fact that the websites prominently display the VOLCANO design mark, but also from the text that appears on these websites.

The statement that "'Volcano' has held the position of the largest network of gaming clubs" is clearly a reference to the Complainant. As such this text provides clear evidence as to both the reputation of the Complainant's marks and the Respondent's own knowledge of the Complainant's marks. Further, the text that follow this and in particular the assertions that these clubs have now "moved to a new level and become positioned as the online casino", that they have continuing operations in Germany, Italy and elsewhere, and that these websites are the "official service", can only be sensibly understood as amounting to a claim that the operator of these websites is either the business that used to run the Complainant's "network of gaming clubs" or somehow connected or authorized by the entity that did.

The Respondent contends that the Complainant has consented to the registration and use of the disputed domain names in this manner. Were this true, that would most likely provide an answer to the Complainant's claims in this case. However, there is no real evidence before the Panel to this effect. Although an affidavit is provided from a Mr. Sevostianov, his statements in that affidavit to this effect are little more than a bare assertion. No further explanation, elaboration or evidence as to exactly what form such consent took is provided. There is a reference to joint venture discussions, but it is not alleged that the Respondent's activities have been pursuant to such a joint venture and the mere fact that one enters into joint venture discussions with someone does not mean that one is implicitly, let alone explicitly, consenting to their activities to that date.

Further, Mr. Sevostianov evidence relates to the Complainant's dealings with GGS Limited; *i.e.* the operator of the relevant websites in *Ritzio Purchase Limited v. Domain Admin, PrivcayProtect.org / Timur Ziganshin / Lianna Tall, Escave Ltd / Private Whois, Global Domain Privacy Services Inc / Moniker Privacy Services*, WIPO Case No. D2015-0875. The operator of the websites in this case is not GGS Limited but Asocial Games. There is no evidence before the Panel to suggest that at any time the Complainant consented to Asocial Games' activities.

At its heart, therefore, and despite the extensive argument and submissions filed by both parties, ultimately this is a relatively simple case of impersonation. The Respondent (or at least persons on behalf of whom the Respondent has registered the disputed domain names) has registered and is using the disputed domain names in order to pass themselves off as the Complainant (or in some way authorized by the Complainant) when it is not, in order to draw Internet users to gambling websites for commercial gain. Registration and use of a domain name for such a purpose is a classic example of registration and use in bad faith. So far as use is concerned it is activity that falls within the scope of paragraph 4(b)(iv) of the Policy.

Whether such impersonation and passing off offends against Russian trademark law the Panel is not in a position to say. However, in the opinion of the Panel even if it does not offend against Russian law, that does not prevent a finding of bad faith registration and use in this case.

In the circumstances, the Panel concludes that Complainant has made out the requirements of paragraph 4(a)(iii) of the Policy.

**D. Reverse Domain Name Hijacking**

The Respondents request a finding of Reverse Domain Name Hijacking which is defined as "using the Policy in bad faith in attempt to deprive a registered domain name holder of a domain name". In view of the Panel's finding under the three elements of the Policy, the Panel also denies the Respondents' request.

## 7. Decision

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain names <online-volcano-slot.com>, <slot-online-volcano.com>, <slotvolcano.com>, <slot-volcano-online.com>, <volcano-club.com>, <volcano-club-online.com>, <volcanoclub-slots.com>, <volcano-slot-club.com>, <volcano-slot-online.com> and <volcano-slots-club.com> be transferred to the Complainant.

Willem J. H. Leppink
Presiding Panelist

Matthew S. Harris
Panelist

Paul M. DeCicco
Panelist
Date: October 10, 2015

# WIPO Arbitration and Mediation Center

**ADMINISTRATIVE PANEL DECISION**

**Ritzio Purchase Limited v. Domain Admin, PrivacyProtect.org / Timur Ziganshin / Lianna Tall, Escave Ltd / Private Whois, Global Domain Privacy Services Inc / Moniker Privacy Services**

**Case No. D2015-0875**

## 1. The Parties

1.1 The Complainant is Ritzio Purchase Limited of Nicosia, Cyprus, represented by Mapa Trademarks SL, Spain.

1.2 The Respondents are Domain Admin, PrivacyProtect.org of Nobby Beach, Australia / Timur Ziganshin of Izhevsk, the Russian Federation / Lianna Tall, Escave Ltd of Mahe, Seychelles / Private Whois, Global Domain Privacy Services Inc of Marbella, Panama / Moniker Privacy Services of Fort Lauderdale, Florida, United States of America, represented by Boston Law Group, PC, United States of America.

## 2. The Domain Names and Registrars

2.1 The disputed domain names <casino-vulcan.co> and <vulcan-casino.co> are registered with PDR Ltd. d/b/a PublicDomainRegistry.com.

2.2 The disputed domain names <club-vulcan.com>, <vulcan-cazino.org>, <vulcan-casino2.com>, <cazino-vulcan.com> and <vulcan-cazino.net> are registered with URL Solutions, Inc. How the disputed domain name <vulcan-cazino.net> came to be registered with URL Solutions Inc is addressed in the Procedural History section of this decision.

2.3 The disputed domain names are hereafter referred to collectively as the "Domain Names".

## 3. Procedural History

3.1 The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on May 27, 2015. At that time the publicly available WhoIs details for the Domain Names identified the registrants as the privacy services "PrivacyProtect.org", "Global Domain Privacy Services Inc" and "Moniker Privacy Services".

3.2 On May 22, 2015, the Center transmitted by email to the concerned registrars a request for registrar verification in connection with the Domain Names. On May 29, 2015, the concerned registrars transmitted by email to the Center their verification responses disclosing the underlying registrants behind the various privacy services as "Lianna Tall" and "Timur Ziganshin" and providing those registrants' contact information.

3.3 The Center provided this information to the Complainant on June 5, 2015 inviting the Complainant to submit an amendment to the Complaint. The Complainant filed an amendment to the Complaint on June 10, 2015.

3.4 The Center verified that the Complaint together with the amendment to the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

3.5 In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondents of the Complaint, and the proceedings commenced June 12, 2015. In accordance with the Rules, paragraph 5(a), the due date for Response July 2, 2015. The Response was filed with the Center July 2, 2015, in the names of "Escave Limited" and by "Timur Ziganshin" and in this document "Escave Limited" and "Timur Ziganshin" accepted that they were the registrants of the Domain Names. In this decision references to the "Respondent" hereinafter is intended as a reference to these registrants unless the contrary is apparent.

3.6 The Complainant and the Respondent submitted Supplemental Filings on July 7 and July 17, 2015, respectively.

3.7 On June 25, 2015 the Center, having noted that one of the Domain Names <vulcan-cazino.net> was set to expire in September, sent an email in the usual form to Moniker Online Services LLC requesting confirmation of what if anything was required of the Parties to ensure that this Domain Name did not expire in the course of these proceedings. It would appear from subsequent correspondence between Moniker Online Services LLC, URL Solutions Inc and the Center, that whilst this Domain Name was unlocked to allow this Domain Name solely to be renewed, it was nevertheless permitted to be transferred to URL Solutions in apparent breach of paragraph 8 of the UDRP. However, URL Solutions appears to have placed this Domain Name on lock pending

the outcome of these proceedings.

3.8 The Center appointed Matthew S. Harris, Olga Zalomiy and Paul M. DeCicco as panelists in this matter on July 28, 2015. The Panel finds that it was properly constituted. Each member of the Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

3.9 On July 28, 2015, the Respondent filed yet another supplemental filing. In that filing the Respondent referred to proceedings filed on July 24, 2015 with the Russian trade mark office that sought to cancel a number of the Complainant's Russian trade mark registrations. On July 31, 2015, the Complainant filed a submission in response asking the Panel to suspend these proceedings for 30 days pursuant to Paragraph 18(a) of the Rules. Later that same day the Respondent filed a further submission opposing that suspension.

3.10 On August 7, 2015, the Panel informed the Parties that it was not minded to suspend the proceedings as requested by the Complainant. It stated that it would inform the Parties of it reasons for not doing so in it decision in this matter.


## 4. Factual Background

4.1 The Complainant is a company registered in Cyprus and is part of a business group that has been engaged in gaming and casino operations for over 20 years.

4.2 It would appear that until the mid 1990s this group had substantial operations in Russia. However, (according to the uncontested claims of the Respondent in this respect), in 2009 all bricks and mortar gambling operations in Russia became illegal save in a limited number of government approved locations. At that point the Complainant withdrew its on-the-ground operations in that country.

4.3 Notwithstanding this physical withdrawal, the Complainant's business group has continued to operate elsewhere in the world. Undisputed evidence has been provided that shows that it still has operations in the form of 200 branded gaming clubs throughout Europe; in particular in Germany, Italy, Croatia, Romania, Belarus and Latvia. From 2006 to 2010 its revenues amounted to in excess of USD 5.5 billion.

4.4 It would appear that some, if not all, of these various operations have been conducted under variants of a single "Volcano" brand. "Вулкан" was used in Russia. "Вулкан" in Cyrillic is the equivalent of "Vulkan" in roman script. "Vulkan Stern" was and is still used in Germany, while "Vulcano della Fortuna" has been used in Italy and "Vulcan" has been used in Belarus.

4.5 The Complainant is also the owner of a number of registered trade marks around the world that incorporate or comprise variants of this brand. Many of these trade marks are registered in Russia. However, they also include the following marks:

(i) International trade mark no 791038 dated September 3, 2002 (based upon a Russian registration no 216203 dated July 3, 2002) in class 41 designating 14 different states, all of which either form part of the Commonwealth of Independent States (CIS) or were historically part of the Soviet Union. The mark has proceeded to grant in all of these states and takes the following form:



(the "Volcano Design Mark")

(ii) International trade mark no 989103 dated August 11, 2008 (based upon a Russian registration No. 307879 dated June 2, 2006) for the word mark VOLCANO in classes 9, 16, 21, 25, 28, 35, 38, 39, 41, 42, 43 and 45, designating Belarus, the European Community, Croatia, Kazakhstan, Serbia and the Ukraine. The mark proceeded to grant unchanged in Belarus, Croatia and Serbia. In Kazakhstan it has been subject to provisional refusal. It has proceeded to grant in all other designated countries save for in respect of a modified set of goods and services. For example, the application proceeded to grant as a Community Trade Mark on September 3, 2012 in respect of goods and services in classes 16, 21, 25, 28, 35, 39, 41, 43, 45.

(iii) International trade mark no 984297 dated August 11, 2008 (based upon a Russian registration No. 353692 dated June 25, 2006) for the word mark VULKAN in classes 9, 16, 21, 28, 32, 35, 38, 39, 41, 42, 43 and 45, designating Belarus, the European Community, Croatia, Kazakhstan, Serbia and the Ukraine. The mark proceeded to grant unchanged in Croatia but has been provisionally refused in Kazakhstan. It has proceeded to grant in all other designated countries in respect of a modified set of goods and services. For example, the application proceeded to grant as a Community Trade Mark on October 1, 2012 in respect of goods and services in classes 9, 16, 21, 28, 35, 38, 39, 41, 42, 43 and 45.

4.6 The Domain Names were registered on the following dates:

<club-vulcan.com> February 2, 2012
<cazino-vulcan.com> August 6, 2013
<vulcan-cazino.net> September 10, 2013
<vulcan-cazino.org> October 9, 2013
<vulcan-casino2.com> October 30, 2013
<casino-vulcan.co> July 31, 2014
<vulcan-casino.co> July 31, 2014

4.7 Shortly after registration control of each of the Domain Names was passed to GGS Limited ("GGS"), an Anguilla company.

4.8 GGS has operated a website from the domain name <vulcan-casino.com> since June 2011 and has operated similar websites from the Domain Names since their registration. At all relevant times these websites have offered online gaming services. The

websites are in the Russian language and almost all of the users of those websites come from Russia and the Ukraine. The percentage of Russian visitors ranges from 46 percent in the case of the website operating from the Domain Name <club-vulcan.com>, to 82 percent in the case of visitors to the website operating from the Domain Name <vulcan-casino2.com>.

4.9 The websites operating from the Domain Names prominently feature the Volcano Design Mark. Although the websites are in Russian, the Complainant has provided uncontested translations of text that appears on the websites operating from the Domain Names as follows:

### <casino-vulcan.co> and <cazino-vulcan.com>:

"Slots Volcano - a gaming brand, well-known in many countries. As for Russia and the CIS countries, there is, perhaps, there will be no such gamblers, who would not love to play clubs volcano.

The highest quality of service and the most generous slot machines on the market of gambling entertainment - these are our main features. It is because of this approach to business brand, 'Volcano' was the undisputed leader, and even synonymous with 'slots'. Have you caught yourself thinking 'Where to play slot machines?' Of course - in the volcano!

Keeping pace with the times, not so long ago we went out and the open spaces of the Internet. Now the old familiar games available right in your browser! Moreover - Casino- Vulcan.co on our site you can play slot machines for free, without registration and SMS."

and

"Official Game Club Volcano offers to play slot machines for free, without registration and sms! It is inconceivable that someone does not recognize good old red-and-blue logo 'Game Club Volcano.' Slot machines Vulcan were deservedly known throughout Russia and CIS countries.

By taking advantage of the Internet, we can now offer our customers an even greater service. One of our innovations is that you can play as well as in free slot machines for money in our club - Volcano online casino!"

### <vulcan-casino.co> and <vulcan-cazino.net> <vulcan-cazino.org> and <vulcan-casino2.com>:

"We are sure that there is not a man that would not be familiar with the brand name 'Volcano'. We have long been a leading national network of gaming clubs, but after some changes in the Russian legislation, the club 'Volcano' had left his home and now we're working on the territory of countries such as Belarus, Latvia, Serbia, Italy, Germany, Romania, the Czech Republic, Peru and Bolivia.

We keep up with the progress and are ready to offer you a long-familiar and favourite games - now on the Internet. All of our old players, no doubt, already vkurse [sic] the advantages offered by the game at the 'volcano'.

Surely you are familiar with our brand, because not so long ago the gaming club 'Volcano' with blue-red sign can be found in any large, and not very city. Without false modesty we can say that Vulkan had the largest network of gaming clubs in Russia and Moscow. And now - in 2011 - we are glad to see you on our official web-site!"

### <club-vulcan.com>:

"Club Volcano - familiar to many, if not all, gambling brand, has long become synonymous with big winnings and gambling Activity. Since the heyday of gaming network 'Volcano' Many years have passed, and now we have shifted our emphasis on Europe, Latin America, and most importantly - we are now represented on the Internet!"

and

"All lovers of the casino in real life yet, of course, is well remembered the blue-red sign gambling clubs 'Volcano'. He was in any major city. It was the largest network gaming establishments, which united a great many true connoisseurs of gambling in the casino. Now free slot machines you can play online casino Volcano."

4.10 There have been a number of previous UDRP decisions involving similar domain names to those that are the subject matter of the current proceedings. In particular:

(i) *EvoPlay LLC v. Mr Timur Ziganshin / Moniker Privacy Services / Timur*, WIPO Case No. D2015-0222 in which the Complainant's licensee brought proceedings in relation to the domain names <casino-vulcan.com>, <clubvulcan.com>, <vulcan-casino.com>, <Vulcan-casino.net> and <vulcan-casino.org> and <vulcan-cazino.com>; and

(ii) *EvoPlay LLP v. Mardiros Haladjian / GGS Ltd*, WIPO Case No. D2015-0252 in which the Complainant's licensee brought proceedings in relation to the domain names <bestvulkan.com> and <myvulkan.com>.

4.11 In each of these cases the complaint was rejected. The reasons of the panel in each of these case for doing so are addressed later on in this decision.

4.12 In contrast, the Complainant succeeded in *Ritzio Purchase Limited v. Whoisguard Protected, Whoisguard, Inc / Zhoselin-Patrick Mandzela*, WIPO Case No. D2015-0295 in relation to the domain name <volcano-online.com>. However, in that case the Respondent does not appear to have been involved and no response was filed.


## 5. Parties' Contentions

### A. Complaint

5.1 The Complainant refers to its various registered trade marks and claims that by reason of its activities these marks are famous worldwide. It claims that each of the Domain Names is confusingly similar to those marks.

5.2 The Complainant contends that the Respondent is not a licensee of Complainant, and that the Complainant has not authorised or consented to the Respondent's use of any of its trade marks. It maintains instead "that [the] Respondent simply acquired the [Domain Names] in hopes of intentionally attracting, for commercial gain, Internet users to Respondent's website by creating a likelihood of confusion". Further, it contends that none of the factors identified in paragraph 4(c) of the Policy apply in this cases. It, therefore, claims that the Respondent has no right or legitimate interest in the Domain Names.

5.3 Similarly the Complainant contends that each of the Domain Names was registered and used in bad faith. It claims that the use of the Domain Names infringes its trade mark rights. Further, it maintains that it is apparent from the websites operating from the Domain Names that the Respondent is effectively pretending to be the Complainant, when it is not.

5.4 The Complainant also contends that the Respondent's use of the Domain Names falls within the scope of paragraph 4(b)(iv) of the Policy. Further, the Complainant contends that the Respondent has sought to hide its true identity, *inter alia*, through the use of privacy services and that this is again an indicator of bad faith.

## B. Response

5.5 The Respondent begins its substantive response with a quote from Yogi Berra declaring: "It's déjà vu all over again." In this respect it refers to the two previous decisions (*i.e,* the decisions identified at paragraph 4.10 of this decision above) in which claims against the Respondent or related parties in respect of similar domain names failed. It claims that the arguments raised by the complainant in those cases were nearly identical to those in the current proceedings. The Respondent claims that for the same reasons given by the panels in those cases, the Complaint should be rejected. It also relies on the comments in paragraph 4.1 of the WIPO Overview of WIPO Panel Views on Selected UDRP Questions, Second Edition (the "WIPO Overview 2.0") as to the desirability that panel decisions under the policy are "consistent with prior panel decisions dealing with similar fact situations".

5.6 So far as the substantive issues in this case are concerned, the Respondent contends that for many years gambling has been illegal in Russia. As a consequence of this it is claimed that the Complainant's Russian marks have not been used in Russia since at least 2009 and that to "the extent they claim protection for gambling services, the Russian Registrations are invalid due to abandonment and non-use and are subject to cancellation". In this respect, the Respondent makes extensive submissions in relation to Russian gaming and intellectual property law.

5.7 The Respondent further claims that the Complainant's various international registrations rely upon those invalid registrations and "may still be 'dependent' (and thus vulnerable to cancellation) upon the validity of their underlying Russian registrations". The Respondent also appears to claim that the international registrations are invalid because the Complainant is a Cyprus corporation and therefore did not have "a real and effective industrial or commercial establishment in Russia" at the time the marks were registered.

5.8 The Respondent also contends that outside of Russia many other entities use "volcano trade[ ]marks" in respect of these services and this has "prevented [the] Complainant from registering such marks in several jurisdictions".

5.9 The Respondent claims that when it registered the Domain Names it did so "with the knowledge that trade[ ]mark rights no longer could exist in Russia for any gambling-related activities".

5.10 Further, the Respondent claims that the user of the Domain Names, GGS "has operated the [Domain Names] and their affiliated websites openly and with the implicit consent of [the] Complainant for nearly four years". In this respect it claims that the "Complainant has had extensive discussions with GGS regarding the [Domain Names] and the websites, including discussions about possible joint projects". In support of that assertion the Respondent relies upon an Affidavit from one Andrey Sevostianov. That affidavit claims that not only was such use with the implicit consent, but also the explicit consent, of the Complainant. However, no further details are provided as to when and in exactly what circumstances that consent was provided and what these supposed "joint ventures" were.

5.11 The Respondent contends that the use of a privacy service in relation to the Domain Name registrations is of "no relevance" since there are legitimate reasons for using such services (citing *WWF-World Wide Fund for Nature v. Moniker Online Services LLC,* WIPO Case No. D2006-0975).

5.12 Finally, the Respondent contends that this is a case where the Panel should make a finding of Reverse Domain Name hijacking.

## C. The Parties' Supplemental Submissions

5.13 Both Parties have submitted supplemental submissions in these proceedings. None of these were called for by the Panel. The position as to the admissibility of unsolicited supplemental submissions is addressed in paragraph 4.2 of the WIPO Overview 2.0 as follows:

"Consensus view: As the UDRP Rules grant the panel sole discretion to request further statements and determine the admissibility of evidence which may include an unsolicited filing, such filings, when received from a party, would typically be put before the panel upon the panel's appointment - at no additional charge - for determination as to admissibility, and assessment of need for further procedural steps (if any). Normally in such cases, a panel would include a ruling on admissibility of any such received filings in its decision, or in the event that an opportunity to reply is offered to the other party, in an administrative panel order. Panels have discretion whether to accept an unsolicited supplemental filing from either party, bearing in mind the need for procedural efficiency, and the obligation to treat each party with equality and ensure that each party has a fair opportunity to present its case. The party submitting its filing would normally need to show its relevance to the case and why it was unable to provide that information in the complaint or response. Most panels that have allowed unsolicited filings have also tended to require some showing of 'exceptional' circumstances. Panels which accept a supplemental filing from one side typically allow the other party the opportunity to file a reply to such supplemental filing. In either scenario, or on its own initiative, a panel may in its discretion request further evidence, information or statements from one or other of the parties by way of administrative panel order."

5.14 The Panel is sceptical that there is much in the Complainant's supplemental submission of July 7, 2015 that could not have been included in the original Complaint. This is particularly so given that the Respondent would appear to be repeating arguments that it put forward in the two previous cases involving the Respondent and an entity that claimed to be the Complainant's licensee. However, whether or not this is correct, the Panel has formed the view that it has not needed to take into account the Complainant's supplemental submission in this case save to note that the Complainant seems to dispute the Respondent's contention that gambling has since 2006 been unlawful in Russia. Given this, the Panel also has not considered the Respondent's supplemental submission in reply of July 17, 2015.

5.15 The Respondent's supplemental submission of July 28, 2015 is somewhat different in that it claims that on July 24, 2015 GGS has made an application to the Russian Intellectual Property Court to cancel a number of Russian trade marks, including marks registered in the name of the Complainant and marks in the name of an affiliated company of the Complainant. The marks attacked include each of the Russian trade marks upon which the international Trade Mark registrations identified in paragraph 4.5 above were based. Although no explanation is offered as to why these applications have been made only at this very late stage, the Panel is prepared to admit this submission in these proceedings.

5.16 In support of these claims the Respondent provides a copy of these applications in Russian. It would appear that these documents are consistent with the Respondent's claims that cancellation proceedings have been commenced challenging a number of the Complainant's marks, although those proceedings appear to be limited to the marks' class 41 registrations. If the Panel had considered the exact scope of those proceedings to be determinative of any issue in these proceedings, it would have ordered that the Respondent provide translations of the same in accordance with paragraph 11(b) of the Rules and would also have provided the Complainant with an opportunity to respond substantively to the same. For the reasons that are set out in greater detail later on in this decision, the Panel has not considered it necessary to do this.


## 6. Discussion and Findings

6.1 To succeed in these proceedings the Complainant make out its case in all respects under paragraph 4(a) of the Policy. Namely, the Complainant must prove that:

(i) the Domain Names are identical or confusingly similar to a trade mark or service mark in which the Complainant has rights (paragraph 4(a)(i)); and

(ii) the Respondent has no rights or legitimate interests in respect of the Domain Names (paragraph 4(a)(ii)); and

(iii) the Domain Names have been registered and are being used in bad faith (paragraph 4(a)(iii)).

6.2 The Panel will address each of these requirements in turn. However, before doing so, it is convenient to explain why the Panel did not accede to the Complainant's request that these proceedings be stayed and to respond to the Respondent's contention that this Complaint should be dismissed because the facts are essentially the same as those, and for the reasons given, in WIPO Case No. D2015-0222 and WIPO Case No. D2015-0252.

## A. Previous decisions and the Complainant's Request for a Stay

6.3 As the Respondent points out, paragraph 4.1 of the WIPO Overview 2.0, although recognising that there is no formal doctrine of precedent under the Policy, records the view of panelists that it is desirable that decisions are "consistent with prior panel decisions dealing with similar facts". This, of course, does not mean that the mere fact that one or another party has succeeded in one case means that a panel should unquestionably come to the same conclusion in a similar case. Instead one would usually expect the panel deciding the latter case to engage with the reasoning in the earlier case and if it disagrees with the earlier case, to explain why this is so. That is the way in which discussion under the Policy progresses and, hopefully, consensus on certain issues is achieved.

6.4 That is not to say that a panel must discuss and follow or distinguish every case cited by a party in proceedings. Some may be unremarkable and others may be historical and not reflect mainstream views on the operation of the policy. The WIPO Overview 2.0 which sets out certain consensus positions, although similarly not binding on panels, is particularly useful in this respect.

6.5 In the present case, the Respondent is perhaps making a different point. It contends that this is not just a case where the facts are similar to those in the earlier decisions relied upon. It claims that, save for the identity of the Domain Names involved, this case is factually identical to the two earlier cases decided in its favour and which involved connected, if not the same, parties. The Panel accepts that in such circumstances, if the Panel is to depart from the reasoning in these earlier cases, it should at least explain why this is so.

6.6 In both WIPO Case No. D2015-0222 and WIPO Case No. D2015-0252 the panels did not reach a positive conclusion either that the Respondent had a right or legitimate interest under the Policy or that these were registrations in good faith. Instead, in WIPO Case No. D2015-0222 the majority of the panel concluded that "the Complainant has not carried its burden of proving that Respondent registered and used the Domain Names in bad faith within the meaning of the Policy". The only substantive reasoning that is provided in this respect is as follows:

"As the sheer mass of documentation accompanying the parties' submissions in this case tends to indicate, this dispute is not well suited for resolution under the Policy. In this case, there are potential issues surrounding the Complainant's standing as purported licensee to bring this proceeding, the validity of the underlying trademark rights upon which the Complaint is based, possible trademark abandonment issues, the possible acquiescence of the purported licensors (Bartlett and Ritzio) in the Respondent's conduct, possible issues of the Complainant's unclean hands, and so forth.

The Policy does not contemplate this Panel serving as a tribunal of general jurisdiction over any and all disputes which are somehow related to domain names. The issues raised by the parties here exceed the relatively narrow confines of the Policy, which is designed chiefly to address clear cases of cybersquatting. See, e.g., Libro v. NA Global Link, WIPO Case No. D2000-0186."

6.7 The reasoning of the panel in WIPO Case No. D2015-0252 was slightly more detailed. In particular, it stated as follows:

"Complainant itself, citing prior cases decided under the Policy, points out to us that issues of trademark validity are generally outside the purview of UDRP proceedings. For that very reason (among others), Complainant's case fails. The facts of this case do not establish a clear-cut case of cybersquatting, and much of the substance of the dispute between the parties turns on issues of trademark ownership, validity, and licensing. If Complainant's predecessors in interest never had valid trademark rights in the marks, or if they have since become abandoned, Respondent would have every right to make such usage. These are complex issues best addressed through the court system rather than under the Policy.

Considerable factual and legal disputes appear to remain regarding the validity of the trademarks owned by Ritzio and Bartlett, as well as about the precise scope of the rights conveyed to Complainant, and whether such scope includes the power to act under the Policy to challenge the registration or use by Respondent of domain names to which Complainant itself had no rights whatsoever at the time of the domain name registrations."

It then proceeded to cite and adopt the reasoning of the Panel in WIPO Case No. D2015-0222.

6.8 Although these and other decisions assert that the Policy was only designed to deal with "clear cut cases of cybersquatting", this is a statement that needs to be treated with some care. "Cybersquatting" is not a defined term under the Policy. Ultimately, what matters is whether the Complainant can show whether the requirements of paragraph 4(a) of the Policy are fulfilled. Similarly the words "clear cut" do not appear in the Policy. As has already been stated the test is one of on the balance of probabilities (or to use US terminology "the preponderance of the evidence"); See WIPO Overview 2.0 paragraph 4.7.

6.9 In some cases there may be complex factual issues in dispute between the parties where who is right may be relevant to an issue in the UDRP proceedings but which a panel is ill-equipped to determine. In such cases, the panel may conclude that the complainant has not made out its case or simply dismiss the case without substantive comment regarding the Policy factors. Further, particular care may need to be taken where one of these issues is already before some court or other tribunal, which is better able to determine that issue. In such circumstances, a panel may consider it more appropriate to leave that issue to be determined in another forum. However, the mere fact that the parties may be involved in a broader and more complex dispute and even parallel proceedings does not necessarily mean that proceedings under the Policy cannot continue. It will depend upon exactly what is in dispute, what any other court or tribunal in any parallel proceedings is determining and whether either actually has any bearing on the issues the panel has to consider in proceedings under the Policy.

6.10 As was stated in *IFA Hotels & Resorts FZE v. Jaffar Sharif* WIPO Case No. D2008-0895:

"The Panel certainly accepts that there is broader dispute here between the parties and that the Panel should be wary of trespassing into areas that are the preserve of the relevant trade mark registries in which that dispute is ongoing. However, it does not follow simply from the fact of the existence of parallel proceedings that a Panel should refuse to consider the substance of the Complaint. Instead the Panel believes that the correct approach is to examine each of the requisite elements of the Policy in turn. In the context of that examination it may become apparent that there is a substantive factual dispute between the parties that cannot be resolved under the Policy and/or is being addressed and/or can be better determined in another forum. Only at this stage does the question raise its head whether the Panel should decline to consider that issue further."

6.11 This is the approach that the Panel has decided to adopt in this case. As the Panel will describe, having conducted this exercise it has concluded that this case is not as complex as it first seems and that it is able to come to a determination as to whether each of the elements of the Policy has been shown.

6.12 The Panel has also decided that it is neither necessary nor appropriate to grant the Complainant's request for a stay. The Complainant claims that the application by GGS to invalidate certain Russian marks is intended to delay the present proceedings under the Policy but states that a decision in those Russian proceedings would "purify the picture for the Panel regarding 'questionable' issues raised by [the Respondent]". It, therefore, seeks a stay under Paragraph 18(a) of Rules. This paragraph states:

"In the event of any legal proceedings initiated prior to or during an administrative proceeding in respect of a domain-name dispute that is the subject of the complaint, the Panel shall have the discretion to decide whether to suspend or terminate the administrative proceeding, or to proceed to a decision."

6.13 The Respondent resists this application. It denies that it wants to delay the present proceedings and has "no interests other than to have [these UDRP proceedings] quickly and efficiently resolved". It also contends that the Russian proceedings "are not directly related to the [D]omain [N]ames at issue in this proceeding" and that therefore paragraph 18(a) of the Rules does not apply.

6.14 Whether or not paragraph 18(a) applies depends upon whether court or other proceedings seeking to invalidate a trade mark that is relied upon in UDRP proceedings (as opposed to proceedings in relation to the relevant domain name itself) are proceedings "in respect of a domain-name dispute". No decision has been cited by either party in this respect and the Panel has been unable to find any case which directly addresses this issue.

6.15 In the absence of more detailed argument from either of the Parties, the Panel is unconvinced that paragraph 18(a) applies, but ultimately it does not matter. The reason is that even if it does, the issue of whether or not to stay the proceedings is a matter of discretion for the Panel. In this case, the Panel has formed the view that it is possible to come to a determination in these proceedings, regardless of the ultimate outcome of the Russian proceedings. In these circumstances, there is no good reason for exercising its discretion so as to order a stay and it declines to do so.

## B. Identical or Confusingly Similar

6.16 Each of the Domain Names, can only be sensibly read as the term "Vulcan" in combination with some non-distinguishing ordinary word such as "club" or "casino" and the ".co" country code Top Level Domain ("ccTLD") or the ".net", ".com" or ".org" generic Top Level Domains (gTLDs). The addition of the number "2", in the case of one of the Domain Names, does not prevent such a reading.

6.17 The Panel also accepts that the term "Vulkan" is phonetically identical to the Complainant's VULKAN word marks identified in paragraph 4.3 (iii) above. Given this, the Domain Names are each "confusingly similar" (as that term is understood under the Policy), with a trade mark in which the Complainant has rights.

6.18 This international registration and the marks that flow from it were initially based upon a Russian trade mark. That Russian registration now appears (at least in part) to be subject to challenge. However, the Respondent's attempt to cast doubt on the validity of the non-Russian marks because they "may still be" dependent on the original Russian registration is wholly unconvincing. The relevant international registration is over 5 years old and therefore under Article 6 of the Madrid Protocol these registrations are no longer dependent upon the original Russian marks. Therefore, even if the current invalidity proceedings are successful, the Complainant will still have registered trade marks for the term "Vulcan" elsewhere. The Respondent does not contend that these other marks are invalid for any other reason.

6.19 The ownership of a trade mark registered with a recognised trade mark office is sufficient for the purposes of paragraph 4(a)(i) of the Policy to show rights in a mark. As is recorded at paragraph 1.1 of the WIPO Overview 2.0:

"If the complainant owns a trademark, then it generally satisfies the threshold requirement of having trademark rights. The location of the trademark, its date of registration (or first use)…and the goods and/or services for which it is registered, are all irrelevant for the purpose of finding rights in a trademark under the first element of the UDRP. However, such factors may bear on a panel's determination whether the respondent has registered and used the domain name in bad faith under the third element of the UDRP."

6.20 In the circumstances, the Complainant has made out the requirements of paragraph 4(a)(i) of the Policy.

6.21 The Panel notes that in both WIPO Case No. D2015-0222 and WIPO Case No. D2015-0252 one of the issues that concerned the panels was the fact that the complainant in those cases (a putative licensee of the Complainant here) was not the owner of the marks relied upon. Instead, it claimed to be a licensee of the relevant marks and the scope and validity of that licence appeared to be contested. This is not an issue in the present case as the Complainant is the registered owner of the relevant registered marks.

## C. Rights or Legitimate Interests

6.22 The Respondent's claim in support of their having rights or legitimate interests is essentially that as the Complainant's trade mark rights are liable to revocation in Russia for non-use, the Respondent can as a matter of Russian law, legitimately adopt those trade marks in connection with its business in Russia without infringing any right of the Complainant. The Respondent therefore contends that it can lawfully use these Domain Names in Russia and that consequentially the Respondent has rights or legitimate interests in the same.

6.23 As explained above, the Panel considers it inappropriate to venture upon a discussion as to whether the Complainant's marks are, or are not, valid in Russia. In any event, it is prepared to assume (without deciding) in the Respondent's favour that these marks are indeed invalid and unenforceable in Russia by reason of their non-use. However, it does not necessarily and inevitably follow from this that the Respondent has rights or legitimate interests in the Domain Names.

6.24 This Respondent's argument assumes that simply because the use of a domain name cannot be stopped as a matter of local law in a particular country then the registrant must have a right or legitimate interest in that domain. However, the Panel does not think this is right. It is not uncommon under the Policy for a complainant to own registered trade mark rights in a term in a large number of countries and for that term also to be known in other countries where a mark has not yet been obtained. Should someone register and use a domain name that incorporates that term in a country where trade mark rights do not yet exist with a view to taking unfair advantage of that reputation (for example to sell a competing product), it is unlikely that under the Policy the registrant will have a relevant right or legitimate interest. This is so, even if the complainant cannot demonstrate that the registrant's use of the domain name is unlawful in a particular jurisdiction.

6.25 Of course, the present case is not one where the Complainant has not got round to applying for a mark in Russia. It is one where those marks have been obtained but are claimed to be invalid. But the point is that the existence of a right or legitimate interest for the purposes of the Policy and whether the use of a domain name is unlawful as a matter of local law, is not necessarily the same thing.

6.26 This is a point that is also addressed in Paragraph 4.15 of the WIPO Overview 2.0. This states as follows:

"Paragraph 15(a) of the UDRP provides that a panel shall decide a complaint on the basis of the statements and documents submitted and in accordance with the UDRP, the UDRP Rules, and any rules and principles of law that it deems applicable. Rooted in generally-recognized principles of trademark law, and designed to operate in the context of the world wide web, the decision framework of the UDRP generally does not require resort to concepts or jurisprudence specific to national law (other than with respect to the question of whether trademark rights exist). For example, WIPO panels have recognized that bad faith under the UDRP may be assessed by reference to the consistent body of prior UDRP decisions."

6.27 For rights or legitimate interests to exist under the Policy, usually something else other than mere absence of illegality is required. Non-exclusive examples of that "something else" are to be found in paragraph 4(c) of the Policy. This states that any one of the following will demonstrate rights or legitimate interests:

"(i) before any notice to you of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a *bona fide* offering of goods or services;

(ii) you (as an individual, business, or other organization) have been commonly known by the domain name, even if you have acquired no trademark or service mark rights; and

(iii) you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue."

6.28 Paragraph 4(c)(iii) is not relevant in this case since the Respondent's use of the Domain Names is commercial in nature. So far as paragraph 4(c)(ii) is concerned, the Respondent does not contend that it is commonly known by any of the Domain Names or the term "Vulcan" nor is there any evidence in the record that supports such a position. Indeed, as the Panel goes on to address in greater detail in the context of the discussion of bad faith later on in this decision, it seems to be undisputed that the way in which the Respondent (or those to whom it has handed control of the Domain Names) has conducted business is to represent to the Russian speaking public that the person responsible for the websites operating from the Domain Names either is the Complainant or is in some manner the legitimate successor in business to the Complainant, when in reality it is not. One cannot claim to be commonly

known by a name in circumstances where one is using that name to impersonate someone else.

6.29 Further, so far as paragraph 4(c)(i) is concerned, it appears to be undisputed that the Respondent was aware of the Complainant's claimed rights when it registered and started to use the Domain Names. Accordingly, it is highly questionable whether the Respondent's use was before notice of the relevant dispute. Further and in any event, the Panel is of the view that the use of a name or trade mark so as to impersonate another does not constitute a *bona fide* offering of goods or services under the Policy. Indeed, such activity is usually seen as a positive indicator that rights or legitimate interests do not exist (see, for example, *Saks & Company v. saksfifthavenue-hours.net*, WIPO Case No. D2014-1194)

6.30 The Panel also notes that the Respondent contends at great length that gambling in Russia is illegal. The Panel is not in a position to conclude as to whether this is right or wrong. This is precisely the sort of issue which is ill suited to determination under the UDRP. Nevertheless, it is worth recording that this is an argument which if correct, undermines rather than supports the Respondent's case.

6.31 As far as the Panel can tell, this argument as to the legality of gambling law is advanced to provide the reason why the Complainant cannot have used its marks in Russia for a number of years and therefore why its Russian marks must be invalid. As has already been explained, even if the Panel were prepared to accept for the purposes of these proceedings that the Complainant's marks are invalid based on the illegality of gambling in Russia, given that the Respondent's activities also involve gambling and are primarily directed to persons in Russia, it follows that the Respondent's own activities are also illegal.

6.32 Therefore, it would appear that the Respondent is trying to contend that it has rights or legitimate interests in the Domain Names because its activities are not contrary to Russian trade mark law even though it posits that those same activities are illegal as a matter of Russian gambling law. The Respondent cannot simultaneously have its cake and eat it.

6.33 In the circumstances, the Panel finds that Complainant has made out the requirements of paragraph 4(a)(ii) of the Policy.

## D. Registered and Used in Bad Faith

6.34 Despite the extensive arguments put forward by the Respondent, there appears to be no real dispute that the Respondent was aware of the Complainant's marks at the time that the Domain Names were registered and has essentially set up websites that are intended to lead Internet users to believe that these have been set up by the Complainant or by an entity that is the Complainant's successor in business.

6.35 This is apparent not only from the fact that the websites prominently display the Volcano Design Mark, but also from the text that appears on these websites. For example, according to the undisputed translations provided in the Complainant, the following text appears on the website that is or was displayed from four of the Domain Names:

"Surely you are familiar with our brand, because not so long ago the gaming club 'Volcano' with blue-red sign can be found in any large, and not very city. Without false modesty we can say that Vulkan had the largest network of gaming clubs in Russia and Moscow. And now - in 2011 - we are glad to see you on our official web-site!"

6.36 The reference to the brand and the reference to "Vulkan [having] had the largest network of gaming clubs in Russia and Moscow" is clearly a reference to the Complainant. As such this text provides clear evidence as to both the reputation of the Complainant's marks in 2011 in Russia and the Respondent's own knowledge of the Complainant's marks at that time. Further, the sentence that follows this and the reference to this being an "official website" can only be sensibly understood as amounting to a claim that the operator of the website is either the business that used to run the Complainant's "network of gaming clubs" or somehow connected or authorised by the entity that did.

6.37 The Respondent contends that Complainant has consented to the registration and use of the Domain Names in this manner. Were this true, that would most likely provide an answer to the Complainant's claims in this case. However, there is no real evidence before the Panel to this effect. Although Mr. Sevostianov claims this to be the case in an affidavit, this is little more than a bare assertion. No further explanation, elaboration or evidence as to exactly what form such consent took is provided. There is a reference to joint venture discussions, but it is not alleged that the Respondent's activities have been pursuant to such a joint venture and the mere fact that one enters into joint venture discussions with someone does not mean that one is implicitly, let alone explicitly, consenting to their activities to that date.

6.38 At its heart, therefore, and despite the extensive argument and submissions filed by both the Parties, ultimately this is a relatively simple case of impersonation. The Respondent (or at least persons on behalf of whom the Respondent has registered the Domain Names) has registered and is using the Domain Names in order to pass themselves off as the Complainant (or in some way authorised by the Complainant) when it is not, in order to thereby draw Internet users to gambling websites for commercial gain. Registration and use of a domain name for such a purpose is a classic example of registration and use in bad faith. So far as use is concerned it is activity that falls within the scope of paragraph 4(b)(iv) of the Policy.

6.39 Whether such impersonation and passing off offends against Russian trade mark law the Panel is not in a position to say. However, in the opinion of the Panel even if it does not offend against Russian law, that does not prevent a finding of bad faith registration and use in this case.

6.40 In the circumstances, the Panel concludes that Complainant has made out the requirements of paragraph 4(a)(iii) of the Policy.

## 7. Decision

7.1 For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the Domain Names <casino-vulcan.co>, <cazino-vulcan.com>, <club-vulcan.com>, <vulcan-casino.co>, <vulcan-casino2.com>, <vulcan-cazino.net> and <Vulcan-cazino.org> be transferred to the Complainant.

Matthew S. Harris

Presiding Panelist

Olga Zalomiy
Panelist

Paul M. DeCicco
Panelist
Date: August 12, 2015

# WIPO Arbitration and Mediation Center

**ADMINISTRATIVE PANEL DECISION**

**Ritzio Purchase Limited v. Private Whois, Global Domain Privacy Services Inc. / Sergey Budusov, Infostar Management Ltd**

**Case No. D2015-1106**

## 1. The Parties

The Complainant is Ritzio Purchase Limited of Nicosia, Cyprus, represented by Mapa Trademarks SL, Spain.

The Respondents are Private Whois, Global Domain Privacy Services Inc. of Marbella, Panama / Sergey Budusov, Infostar Management Ltd of London, the United Kingdom of Great Britain and Northern Ireland, represented by Boston Law Group, PC, United States of America.

## 2. The Domain Names and Registrar

The Disputed Domain Names <bestvulkan.net>, <moivulcan.com>, <vulkandelux.com>, <vulkandeluxe.com>, <vulkanplay.com> are registered with URL Solutions, Inc. (the "Registrar").

## 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on June 29, 2015. On June 29, 2015, the Center transmitted by email to the Registrar a request for registrar verification in connection with the Disputed Domain Names. On July 1, 2015, the Registrar transmitted by email to the Center its verification response disclosing registrant and contact information for the Disputed Domain Names which differed from the named Respondent and contact information in the Complaint. The Center sent an email communication to the Complainant on July 8, 2015 providing the registrant and contact information disclosed by the Registrar, and inviting the Complainant to submit an amendment to the Complaint. The Complainant filed an amended Complaint on July 13, 2015.

The Center verified that the Complaint together with the amended Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondents of the Complaint, and the proceedings commenced July 17, 2015. In accordance with the Rules, paragraph 5(a), the due date for Response was August 6, 2015. The Response was filed with the Center on August 6, 2015.

On September 8, 2015, the Center received the Complainant's supplemental filing. On September 13, 2015, the Center received the Respondent's supplemental filing. On September 17, 2015, the Center received a second supplemental filing from the Complainant.

The Center appointed Charné Le Roux, Assen Alexiev and Paul M. DeCicco as panelists in this matter on September 16, 2015. The Panel finds that it was properly constituted. Each member of the Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

## 4. Factual Background

The Complainant is a Cyprus based company and has, since 1992, conducted business in the field of gaming, casino and entertainment products and services under the trade marks ВУЛКАН (which is translated into English as VOLCANO or VULCAN), ВУЛКАН and LIGHTINGBOLT design in red, blue and yellow colour combinations, VULCAN, VULKAN and VOLCANO (hereinafter the VULKAN trade marks). The Complainant operates over 200 branded gaming clubs and more than 5,800 gaming machines throughout Europe. It has more than 2,000 employees and operations in countries including Germany, Romania, Latvia, Belarus, Croatia and Italy. The Complainant's operating revenue between the periods 2006 and 2010 was in excess of USD 5.5 billion.

The Complainant owns trade mark registrations for the VULKAN trade marks as indicated in the schedule below:

| COUNTRY | TRADE MARK | REGISTRATION NO | REGISTRATION DATE |
|---|---|---|---|
| International Registration designating: Armenia Azerbaijan Belarus Estonia Georgia Kyrgystan Kazakhstan Lithuania Latvia Moldova Tajikistan Turkmenistan Ukraine Uzbekistan | ВУЛКАН & design | 791038 | September 3, 2002 |
| Russian Federation | VULKAN | 353692 | November 18, 2005 |
| Russian Federation | ВУЛКАН & design | 342290 | January 28, 2008 |
| International Registration designating: Belarus European Community Croatia Kazakhstan Serbia Ukraine | VOLCANO | 989103 | August 11, 2008 |
| Russian Federation | ВУЛКАН & design | 342291 | January 28, 2008 |
| Russian Federation | ВУЛКАН & design | 353694 | June 25, 2008 |

| | ВУЛКАН (logo) | | |
|---|---|---|---|
| International Registration designating:<br><br>Belarus<br><br>Kazakhstan<br><br>Ukraine | ВУЛКАН & design<br><br>ВУЛКАН (logo) | 992196 | October 17, 2008 |
| International Registration designating:<br><br>Belarus<br><br>Kazakhstan<br><br>Ukraine | ВУЛКАН & design<br><br>ВУЛКАН (logo) | 977713 | August 12, 2008 |
| International Registration designating:<br><br>Belarus<br><br>European Community<br><br>Croatia<br><br>Kazakhstan<br><br>Serbia<br><br>Ukraine | VULKAN | 984297 | August 11, 2008 |

The registrations extend to goods and services in the field in which the Complainant operates, particularly gaming and entertainment services in class 41.

In respect of International registration no. 791038, the mark proceeded to grant in all the designated territories.

In respect of International trade mark no. 989103, the mark proceeded to grant unchanged in Belarus, Croatia and Serbia. In Kazakhstan, it has been subject to provisional refusal. It proceed to grant in the other designated countries, save for a modified set of goods and services *e.g.* the application proceeded to grant as a Community Trade Mark in respect of goods and services in classes 16, 21, 25, 28, 35, 39, 41, 43 and 45.

In respect of International trade mark no. 992196, the mark was provisionally refused in Kazakhstan, totally refused in Belarus and proceed to grant in the remaining territory of Ukraine in respect of goods and services in classes 3,18, 24, 25, 26, 27, 32, 33, 34 and 36.

In respect of International trade mark registration no. 977713, the mark was provisionally refused in Kazakhstan and proceeded to grant in the other designating countries save for a modified set of goods and services *e.g.* the mark proceeded to grant in Ukraine in respect of goods and services in classes 3,18, 24, 25, 26, 27, 32, 33, 34 and 36.

In respect of International trade mark no. 984297, the mark proceeded to grant unchanged in Croatia. It was refused in Ukraine and provisionally refused in Kazakhstan. It proceeded to grant in all the other designated countries in respect of a modified set of goods and services *e.g.* the application proceeded to grant as a Community Trade Mark in respect of goods and services in classes 9, 16, 21, 28, 35, 38, 39, 41, 42, 43 and 45.

The Respondents affiliate, and the operator of the Disputed Domain Names, GGS Ltd, filed cancellation proceedings in respect of all the Russian registrations on July 24, 2015, shortly after notification to the Respondents of these proceedings.

The Disputed Domain Names were registered on the following dates:

<bestvulkan.net> March 7, 2014

<vulkandeluxe.com> March 27, 2013

<vulkandelux.com> March 27, 2013

<moivulcan.com> May 20, 2014

&lt;vulkanplay.com&gt; July 10, 2012

All the websites associated with the Disputed Domain Names offer online gaming services. They all incorporate the ВУЛКАН and ВУЛКАН and LIGHTINGBOLT design trade marks, including the colour combinations red, blue and yellow. The websites are in the Russian language.

Three previous UDRP decisions are relevant to the matter and were specifically relied on by the parties namely, *EvoPlay LLC v. Mr Timur Ziganshin / Moniker Privacy Services / Timur*, WIPO Case No. D2015-0222; *EvoPlay LLP v. Mardiros Haladjian / GGS Ltd.*, WIPO Case No. D2015-0252; and *Ritzio Purchase Limited v. Domain Admin, PrivacyProtect.org / Timur Ziganshin / Lianna Tall, Escave Ltd / Private Whois, Global Domain Privacy Services Inc / Moniker Privacy Services*, WIPO Case No. D2015-0875. These decisions are discussed in more detail in the decision.


## 5. Parties' Contentions

### A. Complainant

The Complainant submits that it has acquired rights in the VULKAN trade marks as a consequence of:

a. The registration of its trade marks in the Russian Federation and as International trade marks over the period 2002 to 2008; and

b. Its substantial use of the VULKAN trade marks for over 20 years and its global online presence and physical operations in numerous countries including Germany, Romania, Latvia, Belarus, Croatia and Italy.

The Complainant contends that its VULKAN trade marks are well known and it supports this contention with evidence indicating that it operates more than 200 branded gaming clubs, has more than 5,800 gaming machines, employs more than 2,000 people in operations in the countries mentioned above and its substantial operating revenue also indicated above. Its evidence included independent and in-house sources speaking to the Complainant's activities and growth. The Complainant also mentions recognition that it received from the International Gaming Awards for its commitment for Corporate Social Responsibility in 2005.

The Complainant argues that the Disputed Domain Names are identical or confusingly similar to its VULKAN trade marks, stating that the Disputed Domain Names wholly incorporate its VULKAN and VULCAN trade marks, adding only the generic terms "best", "deluxe", "deluxe", "play" and "moi" (being a Russian word that means "my" in English). It contends that these generic terms do not affect the confusing similarity of the Disputed Domain Names and trade marks.

The Complainant contends that the Respondents lack rights or legitimate interests in the Disputed Domain Names in that:

a. the Respondents are not licensees of the Complainant nor have they received any permission or consent from the Complainant to use its trade marks.

b. The Complainant registered its trade marks prior to the registration of the Disputed Domain Names.

c. The Respondents are not commonly known by the Disputed Domain Names.

d. The Respondents' sole intention in adopting the Disputed Domain Names was to attract Internet users for commercial gain to the Respondents' websites by creating a likelihood of confusion.

e. The business that the Respondents conduct at the Disputed Domain Names does not constitute legitimate, noncommercial or fair use of the Disputed Domain Names, in that online casinos operate at the websites associated with the Disputed Domain Names and that these websites incorporate exact copies of the ВУЛКАН and ВУЛКАН and LIGHTINGBOLT design trade marks, including the colour combinations red, blue and yellow, imitating the look and feel of the Complainant's gaming clubs.

The Complainant further contends that the Disputed Domain Names were registered and are being used in bad faith. The Complainant argues that given the trade mark registrations and reputation and widespread use of the VULKAN trade marks, the Respondents' use of the Disputed Domain Names would constitute an infringement of the Complainant's trade mark rights. The Complainant also points out that all the Disputed Domain Names operate as full functional online casinos created for commercial gain and that the use of the VULKAN trade marks for this purpose demonstrates the Respondents' intention to attract Internet users to the Respondents' website by creating a likelihood of confusion. The Complainant submits that the Respondents maximize the effect of the confusion by using exact colour copies of the ВУЛКАН and LIGHTINGBOLT design trade mark in the navigation panel on the top of each website page.

The Complainant also submits that the fact that the Respondents concealed themselves behind a privacy service and also excluded any legitimate contact information on the website pages associated with the Disputed Domain Names (there is an email address and Russian phone numbers on the websites which seem to be non-existent), also indicate the Respondents' bad faith.

The Complainant lastly provides translated pages of the said websites, pointing out the following texts that clearly refer to the Complainant's history: *"Excitement, prestige, honesty: more than 20 years Slots Volcano combine these three concepts. Visiting the house's residents have already visited Russia, Ukraine, Kazakhstan as well as foreign countries"* and *"Game club VOLCANO gives it players the best opportunity for the perfect pastime in the online casino, being original and only real club VOLCANO could guarantee the integrity of the game and the maximum safety of your data"*. The Complainant submits that the Respondents use the words "original" and "only real" in the text above specifically to emphasize their connection to the Complainant.

The Complainant requests that the Disputed Domain Names be transferred to it.

### B. Respondents

In the very substantial Response filed, the Respondents submit in connection with the Complainant's trade mark rights:

a. That the Complainant's trademark registrations in the Russian Federation are invalid on the basis that the provision of all casino and gambling services (save for 4 government approved locations) were effectively banned in the Russian Federation in 2009 and that any continued claim for protection for any gambling related activities by the Complainant in that territory would be unlawful. They also state that since the Complainant has, as a consequence of the ban, not used its trade marks in the Russian Federation for longer than the statutory non-use period, the registrations are vulnerable to cancellation also on the ground of non-use. They point out that cancellation proceedings were filed by the operator of the websites at the Disputed Domain Names namely, GGS Ltd, on July 24, 2015;

b. That the Complainant's International trademark registrations are invalid, since they are dependent upon the validity of their underlying Russian registrations, with reference to Article 6 of the Madrid Protocol;

c. That the Complainant shares rights in the VULKAN trade marks with other parties. The Respondents refer in this regard to refusals from national intellectual property registries and objections from third parties to the International registrations, giving rise to the provisional refusals and limitations dealt with in the Factual Background above. The Respondents also argue that VOLCANO related imagery is popular in the context of gambling and that gambling related trade marks frequently incorporate references to volcanoes and volcano related imagery. It refers to the volcano at the Mirage Casino in Las Vegas in this respect.

The Respondents contend in connection with their rights and/or legitimate interests in respect of the Disputed Domain Names that there was a relationship between the Complainant and the operator of the website associated with the Disputed Domain Names, GGS Ltd. They contend that GGS Ltd has operated the Disputed Domain Names and their affiliated websites with the implicit consent of the Complainant for nearly four years and that there have been extensive discussions between GGS Ltd and the Complainant regarding possible joint projects. The Respondents argue that the Complainant's conduct in this regard constitutes acquiescence and implied consent to the Respondents' and GGS Ltd's use of the VULKAN trade marks and operation of the Disputed Domain Names.

The Respondents state further that since the Complainant had not been operating in the Russian Federation or Ukraine under the VULKAN trade marks for four years at the time that the Respondents first registered the Disputed Domain Names, the Complainant could not, because of the ban on gambling by the Russian Federation, make any use of these trade marks in future. The Respondents submit that they had a good faith belief that they were not infringing any legitimate trade mark rights when they registered the Disputed Domain Names which they indicate, was to be used in the Russian Federation and Ukraine.

The Respondents deny that the Disputed Domain Names were registered or used in bad faith because they had a legitimate and plausible non-infringing reason for registering them for the reasons set out above. Furthermore that the websites associated with the Disputed Domain Names are not copycat websites that compete with the Complainant as the Complainant does not operate online gaming services in the Russian Federation or Ukraine where the Disputed Domain Names are used, or elsewhere in the world. They also state that the websites have been operating openly and with the implicit consent of the Complainant for nearly four years and consequently that the Complainant's acquiescence and implied consent invalidate the Complainant's argument based on bad faith.

The Respondents also deny that there is any bad faith to be attached to the use of the privacy service and that there are many legitimate reasons for such a service. The Respondents state that the Complainant has brought the current proceeding in bad faith and in an attempt to reverse hijack the Disputed Domain Names.

The Respondents deal finally with the prior UDRP proceedings. As the decision in the matter involving *Ritzio Purchase Limited v. Domain Admin, PrivacyProtect.org / Timur Ziganshin / Lianna Tall, Escave Ltd / Private Whois, Global Domain Privacy Services Inc / Moniker Privacy Services*, WIPO Case No. D2015-0875, had not been published at the time they filed their Response, they refer mainly to the first two UDRP decisions *EvoPlay LLC v. Mr Timur Ziganshin / Moniker Privacy Services / Timur supra*, and *EvoPlay LLP v. Mardiros Haladjian / GGS Ltd. supra*, pointing out that in both those decisions, the complaints were denied on the basis that the issues were not suited for resolution under UDRP proceedings. The Respondents argue that because the parties and issues in those proceedings and in this Complaint are virtually identical, the Panel in this proceeding should follow the decisions in the previous proceedings. They submit that the issues raised in this proceeding are outside the scope of the type of proceedings contemplated by the Policy and are better decided by traditional means.

## C. Supplemental Filings

The Complainant filed supplemental evidence referring to the publication of the decision in *Ritzio Purchase Limited v. Domain Admin, PrivacyProtect.org / Timur Ziganshin / Lianna Tall, Escave Ltd / Private Whois, Global Domain Privacy Services Inc / Moniker Privacy Services*, WIPO Case No. D2015-0875, and indicates that this decision, which found in favour of the Complainant, should be followed in this instance. The Respondents replied to the supplemental filing of the Complainant, stating that judicial proceedings had been filed in the Seychelles both for a declaratory order that the Respondents do not infringe the Complainant's rights in respect of its trade marks and a prohibition in respect of the transfer of the Disputed Domain Names in the matter referenced above. This triggered a second supplemental filing by the Complainant, reiterating that the court proceedings instituted by the Respondents were purely in order to halt the transfer of the disputed domain names so that the Respondents could continue to parasitize on the VULKAN trade marks and that the lawsuit was filed only to create complexity in this matter. It also took issue with the fact that the lawsuit had been filed in the Seychelles as opposed to the Russian Federation, where one of the Respondents, Timur Ziganshin, was resident, and state that this was done to avoid exposure of the unlawful gaming services provided by the Respondents in the Russian Federation.

## 6. Discussion and Findings

In accordance with paragraph 4(a) of the Policy, for this Complaint to succeed in relation to the Disputed Domain Names, the Complainant must prove on a balance of probabilities:

(i) that the Disputed Domain Names are identical or confusingly similar to a trade mark or service mark in which it has rights;

(ii) that the Respondents have no rights or legitimate interests in respect of the Disputed Domain Names; and

(iii) that the Disputed Domain Names have been registered and are being used in bad faith.

## A. Supplemental Filings

Unsolicited supplemental filings should be allowed only in exceptional circumstances, in line with the Policy objective of delivering prompt and effective resolution of domain name disputes. See WIPO Overview of WIPO Panel views of Selected UDRP Questions, Second Edition ("WIPO Overview 2.0") at paragraph 4.2. These exceptional circumstances generally involve matters that arise after the initial pleadings were filed and which could not reasonably have been anticipated at that time. In this instance, the decision in *Ritzio Purchase Limited v. Domain Admin, PrivacyProtect.org / Timur Ziganshin / Lianna Tall, Escave Ltd / Private Whois, Global Domain Privacy Services Inc / Moniker Privacy Services*, WIPO Case No. D2015-0875, as well as the filing of the proceedings in the Seychelles arose after the initial pleadings were filed and the supplemental filings by the Complainant and the Respondents will consequently be admitted in accordance with paragraph 10 of the Rules.

## B. Previous UDRP decisions

The three previous UDRP decisions relied on by the parties namely, *EvoPlay LLC v. Mr Timur Ziganshin / Moniker Privacy Services / Timur*, WIPO Case No. D2015-0222; *EvoPlay LLP v. Mardiros Haladjian / GGS Ltd.*, WIPO Case No. D2015-0252; and *Ritzio Purchase Limited v. Domain Admin, PrivacyProtect.org / Timur Ziganshin / Lianna Tall, Escave Ltd / Private Whois, Global Domain Privacy Services Inc / Moniker Privacy Services*, WIPO Case No. D2015-0875, involved parties similar to/connected with the parties in this matter. The trade marks that formed the basis of those complaints were identical and the same legal arguments were advanced by the parties. In the first two decisions the complaints were rejected largely because the panels took the view that the issues raised by the parties, which included the validity of the trade mark rights, the complainants' standing as purported licensees and trade mark abandonment/acquiescence arguments, were complex issues which exceeded the relatively narrow confines of the Policy. The panels in these disputes did not, as a consequence, consider the merits of the matters. The panel in the last matter came to a decision based on the merits after it had conducted an examination of the requisite elements of the Policy and found that the case was not as complex as it first seemed, and that it was able to come to a determination as to whether each of the elements of the Policy had been shown.

The UDRP does not operate a strict doctrine of precedent, although it is desirable that panel decisions are consistent, especially where they deal with similar fact situations, to allow the UDRP system to operate in a fair, effective and predictable manner. See WIPO Overview 2.0 at paragraph 4.1. Panels should not, however, blindly follow previous decisions simply because there are similar facts. They should conduct an independent, thorough, examination of each of the Policy elements and if they disagree with earlier cases, an explanation must be provided. This is the approach that the Panel in this matter has also adopted, in line with the decisions in *Ritzio Purchase Limited v. Domain Admin, PrivacyProtect.org / Timur Ziganshin / Lianna Tall, Escave Ltd / Private Whois, Global Domain Privacy Services Inc / Moniker Privacy Services*, WIPO Case No. D2015-0875 and *IFA Hotels & Resorts FZE v. Jaffar Sharif*, WIPO Case No. D2008-0895.

## C. Identical or Confusingly Similar

The Complainant has furnished evidence of trade mark registrations for the VULKAN trade marks currently on the Russian Trade Marks Register, as well as International trade marks. The fact that cancellation applications were filed in respect of the Russian registrations after these proceedings commenced do not assist the Respondent in defeating the Complainant's rights claim under this threshold requirement. Even if the Russian registrations are eventually cancelled, this still leaves the International registrations in respect of which the Respondent's invalidation argument seems to be incorrect in law. At least International trade mark registration no. 791038 was over 7 years old in 2009 when gambling was banned in the Russian Federation and therefore, under Article 6 of the Madrid Protocol, it can no longer be affected by the fate of the original Russian trade mark registration.

The Complainant has also produced evidence of use of its VULKAN trade marks in commerce, claiming that its trade marks have, as a consequence, become well known. The Respondents did not dispute the evidence that the Complainant provided regarding its extensive use in commerce, save to state that the Complainant shares rights in the trade marks VULKAN, VOLCANO with other entities in the gambling industry. The strength of a trade mark and how many others have similar marks are not taken into account under this Policy requirement, although it may be of relevance in determining a respondent's right or legitimate interest or even bad faith in respect of a disputed domain name. The inquiry under this element of the Policy concerns only a mark in which the Complainant currently has rights and identity or confusing similarity with the Disputed Domain Names. UDRP panels typically apply a low threshold test under the first element of a UDRP complaint. See *Research in Motion Limited v. One Star Global LLC.*, WIPO Case No. D2009-0227.

Consequently, the Panel finds that the Complainant has succeeded in proving that it has rights in the VULKAN trade marks. The Panel also has no difficulty in finding that the Disputed Domain Names are confusingly similar to the trade marks in issue. They all wholly incorporate at least one of the VULKAN trade marks, combined with common and descriptive terms. With respect to <moivulcan.com>, the Panel accepts that the term "Vulcan" is phonetically identical to the Complainant's VULKAN word mark. The Respondents have also not disputed the Complainant's argument that the Disputed Domain Names are confusingly similar to its VULKAN trade marks.

The Panel finds that the Complainant has satisfied this Policy requirement.

## D. Rights or Legitimate Interests

Paragraph 4(a)(ii) of the Policy requires the Complainant to prove a negative, namely that the Respondents lack rights or legitimate interests in the Disputed Domain Names. This is accomplished as follows:

"Therefore a complainant is required to make out a *prima facie* case that the respondent lacks rights or legitimate interests. Once such *a prima facie* case is made, the burden of production shifts to the respondent to come forward with appropriate allegations or evidence demonstrating rights or legitimate interests in the domain name. If the respondent fails to come forward with such appropriate allegations or evidence, a complainant is generally deemed to have satisfied paragraph 4(a)(ii) of the UDRP. If the respondent does come forward with some allegations or evidence of relevant rights or legitimate interests, the panel then weighs all

the evidence with the burden of proof always remaining on the complainant." See WIPO Overview 2.0 at paragraph 2.1.

The Respondents argue that the vulnerability of the Complainant's rights in the Russian Federation provided them with the *bona fide* use that they require in order to succeed in showing rights and/or legitimate interests. They also submit in connection with their rights and legitimate interests that the Complainant shares rights in the VULKAN trade marks with other parties and lastly that there was a relationship between the Complainant and the website operator associated with the Disputed Domain Names, GGS Ltd. This Panel has not been persuaded by the Respondents' submissions that they have rights or legitimate interests as required and finds rather that there are many aspects of the Respondents' conduct which demonstrate a lack of legitimate and *bona fide* interest, as set out below.

a. The Respondents' affiliate, GGS Ltd, only filed cancellation proceedings in respect of the Russian registrations after notification to the Respondents of this Complaint, almost four years after registration of the first Disputed Domain Name in connection with this matter. The Panel expects that a *bona fide* legitimate competitor would first apply to cancel trade mark registrations which may place it at risk of infringement, before adopting possibly contentious domain names.

b. The Respondents adopted more than one of the Complainant's VULKAN trade marks on their websites, namely ВУЛКАН, the LIGHTINGBOLT and SEMI-CIRCLE design and the exact blue, red and yellow colour combinations.

c. The Respondents clearly attempted to align themselves with the Complainant, if reference is had to the translations of text that appear on the websites, for example "more than 20 years Slots Volcano" (the Respondents have only been operational for the past 4 years, whereas the Complainant has operated for the past 20 years), "a gaming brand well known in many countries" (the Respondents indicate in their Response that they only target Russia and Ukraine) and "being original and only real club Volcano".

It is not in dispute that the Disputed Domain Names are used for commercial gain.

The Panel is also not persuaded that the third party oppositions that the Respondents provided and the single instance of actual use of volcano imagery by a casino in Las Vegas assist the Respondents. The evidence on record is limited to rather bare, official opposition documents (some not translated) and not official findings. The Panel would have expected an argument that the Complainant's VULKAN trade marks are common to be supported at least by evidence of use by a significant number of third parties. In any event, the fact that the Complainant has been issued with registration certificates for these marks in several territories contradict this point of the Respondents.

Turning to the Respondents' arguments regarding the Complainant's acquiescence and implied consent to the Respondents to use the VULKAN trade marks, they fall under the doctrine of laches which UDRP panels have generally declined to apply. See for example *Progman Consulting Oy v. Whois Watchdog*, WIPO Case No. D2010-1393, where the Panel states that "*It is by now well established that trade mark doctrines of laches or estoppel have not been incorporated into the Policy*". See also WIPO Overview 2.0 at paragraph 4.1. A delay in bringing a complaint under the UDRP may make it more difficult for a complainant to establish its case on the merits, particularly where the delay has been substantial. However, the Respondents have not provided any evidence in support of the relationship that they allege between the Complainant and the operator of the websites associated with the Disputed Domain Names, GGS Ltd, and the period of the delay by the Complainant in filing this Complaint has not been sufficiently substantial, in this Panel's view, to warrant a departure from the general principle indicated above.

The Panel finds that the Complainant has carried its burden of proof under this Policy heading.

## E. Registered and Used in Bad Faith

The Respondents registered and set up their websites at a time when the Complainant had an established reputation and registrations for its trade marks. They selected not only one aspect of but many versions of the trade marks that the Complainant has used and/or registered to promote their gambling services. They clearly have not been unaware of the Complainant's rights and a finding that there has been deliberate targeting of the Complainant by the Respondents seems difficult to avoid.

The Respondents furthermore also provide gambling services to members of the public in the Russian Federation and Ukraine and on their own version, these activities seem to be illegal in the Russian Federation. This further demonstrates the lack of good faith on the part of the Respondents.

The Panel is of the view that the Respondents selected and registered the Disputed Domain Names to reap advantage of the Complainant's reputation and trade marks and, taking all of the circumstances of this case into account, finds that the Disputed Domain Names were registered and are in being used in bad faith within the meaning of paragraph 4(b)(iv) of the Policy.

## F. Reverse Domain Name Hijacking

The Respondents request a finding of Reverse Domain Name Hijacking which is defined as "using the Policy in bad faith in attempt to deprive a registered domain name holder of a domain name". In view of the Panel's finding under the three elements of the Policy the Panel also denies the Respondent's request.

## 7. Decision

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the Disputed Domain Names <bestvulkan.net>, <moivulcan.com>, <vulkandelux.com>, <vulkandeluxe.com> and <vulkanplay.com> be transferred to the Complainant.

Charné Le Roux
Presiding Panelist

Assen Alexiev

Panelist

Paul M. DeCicco
Panelist

Date: October 7, 2015

## WIPO

**WORLD INTELLECTUAL PROPERTY** ORGANIZATION

# WIPO Arbitration and Mediation Center

## ADMINISTRATIVE PANEL DECISION

## Ritzio Purchase Limited v. Andrey Lykov / Rosalinda Corporation / Roy Delcy, COUNTSIDE Holding Corp / Registration private, Domains By Proxy, LLC

## Case No. D2016-0633

### 1. The Parties

The Complainant is Ritzio Purchase Limited of Nicosia, Cyprus, represented by Mapa Trademarks SL, Spain.

The Respondents are Andrey Lykov of Moscow, the Russian Federation / Rosalinda Corporation of Belize, Belize / Roy Delcy, COUTNSIDE Holding Corp of Mahe, the Seychelles / Registration private, Domains By Proxy, LLC of Scottsdale Arizona, United States of America.

### 2. The Domain Names and Registrar

The disputed domain names <ikvclub.com>, <ikvolcano.com> and <ikvulkan.com> are registered with Wild West Domains, LLC (the "Registrar").

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on April 1, 2016. On April 1, 2016, the Center transmitted by email to the Registrar a request for registrar verification in connection with the disputed domain names. On April 4, 2016, the Registrar transmitted by email to the Center its verification response disclosing registrant and contact information for the disputed domain names which differed from the named Respondent and contact information in the Complaint. The Center sent an email communication to the Complainant on April 7, 2016 providing the registrant and contact information disclosed by the Registrar, and inviting the Complainant to submit an amendment to the Complaint. The Complainant filed an amended Complaint on April 8, 2016.

The Center verified that the Complaint together with the amended Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified the Respondent of the Complaint, and the proceedings commenced on April 12, 2016. In accordance with the Rules, paragraph 5, the due date for Response was May 2, 2016. The Respondent did not submit any response. Accordingly, the Center notified the Respondent's default on May 3, 2016.

The Center appointed Warwick A. Rothnie as the sole panelist in this matter on May 10, 2016. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

### 4. Factual Background

The Complainant has been providing gaming, casino and entertainment products and services since about 1992. It has more than 200 branded gaming clubs throughout Europe and more than 5,800 gaming machines. It has more than 2,000 employees in Russia, Germany, Romania, Latvia, Belarus, Croatia and Italy. Between 2006 and 2010, its operating revenues exceeded USD 5.5 billion. It promotional activities include sponsorship of the Russian Paralympic team at the 2006 Winter Paralympic Games in Turin.

According to the Complaint, these activities have been carried on since 1992 under and by reference to VULCAN or вулкан (which, according to the Complaint, translates into English as "volcano" or "Vulcan").

The Complaint includes evidence of numerous registered trademarks. Examples include:

(a) Russian Trademark No. 353692, VULKAN, in respect of gaming machines and services, registered from November 18, 2005;

(b) Trademark No 791038, for a stylized version of вулкан, registered from September 3, 2002 in Armenia, Azerbaijan, Belarus, Estonia, Georgia, Kyrgyzstan, Kazakhstan, Lithuania, Latvia, Moldova, Tajikstan, Turkmenistan, Ukraine and Uzbekistan;

(c) Community Trademark No. 00989103, VOLCANO, registered from August 11, 2008 for a range of gaming machines and services;

(d) Community Trademark No. 00984297, VULKAN, also registered from August 11, 2008 for a range of gaming machines and services; and

(e) Trademark No. 949162, for a stylized version of "V", registered from January 26, 2007 in Estonia, Latvia, Belarus, Kazakhstan, Lithuania and Ukraine.

The disputed domain names were registered on, respectively, July 10, 2012, October 4, 2013 and February 16, 2015. Each resolves, or shortly before the Complaint was initiated resolved, to a web page which appears for all practical purposes to be identical. Each of these webpages uses the Complainant's stylized вулкан trademark, otherwise bears a striking resemblance to the Complainant's websites and purports to offer gaming and other entertainment services offered by the Complainant.

## 5. Discussion and Findings

For the reasons discussed in section 5A below, the Panel considers it is appropriate to allow the Complaint to proceed against all the Respondents.

No response has been filed. The Complaint has been served, however, on the physical and electronic coordinates confirmed as correct by the Registrar in accordance with paragraph 2(a) of the Rules. Accordingly, the Panel finds that the Complaint has been properly served on the Respondents.

When a respondent has defaulted, paragraph 14(a) of the Rules requires the Panel to proceed to a decision on the Complaint in the absence of exceptional circumstances. Accordingly, paragraph 15(a) of the Rules requires the Panel to decide the dispute on the basis of the statements and documents that have been submitted and any rules and principles of law deemed applicable.

### A. Joinder of multiple Respondents

The Complainant seeks to have all three disputes joined in one proceeding and dealt with at once.

The circumstances in which complaints against multiple respondents may be joined in one dispute are summarized in <u>WIPO Overview of WIPO Panel Views on Selected UDRP Questions</u>, Second Edition ("WIPO Overview 2.0"), <u>paragraph 4.16</u>. Relevant principles and a number of earlier decisions were considered carefully

also in *Speedo Holdings B.V. v. Programmer, Miss Kathy Beckerson, John Smitt, Matthew Simmons*, <u>WIPO Case No. D2010-0281</u>.

From those discussions, it may be observed that the decisions made by UDRP panels have been informed by two main considerations. First, recognition that an important objective of the Policy is to resolve disputes falling within the purview of the Policy efficiently and expeditiously. Secondly, it is of paramount importance to ensure that each respondent is treated fairly and joinder would not be prejudicial.

Each of the disputed domain names is ostensibly registered in the name of a different person and each of the Respondents appears to be located in very different parts of the world. However, each of the disputed domain names has been registered through the same Registrar. More importantly, each resolves, or shortly before the Complaint was initiated resolved, to a website which provides gambling and gaming services. Each has essentially the same get up. Prior to the Complaint being filed, each had the same contact information at the bottom of the home page.

In the present case, therefore, it appears that, despite the facially different registrant names and their geographical dispersion, the websites to which the disputed domain names resolve (or resolved) are in fact under common control or are being operated by the same person. While the trademarks the Complainant relies on are to some extent different they are in the same family, and the considerations arising from those relatively minor differences do not impose unduly burdensome issues in this case. Accordingly, the Panel considers that joinder will promote the efficient and expeditious resolution of the dispute without prejudicing the fairness or equity of the treatment of the Respondents.

## B. Identical or Confusingly Similar

The first element that the Complainant must establish is that the disputed domain names are identical with, or confusingly similar to, the Complainant's trademark rights.

There are two parts to this inquiry: the Complainant must demonstrate that it has rights in a trademark and, if so, the disputed domain names must be shown to be identical or confusingly similar to the trademark.

The Complainant has proven ownership of the registered trademarks VULKAN, VOLCANO, the stylized version of вулкан and the stylized "V" referred to above. The Complainant has also presented evidence showing that the stylized versions of вулкан and "V" have been used prominently on its gaming establishments in countries which use the Cyrillic alphabet.

The first disputed domain name (<ikvulkan.com>) differs from the Complainant's trademark VULKAN by the prefix "ik" and the addition of the generic Top Level Domain ("gTLD"), ".com". The latter component may be disregarded as a functional aspect of the domain name system: <u>WIPO Overview 2.0, paragraph 1.2</u>.

The Panel would not ordinarily consider that the prefixing of the sign VULKAN with the letters "ik" would be sufficient to avoid a finding of confusing similarity. In the present case, the Complainant points out that the letters "ik" are a transliteration into Roman characters of the initials of the words in Russian for "gaming hall". The use of those letters, therefore, reinforces the potential for association with the activities covered by the Complainant's registered trademark and for which it uses its VULKAN trademark.

The same reasoning applies to the second disputed domain name (<ikvolcano.com>) and the Complainant's VOLCANO trademark.

The third disputed domain name (<ikvclub.com>) is not as straightforward as often a sign consisting of three letters could apply to quite a diverse range of activities and entities. In the present case, however, the Complainant has a registered trademark for a stylized "V". When comparing that to a domain name, it would

normally be represented as a "V". Bearing in mind the significance of "ik" in this context, therefore, the Panel considers that the Complainant has satisfied the standing requirement in relation to the third disputed domain name as well.

Accordingly, the Panel finds that the Complainant has established that the disputed domain names are confusingly similar to the Complainant's trademarks and the requirement under the first limb of the Policy is satisfied.

## C. Rights or Legitimate Interests

The second requirement the Complainant must prove is that the Respondents have no rights or legitimate interests in each of the disputed domain names.

Paragraph 4(c) of the Policy provides that the following circumstances can be situations in which a respondent has rights or legitimate interests in a disputed domain name:

(i) before any notice to [the Respondent] of the dispute, [the respondent's] use of, or demonstrable preparations to use, the [disputed domain name] or a name corresponding to the [disputed] domain name in connection with a *bona fide* offering of goods or services; or

(ii) [the respondent] (as an individual, business, or other organization) has been commonly known by the [disputed domain name], even if [the Respondent] has acquired no trademark or service mark rights; or

(iii) [the respondent] is making a legitimate noncommercial or fair use of the [disputed] domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue.

These are illustrative only and are not an exhaustive listing of the situations in which a respondent can show rights or legitimate interests in a domain name.

The onus of proving this requirement, like each element, falls on the Complainant. Panels have recognized the difficulties inherent in proving a negative, however, especially in circumstances where much of the relevant information is in, or likely to be in, the possession of the respondent. Accordingly, it is usually sufficient for a complainant to raise a *prima facie* case against the respondent under this head and an evidential burden will shift to the respondent to rebut that *prima facie* case. See *e.g.*, paragraph 2.1 of the WIPO Overview 2.0.

The Complainant states that it has not authorised any of the Respondents to use any of the disputed domain names. Nor are any of the Respondents in any way affiliated with it. None of the disputed domain names is obviously derived from any of the Respondents' names.

Prior to the Complaint being initiated, each of the disputed domain names resolved to a gambling or gaming website which purported to be a website operated by the owner of the Complainant's trademarks. Such use does not qualify as use in good faith under the Policy.

In these circumstances, the Complainant has established a clear *prima facie* case that the Respondents have no rights or legitimate interests in any of the disputed domain names. The Respondents have not sought to rebut that *prima facie* case. Accordingly, the Panel finds the Complainant has established the second requirement under the Policy.

## D. Registered and Used in Bad Faith

Under the third requirement of the Policy, the Complainant must establish that each disputed domain name has been both registered and used in bad faith: see *e.g.*, *Burn World-Wide, Ltd. d/b/a BGT Partners v. Banta Global Turnkey Ltd*, WIPO Case No. D2010-0470.

Generally speaking, a finding that a domain name has been registered and is being used in bad faith requires an inference to be drawn that the respondent in question has registered and is using the disputed domain name to take advantage of its significance as a trademark owned by a third party (usually) such as the complainant.

Those inferences may be drawn readily in the present case. The terms "volcano", or "Vulcan" or the letter "V" do not have any descriptive or semiotic meaning in association with gaming and gambling services other than through their adoption and long use by the Complainant in respect of its establishments and services. Accordingly, the Panel finds that the Complainant has established the third requirement under the Policy also.

## 6. Decision

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain names <ikvclub.com>, <ikvolcano.com> and <ikvulkan.com> be transferred to the Complainant.

Warwick A. Rothnie
Sole Panelist
Date: May 23, 2016

# WIPO Arbitration and Mediation Center

### ADMINISTRATIVE PANEL DECISION

### Ritzio Purchase Limited v. Twist Services LTD, Twist International

### Case No. D2016-0967

## 1. The Parties

The Complainant is Ritzio Purchase Limited of Nicosia, Cyprus, represented by Mapa Trademarks SL, Spain.

The Respondent is Twist Services LTD of Limassol, Cyprus and Twist International of Belize City, Belize.

## 2. The Domain Names and Registrars

The disputed domain names <casinovulkan.info>, <mybestvulkan.com>, <vulkangames.info>, <vulkan-gamez.com>, <vulkanimgs.com>, <vulkanochance.com>, <vulkanogames.com>, <vulkanogamez.com>, <vulkanopartner.net>, <vulkanoplay.com>, and <vulkanwin.info> are registered with Moniker Online Services, LLC (the "Registrar").

## 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on May 14, 2016. On May 17, 2016, the Center transmitted by email to the Registrar a request for registrar verification in connection with the disputed domain names. On May 18, 2016, the Registrar transmitted by email to the Center its verification response confirming that the Respondent is listed as the registrant and providing the contact details.

The Center verified that the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified the Respondent of the Complaint, and the proceedings commenced on May 25, 2016. In accordance with the Rules, paragraph 5, the due date for Response was June 14, 2016. The Respondent sent an email communication to the Center on May 25, 2016. The Center sent an email communication to the Parties on May 26, 2016, referencing the Respondent's communication and inviting the Parties to explore settlement options. The Complainant did not file a suspension request before the Center and the Center notified the commencement of panel appointment on June 16, 2016.

The Center appointed Christos A. Theodoulou as the sole panelist in this matter on June 29, 2016. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

## 4. Factual Background

The Complainant for more than 20 years, since about 1992, has been in the business of providing gaming, casino, and entertainment products and services and other related products and services under the known Вулкан (which means in English "volcano" or "vulkan") and Vulkan brands.

According to the uncontested allegations of the Complainant, his operating revenue, between 2006 and 2010, was in excess of USD 5.5 billion.

The VULKAN and VOLCANO marks are registered, *inter alia*, long before the registration of the disputed domain names, in the Russian Federation, Latvia, Armenia, Belarus, Germany, Romania, Croatia, Italy, and the European Union, with the earliest mark registration on September 2, 2002.

The disputed domain names were registered in 2013 (1 domain name), 2014 (1 domain name) and 2015-2016 (9 domain names). They are used in connection with functional online casinos.

## 5. Parties' Contentions

### A. Complainant

The Complainant contends that the disputed domain names are identical or confusingly similar to trademarks or service marks in which the Complainant has rights, that the Respondent has no rights or legitimate interests in the disputed domain names and that the Respondent registered and is using the disputed domain names in bad faith.

### B. Respondent

The Respondent did not reply to the substance of the Complainant's contentions. It sent an email to the Center on May 25, 2016 saying that "they want to work legally under the name Vulkan". The Center sent an email to the Parties regarding the possibility of engaging in settlement discussions. The Parties did not request suspension for such purpose and the Center went on with the proceeding. No further communication by the Respondent was submitted to the Center.

## 6. Discussion and Findings

### A. Joinder of multiple Respondents

The Complainant requests and asks to have the disputes against the two different Respondents joined in one proceeding. In the WIPO Overview of WIPO Panel Views on Selected UDRP questions, Second Edition ("WIPO, Overview, 2.0") paragraph 4.16 the question of consolidation of a case against multiple Respondents is discussed mentioning earlier decisions. According to paragraph 4.16 of the WIPO Overview 2.0, a consolidation against more than one Respondents may be allowed where (i) the disputed domain names or the websites to which they resolve are subject to common control and (ii) the consolidation would be fair and equitable to all parties. There are many relevant decisions such as *Speedo Hodings B.V. v. Programmer, Miss Kathy Beckerson, John Smitt, Matthew Simmons*, WIPO Case No. D2010-0281; *Ritzio Purchase Limited v. Legato LLC / V. Zaharchenko / Jimmy McColin / Chernovsky Vladimir Sergeevich / Domain Admin, PrivacyProtect.org*, WIPO Case No. D2015-1182; *Ritzio Purchase Limited v. Andrey Lykov / Rosalinda Corporation / Roy Delcy, COUNTSIDE Holding Corp / Registration private, Domains By Proxy, LLC*, WIPO Case No. D2016-0633.

The Complainant says that the conditions required for consolidation of the case against the two Respondents are satisfied. It contends that there is only one real Respondent who controls all domain names in dispute. Further, the websites are cross-connected and they are controlled by the one same owner/person. Also, it is submitted that the consolidation will be fair and equitable to all parties. Accordingly, the Panel considers that consolidation is appropriate in this case.

Before engaging in the threefold discussion of paragraph 4(a) of the Policy, the Panel will briefly address the procedural issue relating to the Respondent's failure to submit a substantive response. The Complainant has the burden of proof, according to paragraph 4(a) of the Policy ("In the administrative proceeding, the complainant must prove that each of these three elements are present"). As such, the Panel can not merely grant the Complainant's request automatically, but it has to examine instead the evidence presented to determine whether or not the Complainant has proved its case, as required by the Policy. See *FNAC v. Gauthier Raymond*, WIPO Case No. D2004-0881; *Sonofon A/S v. Vladimir Aleksic*, WIPO Case No. D2007-0668; *Gaudi Trade SpA v. Transure Enterprise Ltd*, WIPO Case No. D2009-1028.

The Panel shall now proceed to the analysis of the evidence in this case, in accordance with the three elements of paragraph 4(a) of the Policy.

### B. Identical or Confusingly Similar

The Complainant has presented evidence to demonstrate that he owns registered trademark rights in the marks VULKAN, VOLCANO and Ву-кан and that they have been actively using these marks since 1992.

The mere fact that the Respondent has added to the disputed domain names generic words like "mybest", words which relate to the business of the Complainant like "casino", "games", "gamez", "chance", "partner", "play", "win", and the generic top-Level Domains ("gTLDs") ".com", ".info", and ".net", do not affect in the present case the essence of the matter: the disputed domain names are confusingly similar to the trademarks of the Complainant and, in the circumstances of this case, is by itself sufficient to fulfil the first criteria of the Policy, as many previous UDRP panels have found. See *e.g.*, *Oki Data Americas, Inc. v. ASD, Inc.*, WIPO Case No. D2001-0903; *Koninklijke Philips Electronics N.V. v. K. Harjani Electronics Ltd.*, WIPO Case No. D2002-1021; *DFDS A/S v. NOLDC INC*, WIPO Case No. D2006-1070; *American Automobile Association, Inc. v. Bladimir Boyiko and Andrew Michailov*, WIPO Case No. D2006-0252; *Nationwide Mutual Insurance Company v. Whois Agent, Whois Privacy Protection Service, Inc./Zhichao Yang*, WIPO Case No. D2015-1129; *Facebook, Inc., v. on behalf of customers*, WIPO Case No. D2016-0244; *Ritzio Purchase Limited v. Legato LLC / V. Zaharchenko / Jimmy McColin / Chernovsky Vladimir Sergeevich / Domain Admin, PrivacyProtect.org*, WIPO Case No. D2015-1182; *Ritzio Purchase Limited v. Andrey Lykov / Rosalinda Corporation / Roy Delcy, COUNTSIDE Holding Corp / Registration private, Domains By Proxy, LLC*, WIPO Case No. D2016-0633.

In view of the above, the Panel finds that the Complainant has discharged its burden of proof on this point and holds that the disputed domain names <casinovulkan.info>, <mybestvulkan.com>, <vulkangames.info>, <vulkan-gamez.com>, <vulkanimgs.com>, <vulkanochance.com>, <vulkanogames.com>, <vulkanogamez.com>, <vulkanopartner.net>, <vulkanoplay.com> and <vulkanwin.info>, are confusingly similar to the Complainant's trademarks VULKAN and VOLCANO.

### C. Rights or Legitimate Interests

Paragraph 4(c) of the Policy provides a non-exhaustive list of circumstances which, if found by a panel to be proved based on its evaluation of the evidence presented, shall demonstrate a registrant's right to or legitimate interest in a domain name. These examples are discussed in turn below, with regard to the specific facts of this case.

(i) Use or demonstrable preparations to use the disputed domain names in connection with a *bona fide* offering of goods or services prior to the dispute. In the Panel's opinion the Respondent is not making a *bona fide* offering of its goods. In fact, the Respondent is using the disputed domain names to divert traffic from the Complainant's websites, which is not a *bona fide* offering of goods and services.

(ii) An indication that the Respondent has been commonly known by the disputed domain names, even if it has acquired no trademark rights; in this case, there is no such indication from the present record.

(iii) Legitimate noncommercial or fair use of the disputed domain names without intent for commercial gain to misleadingly divert consumers or to tarnish the trademarks at issue; again, in this case there is no such indication from the record.

The Respondent does not seem to have any trademark registrations including the terms "Vulkan", "Volcano" "Ву-каН". Additionally, it is to be noted that the Respondent did not present evidence of any license by the Complainant, with whom there seems to exist no relationship whatsoever.

As a conclusion on this point, the Panel finds that the Complainant has established an uncontested, *prima facie* case that the Respondent has no rights or legitimate interests in respect of the disputed domain names, and that the Respondent has not rebutted such *prima facie* case. Therefore, the Panel finds that the Complainant has satisfied paragraph 4(a)(ii) of the Policy.

## D. Registered and Used in Bad Faith

In reviewing the present case, it appears that the Respondent has registered the disputed domain names in bad faith.

The Panel finds it highly unlikely that the Respondent would register randomly and unintentionally the 11 disputed domain names that are confusingly similar to the Complainant's VULKAN and VOLCANO trademarks. Further, the websites at the disputed domain names either incorporate graphical elements containing the Complainant's design mark or else redirect to third-party casino services. Rather, on a reasonable examination of the evidence, it seems to this Panel more likely that such registrations and use would be motivated by a hoped-for capitalization, *i.e.*, commercial gain from the Complainant's reputation.

The Complainant is well-known in the business of casino and games and the Respondent tried to gain from its reputation. Further, the fact that the Respondent wrote on May 25, 2016 asking to work legally under the name Vulkan, implies to the Panel that the Respondent considered his position was not legally correct since he wanted to find a legal way to operate. This is also evidence of bad faith registration and use.

The Panel also notes that the Respondent has not addressed the Complainant's contentions, which in the present circumstances "reinforces the inference of bad faith registration and bad faith use". *The Hongkong and Shanghai Banking Corporation Limited v. Bill Lynn*, WIPO Case No. D2001-0915.

As a consequence of the above, the Panel finds that the Respondent registered and is using the disputed domain names in bad faith.

## 7. Decision

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain names, <casinovulkan.info>; <mybestvulkan.com>; <vulkangames.info>; <vulkan-gamez.com>; <vulkanimgs.com>; <vulkanochance.com>; <vulkanogames.com>; <vulkanogamez.com>; <vulkanopartner.net>; <vulkanoplay.com>; and <vulkanwin.info> be transferred to the Complainant.

Christos A. Theodoulou
Sole Panelist
Date: July 11, 2016

# Nueva transferencia

**1.** Datos    **2.** Confirmación

 La transferencia se ha realizado correctamente.

El tipo de cambio mostrado es orientativo. El tipo de cambio efectivamente aplicado será el establecido por la entidad en el día de ejecución de su transferencia.
Si algún dato no fuera correcto, el banco de destino podría devolver la transferencia y cobrar gastos por ello.

✓ El email se ha enviado correctamente.

## Transferencia Internacional

Beneficiario:
WIPO OMPI

Importe y moneda:
2.500,00 USD

País:
SUIZA

Tipo de cambio orientativo:
0,9087

Concepto:
UDRP COMPLAINT ON THE DOMAIN NAMES
1vulcano.com et all, 13 total



Fecha orden:
29/09/2016

Fecha envío:
30/09/2016

Gastos:
A cargo del ordenante

Importe gastos:
30,00 €

Importe comisiones:
12,00 €

Importe total transferencia:
2.313,72 €