# EXHIBIT B
# PART 2

# Response Annex 13

# IN THE SUPREME COURT OF SEYCHELLES

**ESCAVE LTD**
of Global Gateway 8
Rue de la Perle in Mahe, Seychelles                                    **1st Plaintiff**
and herein represented by its Director
Ms Lianna Tall of Anse Boileau, Mahé, Seychelles

**and**

**GGS LTD**
of 201 Rogers Office Building
George Hill P.C, 4103 Anguilla
West Indies and electing domicile                                      **2nd Plaintiff**
In the Chamber of Mr. Serge Rouillon
Attorney at Law of Suite 14 Kinsgate House,
Victoria, Mahé, Seychelles

**Versus**

**RITZIO PURCHASE LIMITED**                                            **Defendant**
of Diagorou Street 4, Kermia building,
6th floor, office 601,P.C 1097, Nicosia, Cyprus

                                                CS No:………………………

## DEFENCE

## IN LIMINE LITIS

1. The arbitration decision is res judicata and the court has no jurisdiction to review the merits of the arbitration decision.

2. The plaint discloses no cause of action.

Dated this *17th* day of *September* 2015.

DEFENDANT'S ATTORNEY:

                                                ………………………………
                                                Philippe J.R Boulle
                                                Barrister at law
                                                307 Victoria House
                                                Victoria, Mahé

This defence has been served on the Plaintiff's Attorney Mr Serge Rouillon at Suite 14, Kingsgate House, Victoria, Mahé, Seychelles.

# Response Annex 14

# Application Notice

For help in completing this form please read
the notes for guidance form N244 Notes

Rolls Building 27/05/2016
**IP-2015-000181**

| IN THE HIGH COURT OF JUSTICE CHANCERY DIVISION INTELLECTUAL PROPERTY & ENTERPRISE COURT | |
|---|---|
| **Claim No.** | IP-2015-000181 |
| **Claimants** (including ref.) | (1)INFOSTAR MANAGEMENT LTD (2)GGS LTD |
| **Defendants** (including ref.) | (1)RITZIO PURCHASE LIMITED (a company incorporated under the laws of the Republic of Cyprus) (2)EVOPLAY LLP |
| **Date** | 27 May 2016 |

*Hearing: 4th JULY 2016*
*10:30 AM*
*T/E 2 HOURS*

1.  What is your name, or if you are a solicitor, the name of your firm?

    TAYLOR WESSING LLP

2.  Are you a    ☐ Claimant    ☐ Defendant    ☑ Legal Representative

    ☐ Other *(please specify)*

    If you are a solicitor whom do you represent?    **RITZIO PURCHASE LIMITED**, the First Defendant

3.  What Order are you asking the court to make and why?

    Pursuant to CPR Part 11:

    1. A declaration that the Court has no jurisdiction or should not exercise jurisdiction
    2. An order that the Claim Form be set aside

    Because the Claimants have not served the Claim Form on Ritzio Purchase Limited (a Cyprus company) in accordance with Section IV of CPR Part 6 within 6 months of the date of issue, as required by CPR Part 7.5(2)

4.  Have you attached a draft of the Order you are applying for?    ☑ Yes    ☐ No

5.  How do you want this application dealt with?    ☑ at a hearing    ☐ without a hearing

    ☐ at a telephone hearing

6.  How long do you think the hearing will last?    1 -2   Hours    ☐ Minutes

    Is this time estimate agreed by all parties?    ☐ Yes    ☑ No

7.  Give details of any fixed trial date or period

8.  What level of Judge does your hearing need?    IPEC Judge

*Crown Copyright 2014. Reproduced by Taylor Wessing LLP*

9.      Who should be served with this application?

Claimants

9a.     Please give the service address, (other than details
        of the Claimant or Defendant) of any party named in
        question 9.

10.     What information will you be relying on, in support of your application?

        [✓]  the attached witness statements

        [ ]  the statement of case

        [ ]  the evidence set out in the box below

If necessary, please continue on a separate sheet

**Statement of Truth**

The Applicant believes that the facts stated in this section (and any continuation sheets) are true

Signed _____    Dated _____
        Applicant's Legal Representative

Full Name _____

Name of Applicant's Legal Representative's firm _____

Position or office held _____
(if signing on behalf of firm or company)

11.   Signature and address details

Signed _____   Dated  27/5/16 _____

      Applicant's Legal Representative

Position or office held     Partner _____

(if signing on behalf of firm or company)

Applicant's address to which documents about this application should be sent

| TAYLOR WESSING LLP |
| 5 NEW STREET SQUARE |
| LONDON : |
| Postcode |
| E | C | 4 | A |   | 3 | T | W | |

| If applicable | |
|---|---|
| Phone no. | +44 (0)20 7300 7000 |
| Fax no. | +44 (0)20 7300 7100 |
| DX no. | DX    41 London |
| Ref no. | |

| Email address | j.rawkins@taylorwessing.com |
|---|---|

IP-2015-000181

**IN THE HIGH COURT OF JUSTICE**

**CHANCERY DIVISION**

**INTELLECTUAL PROPERTY ENTERPRISE COURT**

**[Before ….]**

**[Date]**

**BETWEEN**

### (1)INFOSTAR MANAGEMENT LTD

### (2)GGS LTD

<u>**Claimants**</u>

### -and-

### (1)RITZIO PURCHASE LIMITED
### (a company incorporated under the laws of the Republic of Cyprus)

### (2)EVOPLAY LLP

<u>**Defendants**</u>

---

### (*Draft*) ORDER

---

**UPON THE APPLICATION** of the First Defendant dated     May 2016

**AND UPON HEARING** Solicitors for the First Defendant and Solicitors for the Claimants

**IT IS ORDERED THAT:-**

1. The Court has no jurisdiction or should not exercise jurisdiction to hear this claim;
2. The Claim Form be set aside;
3. Costs;
4. The First Defendant is to serve a copy of this Order on the Claimants.

**Service of this Order**

The Court to send sealed copies of this Order to the serving party, Taylor Wessing LLP, 5 New Street Square, London EC4A 3TW for service on the Claimants



# HM Courts & Tribunals Service

**Chancery Division**

7 Rolls Building, Fetter Lane, EC4A 1NL

T

27 May 2016

IP-2015-000181

Selachii LLP
96 Kensington High Street
London
W8 4SG

Date: 27-05-2016

Dear Sir / Madam,

**RE: IP-2015-000181 Infostar Management Ltd and another v Ritzio Purchase Limited and another**

Please see attached a copy of the acknowledgment of service filed by the defendant in the above case.

Yours faithfully,

Chancery Issue

**Chancery Division**

# Response Pack

**Included in this pack are:**

You should read the 'notes for defendant' attached to the claim form which will tell you when and where to send the forms

- either **Admission Form N9A**
  (if the claim is for a specified amount)
- or **Admission Form N9C**
  (if the claim is for an unspecified amount or is not a claim for money)

- either **Defence and Counterclaim Form N9B** (if the claim is for a specified amount)
- or **Defence and Counterclaim Form N9D** (if the claim is for an unspecified amount or is not a claim for money)

- **Acknowledgment of Service** (see below)

| | | |
|---|---|---|
| If you admit the claim or the amount claimed and/or you want time to pay | → | the admission form |
| If you admit part of the claim | → | the admission form and the defence form |
| If you dispute the whole claim or wish to make a claim (a counterclaim) against the claimant | → | the defence form |
| If you need 28 days (rather than 14) from the date of service to prepare your defence, or wish to contest the court's jurisdiction | → | the acknowledgment of service |
| If you do nothing, judgment may be entered against you | | |

*[Round stamp: HIGH COURT OF JUSTICE INTELLECTUAL PROPERTY AND ENTERPRISE COURT, 27 May 2016, Complete, IP-2015-000181]*

---

# Acknowledgment of Service

Defendant's full name if different from the name given on the claim form

**RITZIO PURCHASE LIMITED**
**(a company registered under the laws of the Republic of Cyprus)**

| | |
|---|---|
| IN THE HIGH COURT OF JUSTICE | |
| CHANCERY DIVISION | |
| INTELLECTUAL PROPERTY & ENTERPRISE COURT | |
| Claim No | IP-2015-000181 |
| Claimants (including ref.) | (1) INFOSTAR MANAGEMENT LTD (2) GGS LTD |
| Defendant | RITZIO PURCHASE LIMITED |

Address to which documents about this claim should be sent (including reference if appropriate)

TAYLOR WESSING LLP
5 NEW STREET SQUARE
LONDON

Postcode | E | C | 4 | A | | 3 | T | W

| If applicable | |
|---|---|
| Telephone no. | +44 (0)20 7300 7000 |
| Fax no. | +44 (0)20 7300 7100 |
| DX no. | DX 41 London |
| Your ref. | JWR |

Email

**Tick the appropriate box**

1. I intend to defend all of this claim ☐
2. I intend to defend part of this claim ☐
3. I intend to contest jurisdiction ☑

(My) (Defendant's) date of birth is
☐☐ / ☐☐ / ☐☐☐☐

If you file an acknowledgment of service but do not file a defence within 28 days of the date of service of claim form, or the particulars of claim, if served separately, judgment may be entered against you.

If you do not file an application to dispute the jurisdiction of the court within 14 days of the date of filing this acknowledgment of service, it will be assumed that you accept the court's jurisdiction and judgment may be entered against you.

If served outside the jurisdiction see CPR rule 6.35 and 6.37(5).

| Signed | *[signature]* | Position or office held | Partner |
|---|---|---|---|
| | Defendant's legal representative | (if signing on behalf of firm or company) | |

Date 2 7 / 0 5 / 2 0 1 6

For further details of the courts www.gov.uk/find-court-tribunal
The Court Office at The Rolls Building 7 Rolls Buildings Fetter Lane London EC4A 1NL is open between 10.am and 4.30 pm.
When corresponding with the court, please address forms or letters to the Court Manager and always quote the claim number

# Response Annex 15

## Case D2015-0875

---

**Support Pananames** <support@pananames.com>                    Mon, Oct 3, 2016 at 3:55 AM
To: Matthew Shayefar <matt@bostonlawgroup.com>
Cc: Val Gurvits <vgurvits@bostonlawgroup.com>

Dear Matthew,

we, as an ICANN accredited registrar, hereby inform you that following the Seychelles court case dismissal, we now
consider the UDRP decision as final and binding and for this reason the domains were transferred to the complainant.

--
Best Regards,
URL Solutions, Inc
PanaNames.com

# Response Annex 16

Case 2:17-cv-00002-RAJ   Document 1-8   Filed 01/03/17   Page 14 of 156



# Russia bans all gambling and shuts casinos

BY MIKHAIL ANTONOV AND VLADIMIR BOMKO

MOSCOW | Wed Jul 1, 2009 3:52pm EDT

   Share this    ✉ Email   🖶 Print



A dealer stacks chips on a roulette table at the Shangri La Casino in Moscow June 29, 2009.

CREDIT: REUTERS/DENIS SINYAKOV

**FACTBOX**

FACTBOX-Five risks to watch east of the EU

**RELATED NEWS**

Putin pledges to defend Abkhazia, Georgia fumes

Putin visits Abkhazia, vows Russian defense

PREVIEW-Bally Technologies Q4 EPS likely to edge past Street

Russians cool towards Obama visit

(Reuters) - Russia closed down its casinos overnight as gambling was banned nationwide, a move the industry says could throw a third of a million people out of work.

The July 1 ban shut gaming halls, from gaudy casinos crowned by extravagant neon structures to dingy dwellings containing a handful of slot machines.

"I feel terrible. We just let 1,000 people go," said Yuri Boyev, general director at Metelitsa, an upmarket casino where billionaires rolled the dice and Russia's gas giant Gazprom held a lavish Christmas party.

Vladimir Putin, now prime minister, came up with the idea in 2006 when he was president after the Interior Ministry linked several gaming operations in Moscow to Georgian organized crime.

The Kremlin plans to restrict gambling to Las Vegas-style gaming zones in four rarely visited regions deemed to need investment, including one near the North Korea border, but nothing has been built and critics say the zones will fail.

Though gaming establishments knew the shutdown date for at least a year, few thought the government would go through with it, but officials moved in overnight to close them down.

The industry says the ban will axe at least 300,000 jobs but officials in Moscow put the

**TRENDING ON REUTERS**

Toddler rescued from car 14 hours after Utah river plunge   **1**

Malaysian PM vows to keep up search for MH370, report offers no new clues ▶ VIDEO   **2**

White House lockdown triggered by burning truck cleared   **3**

Two charged with Nemtsov killing include Chechen officer: report ▶ VIDEO   **4**

Gunmen kill more than 12 Islamic State militants in eastern Syria   **5**

**PICTURES**



**Japan's cat island**

An army of feral cats rules a remote island in southern Japan, outnumbering humans six to one in the fishing village. **Slideshow**

**Follow Reuters**



Facebook   Twitter   RSS   YouTube

**RECOMMENDED VIDEO**



Mystery of Toronto tunnel solved

Teacher found hanged in California high school classroom

China expanding its reach on the water

Shadowy Iranian general behind Iraq's push for Tikrit

national figure at only 11,500.

Rows of slot machines, usually blinking around the clock in smoky, crowded halls, lay dormant and wrapped in cellophane.

Moscow deputy mayor Sergei Baidakov, watching men dismantle poker tables and lay roulette wheels on the floor, said the state was ready to thwart any bid to move gambling underground.

"We are confident we will control the situation," he said.

He said the ban was to protect the health of society. Many critics in the gambling industry say it has more to do with Russia's poor ties with Georgia. Georgians are thought to run many Russian gaming halls.

City police stood on guard in case of protests by disgruntled former workers in the popular gaming halls that have sprouted since the Soviet Union collapsed in 1991 and now pepper Russia's cities.

A hotline was set up Wednesday to report on those suspected of operating illegal gambling, Itar-Tass reported.

Moscow had around 550 gambling places, including 30 casinos in prime spots, symbolizing the capital's love of excess.

Midnight on Novy Arbat street, the heart of the gambling scene, was muted as its flashing lights and loud music were turned off for the first time in over a decade.

"I'm upset but I guess I'll have a little rest and re-visit my job situation in August," said Elena, a slot machine operator who has worked in the gaming business for five years.

Each year gaming brought in up to $7 billion and paid $1 billion in tax, a gap the industry says will cause the state a budget headache.

The development replacement zones -- in southern Krasnodar, the Baltic enclave of Kaliningrad, east Siberia's Altai region and the Far East -- require investment of up to $40 billion and have not been built.

"The zones have no roads, water or electricity. We fulfilled the law by shutting, the government did not fulfill it as the zones are not ready yet," said casino director Boyev.

The industry has raised eyebrows at government guarantees of work in restaurants and shopping centers that are to replace casinos when unemployment in Russia has hit an eight-year high.

But some addicted gamblers thought the ban might help them.

"Maybe this is all a good thing. I'm a family man and I come here every day and lose all my money. I'll be happy to see them go," said a 40-year-old Muscovite near the flashy Shangri-La casino in the city center.

(Additional reporting and writing by Amie Ferris-Rotman, edited by Richard Meares)

FILED UNDER:   ODDLY ENOUGH   RUSSIA   NORTH KOREA



Recommend  10 people recommend this. Be the first of your friends.

Tweet this    Link this    Share this    Digg this    Email    Print    Reprints

**More From Reuters**

- **Why do European Muslim girls look to Islamic State for marriage material?**
  | 4 Mar

- **Teacher found hanged in Southern California high school classroom**
  | 2 Mar

- **Woman raped in Connecticut by man she met on dating app: police**
  | 2 Mar

- **Ukraine PM: Pro-Russian "bastards" hampering mine rescue** | 4 Mar

- **Federal agents raid 20 suspected 'maternity hotels' in California** | 3 Mar

**From The Web**                                Sponsored Links by Taboola



**Transferring your credit card balance every 15 months is a...**
*NextAdvisor*

**Buffett Admits This Is A "Real Threat"**
*The Motley Fool*

**New U.S. Currency Law Now In Effect**
*Stansberry Research*



fair presentation and disclosure of relevant interests.

NYSE and AMEX quotes delayed by at least 20 minutes. Nasdaq delayed by at least 15 minutes. For a complete list of exchanges and delays, please click here.

# Response Annex 17

3/8/2015
Case 2:17-cv-00002-RAJ Document 18 Filed 01/03/17 Page 19 of 156
A raw deal for Russia's casino workers | Feature | The Moscow News



22:28 8/03/2015       +1℃

USD 07/03 59.9938 -1.8519
EUR 07/03 66.1012 -2.2074



online independent newspaper

the**moscow**news

PRINT EDITION     SMART EDITION

Search     Search

| NEWS | RUSSIA | BUSINESS | LOCAL | ARTS & ENTERTAINMENT | SPORTS | COMMENT | COLUMNISTS | MULTIMEDIA | JOBS | ABOUT US |

## Feature RSS



ADVERTISING IN THE MOSCOW NEWS

# A raw deal for Russia's casino workers

at 01/02/2010 19:07

**Anna Sulimina**

**Moscow's casinos may have been forced to close their doors six months ago, but already their owners are dining out on fat profits in the hospitality sector.**

Experts say the gambling industry had begun to slow down anyway, as owners prepared for the time when a proposed ban would take effect. In 2008, revenue was an estimated $3 billion to $4 billion, compared with $5 billion to $6 billion in 2007.

"The decline started when the law was just under discussion," said Maxim Klyagin, a consumer industry analyst at Finam Management. "Key operators in the industry started to look abroad, mainly in the Ukraine or Belarus markets, and cut down their business in Russia."

At the same time, no new players were lured into setting up casinos in the four far-flung Russian regions where gambling remained legal.

"We do not think any of Moscow's operators will go to these legal gambling zones - there is no infrastructure and no clients for casinos," said the Association of Gambling Operators. "This is just not worth it at all."

### High rollers staying put

Even before the ban came into force on July 1, 2009, two of Moscow's biggest high rollers - Ritzio Entertainment Group and Storm International - decided not to gamble on investing in the legal zones.

Ritzio, which operated the Vulcan chain of fruit machines as well as big casinos Imperial and Desperado, left its rented slot-spots in Moscow before the clampdown. The vacated real estate has been gobbled up by food stores and mobile phone shops, while the casinos have switched their attention to fresh tables around the world.
"Our first priority now is unfolding business in Eastern Europe, CIS and Latin America," said Storm's vice president of hospitality, Richard Kveton. "However, we are not going to leave the Moscow market."

The company, which was founded in 1992 by English entrepreneur Michael Boettcher, had been operating five big casinos in Moscow before the ban - Shangri La, Jazz Town, New York, Karnaval and Udarnik - and the Super Slots chain.

### Laughing and dining

Storm has decided to switch to the hospitality industry and is now opening several restaurants on the sites of its former casinos. Perhaps with half an eye to an eventual return of the casinos in Moscow, The company kept faith with US-style entertainment in its roll of the restaurant dice, opening the American-style casual diner, Radio City, in place of the New York casino on Bolshaya Sadovaya.

Shangri La - a former gambler's paradise on Pushkinskaya Ploshchad - is being transformed into two restaurants serving Brazilian churrasco-rodizio, all-you-can-eat grills and Chinese dim-sum after being stripped of its one-armed bandits.

These two projects, called Macho Grill and Café Macao, are being launched this month together, and Storm is optimistic about their future with well-known Moscow restaurateur Arkady Novikov at the helm.

"We have gained sound experience in food service working with casino clients, but it's not an easy task to set up and operate all these dining spots," said Kveton. "However, our first restaurant, Radio City, drew lots of people for New Year's corporate parties and is currently very busy too."

Storm's other projects are still being worked on while all the Super Slots have been closed. Kveton says $1.5 million will be totally invested in the company's reorganisation.
Some other big casinos have also taken the pledge and transformed themselves into

facebook.
users recommendations

Putin denies accusations of Stalinism
23 people recommend this.

Speaking ill of the dead
22 people recommend this.

Child discovers a mammoth in Taymyr
52 people recommend this.

Pussy Riot members arrested in Sochi
152 people recommend this.

Facebook social plugin

MOST READ

- South Korea asks Russia, China to rein in North Korea
- Iron Lady Margaret Thatcher dies at 87
- Teacher says nuked friend for immortality
- Stephen Fry meets anti-gay politician
- Horsemeat found in sausage in Russia – officials

mainstream entertainment venues. The Golden Palace, near Belorusskaya metro station, has been redeveloped into an entertainment centre with restaurants and a dance floor, where the Russian popular show Comedy Club now takes place.

**Former Mecca struggles**

Moscow's biggest gambling Mecca, Novy Arbat, is proving the hardest hand to play with much of the real estate remaining vacant. While the Crystal casino has become a shopping centre with a high-end supermarket, Azbuka Vkusa, the former Angara and Metellitsa casinos, totalling 2,500 square metres, are still empty.

It appears the companies are happy to leak cash while waiting for someone to meet the lease.

"The owners of these premises expected higher rental rates than the market could sustain," said Tatyana Klyuchinskaya, director of retail property at Colliers International. "Obviously there are very few companies that can afford these places today and not all are convenient for retailers. In this regard, slot-spots were quicker to lease out."

Before the gambling ban, by law a casino had to be at least 3,000 square metres. This creates problems for potential tenants.

"The main problem of former casino premises is that most of them are off the beaten track, so it's not the best spot for an entertainment centre or shopping mall," said Julia Nikulicheva, director of strategic consulting at real estate firm Jones Lang La Salle. "Moreover, they are very large - and that makes it inappropriate for many other purposes."

However, some former Moscow casinos are still catering to gambling tastes under the legal protection of the state lottery, Rosloto. In the Korston Hotel, there is a corner with slot machines behind a curtain, where punters can enjoy a quiet flutter by buying a ticket that allows them to play - and win prizes - on the slots.





©2007—2015 The Moscow News
Some material may be inappropriate for those under 18

Advertise in MN     Contact us

# Response Annex 18

**Unofficial translation**

Disclaimer[1]

© Federal Service for Intellectual Property, Patents and Trademarks (ROSPATENT), 2011

# CIVIL CODE OF THE RUSSIAN FEDERATION

Passed by the State Duma
on November 24, 2006

Approved by the Federation Council
on December 8, 2006
(as in force on December 1, 2007)

## PART IV

## SECTION VII

## RIGHTS TO THE RESULTS OF INTELLECTUAL ACTIVITY AND MEANS OF INDIVIDUALIZATION

### CHAPTER 69. GENERAL PROVISIONS

Article 1225. **Results of Intellectual Activity and Means of Individualization subject to protection**

1. The results of intellectual activity and means equated to them of individualization of legal entities, goods, work, services, and enterprises that are granted legal protection (intellectual property) shall be as follows:

1) works of science, literature, and art;
2) computer programs;
3) databases;
4) performances;
5) phonograms;
6) broadcasting or diffusion of radio- or television transmissions via cable;
7) inventions;
8) utility models;
9) industrial designs;
10) selection attainments;
11) topographies of integrated circuits;
12) secrets of production (know-how);
13) trade names;
14) trademarks and service marks;
15) appellations of origin;
16) commercial names.

---

[1] The English translation of the Part IV of the Civil Code of the Russian Federation, prepared by the specialists of Rospatent, is an unofficial one intended to inform the international community, in particular, multilateral organizations, foreign IP offices, and also professionals dealing with the issues of protection and enforcement of IP rights both in the country and abroad.

A trade name included in a commercial name shall be protected independently of the protection of the commercial name.

2. A trade name or individual elements thereof may be used by the rightholder in a trademark or service mark belonging to him.

A trade name included in a trademark or service mark shall be protected independently of the protection of the trademark or service mark.

## § 2. Right to a Trademark and the Right to a Service Mark

### 1. General Provisions

Article 1477. **Trademark and Service Mark**
1. An exclusive right certified by a trademark certificate (Article 1481) shall be recognized to a trademark, i.e., to a sign capable of individualizing of goods of legal entities or individual entrepreneurs.
2. The provisions of the present Code related to  trademarks shall be applied correspondingly to service marks, i.e., to signs capable of individualizing work performed or services rendered by legal entities or individual entrepreneurs.

Article 1478. **Holder of the Exclusive Right to a Trademark**
The holder of the exclusive right to a trademark shall be a legal entity or an individual entrepreneur.

Article 1479. **Validity of the Exclusive Right to a Trademark within the Territory of the Russian Federation**
The exclusive right to a trademark registered by the federal executive authority for intellectual property shall be valid within the territory of the Russian Federation, and also in other cases provided for by an international treaty of the Russian Federation.

Article 1480. **Official Registration of a Trademark**
Official registration of a trademark shall be effected by the federal executive authority for intellectual property in the State Register of Trademarks and Service Marks of the Russian Federation (State Register of Trademarks) by the procedure provided by Articles 1503 and 1505 of the present Code.

Article 1481. **Trademark Certificate**
1. A trademark certificate shall be issued for a trademark registered in the State Register of Trademarks.
2. The trademark certificate shall certify the priority of a trademark and the exclusive right to the trademark with respect to the goods indicated in the certificate.

Article 1482. **Types of Trademarks**
1. Word, figurative, three-dimensional, and other signs or combinations thereof may be registered as trademarks.
2. A trademark may be registered in any color or color combination.

Article 1483. **Grounds for Refusal of Official Registration of a Trademark**
1. The following signs shall not be registered as trademarks if they are not capable of distinguishing or consisting only of elements that:

1) have fallen into public domain to indicate the goods of a certain kind;

2) are generally accepted symbols and terms;

3) characterize goods, including indication of their type, quality, quantity, properties , purpose, or value and also the time, place, or means of their production or sale;

4) represent the configuration of goods that is determined exclusively or mainly by the properties or purpose of the goods.

The indicated elements may be incorporated in the trademark as non-protected elements if they do not prevail.

The provisions of the present Paragraph shall not be applied with respect to signs that have acquired the distinctiveness as the result of their use.

2. By virtue of an international treaty of the Russian Federation the signs shall not be registered as trademarks if they consist only of elements that are:

1) state armorial bearings, flags, or other state symbols and marks;

2) abbreviations or full names of international and intergovernmental organizations, their armorial bearings, flags, or other symbols and marks;

3) official signs or hallmarks of control and warranty, seals, awards, and other distinguishing signs;

4) signs confusingly similar to the elements indicated in subparagraphs 1-3 of the present Paragraph.

Such elements may be included in a trademark as non-protected elements provided there is consent of an appropriate competent authority.

3. The signs shall not be registered as trademarks that are or contain the elements:

1) that are false or capable of misleading a consumer in respect of goods or their producer;

2) that are contrary to public interests, or to principles of humanity or morality.

4. The signs identical or confusingly similar to the official names and images of particularly valuable objects of the cultural heritage of the peoples of the Russian Federation or objects of world cultural or natural heritage, and also with images of cultural values stored in special, general, and reserve collections shall not be registered as trademarks if registration is sought in the name of persons who are not their owners, without the consent of their owners or of the persons authorized by the owners for the registration of such signs as trademarks.

5. By virtue of an international treaty of the Russian Federation, the signs shall not be registered as trademarks that are or contain elements that are protected in one of the States party to this international treaty as signs identifying wines or spirits as originating from its territory (or produced within the boundaries of a geographical object of this state) and have a particular quality, reputation, or other characteristics that are mainly determined by its origin, if the trademark shall be used for the indication of wines or spirits that not originating from the territory of the geographical object concerned.

6. The signs shall not be registered as trademarks if they are identical, or confusingly similar to:

1) trademarks of other persons applied for registration (Article 1492) with respect to similar goods with an earlier priority, unless the application for official registration has been withdrawn or has been deemed withdrawn;

2) trademarks of other persons protected in the Russian Federation, including by virtue of an international treaty of the Russian Federation with respect to similar goods.

3) trademarks of other persons recognized under the present Code as well-known marks in the Russian Federation with respect to similar goods with an earlier priority.

The sign confusingly similar to any of the trademarks indicated in the present Paragraph shall be registered as a trademark with respect to similar goods only with the consent of the rightholder.

7. The signs identical or confusingly similar to an appellation of origin protected under the present Code shall not be registered as trademarks with respect to any goods except for the case when such a sign is included as an non-protected element in a trademark registered in the name of person having the exclusive right to use such an appellation, if the registration of the trademark is applied with respect to those goods for individualization of which the appellation of origin is registered.

8. The signs identical or confusingly similar to a trade name or commercial name protected in the Russian Federation (or individual elements of such a trade name or commercial name), or to the names of selection attainment registered in the State Register of Protected Selection Attainment, rights to which arose in the Russian Federation earlier than the priority date of the trademark to be registered shall not be registered as trademarks with respect to similar goods.

9. The signs shall not be registered as trademarks if they are identical to:

1) a title of work of science, literature, or art, a character or quotation from such a work, a work of art or a fragment thereof known in the Russian Federation on filing date of the application for official registration of a trademark (Article 1492), without the consent of the rightholder, if the rights to the respective work arose earlier than the priority date of the trademark to be registered;

2) a name (Article 19), a pseudonym (Paragraph 1 of Article 1265) or their derivatives, a portrait or facsimile of a person known in the Russian Federation on the filing date of the application without the consent of this person or his heir;

3) an industrial design, a correspondence sign, the rights to which arose earlier than the priority date of trademark to be registered.

10. On the grounds provided for in the present Article the legal protection also shall not be granted to signs recognized as trademarks by virtue of international treaties of the Russian Federation.


2. The Use of a Trademark and the Disposition of the Exclusive Right to a Trademark


Article 1484. **Exclusive Right to a Trademark**

1. A person in whose name the trademark is registered (the rightholder) shall enjoy the exclusive right to use a trademark in accordance with Article 1229 of the present Code in any manner not contrary to a law (the exclusive right to a trademark) including by the means indicated in Paragraph 2 of the present Article. The rightholder may dispose of the exclusive right to the trademark.

2. The exclusive right to a trademark may be disposed for the individualization of the goods, work, or services with respect to which the trademark has been registered, in particular by using a trademark:

1) on goods including labels and packaging of goods, that are produced, offered for sale, sold, displayed at exhibitions and fairs, or otherwise introduced into

civil circulation within the territory of the Russian Federation, or are kept or transported for this purpose, or imported into the territory of the Russian Federation;

2) while performing work or rendering of services;

3) on documents introducing goods into civil circulation;

4) while offering goods for sale, work for performance, and services for rendering as well as in announcements, on signboard, and in advertising;

5) in the Internet, including in a domain name and for other means of addressing.

3. No one has the right to use, without the permission of the rightholder, signs similar to his trademark with respect to the goods for the individualization of which the trademark has been registered or similar goods if such use would result in a likelihood of confusion.

Article 1485. **Symbol of Legal Protection of a Trademark**

The rightholder for giving notice of his exclusive right to a trademark has the right to use the symbol of protection, which shall be placed alongside the trademark and consists of the Latin letter "R" or the Latin letter "R" in a circle ® or the verbal indication "trademark" or "registered trademark" and which indicates that the sign used is a trademark protected within the territory of the Russian Federation.

Article 1486. **Consequences of Nonuse of a Trademark**

1. Legal protection of a trademark may be early terminated with respect to all goods or part of the goods for the individualization of which the trademark has been registered as the result of the nonuse of the trademark continuously within any three years after its official registration. A request for the pre-term termination of the legal protection of a trademark as the result of its nonuse may be filed by any interested person with the Chamber for Patent Disputes upon the expiration of the aforesaid three years provided that the trademark has not been used before such request was filed.

2. For the purposes of the present Article the use of a trademark shall be considered to be used by the rightholder or other person to whom such a right has been granted on the ground of a license contract in accordance with Article 1489 of the present Code, or by another person using the trademark under the supervision of the rightholder provided that the use of the trademark is conducted in accordance with Paragraph 2 of Article 1484 of the present Code, with the exception of cases when the respective actions are not directly connected with the introduction of the goods into civil circulation and also the use of a trademark with the alteration of individual elements not affecting its capability of distinguishing and not limiting the protection granted to the trademark.

3. The burden of proof of the use of the trademark shall be on the rightholder.

In settling the issue of the pre-term termination of legal protection of a trademark as a result of its nonuse, a proof presented by the rightholder of the fact that the trademark has not been used due to circumstances beyond his control may be taken into consideration.

4. Termination of legal protection of a trademark shall mean the termination of the exclusive right to this trademark.

Article 1487. **Exhaustion of the Exclusive Right to a Trademark**

Use of a trademark by other persons with respect to goods that have been introduced into civil circulation within the territory of the Russian Federation directly

the collective mark shall be early terminated fully or in part based on the decision of a court taken at the request of any interested person.

4. The collective mark and an application for a collective mark may be transformed respectively into a trademark and a trademark application and *vice versa*. The procedure for such a transformation shall be established by the federal executive authority responsible for normative and legal regulation in the field of intellectual property.

### 6. Termination of the Exclusive Right to a Trademark

Article 1512. **Grounds for Appeal and Recognizing as Invalid the Grant of Legal Protection to a Trademark**

1. Appeal against the grant of legal protection to a trademark shall be considered as an appeal against a decision on the official registration of a trademark (Paragraph 2 of Article 1499) and of the recognition of the exclusive right to a trademark based upon it (Articles 1477 and 1481).

Recognition of the invalidity of the grant of legal protection to a trademark shall entail the revocation of the decision of the federal executive authority for intellectual property on registration of the trademark.

2. The grant of legal protection to a trademark may be appealed and recognized as invalid:

1) fully or in part during the whole period of validity of the exclusive right to a trademark provided that legal protection has been granted to it in contravention of the requirements of Paragraphs 1–5, 8 and 9 of Article 1483 of the present Code;

2) fully or in part within a period of five years from the date of publication of information about the official registration of the trademark in the official gazette (Article 1506) provided that the legal protection has been granted to it in contravention of the requirements of Paragraphs 6 and 7 of Article 1483 of the present Code;

3) fully during the whole period of validity of the exclusive right to a trademark provided that the legal protection has been granted to it in contravention of the requirements of Article 1478 of the present Code;

4) fully during the whole period of validity of legal protection provided that the legal protection has been granted to a trademark with later priority with respect to a recognized well-known registered mark of another person, the legal protection of which is exercised in accordance with Paragraph 3 of Article 1508 of the present Code;

5) fully during the whole period of validity of the exclusive right to the trademark provided that the legal protection has been granted to it in the name of an agent or representative of a person who is deemed to be the holder of this exclusive right in one of the member states of the Paris Convention for the Protection of Industrial Property in contravention of the requirements of the said Convention;

6) fully or in part during the whole period of validity of legal protection provided that actions of the rightholder connected with the official registration of the trademark are recognized by the established procedure as abuse of rights or an act of unfair competition.

3. The grant of legal protection to a well-known trademark by its registration in the Russian Federation may be appealed and recognized as invalid fully or in part during the whole period of validity of the exclusive right to this trademark provided

that the legal protection has been granted to it in contravention of the requirements of Paragraph 1 of Article 1508 of the present Code.

Article 1513. **Procedure of Appealing and Recognizing as Invalid the Grant of Legal Protection to a Trademark**

1. The grant of legal protection to a trademark may be appealed on the grounds and within the time limits provided by Article 1512 of the present Code by the filing of an appeal against such a grant with the Chamber for Patent Disputes or the federal executive authority for intellectual property.

2. Appeals against the grant of legal protection to a trademark on the grounds provided for by subparagraphs 1, 2, 3, and 4 of Paragraph 2 and by Paragraph 3 of Article 1512 of the present Code may be filed with the Chamber for Patent Disputes by any interested person.

3. An appeal against the grant of legal protection to a trademark on the ground provided for by subparagraph 5 of Paragraph 2 of Article 1512 of the present Code may be filed with the Chamber for Patent Disputes by an interested holder of the exclusive right to the trademark in one of the member states of the Paris Convention for the Protection of Industrial Property.

An appeal against the grant of legal protection to a trademark on the ground provided for by subparagraph 6 of Paragraph 2 of Article 1512 of the present Code shall be filed by an interested person with the federal executive authority for intellectual property.

4. Decisions of the federal executive authority for intellectual property on the recognition of the grant of legal protection to a trademark as invalid or on refusal of such recognition shall enter into force in accordance with the provisions of Article 1248 of the present Code and may be appealed in a court.

5. In case of recognition of the grant of legal protection to a trademark as invalid fully, the trademark certificate and the entry in the State Register of Trademarks shall be cancelled.

In case of recognition of the grant of legal protection to a trademark as partially invalid, a new trademark certificate shall be issued and the corresponding changes shall be introduced into the State Register of Trademarks.

6. License contracts concluded before taking a decision on the recognition of the grant of legal protection to a trademark invalid shall be maintained to such an extent to which they have been implemented by the time when the decision concerned was taken.

Article 1514. **Termination of Legal Protection of a Trademark**

1. Legal protection of a trademark shall be terminated:

1) in connection with the expiration of the period of validity of the exclusive right to a trademark;

2) on the grounds of a court ruling rendered in accordance with Paragraph 3 of Article 1511 of the present Code on the pre-term termination of the legal protection of a collective trademark in connection with the use of this mark on goods that do not possess common characteristics of their quality or other general properties;

3) on the grounds of a decision taken in accordance with Article 1486 of the present Code on the pre-term termination of legal protection of a trademark in connection with its nonuse;

4) on the grounds of a decision of the federal executive authority for intellectual property on the pre-term termination of the legal protection of a trademark

Article 1550. **General Conditions of Transfer of Rights to Technology**

Except as otherwise provided by the present Code or other law, a person having the right to technology may at his discretion dispose of this right by its transfer fully or in part to other persons under contract or other transaction including contract on alienation of this right, license contract, or any other contract containing the elements of a contract for the alienation of right or a license contract.

The right to technology shall be transferred with respect to all the results of intellectual activity included in a system of single technology as a single whole. Transfer of rights to separate results of the number of indicated results (to a part of the technology) shall be allowed only in cases when a part of single technology shall have original significance in connection with Paragraph 5 of Article 1549 of the present Code.

Article 1551. **Conditions for Export of a Single Technology**

1. Single technology shall have practical application (implementation) primarily within the territory of the Russian Federation.

The right to technology may be transferred for the use of a single technology within the territories of foreign states with the consent of the state customer or the manager of budgetary assets in accordance with the legislation on external economic activity.

2. Transactions providing the use of a single technology outside the territory of the Russian Federation shall be subject to the official registration in the federal executive authority for intellectual property.

Nonobservance of the requirements for the official registration of the transaction shall entail its invalidity.

President of the Russian Federation
V. Putin

Moscow, the Kremlin
December 18, 2006
No. 230-ФЗ

# Response Annex 19



1 of 1 DOCUMENT

**IN RE CASINO DE MONACO TRADEMARK LITIGATION**

**07 Civ. 4802 (DAB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

*2010 U.S. Dist. LEXIS 33950*

**March 31, 2010, Decided
March 31, 2010, Filed**

**COUNSEL:** [*1] For Societe Des Bains De Mer Et Du Cercles Des Estrangers A Monaco, Plaintiff, Counter Defendant: Alan Blum, Lori Ellen Weiss, Robert Lloyd Raskopf, LEAD ATTORNEYS, Quinn Emanuel Urquhart Oliver & Hedges LLP (NYC), New York, NY.

For Playshare P.L.C., Grand Monaco Ltd., Gamshare Ltd., Lucan Toh, Maxwell Wright, Hilstead Ltd., Defendants, Counter Claimants: Jonathan E. Moskin, LEAD ATTORNEY, White & Case LLP (NY), New York, NY.

**JUDGES:** Deborah A. Batts, United States District Judge.

**OPINION BY:** Deborah A. Batts

**OPINION**

*MEMORANDUM AND ORDER*

DEBORAH A. BATTS, United States District Judge.

*I. INTRODUCTION*

Societe des Bains de Mer et du Cercle des Etrangers a Monaco's ("SBM") is the operator of all casino properties, and other attractions, in the Principality of Monaco. SBM has sued Playshare PLC ("Playshare"), an operator of online casino websites, and others, alleging trademark violations and unfair competition under federal and state law as to SBM's mark CASINO DE MONACO. Playshare counter-sued SBM in a separate action seeking: (1) a declaratory judgment that Playshare is not infringing on SBM's trademarks and (2) to overturn a decision by the World Intellectual Property Organization ("WIPO") awarding various domain names [*2] held by Playshare to SBM. Both actions are now consolidated before this Court.

On June 6, 2007, SBM filed a complaint in U.S. District Court in New York alleging that Playshare and other Defendants' [1] use of the designations GRAND MONACO, GRAND MONACO CASINO, GRAND MONDIAL and GRAND MONDIAL CASINO, along with various domain names ("Monaco Domain Names"), infringes on a mark owned and registered by SBM: CASINO DE MONACO. The mark CASINO DE MONACO is registered with the U.S. Patent and Trademark Office ("USPTO") for use in connection with "providing casino services within a hotel environment." *See* USPTO Reg. No. 3,031,006. SBM has also filed an application for another mark with the same designation, CASINO DE MONACO, but for use in connection with casino services. *See* USPTO Appl. Serial No. 77/329,567. Finally, SBM filed an application for the mark CASINO DE MONTE-CARLO. *See* USPTO Appl. Serial No.

77/329,593. SBM does not allege in its complaint that Playshare is infringing on its unregistered mark CASINO DE MONTE-CARLO. However, SBM clearly conflates the marks CASINO DE MONACO and CASINO DE MONTE-CARLO in its arguments to the Court.

> 1   The Defendants in the New York action (Docket No. 07 [*3] Civ. 4802) are Playshare PLC, Grand Monaco Ltd., GamShare (UK) Ltd., Lucan Ton, Maxwell Wright, and Hillstead Ltd. For ease of reference, the Court will refer to the Defendants in the New York action and the Counterclaim-Plaintiffs in the former Arizona action (Docket No. 08 Civ. 2278) collectively as "Playshare."

On June 19, 2007, Playshare, and two other Defendants from the New York action, Lucan Toh and Maxwell Wright [2], subsequently filed a complaint in U.S. District Court in Arizona seeking a declaratory judgment that: (1) Playshare's use of the Monaco Domain Names is in compliance with the Anticybersquatting Consumer Protection Act; (2) SBM's mark CASINO DE MONACO, U.S. Trademark, Registration No. 3,031,006, is invalid and unenforceable; and (3) SBM's unregistered mark CASINO DE MONTE-CARLO is unenforceable. [3] The Arizona action was transferred to this Court on April 11, 2008 and consolidated with the New York action for all purposes under Docket No. 07 Civ. 4802. For purposes of this consolidated action, the Court treats Playshare's claims from the Arizona action as Counterclaims. Accordingly, in this Opinion, SBM is known as the Plaintiff/Counterclaim-Defendant. Playshare is [*4] the Defendant/Counterclaim-Plaintiff.

> 2   The Counterclaim-Plaintiffs in the former Arizona action are Playshare PLC, Lucan Toh and Maxwell Wright. Again, for ease of reference, they will be referred to as "Playshare."
>
> 3   In UDRP Domain Name Decision Case No. D2007-0249, the WIPO ordered Defendants/Counterclaim-Plaintiffs Lucan Toh and Maxwell Wright to transfer the following domain names to SBM, all of which contained the noun "Monaco" and often accompanied with the Noun "Grand" and/or a noun whose meaning is associated with gaming: casinograndmonaco.com, casinograndmonaco.net, casinograndmonaco.org, deutschesgrandmonaco.com, grandmonacoayda.com, grandmonacoayuda.com,

grandmonacobingo.com, grandmonacobingo.net, grandmonacocasinoclub.com, grandmonacocasinoclub.net, grandmonacocasinoclub.org, grand-monaco-casino.com, grandmonacocasino.com, grandmonacocasino.net, grandmonacocasino.org, grandmonacoclub.com, grandmonaco.com, *grandmonaco.com*, grandmonacocraps.com, grandmonacogames.com, grandmonacogames.net, grandmonacogaming.com, grandmonacogaming.net, grandmonacohost.com, grandmonacohosts.com, grandmonacolottery.com, grandmonacolottery.net, grandmonacolotto.com, grandmonacolounge.com, grandmonacomahjong.com, [*5] grandmonacomillions.com, grandmonacomillions.net, grandmonacomillions.org, grandmonaco.net, grandmonaconews.com, grandmonacoonlinecasino.com, grandmonacoonlinegaming.com. grandmonacoonlinepoker.com, grandmonaco.org, grandmonacopartners.com, grandmonacoplayersclub.com, grandmonacoplayersclub.net, grandmonacopokerclub.com, grandmonacopokerclub.net, grandmonacopokerclub.org, grandmonaco-poker.com, grandmonacopoker.com. grandmonacopoker.net, grandmonacopoker.org, grandmonacopromotions.com, grandmonacoracebook.com, grandmonacoracebook.net, grandmonacoracebook.org, grandmonacorewards.com, grandmonacoskillgames.com, grandmonacoskillgames.net, grandmonacoslots.com, grandmonacosportsbook.com, grandmonacosportsbook.net, grandmonacosports.com, grandmonacosports.net, grandmonacostore.com, grandmonacosupport.com, grandmonacovideopoker.com, pokergrandmonaco.net, and pokergrandmonaco.org.

2010 U.S. Dist. LEXIS 33950, *5

Now before the Court are cross-motions by Playshare and SBM for summary judgment and Playshare's motion to strike the report of SBM's expert. Dr. Ronald Butters. Specifically, Playshare moves for summary judgment on all counts against it and to dismiss SBM's Second Amended Complaint in its entirety. SBM cross-moves [*6] for summary judgment on liability only, and preserves its demand for a jury trial with respect to damages. For the reasons below. Playshare's motion is granted in part and denied in part. SBM's Motion is denied in its entirety. Due to the Court's findings on the cross motions for summary judgment, Playshare's motion to strike Dr. Ronald Butters' expert report is moot.

*II. BACKGROUND*

A. FACTUAL HISTORY

1. Playshare

Defendant/Counterclaim-Plaintiff PlayShare is a United Kingdom company that owns non-party Naden, Inc. ("Naden"). (Wright Decl. PP 2-3.) Playshare acquired Naden on November 2, 2006. (Wright Decl. P 3.) As a subsidiary of Playshare, Naden owns and operates the on-line gaming website Grand Mondial Casino. (Wright Decl. P3.) The Grand Mondial Casino was formerly the Grand Monaco Casino. (Wright Decl. P 3.) Defendants Grand Monaco Ltd. and GamShare (UK) Ltd. do not currently have operations. (Wright Decl. P 4.) Defendant Hillstead, Ltd. is a subsidiary of Naden and handles financial transactions for its parent. (Wright Decl. P5.) Defendant/Counterclaim-Plaintiff Maxwell Wright is the Chief Executive Officer of Playshare. (Wright Decl. P 1.) Defendant/Counterclaim-Plaintiff Lucan [*7] Toh is a former director of PlayShare. (Wright Decl. P 1.) Lucan Toh resigned in October of 2006, before PlayShare's acquisition of Naden and Grand Monaco Casino (now Grand Mondial Casino). (Wright Decl. P 6.)

2. SBM

Plaintiff/Counter-claim Defendant SBM is a societe anonyme organized and existing under the laws of the Principality of Monaco. (Lambert Decl. P 2.) SBM is the founder and manager of five Monaco-based casinos and operates restaurants, hotels, spas, a theater and an opera house in Monaco. (Lambert Decl. P 4; SBM's Response to Playshare's 56.1 Stmt. PP 61-64.) While SBM does not operate an on-line gaming business, it has represented that its entry into the online-gaming market is "imminent." (Lambert Decl. P 9.) SBM operates no casinos in the U.S and has no casino by the name of Casino de Monaco. (SBM's Response to Playshare's 56.1 Stmt. PP 58-60, 66.)

3. SBM NY and its activity in the U.S.

SBM has a New York subsidiary ("SBM NY") that engages in "sales offerings and/or sales to U.S. Residents of casino services, includ[ing], casino gift vouchers for chips to be used at SBM's casinos in Monaco, as well as actual chips themselves; complementary admission to the Casino de Monte-Carlo; [*8] lines of credit for wagering in Monaco; reservations for private rooms at the Casino de Monte-Carlo; and SBM's Games Initiation program." (Lambert Decl. P 20.) SBM "offers for sale and/or sells casino services to Americans in the [form of] U.S. Casino gift vouchers, which are pre-paid credit certificates redeemable for chips for wagering at any of SBM's" Monaco casinos. (Lambert Decl. P 21.) American clientele can have these vouchers offered through SBM's website (www.montecarlocasinos.com) sent to them by mail in the U.S. (Lambert Decl. P21.) American corporate groups can purchase these vouchers through SBM NY. (Lambert Decl. P 21.) SBM has identified 326 casino vouchers sold to 180 U.S. consumers (representing 13 reservations, for a total of 7,882 Euros since 2005). (Lambert Decl. P 22.) Americans can pre-purchase casino chips on SBM's websites (www.montecarloresort.com and www.casinodemonaco) (Lambert Decl. P 23.) American corporate groups can purchase casino chips through SBM NY. (Lambert Decl. P23.) SBM also offers a "Gold Card" to guests of its hotel properties. (Lambert Decl. P 24.) The Gold Card permits its hotel guests to receive free admission to the Casino de Monte-Carlo. [*9] (Lambert Decl. P 24.)

SBM NY assists corporate and individual clients in their needs for planning and executing visits to SBM properties. (SBM's 56.1 Stmt. P 34-40.) SBM NY processes the contracts with SBM's corporate clients and individual clients. (SBM's 56.1 Stmt. P 38.) Deposits and installment payments are sent directly from the U.S. client to SBM in Monaco, via wire transfer. (SBM's 56.1 Stmt. P 38.) All booking contracts are signed in Monaco. (SBM's Response to Playshare's 56.1 Stmt. P 71.)

4. SBM's marks

On December 24, 2002, SBM applied in the USPTO, Appl. Serial No. 76/478,796, for registration of the mark CASINO DE MONACO. (SBM's Response to Playshare's 56.1 Stmt. P 132.) The mark was filed, *inter alia*, based on claimed bona fide intent to use for a host of certain goods and services and based on SBM's foreign mark, CASINO DE MONACO (02.23234), issued by Monaco. (SBM's Response to Playshare's 56.1 Stmt. P133.) On February 4, 2004, the USPTO refused to register the claimed mark as merely descriptive of casino services emanating from Monaco. (SBM's Response to Playshare's 56.1 Stmt. P 137.) In response, SBM submitted evidence that its mark had acquired secondary meaning, and [*10] on December 20, 2005, the USPTO registered the mark CASINO DE MONACO. (*See* USPTO Reg. No. 3, 031, 006.) On December 20, 2008 (following the commencement of this action), SBM voluntarily amended its mark for CASINO DE MONACO to limits its use to "providing casino services within a hotel environment." (SBM's Response to Playshare's 56.1 Stmt. P 148.) SBM's registered mark for CASINO DE MONACO is based on a bona fide intent to use the mark. (SBM's 56.1 Stmt. P 14.)

On November 14, 2007 (after commencement of this action), SBM filed an application for a mark with the exact same designation: CASINO DE MONACO. (*See* USPTO Appl. Serial No. 77/329,567; SBM's Response to Playshare's 56.1 Stmt. P 150.) However, the application for this mark is for use in connection with casino services. (*Id.*) Playshare has opposed SBM's application; the new registration is still pending. (Playshare's 56.1 Stmt. P 153.) Also on November 14, 2007, SBM filed an application for the mark CASINO DE MONTE-CARLO. (*See* USPTO Appl. Serial No. 77/329, 593.)

SBM contends that the name CASINO DE MONACO is an umbrella term for all its Monaco-based casinos. (SBM's 56.1 Stmt. P 19.) SBM uses CASINO DE MONACO on its website and [*11] orally when promoting its casino and casino-related services. (SBM's 56.1 Stmt. P 19.) CASINO DE MONACO is a nickname for the Casino de Monte-Carlo, and many people, including Americans, use the name CASINO DE MONACO to refer to the Casino de Monte-Carlo, which embodies tremendous goodwill, glamour, elegance and style in the gaming industry. (SBM's 56.1 Stmt. PP 21-24.)

5. Playshare's acquisition and use of the names

Grand Monaco and Grand Mondial for its on-line gaming website

On November 2, 2006, PlayShare acquired Grand Monaco Casino (now Grand Mondial Casino) from a company called Mountain Breeze Trust when Playshare purchased the capital shares of Naden. (Wright Decl. PP 3, 11.) Playshare did no due diligence on the purchase. (Wright Decl. P 12, Ex.5.) Grand Monaco Casino had been in operation since July 2006. Prior to Playshare's acquisition of Naden, Grand Monaco Casino's website had a disclaimer that stated, "Grand Monaco Casino is in no way associated with the Principality of Monaco, nor any of the land-based casino operations located in that jurisdiction." (SBM's Response to Playshare's 56.1 Stmt. P 19.) Playshare's acquisition of Naden included the acquisition of certain domain [*12] names, some of which had been registered before December 20, 2005, the date a trademark was issued to SBM. (Wright Decl. P 27.)

B. PROCEDURAL HISTORY

1. THE WIPO Administrative Panel

SBM contends that the domain names Playshare acquired when it purchased Naden were registered to capture internet traffic intended for SBM's websites. (SBM's Response to Playshare's 56.1 Stmt. P 21; Weiss Decl. P 14, Exh. 10.) Accordingly, on March 21, 2007, SBM filed a complaint before the WIPO's non-binding Uniform Domain Name Dispute Resolution Administrative Panel [4] over the Monaco Domain Names. SMB named Defendants/Counterclaim-Plaintiffs Lucan Toh and Maxwell Wright, challenging their ownership of the Monaco Domain Names. (SBM's Response to Playshare's 56.1 Stmt. P 35.)

[4]   The Uniform Domain Name Dispute Resolution Policy ("UDRP") focuses on conflicts between trademarks and domain names. If a trademark holder believes a domain name registration infringes on its trademark, it may initiate a proceeding under the UDRP. Under the standard dispute clause in the registration of a domain name, the registrant must submit to such proceedings. A domain name is either transferred, or the complaint is denied and the [*13] respondent keeps the domain name. No monetary damages or injunctive relief is available. The decision is implemented after a period of ten days,

unless the decision is appealed in court in that time. Under the UDRP, either party can take the dispute to a court of competent jurisdiction for independent resolution. UDRP Policy provides that its proceedings shall not prevent either party from submitting the dispute to a court of competent jurisdiction for independent resolution. A party can commence a lawsuit after the administrative proceeding is concluded if it is not satisfied with the outcome. (*See* http://www.wipo.int/amc/en/domains/guide/index.html)

In response to the dispute, in May 2007, PlayShare selected GRAND MONDIAL as its new identifying name, and registered GRAND MONDIAL as a trademark. (Wright Decl. P 23.) Grand Mondial Casino was launched on August 14, 2007. (Wright Decl. P 24.)

However, SBM continued to pursue its claims. On May 25, 2007, the WIPO Panel issued a decision in favor of SBM. While the Panel did not address the issue of whether the mark CASINO DE MONACO was valid, the Panel found that: (1) the Monaco Domain Names are identical or confusingly similar to SBM's [*14] trademark; (2) Playshare has no rights or legitimate interests in the Monaco Domain Names; and (3) the Monaco Domain Names were registered and are being used in bad faith. *See* WIPO UDRP Domain Name Decision No. D2007-0249. The Panel ordered the transfer of the Monaco Domain Names from Lucan Toh and Maxwell Wright to SBM. *Id.* The WIPO did not address the validity of SBM's trademark and its decision is to be given no deference here. *Barcelona.com, Incorporated v. Excelentisimo Ayuntamiento De Barcelona, 330 F.3d 617, 625-26 (4th Cir. 2003).*

2. The New York action

On June 6, 2007, SBM filed a Complaint [5] in U.S. District Court in New York, and filed a Second Amended Complaint on January 14, 2008, alleging that Playshare's [6] use of the designations GRAND MONACO, GRAND MONACO CASINO, GRAND MONDIAL CASINO, and GRAND MONDIAL, along with the Monaco Domain Names, infringes on SBM's claimed rights in the mark CASINO DE MONACO. Specifically, SBM's Second Amended Complaint has eight counts: (1) Federal Unfair Competition under *Section 43(a)* of the Lanham Act; (2) Federal Trademark Infringement under *Section 32(1)* of the Lanham Act; (3) Federal Cybersquatting; (4)

Deceptive Acts and Practices under [*15] New York Law; (5) False Advertising under New York Law; (6) Injury to Business Reputation and Dilution under New York Law; (7) New York Common Law Trademark Infringement; and (8) New York Common Law Unfair Competition. To protect its registered mark, CASINO DE MONACO, SBM seeks, *inter alia*, a permanent injunction restraining Playshare from infringing on SBM's mark, CASINO DE MONACO, and restraining Playshare from using the designations GRAND MONACO, GRAND MONACO CASINO, GRAND MONDIAL CASINO, and GRAND MONDIAL, or any use of the place names MONACO or MONTE-CARLO for casino services. SBM also seeks a confirmation of the transfer of all the Monaco Domain Names from Playshare to SBM by the WIPO.

> 5   Southern District of New York Docket No. 07 Civ, 4802.
> 6   Playshare PLC, Grand Monaco Ltd., GamShare (UK) Ltd., Lucan Toh, Maxwell Wright, and Hillstead Ltd.'s are all Defendants in the New York action.

3. The Arizona action

On June 19, 2007, Playshare filed a separate action in the U.S. District Court of Arizona [7] challenging the WIPO's decision requiring Playshare to transfer ownership the Monaco Domain Names to SBM. Playshare seeks a declaratory judgment on three counts: (1) Playshare's use of the [*16] Monaco Domain Names is in compliance with the Anticybersquatting Consumer Protection Act; (2) SBM's mark CASINO DE MONACO, U.S. Trademark, Registration No. 3,031,006, is invalid and unenforceable; and (3) SBM's unregistered mark CASINO DE MONTE-CARLO is unenforceable. The Arizona action was transferred to this Court on April 11, 2008 and consolidated with the New York action for all purposes under Docket No. 07 Civ. 4802. The consolidated action is known, as captioned, "In re Casino de Monaco Trademark Litigation."

> 7   Now, S.D.N.Y. Docket No. 07 Civ. 4802.

III. DISCUSSION

A. SUMMARY JUDGMENT STANDARD

The standards governing motions for summary judgment are well-settled. A court may grant summary

judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See Fed R. Civ. P. 56(c); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).* Summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 178-79 (2d Cir. 2008).*

In deciding a motion for [*17] summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir. 2008).* A court faced with cross-motions for summary judgment need not "grant judgment as a matter of law for one side or the other," but "'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)* (quoting *Schwabenbauer v. Bd. of Educ. of Olean, 667 F.2d 305, 313-14 (2d Cir. 1981)).*

**B. SBM'S TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS**

At issue in this case are two marks held by SBM: (1) CASINO DE MONACO; and (2) CASINO DE MONTE-CARLO. In its Complaint, SBM alleges that Playshare is infringing *only* on its mark CASINO DE MONACO by use of its Monaco Domain Names and its name GRAND MONDIAL. Accordingly, as to SBM's claims, the Court will conduct a summary judgment analysis *only* as to the mark CASINO DE MONACO, and not the mark CASINO DE MONTE-CARLO. However, Playshare's [*18] Counterclaims (that arrived from the Arizona action) seeks a declaratory judgment that Playshare has not infringed on *either* mark held by SBM. More specifically, Playshare's seeks a declaratory judgment that SBM's mark CASINO DE MONACO is invalid, unenforceable *and* SBM's mark CASINO DE MONTE-CARLO is unenforceable. Accordingly, the Court will address SBM's mark CASINO DE MONTE-CARLO only in context of Playshare's Counterclaims for declaratory judgment.

1. Trademark infringement and unfair competition standard

To prevail on a trademark infringement and unfair competition claim under *15 U.S.C. §§ 1114(1)* and *1125(a)*, SBM must show: (1) its Mark is protected; and (2) Playshare's use of its allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the Playshare's goods with SBM's goods. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114-15 (2d Cir. 2009); see also Savin Corp. v. Savin Group, 391 F.3d 439, 456 (2d Cir. 2004).*

2. Validity of SBM's marks

a. The mark CASINO DE MONACO

SBM owns the Mark CASINO DE MONACO, U.S. Trademark Registration No. 3,031,006, for use in connection with "providing casino services within a hotel environment." (SBM's [*19] 56.1 Stmt. P 14.) SBM's trademark is based on a bona fide intent to use the mark. (SBM's 56.1 Stmt. P 14.)

Playshare argues that, *inter alia*, despite SBM's registration of CASINO DE MONACO, SBM has no protectable rights in its mark. Playshare's rationale is that SBM does not provide goods or services in the U.S., so that it has no trademark rights in the mark. *ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 155 (2008)* (a mark owner must take the proper steps to ensure that its rights to that mark are recognized in any country in which it seeks to assert them); *see also American Express Co. v. Goetz, 515 F.3d 156, 161 (2d Cir. 2008)*(service mark not in use if it is displayed in an advertisement for services that are non-existent or will only hypothetically be available at some point in the future); *Buti v. Impressa Perosa, S.R.L., 139 F.3d 98 (2d Cir. 1998)* (service mark claimant did not provide its actual business services in the United States, but only advertised and promoted those services). Mere advertising and promotion of a mark in this country are not enough to constitute "use" of the mark "in commerce," to bring the activity within the scope of the Lanham Act.

SBM argues that it makes [*20] service-mark use in the U.S. of its mark in connection with an established business or trade. *Morningside Group Ltd. v. Morningside Capital Group, L.L.C., 182 F.3d 133 (2d Cir. 1999)* (U.S. business acquisitions, attracting U.S. co-investors, and directing money from U.S. banks to Asia is adequate activity for an investment firm under the Lanham Act).

*Section 43(a)* of the Lanham Act states:

    (1) Any person who, on or in connection with any goods or services, . . . uses in commerce any word. term, name, symbol, or device, or any combination thereof, . . . which--

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

    * * * *

    shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*15 U.S.C. § 1125(a).*

"Services," as used in the Lanham Act, has been defined as "the performance of labor for the benefit of another" (*Advertising & Marketing, 821 F.2d at 619, quoting In re Canadian Pac. Ltd., 754 F.2d 992, 994 (Fed.Cir. 1985))*. [*21] Those services must not be "solely for the benefit of the performer; the services must be rendered to others" (*Murphy v. Provident Mut. Life Ins. Co., 923 F.2d 923, 927 (2d Cir. 1990))*. Further, the claimant must have used the claimed mark to identify its services (*Advertising & Marketing, 821 F.2d at 620*).

In relation to SBM's mark CASINO DE MONACO, SBM's activities in the United States do not constitute "services" within the meaning of the Lanham Act. [8] The record fully supports this finding by the Court.

    8  In an effort to bolster its rights in the mark CASINO DE MONACO, SBM conflates it with the mark CASINO DE MONTE-CARLO. This may be in an attempt to create secondary meaning in the mark CASINO DE MONACO, which does not exist. First, CASINO DE MONACO is not an actual casino, while Casino de Monte-Carlo is a real casino. This matters because the use of place names in marks results in heightened scrutiny for those marks under the Lanham Act. Lack of use, coupled with the place name in the mark, severely weakens the likeliness that CASINO DE MONACO could retain any secondary meaning. Second, any secondary meaning that the mark CASINO DE MONACO can acquire vis-a-vis the use of the mark [*22] CASINO DE MONTE-CARLO is limited by the fact that SBM is in an on-going dispute with U.S.-based Victoria Partners over the Monte-Carlo designation when used with the casino business. Without some resolution, the mark CASINO DE MONTE-CARLO can be reasonably construed as not "identifying a *single* source of origin." *Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 743 (2d Cir. 1998)*(a trademark should identify goods sold from a single source).

SBM's registration of Casino de Monaco required that it affirm that it had a bone fide intent to use the mark. *15 U.S.C. § 1126(d)(2)*. However, regardless of SBM's intent, which is disputed, SBM has not used the mark in any meaningful way anywhere. And SBM has not shown that it has used the mark in the United States at all. SBM argues that its "U.S. based direct sales activities represent 'material aspects' of SBM's casino business...and thus are properly considered 'services...rendered in commerce." for SBM's mark CASINO DE MONACO. (SBM's Opp. Br. p. 10.) However, the record is devoid of evidence that would create a genuine issue of material fact that SBM uses the mark CASINO DE MONACO to identify its services, *anywhere*, but particularly in the [*23] United States. First, there does not exist in Monaco, or anywhere else, a casino identified by the name Casino de Monaco. (SBM's Response to Playshare's 56.1 Stmt. P 66.) Nevertheless, SBM asserts that the mark CASINO DE MONACO is: (1) used as a nickname or moniker for Casino de Monte-Carlo; (2) employed on casino website(s); and (3) an umbrella term/brand to refer to SBM's five casinos in Monaco. (SBM's Response to Playshare's 56.1 Stmt. PP 66-68.) However, all that SBM can show to support these representations are self-serving affidavits. (*Id.*) Even if this claimed use of the mark CASINO DE MONACO was not insignificant on this record, which it is, all of its use of the mark occurs outside of the United States. There is no real evidence that the claimed nickname/moniker/umbrella term that signifies CASINO DE MONACO has ever existed in the United States. The one real possibility that SBM could show activity in the United States is in the use of the mark CASINO DE MONACO in SBM's website. However, the record reflects that the webpages produced

by SBM where created on or after April 14, 2008 (after this case began), and SBM can not show that anyone in the U.S. ever viewed the pages. [*24] (SBM's Response to Playshare's 56.1 Stmt. PP 121-23.) It does not bolster SMB's position that *all* activity SBM engages in the United States amounts to nothing more than advertising and promotion of SBM's operations outside the U.S., i.e., in Monaco. What is clear is that there is no evidence on the record that this limited activity ever implicated the mark CASINO DE MONACO.

### b. The mark CASINO DE MONTE-CARLO

SBM's utter lack of use of the mark CASINO DE MONACO anywhere, let alone in the United States, requires this Court to refuse to enforce SBM's right in the mark CASINO DE MONACO. This result is bolstered not just by SBM's lack of use, but by the fact that SBM hardly has any territorial connection with the United States for purposes of the Lanham Act. [9] However, the Court finds that the limited activity is enough under the Lanham Act to protect SBM's purported right to the unregistered mark CASINO DE MONTE-CARLO because SBM actually utilizes that mark in the United States. *Morningside Group Ltd., 182 F.3d at 138.*

> 9 Under current guidance by the Second Circuit, whether SBM could maintain *any mark* in the United States is a close call. *Compare Buti, 139 F.3d at 105 with Morningside Group Ltd., 182 F.3d at 138.* [*25] This is not withstanding SBM's favorable ruling regarding its unregistered Casino de Monte-Carlo Mark in *Inter International Bancorp, LLC v. Societe des Bains de Mer et du Cercle des, 329 F.3d 359 (4th Cir. 2003).*

The rationale for this result is that SBM can show it uses its mark CASINO DE MONTE-CARLO in the U.S. For instance, SBM NY targets Americans to package, market and sell SBM's facilities in Monaco, including the *Casino de Monte-Carlo.* (SBM's Response to Playshare's 56.1 Stmt. P 70.) Examples of SBM NY's sales of casino services, include, casino gift vouchers, actual chips, lines of credit, SBM Games Initiation and private rooms and/or admission at the *Casino de Monte-Carlo.* (Lambert Decl. P 20.) SBM maintains a website (www.montecarlocasinos.com) that offers the casino gift vouchers and casino chips to U.S. residents. (Lambert Decl. P21.) SBM also offers all guests to its hotel properties a gold card to gain entrance to the *Casino de*

*Monte-Carlo.* (Lambert Decl. P 24.) While the activity in the record constitutes nothing more than promotional and advertising activity in the U.S., the activity does use and incorporate the mark CASINO DE MONTE-CARLO so that it constitutes "use" [*26] of the mark "in commerce," so as to bring the activity within the scope of the Lanham Act.

### 3. Likelihood of confusion

In determining whether there is a likelihood of confusion, the Court must apply the eight-factor balancing test introduced in *Polaroid Corp. v. Polarad Elecs, Corp., 287 F.2d 492 (2d Cir.1961)*; *see also Starbucks Corp, 588 F.3d at 115*. However, since the Court found that SBM's mark CASINO DE MONACO is not protectable, the Court does not need to engage in this analysis.

## C. PLAYSHARE'S DECLARATORY JUDGMENT CLAIMS

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration. . . ." *28 U.S.C. § 2201. Sony Elecs., Inc. v. Guardian Media Techs., Ltd., 497 F.3d 1271, 1283 (Fed.Cir.2007).* Among other things, this means that "a court may not adjudicate 'a difference or dispute of a hypothetical or abstract character' or 'one that is academic or moot.'" *Cat Tech LLC v. TubeMaster, Inc., 528 F.3d 871, 879 (Fed.Cir. 2008).*

In *Aetna Life Insurance Co. of Hartford, Connecticut v. Haworth, 300 U.S. 227, 57 S. Ct. 461, 81 L. Ed. 617 (1937),* [*27] to meet the actual controversy standard, a dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id. 300 U.S. 227, 240-41 (1937).* The dispute must be "real and substantial," *id. at 241,* and it must "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id. See also MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) (quoting Aetna).*

Here, it is clear there remains an actual controversy between the Parties necessitating the issuance of a declaratory judgment.

First, the Court has declined to exercise its supplemental jurisdiction over the state law claims in this case. An actual controversy still exists as to those claims.

Second, the Parties in this case are sophisticated business entities and persons. It is reasonable for the Court to assume that either Party will zealously protect its rights. Since the Parties will continue to operate in the similar business sectors, it is possible another dispute could arise. It is helpful if this Court spell out what the Parties rights are to the marks at issue in [*28] this case. While a threat of suit is not necessary to declaratory judgment jurisdiction, an aggressive litigation strategy (such as what was demonstrated in this three year litigation) may signal the existence of an actual controversy. *See Micron Technology, Inc. v. Mosaid Technologies, Inc., 518 F.3d 897, 899-901 (Fed.Cir. 2008)*. Accordingly, a declaratory judgment is appropriate in this action. Playshare seeks a declaratory judgment on three its three Counterclaims: (1) Playshare's use of the Monaco Domain Names is in compliance with the Anticybersquatting Consumer Protection Act; (2) SBM's "Casino de Monaco" U.S. Trademark, Registration No. 3,031,006, is invalid and unenforceable; and (3) SBM's unregistered mark CASINO DE MONTE-CARLO is unenforceable.

### 1. Playshare's use of the Monaco Domain Names

In this Opinion, the Court cancelled SBM's mark CASINO DE MONACO, as it does not constitute a protectable service mark under the Lanham Act. SMB's entire basis for its Cybersquatting Claim was predicated on the existence of SMB's mark CASINO DE MONACO. (*See* SBM's Second Amended Complaint P 69-72.) Since the mark is no longer owned by SBM, as a matter of law, Playshare can not be in violation [*29] of the Anticybersquatting Consumer Protection Act, *15 U.S.C. § 1125(d)(1)*, in relation to its use of the Monaco Domain Names and any infringement of SBM's (former) mark CASINO DE MONACO. The Court vacates the WIPO Decision and the Monaco Domain Names shall remain with Lucan Toh and Maxwell Wright. Accordingly, the Court grants summary judgment in favor of Playshare on Counterclaim I and finds that a declaratory judgment is proper.

### 2. Unenforceability of SBM's mark CASINO DE MONACO

Similarly, as the Court cancelled SBM's mark

CASINO DE MONACO, as a matter of law, the mark is invalid and unenforceable. Accordingly, the Court grants summary judgment in favor of Playshare on Counterclaim II and finds that a declaratory judgment is proper.

### 3. Unenforceability of SBM's mark CASINO DE MONTE-CARLO

In this Opinion, *supra*, the Court has found that that SBM has used its unregistered mark CASINO DE MONTE-CARLO in commerce as required under U.S.C. *§§ 1051* and *1127*. Therefore, for purposes of this dispute, the mark CASINO DE MONTE-CARLO is valid. Since SBM has not alleged any infringement of its mark CASINO DE MONTE-CARLO and, Playshare's Monaco Domain Names are not implicated by the enforceability [*30] of the mark CASINO DE MONTE-CARLO, the Court finds it should dismiss Counterclaim III as moot.

### IV. CONCLUSION

On SBM's federal and state claims, the Court finds that SBM's mark CASINO DE MONACO, registered under U.S. Trademark Registration No. 3,031,006, is HEREBY CANCELLED as it does not constitute a protectable service mark under the Lanham Act. Accordingly, Playshare's Motion for Summary Judgment on all of SBM's federal claims is HEREBY GRANTED. The Court HEREBY DISMISSES, without prejudice, all of SBM's state law claims on the basis of declining to exercise supplemental jurisdiction under *28 U.S.C. § 1367 (c) (3)*.

On Playshare PLC, Lucan Ton, and Maxwell Wright Counterclaims, it is HEREBY DECLARED and ADJUDGED that Playshare's use of the designations GRAND MONACO, GRAND MONACO CASINO, GRAND MONDIAL CASINO and GRAND MONDIAL does not infringe on SBM's (now cancelled) mark CASINO DE MONACO. In addition, UDRP Domain Name Decision Case No. D2007-0249WIPO decision is HEREBY VACATED; the Monaco Domain Names listed in Footnote No. 3 are to remain with Defendants Lucan Toh and Maxwell Wright. Playshare's Motion for Summary Judgment on the Counterclaims I and II is HEREBY GRANTED. Further, [*31] the Court DISMISSES Playshare's Counterclaims in COUNT III as moot. Finally, as the Court found that CASINO DE MONACO is not a protectable mark, Playshare's motion

2010 U.S. Dist. LEXIS 33950, *31

to strike Dr. Butters' expert report is moot. As all claims in this action have been dismissed, the Clerk is DIRECTED to close the docket in this case. SO ORDERED.

Dated: New York, New York

March 31, 2010

/s/ Deborah A. Batts

Deborah A. Batts

United States District Judge

# Response Annex 20

**WIPO**
WORLD **INTELLECTUAL PROPERTY** ORGANIZATION

## Protocol Relating to the Madrid Agreement Concerning the International Registration of Marks

## Protocol Relating to the Madrid Agreement Concerning the International Registration of Marks (as amended on November 12, 2007) (Authentic text)

Bibliographic Entries | Texts

---

## Protocol Relating to the Madrid Agreement Concerning the International Registration of Marks

adopted at Madrid on June 27, 1989,
as amended on October 3, 2006
and on November 12, 2007

LIST OF THE ARTICLES OF THE PROTOCOL

| | |
|---|---|
| Article 1: | Membership in the Madrid Union |
| Article 2: | Securing Protection through International Registration |
| Article 3: | International Application |
| Article 3*bis*: | Territorial Effect |
| Article 3*ter*: | Request for "Territorial Extension" |
| Article 4: | Effects of International Registration |
| Article 4*bis*: | Replacement of a National or Regional Registration by an International Registration |
| Article 5: | Refusal and Invalidation of Effects of International Registration in Respect of Certain Contracting Parties |
| Article 5*bis*: | Documentary Evidence of Legitimacy of Use of Certain Elements of the Mark |
| Article 5*ter*: | Copies of Entries in International Register; Searches for Anticipation's; Extracts from International Register |
| Article 6: | Period of Validity of International Registration; Dependence and Independence of International Registration |
| Article 7: | Renewal of International Registration |
| Article 8: | Fees for International Application and Registration |
| Article 9: | Recordal of Change in the Ownership of an International Registration |
| Article 9*bis*: | Recordal of Certain Matters Concerning an International Registration |
| Article 9*ter*: | Fees for Certain Records |

Article 9*quater*:     Common Office of Several Contracting States

Article 9*quinquies*: Transformation of an International Registration into National or Regional Applications

Article 9*sexies*:     Relations Between States Party to both this Protocol and the Madrid (Stockholm) Agreement

Article 10:      Assembly

Article 11:      International Bureau

Article 12:      Finances

Article 13:      Amendment of Certain Articles of the Protocol

Article 14:      Becoming Party to the Protocol; Entry into Force

Article 15:      Denunciation

Article 16:      Signature; Languages; Depository Functions

## Article 1
## Membership in the Madrid Union

The States party to this Protocol (hereinafter referred to as "the Contracting States"), even where they are not party to the Madrid Agreement Concerning the International Registration of Marks as revised at Stockholm in 1967 and as amended in 1979 (hereinafter referred to as "the Madrid (Stockholm) Agreement"), and the organizations referred to in Article 14(1)*(b)* which are party to this Protocol (hereinafter referred to as "the Contracting Organizations") shall be members of the same Union of which countries party to the Madrid (Stockholm) Agreement are members. Any reference in this Protocol to "Contracting Parties" shall be construed as a reference to both Contracting States and Contracting Organizations.

## Article 2
## Securing Protection through International Registration

(1) Where an application for the registration of a mark has been filed with the Office of a Contracting Party, or where a mark has been registered in the register of the Office of a Contracting Party, the person in whose name that application (hereinafter referred to as "the basic application") or that registration (hereinafter referred to as "the basic registration") stands may, subject to the provisions of this Protocol, secure protection for his mark in the territory of the Contracting Parties, by obtaining the registration of that mark in the register of the International Bureau of the World Intellectual Property Organization (hereinafter referred to as "the international registration," "the International Register," "the International Bureau" and "the Organization," respectively), provided that,

(i) where the basic application has been filed with the Office of a Contracting State or where the basic registration has been made by such an Office, the person in whose name that application or registration stands is a national of that Contracting State, or is domiciled, or has a real and effective industrial or commercial establishment, in the said Contracting State,

(ii) where the basic application has been filed with the Office of a Contracting Organization or where the basic registration has been made by such an Office, the person in whose name that application or registration stands is a national of a State member of that Contracting Organization, or is domiciled, or has a real and effective industrial or commercial establishment, in the territory of the said Contracting Organization.

(2) The application for international registration (hereinafter referred to as "the international application") shall be filed with the International Bureau through the intermediary of the Office with which the basic application was filed or by which the basic registration was made (hereinafter referred to as "the Office of origin"), as the case may be.

(3) Any reference in this Protocol to an "Office" or an "Office of a Contracting Party" shall be construed as a reference to the office that is in charge, on behalf of a Contracting Party, of the registration of marks, and any reference in this Protocol to "marks" shall be construed as a reference to trademarks and service marks.

(4) For the purposes of this Protocol, "territory of a Contracting Party" means, where the Contracting Party is a State, the territory of that State and, where the Contracting Party is an intergovernmental organization, the territory in which the constituting treaty of that intergovernmental organization applies.

## Article 3
## International Application

(1) Every international application under this Protocol shall be presented on the form prescribed by the Regulations. The Office of origin shall certify that the particulars appearing in the international application correspond to the particulars appearing, at the time of the certification, in the basic application or basic registration, as the case may be. Furthermore, the said Office shall indicate,

> (i) in the case of a basic application, the date and number of that application,

> (ii) in the case of a basic registration, the date and number of that registration as well as the date and number of the application from which the basic registration resulted.

The Office of origin shall also indicate the date of the international application.

(2) The applicant must indicate the goods and services in respect of which protection of the mark is claimed and also, if possible, the corresponding class or classes according to the classification established by the Nice Agreement Concerning the International Classification of Goods and Services for the Purposes of the Registration of Marks. If the applicant does not give such indication, the International Bureau shall classify the goods and services in the appropriate classes of the said classification. The indication of classes given by the applicant shall be subject to control by the International Bureau, which shall exercise the said control in association with the Office of origin. In the event of disagreement between the said Office and the International Bureau, the opinion of the latter shall prevail.

(3) If the applicant claims color as a distinctive feature of his mark, he shall be required

(i) to state the fact, and to file with his international application a notice specifying the color or the combination of colors claimed;

(ii) to append to his international application copies in color of the said mark, which shall be attached to the notifications given by the International Bureau; the number of such copies shall be fixed by the Regulations.

(4) The International Bureau shall register immediately the marks filed in accordance with Article 2. The international registration shall bear the date on which the international application was received in the Office of origin, provided that the international application has been received by the International Bureau within a period of two months from that date. If the international application has not been received within that period, the international registration shall bear the date on which the said international application was received by the International Bureau. The International Bureau shall notify the international registration without delay to the Offices concerned. Marks registered in the International Register shall be published in a periodical gazette issued by the International Bureau, on the basis of the particulars contained in the international application.

(5) With a view to the publicity to be given to marks registered in the International Register, each Office shall receive from the International Bureau a number of copies of the said gazette free of charge and a number of copies at a reduced price, under the conditions fixed by the Assembly referred to in Article 10(hereinafter referred to as "the Assembly"). Such publicity shall be deemed to be sufficient for the purposes of all the Contracting Parties, and no other publicity may be required of the holder of the international registration.

### Article 3*bis*
### Territorial Effect

The protection resulting from the international registration shall extend to any Contracting Party only at the request of the person who files the international application or who is the holder of the international registration. However, no such request can be made with respect to the Contracting Party whose Office is the Office of origin.

### Article 3*ter*
### Request for "Territorial Extension"

(1) Any request for extension of the protection resulting from the international registration to any Contracting Party shall be specially mentioned in the international application.

(2) A request for territorial extension may also be made subsequently to the international registration. Any such request shall be presented on the form prescribed by the Regulations. It shall be immediately recorded by the International Bureau, which shall notify such recordal without delay to the Office or Offices

concerned. Such recordal shall be published in the periodical gazette of the International Bureau. Such territorial extension shall be effective from the date on which it has been recorded in the International Register; it shall cease to be valid on the expiry of the international registration to which it relates.

## Article 4
### Effects of International Registration

(1)

*(a)* From the date of the registration or recordal effected in accordance with the provisions of Articles 3 and 3*ter*, the protection of the mark in each of the Contracting Parties concerned shall be the same as if the mark had been deposited direct with the Office of that Contracting Party. If no refusal has been notified to the International Bureau in accordance with Article 5(1) and (2) or if a refusal notified in accordance with the said Article has been withdrawn subsequently, the protection of the mark in the Contracting Party concerned shall, as from the said date, be the same as if the mark had been registered by the Office of that Contracting Party.

*(b)* The indication of classes of goods and services provided for in Article 3 shall not bind the Contracting Parties with regard to the determination of the scope of the protection of the mark.

(2) Every international registration shall enjoy the right of priority provided for by Article 4 of the Paris Convention for the Protection of Industrial Property, without it being necessary to comply with the formalities prescribed in Section D of that Article.

## Article 4*bis*
### Replacement of a National or Regional Registration by an International Registration

(1) Where a mark that is the subject of a national or regional registration in the Office of a Contracting Party is also the subject of an international registration and both registrations stand in the name of the same person, the international registration is deemed to replace the national or regional registration, without prejudice to any rights acquired by virtue of the latter, provided that

(i) the protection resulting from the international registration extends to the said Contracting Party under Article 3*ter*(1) or (2),

(ii) all the goods and services listed in the national or regional registration are also listed in the international registration in respect of the said Contracting Party,

(iii) such extension takes effect after the date of the national or regional registration.

(2) The Office referred to in paragraph (1) shall, upon request, be required to take note in its register of the international registration.

**Article 5**
**Refusal and Invalidation of Effects of International Registration in Respect of Certain Contracting Parties**

(1) Where the applicable legislation so authorizes, any Office of a Contracting Party which has been notified by the International Bureau of an extension to that Contracting Party, under Article 3*ter*(1) or (2), of the protection resulting from the international registration shall have the right to declare in a notification of refusal that protection cannot be granted in the said Contracting Party to the mark which is the subject of such extension. Any such refusal can be based only on the grounds which would apply, under the Paris Convention for the Protection of Industrial Property, in the case of a mark deposited direct with the Office which notifies the refusal. However, protection may not be refused, even partially, by reason only that the applicable legislation would permit registration only in a limited number of classes or for a limited number of goods or services.

(2)

*(a)* Any Office wishing to exercise such right shall notify its refusal to the International Bureau, together with a statement of all grounds, within the period prescribed by the law applicable to that Office and at the latest, subject to subparagraphs *(b)* and *(c)*, before the expiry of one year from the date on which the notification of the extension referred to in paragraph (1) has been sent to that Office by the International Bureau.

*(b)* Notwithstanding subparagraph *(a)*, any Contracting Party may declare that, for international registrations made under this Protocol, the time limit of one year referred to in subparagraph *(a)* is replaced by 18 months.

*(c)* Such declaration may also specify that, when a refusal of protection may result from an opposition to the granting of protection, such refusal may be notified by the Office of the said Contracting Party to the International Bureau after the expiry of the 18-month time limit. Such an Office may, with respect to any given international registration, notify a refusal of protection after the expiry of the 18-month time limit, but only if

(i) it has, before the expiry of the 18-month time limit, informed the International Bureau of the possibility that oppositions may be filed after the expiry of the 18-month time limit, and

(ii) the notification of the refusal based on an opposition is made within a time limit of one month from the expiry of the opposition period and, in any case, not later than seven months from the date on which the opposition period begins.

*(d)* Any declaration under subparagraphs *(b)* or *(c)* may be made in the instruments referred to in Article 14(2), and the effective date of the declaration shall be the same as the date of entry into force of this Protocol with respect to the State or intergovernmental organization having made the declaration. Any such declaration may also be made later, in which case the declaration shall have effect three

months after its receipt by the Director General of the Organization (hereinafter referred to as "the Director General"), or at any later date indicated in the declaration, in respect of any international registration whose date is the same as or is later than the effective date of the declaration.

*(e)* Upon the expiry of a period of ten years from the entry into force of this Protocol, the Assembly shall examine the operation of the system established by subparagraphs *(a)* to *(d)*. Thereafter, the provisions of the said subparagraphs may be modified by a unanimous decision of the Assembly*.

(3) The International Bureau shall, without delay, transmit one of the copies of the notification of refusal to the holder of the international registration. The said holder shall have the same remedies as if the mark had been deposited by him direct with the Office which has notified its refusal. Where the International Bureau has received information under paragraph (2)*(c)*(i), it shall, without delay, transmit the said information to the holder of the international registration.

(4) The grounds for refusing a mark shall be communicated by the International Bureau to any interested party who may so request.

(5) Any Office which has not notified, with respect to a given international registration, any provisional or final refusal to the International Bureau in accordance with paragraphs (1) and (2) shall, with respect to that international registration, lose the benefit of the right provided for in paragraph (1).

(6) Invalidation, by the competent authorities of a Contracting Party, of the effects, in the territory of that Contracting Party, of an international registration may not be pronounced without the holder of such international registration having, in good time, been afforded the opportunity of defending his rights. Invalidation shall be notified to the International Bureau.

## Article 5*bis*
### Documentary Evidence of Legitimacy of Use of Certain Elements of the Mark

Documentary evidence of the legitimacy of the use of certain elements incorporated in a mark, such as armorial bearings, escutcheons, portraits, honorary distinctions, titles, trade names, names of persons other than the name of the applicant, or other like inscriptions, which might be required by the Offices of the Contracting Parties shall be exempt from any legalization as well as from any certification other than that of the Office of origin.

## Article 5*ter*
### Copies of Entries in International Register; Searches for Anticipations; Extracts from International Register

(1) The International Bureau shall issue to any person applying therefor, upon the payment of a fee fixed by the Regulations, a copy of the entries in the International Register concerning a specific mark.

(2) The International Bureau may also, upon payment, undertake searches for anticipations among marks that are the subject of international registrations.

(3) Extracts from the International Register requested with a view to their production in one of the Contracting Parties shall be exempt from any legalization.

### Article 6
### Period of Validity of International Registration; Dependence and Independence of International Registration

(1) Registration of a mark at the International Bureau is effected for ten years, with the possibility of renewal under the conditions specified in Article 7.

(2) Upon expiry of a period of five years from the date of the international registration, such registration shall become independent of the basic application or the registration resulting therefrom, or of the basic registration, as the case may be, subject to the following provisions.

(3) The protection resulting from the international registration, whether or not it has been the subject of a transfer, may no longer be invoked if, before the expiry of five years from the date of the international registration, the basic application or the registration resulting therefrom, or the basic registration, as the case may be, has been withdrawn, has lapsed, has been renounced or has been the subject of a final decision of rejection, revocation, cancellation or invalidation, in respect of all or some of the goods and services listed in the international registration. The same applies if

    (i) an appeal against a decision refusing the effects of the basic application,

    (ii) an action requesting the withdrawal of the basic application or the revocation, cancellation or invalidation of the registration resulting from the basic application or of the basic registration, or

    (iii) an opposition to the basic application

results, after the expiry of the five-year period, in a final decision of rejection, revocation, cancellation or invalidation, or ordering the withdrawal, of the basic application, or the registration resulting therefrom, or the basic registration, as the case may be, provided that such appeal, action or opposition had begun before the expiry of the said period. The same also applies if the basic application is withdrawn, or the registration resulting from the basic application or the basic registration is renounced, after the expiry of the five-year period, provided that, at the time of the withdrawal or renunciation, the said application or registration was the subject of a proceeding referred to in (i), (ii) or (iii) and that such proceeding had begun before the expiry of the said period.

(4) The Office of origin shall, as prescribed in the Regulations, notify the International Bureau of the facts and decisions relevant under paragraph (3), and the International Bureau shall, as prescribed in the Regulations, notify the interested parties and effect any publication accordingly. The Office of origin shall,

where applicable, request the International Bureau to cancel, to the extent applicable, the international registration, and the International Bureau shall proceed accordingly.

## Article 7
### Renewal of International Registration

(1) Any international registration may be renewed for a period of ten years from the expiry of the preceding period, by the mere payment of the basic fee and, subject to <u>Article 8(7)</u>, of the supplementary and complementary fees provided for in <u>Article 8(2)</u>.

(2) Renewal may not bring about any change in the international registration in its latest form.

(3) Six months before the expiry of the term of protection, the International Bureau shall, by sending an unofficial notice, remind the holder of the international registration and his representative, if any, of the exact date of expiry.

(4) Subject to the payment of a surcharge fixed by the Regulations, a period of grace of six months shall be allowed for renewal of the international registration.

## Article 8
### Fees for International Application and Registration

(1) The Office of origin may fix, at its own discretion, and collect, for its own benefit, a fee which it may require from the applicant for international registration or from the holder of the international registration in connection with the filing of the international application or the renewal of the international registration.

(2) Registration of a mark at the International Bureau shall be subject to the advance payment of an international fee which shall, subject to the provisions of <u>paragraph (7)(a)</u>, include,

   (i) a basic fee;

   (ii) a supplementary fee for each class of the International Classification, beyond three, into which the goods or services to which the mark is applied will fall;

   (iii) a complementary fee for any request for extension of protection under <u>Article 3*ter*</u>.

(3) However, the supplementary fee specified in <u>paragraph (2)(ii)</u> may, without prejudice to the date of the international registration, be paid within the period fixed by the Regulations if the number of classes of goods or services has been fixed or disputed by the International Bureau. If, upon expiry of the said period, the supplementary fee has not been paid or the list of goods or services has not been reduced to the required extent by the applicant, the international application shall be deemed to have been abandoned.

(4) The annual product of the various receipts from international registration, with the exception of the receipts derived from the fees mentioned in paragraph (2)(ii) and (iii), shall be divided equally among the Contracting Parties by the International Bureau, after deduction of the expenses and charges necessitated by the implementation of this Protocol.

(5) The amounts derived from the supplementary fees provided for in paragraph (2)(ii) shall be divided, at the expiry of each year, among the interested Contracting Parties in proportion to the number of marks for which protection has been applied for in each of them during that year, this number being multiplied, in the case of Contracting Parties which make an examination, by a coefficient which shall be determined by the Regulations.

(6) The amounts derived from the complementary fees provided for in paragraph (2)(iii) shall be divided according to the same rules as those provided for in paragraph (5).

(7)

*(a)* Any Contracting Party may declare that, in connection with each international registration in which it is mentioned under Article 3*ter*, and in connection with the renewal of any such international registration, it wants to receive, instead of a share in the revenue produced by the supplementary and complementary fees, a fee (hereinafter referred to as "the individual fee") whose amount shall be indicated in the declaration, and can be changed in further declarations, but may not be higher than the equivalent of the amount which the said Contracting Party's Office would be entitled to receive from an applicant for a ten-year registration, or from the holder of a registration for a ten-year renewal of that registration, of the mark in the register of the said Office, the said amount being diminished by the savings resulting from the international procedure. Where such an individual fee is payable,

(i) no supplementary fees referred to in paragraph (2)(ii) shall be payable if only Contracting Parties which have made a declaration under this subparagraph are mentioned under Article 3*ter*, and

(ii) no complementary fee referred to in paragraph (2)(iii) shall be payable in respect of any Contracting Party which has made a declaration under this subparagraph.

*(b)* Any declaration under subparagraph *(a)* may be made in the instruments referred to in Article 14(2), and the effective date of the declaration shall be the same as the date of entry into force of this Protocol with respect to the State or intergovernmental organization having made the declaration. Any such declaration may also be made later, in which case the declaration shall have effect three months after its receipt by the Director General, or at any later date indicated in the declaration, in respect of any international registration whose date is the same as or is later than the effective date of the declaration.


**Article 9**
**Recordal of Change in the Ownership of an International Registration**

At the request of the person in whose name the international registration stands, or at the request of an interested Office made ex officio or at the request of an interested person, the International Bureau shall record in the International Register any change in the ownership of that registration, in respect of all or some of the Contracting Parties in whose territories the said registration has effect and in respect of all or some of the goods and services listed in the registration, provided that the new holder is a person who, under Article 2(1), is entitled to file international applications.


## Article 9*bis*
## Recordal of Certain Matters Concerning an International Registration

The International Bureau shall record in the International Register

      (i) any change in the name or address of the holder of the international registration,

      (ii) the appointment of a representative of the holder of the international registration and any other relevant fact concerning such representative,

      (iii) any limitation, in respect of all or some of the Contracting Parties, of the goods and services listed in the international registration,

      (iv) any renunciation, cancellation or invalidation of the international registration in respect of all or some of the Contracting Parties,

      (v) any other relevant fact, identified in the Regulations, concerning the rights in a mark that is the subject of an international registration.


## Article 9*ter*
## Fees for Certain Recordals

Any recordal under Article 9 or under Article 9*bis* may be subject to the payment of a fee.


## Article 9*quater*
## Common Office of Several Contracting States

(1) If several Contracting States agree to effect the unification of their domestic legislation's on marks, they may notify the Director General

      (i) that a common Office shall be substituted for the national Office of each of them, and

(ii) that the whole of their respective territories shall be deemed to be a single State for the purposes of the application of all or part of the provisions preceding this Article as well as the provisions of Articles 9*quinquies* and 9*sexies*.

(2) Such notification shall not take effect until three months after the date of the communication thereof by the Director General to the other Contracting Parties.

## Article 9*quinquies*
### Transformation of an International Registration into National or Regional Applications

Where, in the event that the international registration is cancelled at the request of the Office of origin under Article 6(4), in respect of all or some of the goods and services listed in the said registration, the person who was the holder of the international registration files an application for the registration of the same mark with the Office of any of the Contracting Parties in the territory of which the international registration had effect, that application shall be treated as if it had been filed on the date of the international registration according to Article 3(4) or on the date of recordal of the territorial extension according to Article 3*ter*(2) and, if the international registration enjoyed priority, shall enjoy the same priority, provided that

(i) such application is filed within three months from the date on which the international registration was cancelled,

(ii) the goods and services listed in the application are in fact covered by the list of goods and services contained in the international registration in respect of the Contracting Party concerned, and

(iii) such application complies with all the requirements of the applicable law, including the requirements concerning fees.

## Article 9*sexies*
### Relations Between States Party to both this Protocol and the Madrid (Stockholm) Agreement

(1)

*(a)* This Protocol alone shall be applicable as regards the mutual relations of States party to both this Protocol and the Madrid (Stockholm) Agreement.

*(b)* Notwithstanding subparagraph *(a)*, a declaration made under Article 5(2)*(b)*, Article 5(2)*(c)* or Article 8(7) of this Protocol, by a State party to both this Protocol and the Madrid (Stockholm) Agreement, shall have no effect in the relations with another State party to both this Protocol and the Madrid (Stockholm) Agreement.

(2) The Assembly shall, after the expiry of a period of three years from September 1, 2008, review the application of paragraph (1)*(b)* and may, at any time thereafter, either repeal it or restrict its scope, by a three-fourths majority.  In the vote of the Assembly, only those States which are party to both the Madrid (Stockholm) Agreement and this Protocol shall have the right to participate.

## Article 10
## Assembly

(1)

*(a)* The Contracting Parties shall be members of the same Assembly as the countries party to the Madrid (Stockholm) Agreement.

*(b)* Each Contracting Party shall be represented in that Assembly by one delegate, who may be assisted by alternate delegates, advisors, and experts.

*(c)* The expenses of each delegation shall be borne by the Contracting Party which has appointed it, except for the travel expenses and the subsistence allowance of one delegate for each Contracting Party, which shall be paid from the funds of the Union.

(2) The Assembly shall, in addition to the functions which it has under the Madrid (Stockholm) Agreement, also

(i) deal with all matters concerning the implementation of this Protocol;

(ii) give directions to the International Bureau concerning the preparation for conferences of revision of this Protocol, due account being taken of any comments made by those countries of the Union which are not party to this Protocol;

(iii) adopt and modify the provisions of the Regulations concerning the implementation of this Protocol;

(iv) perform such other functions as are appropriate under this Protocol.

(3)

*(a)* Each Contracting Party shall have one vote in the Assembly. On matters concerning only countries that are party to the Madrid (Stockholm) Agreement, Contracting Parties that are not party to the said Agreement shall not have the right to vote, whereas, on matters concerning only Contracting Parties, only the latter shall have the right to vote.

*(b)* One-half of the members of the Assembly which have the right to vote on a given matter shall constitute the quorum for the purposes of the vote on that matter.

*(c)* Notwithstanding the provisions of subparagraph *(b)*, if, in any session, the number of the members of the Assembly having the right to vote on a given matter which are represented is less than one-half but equal to or more than one-third of the members of the Assembly having the right to vote on that matter, the Assembly may make decisions but, with the exception of decisions concerning its own procedure, all such decisions shall take effect only if the conditions set forth hereinafter are fulfilled. The International Bureau shall communicate the said decisions to the members of the Assembly having the right to vote on the said matter which were not represented and shall invite them to express in writing their vote or abstention within a period of three months from the date of the communication. If, at the expiry of this period, the number of such members having thus expressed their vote or abstention attains the number of the members which was lacking for attaining the quorum in the session itself, such decisions shall take effect provided that at the same time the required majority still obtains.

*(d)* Subject to the provisions of Articles 5(2)*(e)*, 9*sexies*(2), 12 and 13(2), the decisions of the Assembly shall require two-thirds of the votes cast.

*(e)* Abstentions shall not be considered as votes.

*(f)* A delegate may represent, and vote in the name of, one member of the Assembly only.

(4) In addition to meeting in ordinary sessions and extraordinary sessions as provided for by the Madrid (Stockholm) Agreement, the Assembly shall meet in extraordinary session upon convocation by the Director General, at the request of one-fourth of the members of the Assembly having the right to vote on the matters proposed to be included in the agenda of the session. The agenda of such an extraordinary session shall be prepared by the Director General.


## Article 11
## International Bureau

(1) International registration and related duties, as well as all other administrative tasks, under or concerning this Protocol, shall be performed by the International Bureau.

(2)

*(a)* The International Bureau shall, in accordance with the directions of the Assembly, make the preparations for the conferences of revision of this Protocol.

*(b)* The International Bureau may consult with intergovernmental and international non-governmental organizations concerning preparations for such conferences of revision.

*(c)* The Director General and persons designated by him shall take part, without the right to vote, in the discussions at such conferences of revision.

(3) The International Bureau shall carry out any other tasks assigned to it in relation to this Protocol.

## Article 12
### Finances

As far as Contracting Parties are concerned, the finances of the Union shall be governed by the same provisions as those contained in Article 12 of the Madrid (Stockholm) Agreement, provided that any reference to Article 8 of the said Agreement shall be deemed to be a reference to Article 8 of this Protocol. Furthermore, for the purposes of Article 12(6)(b) of the said Agreement, Contracting Organizations shall, subject to a unanimous decision to the contrary by the Assembly, be considered to belong to contribution class I (one) under the Paris Convention for the Protection of Industrial Property.

## Article 13
### Amendment of Certain Articles of the Protocol

(1) Proposals for the amendment of Articles 10, 11, 12, and the present Article, may be initiated by any Contracting Party, or by the Director General. Such proposals shall be communicated by the Director General to the Contracting Parties at least six months in advance of their consideration by the Assembly.

(2) Amendments to the Articles referred to in paragraph (1) shall be adopted by the Assembly. Adoption shall require three-fourths of the votes cast, provided that any amendment to Article 10, and to the present paragraph, shall require four-fifths of the votes cast.

(3) Any amendment to the Articles referred to in paragraph (1) shall enter into force one month after written notifications of acceptance, effected in accordance with their respective constitutional processes, have been received by the Director General from three-fourths of those States and intergovernmental organizations which, at the time the amendment was adopted, were members of the Assembly and had the right to vote on the amendment. Any amendment to the said Articles thus accepted shall bind all the States and intergovernmental organizations which are Contracting Parties at the time the amendment enters into force, or which become Contracting Parties at a subsequent date.

## Article 14
### Becoming Party to the Protocol; Entry into Force

(1)

(a) Any State that is a party to the Paris Convention for the Protection of Industrial Property may become party to this Protocol.

(b) Furthermore, any intergovernmental organization may also become party to this Protocol where the following conditions are fulfilled:

(i) at least one of the member States of that organization is a party to the Paris Convention for the Protection of Industrial Property;

(ii) that organization has a regional Office for the purposes of registering marks with effect in the territory of the organization, provided that such Office is not the subject of a notification under Article 9*quater*.

(2) Any State or organization referred to in paragraph (1) may sign this Protocol. Any such State or organization may, if it has signed this Protocol, deposit an instrument of ratification, acceptance or approval of this Protocol or, if it has not signed this Protocol, deposit an instrument of accession to this Protocol.

(3) The instruments referred to in paragraph (2) shall be deposited with the Director General.

(4)

*(a)* This Protocol shall enter into force three months after four instruments of ratification, acceptance, approval or accession have been deposited, provided that at least one of those instruments has been deposited by a country party to the Madrid (Stockholm) Agreement and at least one other of those instruments has been deposited by a State not party to the Madrid (Stockholm) Agreement or by any of the organizations referred to in paragraph (1)*(b)*.

*(b)* With respect to any other State or organization referred to in paragraph (1), this Protocol shall enter into force three months after the date on which its ratification, acceptance, approval or accession has been notified by the Director General.

(5) Any State or organization referred to in paragraph (1) may, when depositing its instrument of ratification, acceptance or approval of, or accession to, this Protocol, declare that the protection resulting from any international registration effected under this Protocol before the date of entry into force of this Protocol with respect to it cannot be extended to it.

**Article 15**
**Denunciation**

(1) This Protocol shall remain in force without limitation as to time.

(2) Any Contracting Party may denounce this Protocol by notification addressed to the Director General.

(3) Denunciation shall take effect one year after the day on which the Director General has received the notification.

(4) The right of denunciation provided for by this Article shall not be exercised by any Contracting Party before the expiry of five years from the date upon which this Protocol entered into force with respect to that Contracting Party.

(5)

*(a)* Where a mark is the subject of an international registration having effect in the denouncing State or intergovernmental organization at the date on which the denunciation becomes effective, the holder of such registration may file an application for the registration of the same mark with the Office of the denouncing State or intergovernmental organization, which shall be treated as if it had been filed on the date of the international registration according to Article 3(4) or on the date of recordal of the territorial extension according to Article 3*ter*(2) and, if the international registration enjoyed priority, enjoy the same priority, provided that

(i) such application is filed within two years from the date on which the denunciation became effective,

(ii) the goods and services listed in the application are in fact covered by the list of goods and services contained in the international registration in respect of the denouncing State or intergovernmental organization, and

(iii) such application complies with all the requirements of the applicable law, including the requirements concerning fees.

*(b)* The provisions of subparagraph *(a)* shall also apply in respect of any mark that is the subject of an international registration having effect in Contracting Parties other than the denouncing State or intergovernmental organization at the date on which denunciation becomes effective and whose holder, because of the denunciation, is no longer entitled to file international applications under Article 2(1).

### Article 16
### Signature; Languages; Depository Functions

(1)

*(a)* This Protocol shall be signed in a single copy in the English, French and Spanish languages, and shall be deposited with the Director General when it ceases to be open for signature at Madrid. The texts in the three languages shall be equally authentic.

*(b)* Official texts of this Protocol shall be established by the Director General, after consultation with the interested governments and organizations, in the Arabic, Chinese, German, Italian, Japanese, Portuguese and Russian languages, and in such other languages as the Assembly may designate.

(2) This Protocol shall remain open for signature at Madrid until December 31, 1989.

(3) The Director General shall transmit two copies, certified by the Government of Spain, of the signed texts of this Protocol to all States and intergovernmental organizations that may become party to this Protocol.

(4) The Director General shall register this Protocol with the Secretariat of the United Nations.

(5) The Director General shall notify all States and international organizations that may become or are party to this Protocol of signatures, deposits of instruments of ratification, acceptance, approval or accession, the entry into force of this Protocol and any amendment thereto, any notification of denunciation and any declaration provided for in this Protocol.

---

\* Interpretative statement adopted by the Assembly of the Madrid Union:

"Article 5(2)*(e)* of the Protocol is understood as allowing the Assembly to keep under review the operation of the system established by subparagraphs *(a)* to *(d)*, it being also understood that any modification of those provisions shall require a unanimous decision of the Assembly."

# Response Annex 21

ARRANGEMENT DE MADRID

CONCERNANT L'ENREGISTREMENT INTERNATIONAL DES MARQUE

ET PROTOCOLE RELATIF À CET ARRANGEMENT

REFUS PROVISOIRE DE LA PROTECTION

notifié au Bureau International de l'Organisation Mondiale de la Propriété Intellectuelle (OMPI)

selon l'article 5 de l'Arrangement de Madrid et du Protocole de Madrid

| | |
|---|---|
| I. Office qui notifie le refus:<br>**Institut d'Ukraine de la Propriété Industrielle**<br>**1, Glazunova**<br>**01601 Kyiv-42**<br>**Ukraine** | |
| II.No de l'enregistrement international faisant l'objet du refus: **977 713** | |

III. Nom et adresse du titulaire de l'enregistrement international faisant l'objet du refus:
**Ritzio Entertainment Group Limited**
**Diagorou 4, Kermia Building,**
**Office 601**
**CY-1097 Nicosia (CY)**

IV.Motifs du refus : **Le signe «Vulkan, fig.» ne peut pas être pris en tant que marque par rapport à la partie des** produits et services, parce que les signs edentiques et semblables ont été pris antérieurement en Ukraine aux noms de "VOLCANO" Gaming Clubs Ltd. ul. Pokrovka, 3/7, str. 1 RU-101000 Moscow (RU) - enreg. international No 791038 de 03.09.2002 (Pr. : 03.04.2002) ; Obshestvo s ogranichennoj otvetstvennostju "Firma "Bars" str. 1, 56/17, Baumanskaya RU-105005 Moskva (RU) - enreg. international No 905612 de 07.06.2006 (Pr. : 16.12.2005) ; Tovarystvo z obmezhenoiu vidpovidalnistiu « Sinnis, Ltd » ; vul. Khreschatyk, 195, m. Cherkasy, 18002 (UA) – certificat No 56105 de 15.11.2005 (demande nationale No 2004043570 de 06.04. 2004) ; Dochirne pidpryemstvo « Kondyterska korporatsia « Roshen » ; vul. Pavla Usenka, 8, m. Kyiv, 02105 (UA) – certificat No 35975 de 17.11.2003 (demande nationale No 2002020890 de 08.02.2002) ; Tovarystvo z obmezhenoiu vidpovidalnistiu « Agrosfera » ; vul. Sobinova, 1, m. Dnipropetrovsk, 49083 (UA) – certificat No 34425 de 15.08.2003 (demande nationale No 2001106400 de 15.10.2001) ; Otkrytoe Altsionernoe Obschestvo « Kontsern « Izhmash » ; proezd Deriabina, d. 3, g. Izhevsk, 426006, Rosiiska Federatsia (RU) – certificat No 59679 de 15.03.2006 (demande nationale No 2004010581 de 26.01.2004).

| V. | Dispositions de la loi nationale applicables en matiéres [(voir texte sous le point X)]: |
|---|---|

VI.   ☐   Refus pour la totalité des produits et services

■   Refus pour les produits et services suivants: Tous les produits des classes 09, 16, 21, 28, 30. Tous les services des classes 35, 37, 38, 39, 41, 42, 43, 45.

☐   Acceptance spécifiée (voir point V. ci-dessus)

| VII. | Conformément à la «Loi d'Ukraine sur la protection du droit des marques commerciales et des marques de service», il est admissible de faire valoir le recours contre cette décision en le présentant à l'Institut d'Ukraine de la Propriété Industrielle à Kiev dans un délai de 3 mois à compter de la date de la présente notification.<br>Le recours présenté à temps met en suspens l'entrée en vigueur de la décision susmentionnée. |
|---|---|
| VIII. | Date à laquelle le refus a été prononcé:  **le 28 août 2009.** |
| IX. | Signature ou sceau officiel de l'Office qui notifie le refus: |

Chef de la Section des
marques internat

**Svitlana Sukhinova**

Український
ІНСТИТУТ
ПРОМИСЛОВОЇ
ВЛАСНОСТІ

### X.    Extrait de la «Loi d'Ukraine sur la protection de droit des marques commerciales et des marques de services»

## DIVISION II
## PROTECTION DE DROIT DES MARQUES

Article 5. Conditions d'octroi de la protection de droit.

1. La protection de droit accorde  à la marque qui n'est pas contraire en son fond à l'ordre public, à  la moralité ou aux principes d'humanité et qui n'est pas de raisons pour le refus de protection de droit établies par la présente Loi.

Article 6. Raisons pour le refus de protection de droit.
1. Selon la présente Loi ne peuvent pas être enregistrés en tant que marques les signes qui:
sont des armoiries d'Etat, des drapeaux et des emblèmes, des noms officiels d'Etat; des abréviations ou des noms complets d'organisations internationales intergouvernementales; des poinçons de contrôle et de garantie; des sceaux; des décorations et des insignes de grade.
Ces désignations peuvent être incorporées dans la marque comme les éléments non-protegeables s'il y a l'autorisation de l'organe compétent correspondant ou de son propriétaire.

2. Selon la présente Loi ne peuvent pas être enregistrés en tant que marques les signes qui:
ne posséde pas de caractère distinctif;
sont d'un usage général pour les produits d'un certain aspect;
indiquent l'aspect, la qualité, la quantité , la nature, la destination, la valeur des produits  et des services ainsi que l'origine  , l'époque de fabrication , la distribution des produits ou l'octroi des services;
ont été falsifiés ou peuvent induire un consommateur en erreur au sujet du fabricant ou du  produit et des  services ;
sont des symboles et des termes d'usage général.
Les désignations indiquées dans les points 1,2,3,5 peuvent être incorporées dans la marque comme les éléments  non-protégeables, si elles ne s'occupent pas de  position dominante dans la marque.

3. Ne peuvent pas être enregistrés en tant que marques les signes qui sont identiques, semblables :
aux marques  prises  ou demandés antérieurement en Ukraine au nom de tiers pour les produits ou services similaires;
aux marques appartenants aux tiers dont la protection est accordée en Ukraine en vertu d'accords internationaux auxquels Ukraine est partie,  à savoir  aux  marques notoirement connues en vertu de l'article 6 bis de la Convention de Paris pour la protection de la Propriété Industrielle ;
aux dénominations de raisons sociales ou commerciales (ou leurs parties), qui appartiennent aux tiers ayant acquis le droit d'usage de ces dénominations antérieurement à la date d'enregistrement international de la marque en question pour les produits similaires;
aux appelations d'origine, à l'exception des  cas quand elles sont incorporées dans la marque comme les éléments non-ptotegeables et enregistrées aux noms de personnes ayant le droit d'utiliser telles dénominations;
aux marques de certification enregistrées  en   formes légales.

4. Ne peuvent pas être enregistrés en tant que marques les signes représentées:

des modéles industriels dont les droits appartiennent aux tiers en Ukraine;
des titres des travaux scientifiques et des oeuvres littéraires et d'art ou leurs extraits sans le consentement de l'auteur ou de l'organe compétent correspondant;
des prénoms, des noms, des pseudonymes et leurs dérivés, des portraits et des fac-similés de personnes sans leur consentement.

# ROMARIN  DVD No 7/2009  *(10.07.2009)*

**905612**

| | | |
|---|---|---|
| (151) | Date of the registration | **07.06.2006** |
| (180) | Expected expiration date of the registration/renewal | **07.06.2016** |
| (270) | Language of the application | **English** |

**Current Status**

(540)   Mark



| | | |
|---|---|---|
| (732) | Name and address of the holder of the registration | **Obshestvo s ogranichennoj otvetstvennostju "Firma "Bars"** str. 1, 56/17, Baumanskaya RU-105005 Moskva  (RU) |
| (812) | Contracting State or Contracting Organization in the territory of which the holder has a real and effective industrial or commercial establishment | **RU** |
| (740) | Name and address of the representative | **Obshestvo s ogranichennoj otvetsvennostju "Intellect Patent"** 28 Post Box RU-125009 Moskva  (RU) |
| (531) | Vienna Classification - VCL(5) | **01.01.01 ; 26.02.07 ; 26.07.09 ; 26.07.11 ; 28.05.00 ; 29.01.01 ; 29.01.04** |
| (591) | Information concerning colors claimed | |

White, yellow, orange, red, light blue, blue and dark blue.

Blanc, jaune, orange, rouge, bleu clair, bleu et bleu foncé.

Blanco, amarillo, anaranjado, rojo, azul claro, azul y azul oscuro.

| | | |
|---|---|---|
| (561) | Transliteration of the mark | |

Vulkan.

| | | |
|---|---|---|
| (566) | Translation of the mark or of words contained in the mark | |

Volcano.

| | | |
|---|---|---|
| (511) | Nice Classification - NCL(8) | **09, 16, 21, 28, 35, 38, 39, 41, 42, 43. 45** |
| (511) | Nice Classification - NCL(8) | |

**09** Apparatus for recording, transmission or reproduction of sound or images; magnetic data carriers, recording discs; automatic vending machines and mechanisms for coin-operated apparatus; data processing equipment and computers; ticket dispensers, musical juke boxes, automatic distribution machines, electric monitoring apparatus, sound recording apparatus, electric apparatus for communication, video cassettes, video screens, floppy disks, phonograph records, optical disks, read-only memory compact disks, audio-video compact disks, decorative magnets, mechanisms for coin-operated apparatus, sound recording carriers, magnetic data media, optical data media, recorded computer operating programs, computer game programs, computer programs (downloadable software), electronic publications (downloadable), smart cards, totalizators, apparatus for games adapted for use with television receivers only, amusement apparatus adapted for use with television receivers only, computer peripheral devices, anti-theft warning apparatus, chips (integrated circuits).

Appareils d'enregistrement, de transmission ou de reproduction de sons ou d'images; supports d'enregistrement magnétiques, disques acoustiques; distributeurs automatiques et mécanismes pour appareils à prépaiement; équipements de traitement de données et ordinateurs; distributeurs de billets [tickets], chargeurs automatiques de disques, distributeurs automatiques, appareils électriques de surveillance, appareils pour l'enregistrement de

son, appareils électriques de communication, cassettes vidéo, écrans vidéo, disquettes, disques phonographiques, disques optiques, cd-rom (unité de disque compact à mémoire morte), disques compacts audiovidéo, aimants décoratifs, mécanismes pour appareils à prépaiement, supports d'enregistrements sonores, supports de données magnétiques, supports de données optiques, programmes de système d'exploitation pour ordinateurs, programmes de jeux électroniques, programmes informatiques (logiciels téléchargeables), publications électroniques téléchargeables, cartes à mémoire ou à microprocesseur, totalisateurs, appareils pour jeux conçus pour être utilisés seulement avec récepteur de télévision, appareils pour le divertissement conçus pour être utilisés seulement avec un récepteur de télévision, périphériques d'ordinateur, avertisseurs contre le vol, puces (circuits intégrés).

Aparatos para la grabación, la transmisión y la reproducción de sonido o imágenes; soportes de grabación magnéticos, discos acústicos; distribuidores automáticos y mecanismos para aparatos de previo pago; equipos y ordenadores para el procesamiento de datos; distribuidores de billetes, máquinas de discos de previo pago, máquinas de distribución automática, aparatos eléctricos de vigilancia, aparatos de grabación de sonido, aparatos eléctricos de comunicación, casetes de vídeo, pantallas de vídeo, discos flexibles, discos fonográficos, discos ópticos, discos compactos con memoria de sólo lectura, discos compactos audio-vídeo, imanes decorativos, mecanismos para aparatos de previo pago, soportes para grabaciones sonoras, soportes de datos magnéticos, soportes de datos ópticos, programas de sistemas operativos grabados para ordenadores, programas de juegos informáticos, programas informáticos (software descargables), publicaciones electrónicas (descargables), tarjetas con circuitos integrados, totalizadores, aparatos para juegos concebidos para ser utilizados únicamente con televisores, aparatos recreativos diseñados para ser utilizados únicamente con televisores, periféricos informáticos, alarmas antirrobo, chips (circuitos integrados).

**16**  Printed matter, almanacs, affiches, posters, tickets, blanks, pamphlets, booklets, newsletters, newspapers, engravings, printed publications, calendars, tear-off calendars, non-electric credit card imprinters, catalogues, books, graphic prints, magazines (periodicals), prospectuses, printed timetables, graphic reproductions.
Produits imprimés, almanachs, affiches, billets, carton pour affiches, brochures, livrets, bulletins d'information, journaux, gravures, publications, calendriers, éphémérides, presses à cartes de crédit, non électriques, catalogues, livres, dessins, magazines, prospectus, horaires imprimés, reproductions graphiques.
Material impreso, almanaques, carteles, pósters, tickets, láminas, panfletos, folletos, circulares, periódicos, grabados, publicaciones impresas, calendarios, calendarios de taco, prensas no eléctricas para tarjetas de crédito, catálogos, libros, dibujos, revistas (publicaciones periódicas), prospectos, horarios impresos, reproducciones gráficas.

**21**  Household or kitchen utensils and containers (not of precious metal or coated therewith); combs and sponges; brushes (except paint brushes); brush-making materials; articles for cleaning purposes; steelwool; unworked or semi-worked glass (except glass used in building); glassware, porcelain and earthenware not included in other classes; including ornaments, dishes, saucers, goblets made of porcelain; bottles, busts of china, terra-cotta or glass; vases, non-electric waffle irons, coolers, napkin holders, clothing stretchers, decanters, combs for the hair, deodorising apparatus for personal use, containers for household or kitchen use boxes of glass, heat insulated containers for beverages, thermally insulated containers for food, glass jars, frying pans, toothpicks, ceramics for household purposes; works of art, of porcelain, terra-cotta or glass; stew-pans, napkin rings, piggy banks, not of metal, bread baskets (domestic), baskets for domestic use, non-electric coffee percolators, hand-operated coffee grinders, beer mugs, covers for dishes, jugs, non-electric portable coldboxes, mixing spoons (kitchen utensils), scoops (tableware), spatulas (kitchen utensils), hand-operated pepper mills, basins, soap boxes, cooking pot sets, fitted picnic baskets (including dishes), toilet cases, cookie (biscuit) cutters, pastry cutters, sprinklers, cocktail stirrers, pepper pots, gloves for household purposes, trays for domestic purposes, trays (kitchen utensils), candle sticks, trivets (table utensils), coasters, not of paper and other than table linen, menu card holders, knife rests for table, flat-iron stands, tableware (other than knives, forks and spoons); porcelain ware, terra-cotta ware, crockery and crystal (glassware); cosmetic utensils, toilet utensils, spice sets, non-electric appliances for removing make-up, food cooling devices containing heat exchange fluids, for household purposes, bottle openers, glass caps, powder compacts, soap dispensers, combs, shoe horns, salad bowls, sugar bowls, services (tableware), coffee services and tea services, tea strainers, siphons for carbonated water, blenders for household purposes, fruit presses for household purposes, salt cellars, drinking vessels, refrigerating bottles, cups of paper or plastic, glasses, drinking glasses, status and figurines of porcelain, terra-cotta or glass; soup bowls, table plates, grater (household utensils), insulating flasks, urns, aerosol dispensers, not for medical purposes, wax-polishing appliances, non-electric, for shoes, sprinkling devices, utensils for household purposes, kitchen utensils, cooking utensils, strainers for household purposes, coffee filters, flasks, bottle gourds, molds (kitchen utensils), bread bins, teapots, kettles, cups, mixers, manual (cocktail shakers), corkscrews, dishwashing brushes and brushes for cleaning tanks and containers, toothbrushes, brushes for footwear, boxes of metal, for dispensing paper towels, dustbins.
Ustensiles et récipients pour le ménage ou la cuisine (ni en métaux précieux, ni en plaqué); peignes et éponges; brosses (à l'exception des pinceaux); matériaux pour la brosserie; matériel de nettoyage; paille de fer; verre brut ou mi-ouvré (à l'exception du verre de construction); verrerie, porcelaine et faïence non comprises dans d'autres classes, y compris des objets décoratifs, plats, soucoupes, gobelets en porcelaine; bouteilles, bustes en porcelaine, terre cuite ou verre; vases, gaufriers non électriques, seaux à rafraîchir, porte-serviettes, tendeurs de vêtements, carafes, peignes à cheveux, appareils de désodorisation à usage personnel, récipients pour le ménage ou la cuisine boîtes en verre, récipients calorifuges pour boissons, récipients calorifuges pour les aliments, bocaux, poêles à frire, cure-dents, produits céramiques pour le ménage; objets d'art en porcelaine, terre cuite ou verre; faitouts, ronds de serviettes, tirelires non métalliques, corbeilles à pain (à usage ménager), paniers à usage domestique, percolateurs à café non électriques, moulins à café à main, chopes à bière, couvercles de plats, cruches, glacières portatives non électriques, cuillers à mélanger (ustensiles de cuisine), pelles (accessoires de table), spatules (ustensiles de cuisine), moulins à poivre à main, jattes, boîtes à savon, batteries de cuisine, paniers équipés pour pique-nique (avec vaisselle), trousses de toilette, emporte-pièces,

coupe-pâte, arroseurs, bâtonnets pour cocktails, poivriers, gants de ménage, plateaux à usage domestique, plateaux (ustensiles de cuisine), bougies, dessous-de-plat (ustensiles de table), dessous de carafes non en papier et autres que linge de table, porte-cartes de menus, porte-couteaux de table, supports de fers à repasser, vaisselle (hormis couteaux fourchettes et cuillers); articles en porcelaine, terre cuite, vaisselle et articles en cristal (verrerie); ustensiles cosmétiques, ustensiles de toilette, services à épices, appareils pour le démaquillage non électriques, articles de réfrigération d'aliments contenant des fluides d'échange de chaleur à usage domestique, ouvre-bouteilles, bouchons en verre, poudriers, distributeurs de savon, peignes, chausse-pieds, saladiers, sucriers, services (vaisselle), services à café et à thé, filtres à thé, siphons pour eaux gazeuses, mixeurs à usage domestique, presses à fruits à usage domestique, salières, récipients à boire, bouteilles réfrigérantes, gobelets en papier ou en matières plastiques, verres, verres à boire, statues et figurines en porcelaine, terre cuite ou verre; soupières, plateaux de tables, râpes (ustensiles de maison), bouteilles isolantes, urnes, appareils destinés à la projection d'aérosols non à usage médical, cireuses à chaussures non électriques, instruments d'arrosage, ustensiles à usage domestique, ustensiles de cuisine, ustensiles de cuisson, filtres pour le ménage, filtres à café, gourdes, bidons, moules (ustensiles de cuisine), boîtes à pain, théières, bouilloires, tasses, shakers (à main), tire-bouchons, pinceaux pour laver la vaisselle et brosses pour nettoyer les récipients, brosses à dents, brosses à chaussures, boîtes en métal pour la distribution de serviettes en papier, poubelles.

Utensilios y recipientes para la casa y la cocina (que no sean de metales preciosos ni chapados); peines y esponjas; cepillos (excepto pinceles); materiales para la fabricación de cepillos; material de limpieza; viruta de hierro; vidrio en bruto o semielaborado (excepto vidrio de construcción); cristalería, porcelana y loza no comprendidas en otras clases; incluidos adornos, fuentes, platillos, copas de porcelana; botellas, bustos de porcelana, de barro o de cristal; jarrones, barquilleros no eléctricos, cubiteras, servilleteros, tendedores de vestidos, decantadores, peines para el cabello, aparatos de desodorización para uso personal, recipientes para uso culinario o doméstico, cajas de cristal, recipientes caloríficos para bebidas, recipientes termoaislantes para alimentos, bocales, sartenes, mondadientes, productos de cerámica para el hogar; objetos de arte de porcelana, de barro o de cristal; cacerolas, servilleteros de aro, huchas no metálicas, cestas para el pan (uso doméstico), cestas para uso doméstico, cafeteras con filtro de café no eléctricas, molinillos de café manuales, jarras para cerveza, tapaderas de bandejas, jarras, neveras portátiles no eléctricas, cucharas para mezclar (utensilios de cocina), palas (vajilla), espátulas (utensilios de cocina), molinillos de pimienta manuales, palanganas, jaboneras, baterías de cocina, cestas para picnic (con vajilla incluida), neceseres de tocador, moldes para cortar galletas, cortapastas, regaderas, agitadores para cocteles, pimenteros, guantes para uso doméstico, bandejas para uso doméstico, bandejas (utensilios de cocina), candelabros, reposaplatos (utensilios de mesa), posavasos, que no sean de papel ni ropa de mesa, portatarjetas de menú, portacuchillos para la mesa, soportes de planchas de planchar, vajilla (excepto cuchillos, tenedores y cucharas); artículos de porcelana, artículos de barro, vajilla y artículos de cristal; utensilios cosméticos, utensilios de tocador, especieros, aparatos para el desmaquillaje no eléctricos, dispositivos para enfriar alimentos que contienen fluidos para el intercambio de calor, para uso doméstico, abrebotellas, tapones de cristal, polveras, distribuidores de jabón, peines, calzadores, ensaladeras, azucareros, servicios (vajilla), juegos de café y té, coladores de té, sifones para aguas gaseosas, licuadoras para uso doméstico, exprimidores de frutas para uso doméstico, saleros, recipientes para beber, botellas refrigerantes, tazas de papel o de plástico, vasos, vasos para beber, estatuas y figuritas de porcelana, barro o vidrio; soperas, platos, ralladores (utensilios domésticos), botellas térmicas, urnas, aparatos destinados a la proyección de aerosoles que no sean para uso médico, enceradoras, no eléctricas, para zapatos, instrumentos de riego, utensilios para uso doméstico, utensilios de cocina, utensilios para cocinar, coladores para uso doméstico, filtros de café, frascos, cantimploras, moldes (utensilios de cocina), paneras, teteras, hervidores, tazas, cocteleras, sacacorchos, cepillos para lavar la vajilla y cepillos para limpiar depósitos y recipientes, cepillos de dientes, cepillos para el calzado, cajas metálicas, para la distribución de toallitas de papel, papeleras.

**28**  Games and playthings; gymnastic and sporting articles not included in other classes; including automatic and coin-operated amusement machines, cups for dice, dice, playing cards, billiard cues, chalk for billiard cues, billiard table cushions, billiard cue tips, accessories for games, billiard markers, billiard tables, coin-operated billiard tables, tables for table tennis, apparatus for electronic games other than those adapted for use with television receivers only, counters (discs) for games, play balloons, billiard tables.

Jeux et jouets; articles de gymnastique et de sport non compris dans d'autres classes, y compris jeux automatiques à prépaiement, gobelets pour jeux, dés, cartes à jouer, queues de billard, craie pour queues de billards, bandes de billard, procédés pour queues de billard, accessoires de jeux, dispositifs à marquer les points pour billards, tables de billard, tables de billard à prépaiement, tables de ping-pong, appareils de jeux électroniques autres que ceux conçus pour être utilisés seulement avec récepteur de télévision, compteurs (disques) de jeux, ballons de jeu.

Juegos, juguetes; artículos de gimnasia y de deporte no comprendidos en otras clases; incluidas máquinas recreativas automáticas y de monedas, cubiletes para dados, dados, naipes, tacos de billar, tiza para tacos de billar, bandas de billar, suelas para tacos de billar, accesorios para juegos, marcadores de billar, mesas de billar, mesas de billar accionadas con monedas, mesas de ping-pong, aparatos de juegos electrónicos que no sean los concebidos para ser utilizados únicamente con un receptor de televisión, fichas (discos) para juegos, balones de juego, mesas de billar.

**35**  Office functions, data search in computer files (for other), office machines and equipment rental, trade equipment rental, compilation of information into computer databases, systematization of information into computer databases, public relations.

Travaux de bureau, recherche de données dans des fichiers informatiques (pour le compte de tiers), location de machines et d'appareils de bureau, location d'équipements commerciaux, compilation d'informations dans des bases de données informatiques, systématisation d'informations dans des bases de données informatiques, relations publiques.

Trabajos de oficina, búsqueda de datos en archivos informáticos (para terceros), alquiler de máquinas y aparatos de oficina, alquiler de equipos comerciales, compilación de información en bases de datos informáticas, sistematización de la información en bases de datos informáticas, servicios de relaciones públicas.

**38** Telecommunications; including electronic bulletin board services (telecommunication services), providing user access to a global computer network (service providers), providing telecommunications connections to a global computer network, communications by fiber (fibre) optic networks.

Télécommunications, notamment services de tableaux d'affichage électroniques (services de télécommunications), fourniture d'accès aux utilisateurs à un réseau mondial d'ordinateurs (prestataires de services), mise à disposition de connexions de télécommunication pour l'accès à un réseau mondial d'ordinateurs, communications par le biais de réseaux de fibres optiques.

Telecomunicaciones; incluidos servicios de anuncios electrónicos (servicios de telecomunicación), facilitación de acceso de usuarios a una red informática mundial (proveedores de servicios), facilitación de conexiones de telecomuniación a una red informática mundial, comunicaciones por redes de fibras ópticas.

**39** Arranging of tours, including booking of seats for travel, travel reservation, transport reservation, delivery of goods, arranging of cruises, transport of travellers, car transport, car rental, escorting of travellers, wrapping of goods, car parking, chauffeur services, courrier services (messages or merchandise), tourist offices (except for hotel reservation), storage of goods, sightseeing.

Organisation de voyages, y compris réservation de places de voyage, réservation de voyages, réservations de transport, livraison de marchandises, organisation de croisières, transport de voyageurs, transport en voiture, location de voitures, accompagnement de voyageurs, emballage de marchandises, services de parcs de stationnement, services de chauffeurs, messagerie (courrier ou marchandises), agences de tourisme (à l'exception de la réservation d'hôtels), dépôt de marchandises, visites touristiques.

Servicios de organización de viajes, incluidas reservas de plazas de viajes, reservas de viajes, reservas para el transporte, reparto de mercancías, organización de cruceros, transporte de viajeros, transporte en automóvil, alquiler de automóviles, acompañamiento de viajeros, empaquetado de mercancías, servicios de aparcamiento, servicios de conductores, servicios de correo (mensajes o mercancías), agencias de turismo (excepto para reservas de hoteles), almacenamiento de mercancías, visitas turísticas.

**41** Education; providing of training; entertainment; cultural activities; billiard saloon, booking of seats for shows, videotaping, discotheque services, gaming, publication of books, recreation information, entertainment information, club services (entertainment or education), night clubs, game services provided on-line (from a computer network), electronic publication services provided on-line (not downloaded), practical training (demonstration), organization of exhibitions for cultural and educational purposes, providing recreation facilities, arranging and conducting of workshops (training), organization of competitions (education or entertainment), operating lotteries, holiday camp services (entertainment), amusement parks, providing amusement arcade services, providing cinema facilities, videotape film production and film production, rental of sound recordings, rental of audio equipment, rental of video cassette recorders, rental of automatic amusement machines, rental of cine-films, electronic desktop publishing, publication of electronic books and journals on-line, publication of texts (other than publicity texts), entertainer services, party planning (entertainment), providing casino facilities (gambling), translation, photography, production of shows.

Enseignement; formations; divertissement; activités culturelles; salles de billard, réservation de places de spectacles, enregistrement sur bandes vidéo, services de discothèques, jeux d'argent, publication de livres, informations en matière de loisirs, informations en matière de divertissement, services de clubs (divertissement ou éducation), boîtes de nuit, services de jeu en ligne (sur réseau informatique), services de publications électroniques fournis en ligne (non téléchargeables), formation pratique (démonstrations), organisation d'expositions à vocation culturelle et pédagogique, services de loisirs, organisation et conduite d'ateliers de formation, organisation de concours (éducation ou divertissement), organisation de loteries, services de camps de vacances (divertissement), parcs d'attractions, exploitation de salles de jeux, exploitation de salles de cinéma, production de films cinématographiques et de bandes vidéo, location d'enregistrements sonores, location d'appareils audio, location de magnétoscopes, location de jeux automatiques à prépaiement, location de films cinématographiques, publication assistée par ordinateur, publication en ligne de livres et revues électroniques, publication de textes (autres que textes publicitaires), services d'artistes de spectacles, planification de réceptions (divertissement), services de casino, services de traduction, photographie, production de spectacles.

Educación; formación; esparcimiento; actividades culturales; salas de billar, reserva de entradas para espectáculos, grabación en cintas de vídeo, servicios de discotecas, juegos de azar, publicación de libros, información sobre actividades recreativas, información sobre esparcimiento, servicios de clubes (educación y esparcimiento), clubes nocturnos, servicios de juegos en línea (a través de una red informática), servicios de publicación electrónica prestados en línea (no descargados), formación práctica (demostración), organización de exposiciones con fines culturales y educativos, facilitación de instalaciones recreativas, organización y dirección de talleres de formación, organización de concursos (educación o esparcimiento), organización de loterías, servicios de campamentos de vacaciones (esparcimiento), parques de atracciones, explotación de salas de juegos, explotación de salas de cine, producción de películas y cintas de vídeo, alquiler de grabaciones sonoras, alquiler de equipos de audio, alquiler de vídeos, alquiler de máquinas recreativas automáticas, alquiler de películas cinematográficas, autoedición electrónica, publicación de libros y diarios electrónicos en línea, publicación de textos (que no sean textos publicitarios), servicios de artistas de espectáculos, planificación de recepciones (entretenimiento), servicios de casino (juegos), traducción, fotografía, producción de espectáculos.

**42**
Design and development of computer hardware and software; computer systems analysis, installation of

computer software, updating of computer software, maintenance of computer software, computer system design, computer rental, rental of computer software, hosting computer sites (web sites), creating and maintaining web sites for others.

Conception et développement d'ordinateurs et de logiciels; analyse de systèmes informatiques, installation de logiciels, mise à jour de logiciels, maintenance de logiciels, conception de systèmes informatiques, location d'ordinateurs, location de logiciels, hébergement de sites informatiques (sites Web), création et maintenance de sites Web pour des tiers.

Diseño y desarrollo de hardware y software; análisis de sistemas informáticos, instalación de software, actualización de software, mantenimiento de software, diseño de sistemas informáticos, alquiler de ordenadores, alquiler de software, superservidor (sitios Web), creación y mantenimiento de sitios Web para terceros.

**43** Services for providing food and drink; temporary accommodation, agencies for reservations (hotels, house bookings), rental of meeting rooms, tourist homes, hotel reservations, temporary accomodation reservations, hotels, snack-bars, cafes, cafeterias, restaurants, holiday camp services (lodging), bar services, providing campground facilities, food and drink catering.

Services de restauration (alimentation); hébergement temporaire, agences de réservation (réservations de maisons, hôtels), location de salles de réunion, logements de vacances, réservation d'hôtels, réservation d'hébergements temporaires, hôtels, snack-bars, cafés, cafétérias, restaurants, services de camps de vacances (hébergement), bars, exploitation de terrains de camping, restauration (aliments et boissons).

Servicios de restauración (alimentación); hospedaje temporal, agencias de reservas (reservas de hoteles y casas), alquiler de salas de reunión, casas de vacaciones, reservas de hoteles, reservas de alojamiento temporal, hoteles, restaurantes de servicio rápido, cafés, cafeterías, restaurantes, servicios de campamentos de vacaciones (hospedaje); servicios de bar, facilitación de terrenos de camping, servicios de comidas preparadas.

**45** Personal and social services rendered by others to meet the needs of individuals, guards, dating services, personal body guarding.

Services personnels et sociaux rendus par des tiers destinés à satisfaire les besoins des individus, gardes, clubs de rencontres, services de gardes du corps.

Servicios personales y sociales prestados por terceros destinados a satisfacer necesidades individuales, servicios de guardias, servicios de encuentros, servicios de escolta personal.

| | | |
|---|---|---|
| (822) | Basic registration | RU, 01.06.2006, 307722 |
| (300) | Data relating to priority under the Paris Convention and other data relating to registration of the mark in the country of origin | |
| | RU, 16.12.2005, 2005732554 | |
| (831) | Designation(s) under the Madrid Agreement | |
| | KZ - TJ | |
| (832) | Designation(s) under the Madrid Protocol | |
| | EE - GE - LT - TM - UZ | |
| (834) | Designation(s) under the Protocol by virtue of Article 9sexies | |
| | AM - AZ - BY - CY - CZ - DE - ES - KG - LV - MD - PL - RO - UA | |

**Registration**

| | | |
|---|---|---|
| (450) | Publication number and date | 2006/48 Gaz, 04.01.2007 |
| (831) | Designation(s) under the Madrid Agreement | |
| | AM - AZ - BY - CY - CZ - DE - ES - KG - KZ - LV - MD - PL - RO - TJ - UA - UZ | |
| (832) | Designation(s) under the Madrid Protocol | |
| | EE - GE - LT - TM | |
| (580) | Date of recording (date of notification from which the time limit to notify the refusal starts) | 14.12.2006 |

**Partial refusal of protection**
**PL**

| | | |
|---|---|---|
| (450) | Publication number and date | 2007/31 Gaz, 06.09.2007 |
| | | 3983361 |

**Grant of protection subject to opposition**
**GE**

| | | |
|---|---|---|
| (450) | Publication number and date | 2007/44 Gaz, 06.12.2007 |
| | | 4127277 |
| | Opposition end date | 25.01.2008 |

**Partial refusal of protection**
**UA**
(450)   Publication number and date               2007/47 Gaz, 27.12.2007
4164087

**Partial refusal of protection**
**EE**
(450)   Publication number and date               2007/48 Gaz, 03.01.2008
4174603

**Partial refusal of protection**
**AM**
(450)   Publication number and date               2007/49 Gaz, 10.01.2008
4181169

**Partial refusal of protection**
**KZ**
(450)   Publication number and date               2007/50 Gaz, 17.01.2008
4200638

**Partial refusal of protection**
**BY**
(450)   Publication number and date               2007/51 Gaz, 24.01.2008
4206887

**Partial refusal of protection**
**MD**
(450)   Publication number and date               2007/51 Gaz, 24.01.2008
4207216

**Grant of protection**
**GE**
(450)   Publication number and date               2008/13 Gaz, 01.05.2008
4297250

**Opposition possible after the 18 months time limit**
**EE**
(450)   Publication number and date               2008/24 Gaz, 17.07.2008

UFINO   **UFINO**
**BY**
**35**
**Location de machines et d'appareils de bureau, location d'équipements commerciaux, relations**
**publiques.**

Admis pour tous les produits et services des classes 9, 16, 21, 28, 39, 43 et 45.

**Other final decision**
**AM**
(450)   Publication number and date               2008/36 Gaz, 09.10.2008
4548558

Accepted for all the goods and services in classes 9, 16, 21, 28, 35, 38, 39, 42, 43 and 45.
Admis pour tous les produits et services des classes 9, 16, 21, 28, 35, 38, 39, 42, 43 et 45.
Aceptado para todos los productos y servicios de las clases 9, 16, 21, 28, 35, 38, 39, 42, 43 y 45.

**Partial refusal of protection**
EE

(450)   Publication number and date                  2008/40 Gaz, 06.11.2008
                                                      4609352

**Statement indicating that the mark is protected for all the goods and services requested**
UA

(450)   Publication number and date                  2009/7 Gaz, 05.03.2009
                                                      4755719

UFINO  UFINO
       MD
       41
       Tous les services concernés à l'exception de "agences de modèles pour artistes; location de cours de
       tennis; bibliothèques de prêt; réservation de places de spectacles; enregistrement sur bandes vidéo;
       écoles maternelles; éducation physique; services de discothèques; dressage d'animaux;
       postsynchronisation; jeux; édition de livres; informations à buts éducatifs; informations en matière de
       loisirs; informations en matière de divertissement; studios cinématographiques; clubs de santé;
       services de clubs (divertissement ou éducation); boîtes de nuit; cours par correspondance;
       microfilmage; montage de bandes vidéo; production d'émissions radiophoniques et télévisées; music-
       hall; services de jeu proposés en ligne (depuis un réseau informatique); éducation religieuse;
       enseignement de la gymnastique; formation pratique (démonstration); organisation de bals;
       organisation d'expositions à vocation culturelle ou pédagogique; services de loisirs; organisation et
       animation de colloques; organisation et tenue de congrès; organisation et animation de conférences;
       organisation et conduite d'ateliers de formation; organisation et animation de séminaires; organisation
       et animation de symposiums; organisation de concours de beauté; organisation de concours (à
       caractère pédagogique ou récréatif); loteries; services de camps de vacances (divertissement);
       organisation de spectacles (services d'imprésario); orientation professionnelle (conseils pédagogiques
       ou en matière de formation); pensionnats; parcs d'attractions; interprétation du langage gestuel;
       divertissements télévisuels; services de bibliothèque itinérante; services de karaoké; exploitation de
       parcours de golf; exploitation de salles de jeux; exploitation de salles de cinéma; représentation de
       spectacles; représentations théâtrales; épreuves pédagogiques; production de films sur bandes vidéo;
       production cinématographique; location d'enregistrements sonores; location d'appareils audio; location
       de caméras vidéo; location de magnétoscopes; location de bandes vidéo; location de décors de
       spectacles; location de films cinématographiques; location d'appareils d'éclairage pour des scènes de
       théâtre ou des studios de télévision; location de postes de radio et de télévision; location d'équipements
       de plongée sous-marine; location de décors de théâtre; publication assistée par ordinateur; publication
       en ligne de livres et de revues électroniques; publication de textes (autres que publicitaires);
       divertissements radiophoniques; services d'artistes de spectacles; jardins zoologiques; services de
       reporters; organisation de fêtes (divertissement); services de composition musicale; sous-titrage;
       exploitation de casinos de jeux; services de musées (présentation, expositions); services
       d'enseignement; services d'orchestres; services de traduction; rédaction de scénarios; services de
       studio d'enregistrement; services d'imagerie numérique; cirques; production de spectacles.

       Admis pour tous les produits et services des classes 9, 16, 21, 28, 35, 38, 39, 42, 43 et 45.

       **Opposition possible after the 18 months time limit**
       EE

(450)   Publication number and date                  2009/18 Gaz, 21.05.2009
       Opposition end date
       02.05.2009

UFINO  UFINO
       EE
       09

Automatic vending machines and mechanisms for coin-operated apparatus; ticket dispensers, decorative magnets, mechanisms for coin-operated apparatus, anti-theft warning apparatus.

21

Combs and sponges; brushes (except paint brushes); brush-making materials; articles for cleaning purposes; steelwool; ornaments of porcelain, busts of china, terra-cotta or glass; non-electric waffle irons, combs for the hair, deodorising apparatus for personal use, frying pans, toothpicks, stew-pans, napkin rings, non-electric coffee percolators, hand-operated coffee grinders, mixing spoons (kitchen utensils), scoops (tableware), spatulas (kitchen utensils), hand-operated pepper mills, cookie (biscuit) cutters, pastry cutters, cocktail stirrers, gloves for household purposes, trivets (table utensils), coasters, not of paper and other than table linen, menu card holders, knife rests for table, flat-iron stands, non-electric appliances for removing make-up, bottle openers, combs, shoe horns, grater (household utensils), wax-polishing appliances, non-electric, for shoes, strainers for household purposes, bottle gourds, corkscrews, dishwashing brushes and brushes for cleaning tanks and containers, toothbrushes, brushes for footwear, boxes of metal, for dispensing paper towels.

28

Automatic and coin-operated amusement machines, cups for dice, dice, playing cards, billiard cues, chalk for billiard cues, billiard table cushions, billiard cue tips, billiard markers, billiard tables, coin-operated billiard tables, tables for table tennis, apparatus for electronic games other than those adapted for use with television receivers only, counters (discs) for games, play balloons, billiard tables.

35

Office functions, office machines and equipment rental, trade equipment rental.

Accepted for all the services in classes 39, 41, 43 and 45.

ROMARIN  DVD No 7/2009  *(10.07.2009)*

791038

| | | |
|---|---|---|
| (151) | Date of the registration | 03.09.2002 |
| (180) | Expected expiration date of the registration/renewal | 03.09.2012 |
| (270) | Language of the application | **English** |

**Current Status**

(540)   Mark



| | | |
|---|---|---|
| (732) | Name and address of the holder of the registration | **"VOLCANO" Gaming Clubs Ltd.**<br>ul. Pokrovka, 3/7, str. 1<br>RU-101000 Moscow  (RU) |
| (812) | Contracting State or Contracting Organization in the territory of which the holder has a real and effective industrial or commercial establishment | **RU** |
| (740) | Name and address of the representative | **Joint-Stock company**<br>**"Patentny Poverenny"**<br>**Galina N. Andruschak**<br>ul Aviamotornaya, d. 53<br>RU-111250 Moskwa  (RU) |
| (770) | Name and address of the previous holder (in case of change in ownership) | **"FIRM "BARS" LTD**<br>ul. Baumanskaya, 56/17, str. 1<br>Moskva  (RU) |
| (531) | Vienna Classification - VCL(4) | **01.01.05 ; 25.01.19 ; 28.05.00 ; 29.01.15** |
| (591) | Information concerning colors claimed | |

Blue, dark blue, black, red, green, yellow, violet.

Blue, dark blue - background; black - lightning; yellow, green, violet - stars; red - word "VULKAN"; black, blue, dark blue - letters' shadow.

Bleu, bleu foncé, noir, rouge, vert, jaune, violet.

L'arrière-plan est en bleu et bleu foncé; l'éclair est en noir; les étoiles sont en jaune, vert et violet; le mot "VULKAN" est en rouge; l'entourage des lettres est en noir, bleu et bleu foncé.

| | | |
|---|---|---|
| (561) | Transliteration of the mark | |

VULKAN

| | | |
|---|---|---|
| (566) | Translation of the mark or of words contained in the mark | |

VOLCANO

VOLCAN

| | | |
|---|---|---|
| (511) | Nice Classification - NCL(8) | **41** |
| (511) | Nice Classification - NCL(8) | |

**41**  Modelling of artists; rental of tennis courts; lending libraries; booking of seats for shows; videotaping; nursery schools; physical education; discotheque services; animal training; dubbing; gaming; publication of books; educational information; recreational information; entertainment information; movie studios; health club services; club services (entertainment or education); night clubs; correspondence courses; microfilming; videotape editing; production of radio and television programmes; music-halls; game services provided on-line (from a

computer network); religious education; gymnastic instruction; practical training (demonstration); organisation of balls; organisation of exhibitions for cultural or educational purposes; providing recreational facilities; arranging and conducting of colloquiums; arranging and conducting of congresses; arranging and conducting conferences; arranging and conducting of workshops (training); arranging and conducting of seminars; arranging and conducting of symposiums; arranging of beauty contests; organisation of competitions (education or entertainment); lotteries; holiday camp services (entertainment); organisation of shows (impresario services); vocational guidance (education or training advice); boarding schools; amusement park; sign language interpretation; television entertainment; bookmobile services; providing karaoke services; providing golf facilities; providing amusement arcade services; providing cinema facilities; presentation of live performances; theatre productions; educational examination; videotape film production; film production; rental of sound recordings; rental of audio equipment; rental of camcorders; rental of video cassette recorders; rental of videotapes; rental of show scenery; rental of cine-films; rental of lighting apparatus for theatrical sets or television studios; rental of radio and television sets; rental of skin diving equipment; rental of stage scenery; electronic desktop publishing; publication of electronic books and journals online; publication of texts (other than publicity texts); radio entertainment; entertainer services; zoological gardens; news reporters services; party planning (entertainment); music composition services; subtitling; providing of casino facilities (gambling); providing museum facilities (presentation, exhibitions); educational services; orchestra services; translation; scriptwriting services; recording studio services; digital imaging services; circuses; production of shows.

Agences de modèles pour artistes; location de cours de tennis; bibliothèques de prêt; réservation de places de spectacles; enregistrement sur bandes vidéo; écoles maternelles; éducation physique; services de discothèques; dressage d'animaux; postsynchronisation; jeux; édition de livres; informations à buts éducatifs; informations en matière de loisirs; informations en matière de divertissement; studios cinématographiques; clubs de santé; services de clubs (divertissement ou éducation); boîtes de nuit; cours par correspondance; microfilmage; montage de bandes vidéo; production d'émissions radiophoniques et télévisées; music-hall; services de jeu proposés en ligne (depuis un réseau informatique); éducation religieuse; enseignement de la gymnastique; formation pratique (démonstration); organisation de bals; organisation d'expositions à vocation culturelle ou pédagogique; services de loisirs; organisation et animation de colloques; organisation et tenue de congrès; organisation et animation de conférences; organisation et conduite d'ateliers de formation; organisation et animation de séminaires; organisation et animation de symposiums; organisation de concours de beauté; organisation de concours (à caractère pédagogique ou récréatif); loteries; services de camps de vacances (divertissement); organisation de spectacles (services d'impresario); orientation professionnelle (conseils pédagogiques ou en matière de formation); pensionnats; parcs d'attractions; interprétation du langage gestuel; divertissements télévisuels; services de bibliothèque itinérante; services de karaoké; exploitation de parcours de golf; exploitation de salles de jeux; exploitation de salles de cinéma; représentation de spectacles; représentations théâtrales; épreuves pédagogiques; production de films sur bandes vidéo; production cinématographique; location d'enregistrements sonores; location d'appareils audio; location de caméras vidéo; location de magnétoscopes; location de bandes vidéo; location de décors de spectacles; location de films cinématographiques; location d'appareils d'éclairage pour des scènes de théâtre ou des studios de télévision; location de postes de radio et de télévision; location d'équipements de plongée sous-marine; location de décors de théâtre; publication assistée par ordinateur; publication en ligne de livres et de revues électroniques; publication de textes (autres que publicitaires); divertissements radiophoniques; services d'artistes de spectacles; jardins zoologiques; services de reporters; organisation de fêtes (divertissement); services de composition musicale; sous-titrage; exploitation de casinos de jeux; services de musées (présentation, expositions); services d'enseignement; services d'orchestres; services de traduction; rédaction de scénarios; services de studio d'enregistrement; services d'imagerie numérique; cirques; production de spectacles.

| | | |
|---|---|---|
| (822) | Basic registration | RU, 03.07.2002, 216203 |
| (300) | Data relating to priority under the Paris Convention and other data relating to registration of the mark in the country of origin | |
| | RU, 03.04.2002, 2002707649 | |
| (831) | Designation(s) under the Madrid Agreement | |
| | KZ - TJ | |
| (832) | Designation(s) under the Madrid Protocol | |
| | EE - GE - LT - TM - UZ | |
| (834) | Designation(s) under the Protocol by virtue of Article 9sexies | |
| | AM - AZ - BY - KG - LV - MD - UA | |

**Registration**

| | | |
|---|---|---|
| (450) | Publication number and date | 2002/23 Gaz, 26.12.2002 |
| (831) | Designation(s) under the Madrid Agreement | |
| | AM - AZ - BY - KG - KZ - LV - MD - TJ - UA - UZ | |
| (832) | Designation(s) under the Madrid Protocol | |
| | EE - GE - LT - TM | |
| (580) | Date of recording (date of notification from which the time limit to notify the refusal starts) | 05.12.2002 |

**Grant of protection subject to opposition**
**GE**

(450)   Publication number and date          2003/18 Gaz, 16.10.2003
        Opposition end date                  25.11.2003


**Grant of protection**
**KG**

(450)   Publication number and date          2003/22 Gaz, 11.12.2003


**Grant of protection**
**GE**

(450)   Publication number and date          2003/25 Gaz, 05.02.2004

Бібліографічні дані свідоцтва №56105

(111)  56105

(151)  15.11.2005

(181)  **06.04.2014**

(210)  2004043570

(220)  06.04.2004

(450)  15.11.2005. Бюл. № 11

(591)  синій, блакитний, білий, червоний

(540)



(731)  Товариство з обмеженою відповідальністю «Сінніс, Лтд»; вул. Хрещатик, 195, м. Черкаси, 18002 (UA)

(732)  **Товариство з обмеженою відповідальністю «Сінніс, Лтд»; вул. Хрещатик, 195, м. Черкаси, 18002 (UA)**

(740)  Ярмак Наталія Григорівна; Фірма "Регіон", вул. Велика Житомирська, 33, м. Київ, 01025 (UA)

(750)  Фірма «Регіон» ТПП України; Ярмак Н. Г.; вул. В. Житомирська, 33, м. Київ, 25, 01025 (UA)

(511)  Кл.: 37, 41, 43

37 - Встановлювання, технічне доглядання і лагодження гральних автоматів.

41 - Надання послуг у сфері грального бізнесу, а саме: організація і утримування гральних закладів, казино, залів гральних автоматів з грошовим виграшем, більярдів; дозвілля; забезпечування приміщенням для дозвілля, ігор; послуги щодо ігор на гроші; ігрові послуги через комп'ютерні мережі; інформування щодо дозвілля; інформування щодо розваг; нічні клуби; облаштовування дозвілля; розваги.

43 - Послуги щодо забезпечування харчами та напоями; готелі; наймання (орендування) тимчасового житла; житлові агентства (готелі; пансіонати); замовляння тимчасового житла; кав'ярні; кафе; кафетерії; мотелі; ресторани; ресторани самообслуговування; туристські бази; постачання харчів та напоїв; шинки чи буфети (заклади швидкого і повсякчасного обслуговування).

Бібліографічні дані свідоцтва №35975

(111)   35975

(540)

(151)   17.11.2003

(181)   **08.02.2012**

(210)   2002020890

(220)   08.02.2002

(450)   17.11.2003. Бюл. № 11

# Вулкан

(731)   Дочірнє підприємство «Кондитерська корпорація «Рошен»; бульв. Перова, 40, м. Київ, 139, 02139 (UA)

(732)   **Дочірнє підприємство "Кондитерська корпорація "Рошен"; вул. Павла Усенка, 8, м. Київ, 02105 (UA)**

(740)   Пікалов Сергій Юрійович; вул. Миколи Кравченка, 15, кв. 24, м. Київ, 04050 (UA)

(750)   Дочірнє підприємство "Кондитерська корпорація "Рошен"; вул. Електриків, 26/9, м. Київ, 04176 (UA)

(771)   Дочірнє підприємство «Кондитерська корпорація «Рошен»; бульв. Перова, 40, м. Київ, 139, 02139 (UA)

(511)   Кл.: 16, 30, 35

16 - Буклети; вивіски, таблички паперові або картонні; видання друкові (друковані); друкарська продукція; етикетки, крім тканинних; інформаційні бюлетні; календарі; каталоги; коробки картонні або паперові (шабатури); кульки, пакети (паперові); мішки, конверти (торбинки), що належать до 16 класу; обгортковий папір; папір на опакування; перевідні малюнки; плакати; пластмасові плівки обгорткові; пластикові розтяжні плівки для пакування; проспекти рекламні.

30 - Борошняні кондитерські вироби; вафлі; галетне печиво; желе фруктові (кондитерські вироби); жуйки (жуйні гумки) нелікарські (немедичні); карамелі (цукерки); карамельки-таблетки (кондитерські вироби); кондитерські вироби (солодощі); ласощі для прикрашання новорічних ялинок; локричні кондитерські вироби; льодяники; марципани; печиво; помадки (кондитерські вироби); пряники; солодове сухе печиво; сухе печиво; тістечка; тонке сухе печиво (крекер); торти; пироги; халва; цукерки; цукрові кондитерські вироби; шоколад.

35 - Аукціонний продаж; вивчання ринку; влаштовування виставок на комерційні або рекламні потреби; влаштовування ярмарків на комерційні або рекламні потреби; демонстрування кондитерських виробів; ділове досліджування; допомога покупцям у виборі та придбанні продовольчих товарів, зокрема кондитерських виробів, на підприємствах роздрібної торгівлі; досліджування ринкове; імпортно-експортні агентства; оформляння вітрин; надавання консультаційних та маркетингових послуг; рекламування; розміщування в одному місці, на користь іншим особам, асортименту продовольчих товарів, зокрема кондитерських виробів, що дозволяє покупцям оглядати та купувати ці товари; розповсюджування зразків; сприяння продажеві (посередництво).

1

Бібліографічні дані свідоцтва №34425

(111)   34425

(151)   15.08.2003

(181)   **15.10.2011**

(210)   2001106400

(220)   15.10.2001

(450)   15.08.2003. Бюл. № 8

(591)   чорний, червоний, білий

(731)   Торгово-виробнича корпорація «АЛЕФ»;
        вул. Радгоспна, 76, смт Ювілейне,
        Дніпропетровський р-н, Дніпропетровська
        обл., 52005 (UA)

(540)



(732)   **Товариство з обмеженою відповідальністю "Агросфера";**
        **вул. Собінова, 1, м. Дніпропетровськ, 49083 (UA)**

(750)   Товариство з обмеженою відповідальністю "Агросфера";
        вул. Собінова, 1, м. Дніпропетровськ, 49083 (UA)

(770)   Торгівельно-виробнича корпорація "Алеф";
        вул. Собінова, 1, м. Дніпропетровськ, 49083 (UA)

(771)   Торгівельно-виробнича корпорація "Алеф";
        вул. Радгоспна, 76, смт Ювілейне, Дніпропетровський р-н,
        Дніпропетровська обл., 52005 (UA)

(511)   Кл.: 1, 5, 42

        1 - Хімічні продукти, призначені для використовування в промисловості,
        науці, фотографії, сільському господарстві, садівництві та лісівництві;
        необроблені синтетичні смоли, необроблені пластмаси; добрива; хімічні
        речовини для гасіння вогню; препарати для термооброблення і паяння
        металів; хімічні речовини для консервування харчових продуктів; дубильні
        речовини; клейкі речовини на промислові потреби; всі товари, що
        включені до 1 класу.

        5 - Фармацевтичні, ветеринарні і гігієнічні препарати; дієтичні речовини
        на лікарські потреби, дитяче харчування; пластирі, перев'язувальні
        матеріали; матеріали для пломбування зубів і виготовляння зубних
        виліпків; дезінфікувальні засоби; препарати для нищення паразитів і
        шкідників; фунгіциди, гербіциди; всі товари, що включені до 5 класу, в
        тому числі засоби захисту рослин.

        42 - Забезпечування харчами і напоями; забезпечування тимчасовим
        житлом; лікарське, гігієнічне та косметичне доглядання; ветеринарні та
        сільськогосподарські послуги; правничі послуги; наукове та промислове
        досліджування; програмування; всі послуги, що включені до 42 класу.

Бібліографічні дані свідоцтва №59679

| | | |
|---|---|---|
| **(111)** | 59679 | **(540)** |
| **(151)** | 15.03.2006 | |
| **(181)** | **26.01.2014** | |
| **(210)** | 2004010581 | |
| **(220)** | 26.01.2004 | |
| **(450)** | 15.03.2006. Бюл. № 3 | |
| **(731)** | Открытое Акціонєрноє Общество «Концерн «Іжмаш»; проєзд Дєрябіна, д. 3, г. Іжевск, 426006, Російська Федерація (RU) | |

## ВУЛКАН
## VULKAN

**(732)** **Открытоє Акціонєрноє Общєство «Концерн «Іжмаш»; проєзд Дєрябіна, д. 3, г. Іжевск, 426006, Російська Федерація (RU)**

**(740)** Мошинська Ніна Миколаївна;
вул. Щорса, 27, кв. 7, м. Київ, 03027 (UA)

**(750)** Мошинська Ніна Миколаївна;
вул. Л. Первомайського, 11, кв. 45, м. Київ, 23, 01023 (UA)

**(511)** Кл.: 13, 28

13 - Вогнепальна зброя; карабіни; мисливська вогнепальна зброя; пневматичні пістолети (зброя); рушниці (зброя); чохли на вогнепальну зброю; запасні частини, що належать до 13 класу, до вищезазначених товарів.

28 - Іграшки; іграшки з рухомими частинами або пересувні; ігри автоматичні, крім телевізорних; ігри; мішені; пістолети іграшкові; автомати іграшкові; рушниці іграшкові; пістолети пневматичні; автомати пневматичні; рушниці пневматичні; рушниці гарпунні (спортивне знаряддя); пристрої для електронних ігор (за виключенням пристроїв з обов'язковим використанням телевізійних приймачів).

1

# Response Annex 22

ARRANGEMENT DE MADRID
CONCERNANT L'ENREGISTREMENT INTERNATIONAL DES MARQUES
REFUS DE PROTECTION
notifie au Bureau international de l'Organisation Mondiale de la Propriete
intellectuelle (OMPI) selon l'article 5 de l'Arrangement de Madrid

I. Administration qui notifie le refus:

Institut National de la Propriete intellectuelle (INPI)
Rive gauche, la Maison des ministeres, rue 35, batiment 8, entree 13, bloc 4,
010000, Astana, Kazakhstan
Telephone: +7(7172) 50-28-98          Telecopie: +7(7172) 74-08-26

II. N° de l'enregistrement international faisant l'objet du refus:     977713     de     12.08.2008

III. Nom du titulaire de l'enregistrement international faisant l'objet du refus:

Ritzio Entertainment Group Limited

IV. Motif de refus:
1. Marque nationale anterieure: (540) ВУЛКАН; (111) 16505; (151) 17.05.2004; (220) 08.01.2003; (511)
cl. 35, 37, 39, 41, 42, 43 - voir p.3; (732) Tovarichtchestvo s ogranitchennoy otvetstvennostyu "VULKAN",
pr. Seyfullina, 410, g. Almaty, 480004, Kazakhstan (KZ);
2. Marque internationale anterieure: (540) VULCANO; (111) 717773; (151) 05.08.1999; (300) 03.03.1999;
(511) cl. 30, 32, 33 - voir p.4; (732) Francesco Illy Lettenrain 16, CH-6045 Meggen (CH).

V. Disposition de la loi nationale applicable en la matiere:
Loi sur les marques de produits et de services et les appellations d'origine: pp. 1, p. 1 art. 7

VI.        Refus pour la totalite des produits et/ou services;
    [X] Refus pour les produits et/ou services suivants;
        cl. 30, 32, 33, 35, 37, 39, 41, 42, 43 - totalement.

VII. Recours contre la decision de refus:
- delai de recours: 3 mois a partir de la prononciation de ce refus; pendant le delai precite le refus est
provisoire. Faute de l'appel de reexamen ou recour contre le present refus ou l'appel de la prolongation
(6 mois, pas plus) celui-ci deviendra definitif;
- autorite a laquelle le recours doit xtre adresse:
  INPI, Rive gauche, la Maison des ministeres, rue 35, batiment 8, entree 13, bloc 4,
  010000, Astana, Kazakhstan
  assistance d'un mandataire local est obligatoire;
- taxe legale adequate;

VII. Date a laquelle le refus a ete prononce:     16.10.2009

IX. Signature et sceau officiel de l'Office qui notifie le refus:
                                    Artykova A.K.
                                    Chef du service des marques

МИНИСТЕРСТВО ЮСТИЦИИ  РЕСПУБЛИКИ КАЗАХСТАН
КОМИТЕТ ПО ПРАВАМ ИНТЕЛЛЕКТУАЛЬНОЙ СОБСТВЕННОСТИ
РЕСПУБЛИКАНСКОЕ ГОСУДАРСТВЕННОЕ КАЗЕННОЕ ПРЕДПРИЯТИЕ
«НАЦИОНАЛЬНЫЙ ИНСТИТУТ ИНТЕЛЛЕКТУАЛЬНОЙ СОБСТВЕННОСТИ» (НИИС)
ул. Омарова, 48, г.Астана, Республика Казахстан, 010001, (3172) 39-07-65; ул. Рашита и Муслима Абдуллиных 6,
павильон 1, г.Алматы, Республика Казахстан, 050002,  тел (3272) 30-22-26

---

# ВЫПИСКА  ИЗ  ГОСУДАРСТВЕННОГО  РЕЕСТРА  ТОВАРНЫХ
# ЗНАКОВ  РЕСПУБЛИКИ  КАЗАХСТАН

(111) свидетельство      16505
(151) дата регистрации РК  17.05.2004
(210) № заявки         22230
(220) дата подачи заявки   08.01.2003
(540) знак              ВУЛКАН
(730) владелец         "ВУЛКАН" жауапкершілігі шектеулі серіктестігі
(KZ)Товарищество с ограниченной ответственностью
"ВУЛКАН" (KZ)480035, г.Алматы, ул. Жандосова, д. 51.

(511) классы МКТУ    6, 17, 19, 35, 37, 39, 41, 42, 43, 44

35 - аукционная продажа; деловые и коммерческие операции, информация
деловая, статистическая; консультационные услуги, изучение рынка,
маркетинга, организация выставок для коммерческих и рекламных целей;
реализация товаров, оптовая и розничная торговля, реклама, сделки,
экспортно-импортные операции;

37 - строительство и ремонт зданий; проверка строительных проектов;
ремонт электропроводки, мебели, оборудования, инструментов;

39 - доставка товаров; упаковка и хранение товаров; организация
путешествий, перевозка и сопровождение путешественников, перевозки
автомобильным, водным, железнодорожным транспортом, туристические
экскурсии, экспедирование грузов;

41 - организация и проведение семинаров, симпозиумов;

42 - использование запатентованных изобретений; промышленные и научные
исследования и разработки; проектно - конструкторские разработки;

43 - бары, кафе, кафетерии, рестораны, гостиницы;

44 - услуги медицинские; услуги в области гигиены и

косметики для людей и
животных, парикмахерские, химчистки.

OMPI - ROMARIN – Détails de l'enregistrement international ·                                                  Стр. 1

717773

| | | |
|---|---|---|
| 151 | Date de l'enregistrement | |
| | 05.08.1999 | |
| 160 | Date prévue de l'expiration de l'enregistrement/du renouvellement | |
| | 05.08.2009 | |
| 270 | Langue de la demande | |
| | Français | |
| | État actuel | |
| 732 | Nom et adresse du titulaire de l'enregistrement | |
| | Francesco Illy | |
| | Lettenrain 16, | |
| | CH-6045 Meggen  (CH) | |
| 812 | État contractant ou organisation contractante sur le territoire duquel ou de laquelle le titulaire a un établissement industriel ou commercial effectif et sérieux | |
| | CH | |
| 740 | Nom et adresse du mandataire | |
| | Dr. Lusuardi AG | |
| | Kreuzbühlstrasse 8 | |
| | CH-8008 Zürich  (CH) | |
| 540 | Marque | |

## VULCANO

541    Reproduction de la marque lorsque celle-ci est représentée en caractère standard

511    Classification internationale des produits et des services aux fins de l'enregistrement des marques (classification de Nice) - NCL(7)

30    Tea, cocoa, sugar, rice, tapioca, sago, flour and preparations made from cereals, pasta, bread, biscuits, cakes, pastry and confectionery, edible ice; honey, treacle; yeast, baking powder; salt; mustard; pepper; vinegar; sauces; spices; ice.

Thé, cacao, sucre, riz, tapioca, sagou, farines et préparations faites de céréales, pâtes alimentaires, pain, biscuits, gâteaux, pâtisserie et confiserie, glaces comestibles; miel, sirop de mélasse; levure, poudre pour faire lever; sel; moutarde; poivre, vinaigre, sauces; épices; glace.

32    Beer, ale and porter; mineral and sparkling water and other non-alcoholic beverages; syrups and other preparations for making beverages.

Bière, ale et porter; eaux minérales et gazeuses et autres boissons non alcooliques; sirops et autres préparations pour faire des boissons.

822    Enregistrement de base

CH, 03.03.1999, 463777

300    Données relatives à la priorité selon la Convention de Paris et autres données relatives à l'enregistrement de la marque dans le pays d'origine

CH, 03.03.1999, 463777

831    Désignation(s) selon l'Arrangement de Madrid

DZ - EG - KZ - SD - TJ

832    Désignation(s) selon le Protocole de Madrid

DK - GB - NO - SE - UZ

834    Désignation(s) selon le Protocole de Madrid en vertu de l'article 9sexies

AM - AT - BA - BG - BX - CN - CU - CZ - DE - ES - FR - HR - HU - IT - KG - KP - LI - LV - MA - MC - MD - MK - MN - PL - PT - RO - RS - RU - SI - SK - SM - UA - VN

527    Indications relatives aux exigences d'utilisation

GB

| | Enregistrement |
|---|---|
| 450 | Date et numéro de publication |

1999/17 Gaz, 30.09.1999

831   Désignation(s) selon l'Arrangement de Madrid

AM - AT - BA - BG - BX - CN - CU - CZ - DE - DZ - EG - ES - FR - HR - HU - IT - KG - KP - KZ - LI - LV - MA - MC - MD -
MK - MN - PL - PT - RO - RU - SD - SI - SK - SM - TJ - UA - UZ - VN - YU

832   Désignation(s) selon le Protocole de Madrid

DK - GB - NO - SE

527   Indications relatives aux exigences d'utilisation

GB

580   Date de l'inscription (date de notification à partir de laquelle commence à courir le délai pour émettre le refus de
protection)

09.09.1999

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de
l'application de la règle 5)

AM

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de
l'application de la règle 5)

AT

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de
l'application de la règle 5)

BA

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de
l'application de la règle 5)

BG

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de
l'application de la règle 5)

BX

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de
l'application de la règle 5)

CU

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de
l'application de la règle 5)

CZ

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de
l'application de la règle 5)

DZ

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de
l'application de la règle 5)

EG

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de
l'application de la règle 5)

FR

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de
l'application de la règle 5)

HR

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de
l'application de la règle 5)

HU

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de
l'application de la règle 5)

# Response Annex 23

# ARRANGEMENT ET PROTOCOLE DE MADRID

## REFUS PROVISOIRE DE PROTECTION

RÈGLE 17.1) DU RÈGLEMENT D'EXÉCUTION COMMUN À
L'ARRANGEMENT DE MADRID CONCERNANT L'ENREGISTREMENT INTERNATIONAL DES
MARQUES ET AU PROTOCOLE RELATIF À CET ARRANGEMENT

---

I. Administration qui notifie le refus: **Centre National de la Propriété Intellectuelle**
**20, oul. Kozlova, 220034 Minsk, Bélarus**
**Téléphone (Division des marques): (+375 17) 294 36 99, (+375 17) 285 25 71,**
**Télécopieur: (+375 17) 294 36 56**

---

II. No de l'enregistrement international: **984 297**

---

III. Nom et adresse du titulaire de l'enregistrement international:

Ritzio Entertainment Group Limited
Diagorou 4, Kermia Building, Office 60, CY-1097 Nicosia (Chypre)

---

IV. Refus provisoire fondé sur un examen d'office

---

V. Motifs du refus:

La marque est semblable au point de prêter à confusion:
- à la marque verbale en cyrillique "ВУЛКАН VULKAN" faisant l'objet de l'enregistrement national No 26079 (date de dépôt: le 2005.04.05) enregistrée au nom de Zelepouga Oksana Anatolievna (adresse: kv. 4, k. 2, d. 18, pr-t Stroitelei, BY-211000 Vitebsk, Bélarus);
- à la marque "ВУЛКАН, fig." faisant l'objet de l'enregistrement international No 791 038 enregistrée le 2002.09.03 au nom de "VOLCANO" Gaming Clubs Ltd. (adresse: ul. Pokrovka, 3/7, str. 1, RU-101000 Moscow, Fédération de Russie);
- à la marque "ВУЛКАН, fig" faisant l'objet de l'enregistrement international No 905 612 enregistrée le 2006.06.07 au nom de Obshestvo s ogranichennoj otvetstvennostju "Firma "Bars" (adresse: str. 1, 56/17, Baumanskaya, RU-105005 Moskva, Fédération de Russie).
Pour les listes des produits et services desdites marques et les reproductions des marques No 791 038 et No 905 612 voir l'annexe.

---

VI. Dispositions de la loi nationale applicables en la matière (voir extrait de la loi sous le point X): **5.1.1; 5.1.2**

---

VII.

☐ Refus pour la totalité des produits et/ou services:

☐ Refus pour les produits et/ou services suivants:

☒ Protection seulement pour les produits et/ou services suivants: **Cl. 32: tous les produits concernés.**

---

VIII. Recours contre la décision de refus:
   a) délai de recours: 3 mois à partir de la date·de réception de la présente notification par le titulaire de l'enregistrement international;
   b) autorité à laquelle le recours doit être adressé: Centre National de la Propriété Intellectuelle (à l'adresse indiquée à la case 1);
   c) assistance obligatoire d'un mandataire domicilié en République du Bélarus (une liste des mandataires peut être obtenu sur le site internet du Centre National de la Propriété Intellectuelle:
      http://www.belgospatent.org.by/index.php?option=com_content&view=article&id=136&Itemid=54

---

IX. Date: **2009.11.13**

---

X.          LOI SUR LES MARQUES DE PRODUITS (MARQUES DE SERVICES)
                         DE LA REPUBLIQUE DU BELARUS

(entrée en vigueur le 5 février 1993, révisée le 27 octobre 2000 et modifiée le 05 janvier 2004)

(Extrait)

## 1. Marque de produits ou de services

1. La marque de produits (la marque de services) (ci-après dénommée "marque") est un signe permettant de distinguer les produits fabriqués et les services offerts par une personne physique ou morale des produits ou des services (ci-après dénommés "produits") du même type fabriqués ou offerts par une autre personne physique ou morale.

2. Sont enregistrés en tant que marques les signes susceptibles d'une représentation graphique: dénominations verbales y compris les noms partonymiques, les lettres, les chiffres, les signes figuratifs, les combinaisons de couleurs, les signes tridimentionnels y compris la forme du produit ou son conditionnement ou les combinaisons de ces éléments.

3. Une marque peut être enregistrée en n'importe quelle couleur ou en n'importe quelle association de couleurs.

## 2. Protection juridique de la marque

3. Le droit sur la marque est protégé par l'Etat. L'enregistrement de la marque est attesté par un certificat. Le certificat atteste la date de priorité et le droit exclusif du titulaire sur la marque pour les produits indiqués dans le certificat; il contient une représentation de la marque.

## 4. Motifs objectifs d'un refus d'enregistrement

1. Ne peuvent être enregistrées les marques :
1.1- qui ne présentent pas de caractère distinctif;
1.2- qui sont devenues une désignation usuelle des produits d'un type déterminé;
1.3- qui constituent des symboles ou des termes courants;
1.4- qui sont composées exclusivement de signes ou d'indications pouvant servir à désigner l'espèce, la qualité, la quantité,    les propriétés, la destination, la valeur des produits ou encore le lieu et l'époque de leur production ou de leur écoulement;
1.5- qui sont constituées par la forme du produit ou de son conditionnement qui est imposée exclusivement ou principalement par la nature même du produit ou est nécessaire pour l'obtention d'un résultat technique ou donne une valeur substantielle au produit.

2. Ces signes ou indications peuvent être inclus dans la marque en qualité d'éléments non protégés dans la mesure où ils ne prédominent pas dans celle-ci.

4. Ne peuvent être enregistrées les marques qui consistent exclusivement en signes ou indications qui constituent des armoiries, drapeaux ou emblèmes d'Etats, des dénominations officielles d'Etats, des drapeaux, emblèmes ou dénominations abrégées ou complètes d'organisations internationales intergouvernementales, des poinçons officiels de contrôle, de garantie ou d'essai, ou encore des décorations ou d'autres signes honorifiques, ou qui sont semblables à ceux-ci au point de prêter à confusion.

Ces signes ou indications peuvent être inclus dans la marque en qualité d'éléments non protégés, sous réserve du consentement de leur titulaire ou de l'organe compétent.

5. Ne peuvent être enregistrés en qualité de marques les signes ou indications:
5.1- qui sont inexactes ou susceptibles d'induire le consommateur en erreur quant au produit, à son lieu de production ou à son producteur;
5.2- qui sont constitués d'indications géographiques identifiant des vins ou des spiritueux protégés dans la République du Bélarus en vertu de traités internationaux, pour désigner les vins ou les spiritueux qui ne sont pas originaires du lieu indiqué;
5.3- qui sont contraires à l'ordre public, aux principes humanitaires ou à la morale.

## 5. Autres motifs d'un refus d'enregistrement

1. Ne peuvent être enregistrés en qualité de marques les signes ou indications identiques ou semblables au point de prêter à confusion:
1.1- à des marques enregistrées ou ayant fait l'objet d'une demande d'enregistrement dans la République du Bélarus avec une date de priorité antérieure au profit d'un tiers, pour les produits du même type;
1.2- à des marques de tiers protégées dans la République du Bélarus en vertu de traités internationaux, pour les produits du même type;
1.3- à des marques de tiers qui sont reconnues notoires par l'administration nationale pour quelque type de produits que ce soit.

---

X. Annexes (marquées ci-dessous d'une croix)

☒   Reproduction(s) de la (des) marque(s) qui
     semble(ent) être en conflit comportant un
     élément figuratif ou un graphisme spécial


☒   Liste indiquant, pour chaque marque qui
     semble être en conflit, les produits et/ou
     services auxquels elle s'applique

XI. Signature ou sceau officiel de l'Administration
qui a prononcé le refus

---

ENREGISTREMENT NATIONAL No 26079

LISTE DES SERVICES

Cl. 35: реклама; менеджмент в сфере бизнеса; административная деятельность в сфере бизнеса; офисная служба; ведение автоматизированных баз данных, запись сообщений, поиск информации в компьютерных файлах (для третьих лиц), продвижение товаров (для третьих лиц), сбор информации по компьютерным базам данных, систематизация информации в компьютерных базах данных, услуги снабженческие для третьих лиц (закупка и обеспечение предпринимателей товарами, относящимися к 07 и 09 классам МКТУ), услуги, связанные с оптовой и розничной торговлей товарами, относящимися к 07 и 09 классам МКТУ.

Cl. 38: телекоммуникации; обеспечение доступа в Интернет (услуги провайдеров), обеспечение телекоммуникационного подключения к Интернету, передача сообщений, передача сообщений и изображений с использованием компьютера, связь волоконно-оптическая, радиотелефонная, с использованием компьютерных терминалов, спутниковая, телеграфная, телефонная, факсимильная, пейджинговая (с использованием радио, телефона или других средств электронной связи)

Cl. 42: научные и технологические услуги и относящиеся к ним научные исследования и разработки; услуги по промышленному анализу и научным исследованиям; разработка и усовершенствование технического и программного обеспечения компьютеров; юридическая служба; восстановление компьютерных баз данных, инсталляция программного обеспечения, консультации в области компьютерной техники, модернизация программного обеспечения, обслуживание техническое программного обеспечения, проектирование компьютерных систем, прокат компьютеров и средств программного обеспечения, размещение веб-сайтов, размножение компьютерных программ, разработка программного обеспечения, создание и техническое обслуживание веб-сайтов для третьих лиц, составление программ для компьютеров.

ENREGISTREMENT INTERNATIONAL No 791 038

REPRODUCTION DE LA MARQUE



LISTE DES SERVICES

Cl. 41: Agences de modèles pour artistes; location de cours de tennis; bibliothèques de prêt; réservation de places de spectacles; enregistrement sur bandes vidéo; écoles maternelles; éducation physique; services de discothèques; dressage d'animaux; postsynchronisation; jeux; édition de livres; informations à buts éducatifs; informations en matière de loisirs; informations en matière de divertissement; studios cinématographiques; clubs de santé; services de clubs (divertissement ou éducation); boîtes de nuit; cours par correspondance; microfilmage; montage de bandes vidéo; production d'émissions radiophoniques et télévisées; music-hall; services de jeu proposés en ligne (depuis un réseau informatique); éducation religieuse; enseignement de la gymnastique; formation pratique (démonstration); organisation de bals; organisation d'expositions à vocation culturelle ou pédagogique; services de loisirs; organisation et animation de colloques; organisation et tenue de congrès; organisation et animation de conférences; organisation et conduite d'ateliers de formation;

organisation et animation de séminaires; organisation et animation de symposiums; organisation de concours de beauté; organisation de concours (à caractère pédagogique ou récréatif); loteries; services de camps de vacances (divertissement); organisation de spectacles (services d'impresario); orientation professionnelle (conseils pédagogiques ou en matière de formation); pensionnats; parcs d'attractions; interprétation du langage gestuel; divertissements télévisuels; services de bibliothèque itinérante; services de karaoké; exploitation de parcours de golf; exploitation de salles de jeux; exploitation de salles de cinéma; représentation de spectacles; représentations théâtrales; épreuves pédagogiques; production de films sur bandes vidéo; production cinématographique; location d'enregistrements sonores; location d'appareils audio; location de caméras vidéo; location de magnétoscopes; location de bandes vidéo; location de décors de spectacles; location de films cinématographiques; location d'appareils d'éclairage pour des scènes de théâtre ou des studios de télévision; location de postes de radio et de télévision; location d'équipements de plongée sous-marine; location de décors de théâtre; publication assistée par ordinateur; publication en ligne de livres et de revues électroniques; publication de textes (autres que publicitaires); divertissements radiophoniques; services d'artistes de spectacles; jardins zoologiques; services de reporters; organisation de fêtes (divertissement); services de composition musicale; sous-titrage; exploitation de casinos de jeux; services de musées (présentation, expositions); services d'enseignement; services d'orchestres; services de traduction; rédaction de scénarios; services de studio d'enregistrement; services d'imagerie numérique; cirques; production de spectacles.

ENREGISTREMENT INTERNATIONAL No 905 612

REPRODUCTION DE LA MARQUE



LISTE DES PRODUITS ET SERVICES

Cl. 09: appareils d'enregistrement, de transmission ou de reproduction de sons ou d'images; supports d'enregistrement magnétiques, disques acoustiques; distributeurs automatiques et mécanismes pour appareils à prépaiement; équipements de traitement de données et ordinateurs; distributeurs de billets [tickets], chargeurs automatiques de disques, distributeurs automatiques, appareils électriques de surveillance, appareils pour l'enregistrement de son, appareils électriques de communication, cassettes vidéo, écrans vidéo, disquettes, disques phonographiques, disques optiques, cd-rom (unité de disque compact à mémoire morte), disques compacts audiovidéo, aimants décoratifs, mécanismes pour appareils à prépaiement, supports d'enregistrements sonores, supports de données magnétiques, supports de données optiques, programmes de système d'exploitation pour ordinateurs, programmes de jeux électroniques, programmes informatiques (logiciels téléchargeables), publications électroniques téléchargeables, cartes à mémoire ou à microprocesseur, totalisateurs, appareils pour jeux conçus pour être utilisés seulement avec récepteur de télévision, appareils pour le divertissement conçus pour être utilisés seulement avec un récepteur de télévision, périphériques d'ordinateur, avertisseurs contre le vol, puces (circuits intégrés).
Cl. 16: produits imprimés, almanachs, affiches, billets, carton pour affiches, brochures, livrets, bulletins d'information, journaux, gravures, publications, calendriers, éphémérides, presses à cartes de crédit, non électriques, catalogues, livres, dessins, magazines, prospectus, horaires imprimés, reproductions graphiques.
Cl. 21: ustensiles et récipients pour le ménage ou la cuisine (ni en métaux précieux, ni en plaqué); peignes et éponges; brosses (à l'exception des pinceaux); matériaux pour la brosserie; matériel de nettoyage; paille de fer; verre brut ou mi-ouvré (à l'exception du verre de construction); verrerie, porcelaine et faïence non comprises dans d'autres classes, y compris des objets décoratifs, plats, soucoupes, gobelets en porcelaine; bouteilles, bustes en porcelaine, terre cuite ou verre; vases, gaufriers non électriques, seaux à rafraîchir, porte-serviettes, tendeurs de vêtements, carafes, peignes à cheveux, appareils de désodorisation à usage personnel, récipients pour le ménage ou la cuisine boîtes en verre, récipients calorifuges pour boissons, récipients calorifuges pour les aliments, bocaux, poêles à frire, cure-dents, produits céramiques pour le ménage; objets d'art en porcelaine, terre cuite ou verre; faitouts, ronds de serviettes, tirelires non métalliques, corbeilles à pain (à usage ménager), paniers à usage domestique, percolateurs à café non électriques,

moulins à café à main, chopes à bière, couvercles de plats, cruches, glacières portatives non électriques, cuillers à mélanger (ustensiles de cuisine), pelles (accessoires de table), spatules (ustensiles de cuisine), moulins à poivre à main, jattes, boîtes à savon, batteries de cuisine, paniers équipés pour pique-nique (avec vaisselle), trousses de toilette, emporte-pièces, coupe-pâte, arroseurs, bâtonnets pour cocktails, poivriers, gants de ménage, plateaux à usage domestique, plateaux (ustensiles de cuisine), bougies, dessous-de-plat (ustensiles de table), dessous de carafes non en papier et autres que linge de table, porte-cartes de menus, porte-couteaux de table, supports de fers à repasser, vaisselle (hormis couteaux fourchettes et cuillers); articles en porcelaine, terre cuite, vaisselle et articles en cristal (verrerie); ustensiles cosmétiques, ustensiles de toilette, services à épices, appareils pour le démaquillage non électriques, articles de réfrigération d'aliments contenant des fluides d'échange de chaleur à usage domestique, ouvre-bouteilles, bouchons en verre, poudriers, distributeurs de savon, peignes, chausse-pieds, saladiers, sucriers, services (vaisselle), services à café et à thé, filtres à thé, siphons pour eaux gazeuses, mixeurs à usage domestique, presses à fruits à usage domestique, salières, récipients à boire, bouteilles réfrigérantes, gobelets en papier ou en matières plastiques, verres, verres à boire, statues et figurines en porcelaine, terre cuite ou verre; soupières, plateaux de tables, râpes (ustensiles de maison), bouteilles isolantes, urnes, appareils destinés à la projection d'aérosols non à usage médical, cireuses à chaussures non électriques, instruments d'arrosage, ustensiles à usage domestique, ustensiles de cuisine, ustensiles de cuisson, filtres pour le ménage, filtres à café, gourdes, bidons, moules (ustensiles de cuisine), boîtes à pain, théières, bouilloires, tasses, shakers (à main), tire-bouchons, pinceaux pour laver la vaisselle et brosses pour nettoyer les récipients, brosses à dents, brosses à chaussures, boîtes en métal pour la distribution de serviettes en papier, poubelles.

Cl. 28: jeux et jouets; articles de gymnastique et de sport non compris dans d'autres classes, y compris jeux automatiques à prépaiement, gobelets pour jeux, dés, cartes à jouer, queues de billard, craie pour queues de billards, bandes de billard, procédés pour queues de billard, accessoires de jeux, dispositifs à marquer les points pour billards, tables de billard, tables de billard à prépaiement, tables de ping-pong, appareils de jeux électroniques autres que ceux conçus pour être utilisés seulement avec récepteur de télévision, compteurs (disques) de jeux, ballons de jeu.

Cl. 39: organisation de voyages, y compris réservation de places de voyage, réservation de voyages, réservations de transport, livraison de marchandises, organisation de croisières, transport de voyageurs, transport en voiture, location de voitures, accompagnement de voyageurs, emballage de marchandises, services de parcs de stationnement, services de chauffeurs, messagerie (courrier ou marchandises), agences de tourisme (à l'exception de la réservation d'hôtels), dépôt de marchandises, visites touristiques.

Cl. 43: services de restauration (alimentation); hébergement temporaire, agences de réservation (réservations de maisons, hôtels), location de salles de réunion, logements de vacances, réservation d'hôtels, réservation d'hébergements temporaires, hôtels, snack-bars, cafés, cafétérias, restaurants, services de camps de vacances (hébergement), bars, exploitation de terrains de camping, restauration (aliments et boissons).

Cl. 45: services personnels et sociaux rendus par des tiers destinés à satisfaire les besoins des individus, gardes, clubs de rencontres, services de gardes du corps.

# Response Annex 24



OFFICE FOR HARMONIZATION IN THE INTERNAL MARKET
(TRADE MARKS AND DESIGNS)

Trade Marks Department

**W211**

Alicante, 15/10/2009

### Notification of provisional refusal of protection based on an opposition pursuant to Article 5 of the Madrid Protocol and Rule 17 (1), (2) of the Common Regulations under the Madrid Agreement and Protocol and to Rule 115*

| International Registration No: | 0984297 |
|---|---|
| Date of notification to OHIM: | 11-12-2008 |
| Trade mark: | VULKAN |
| Applicant/Holder: | Ritzio Entertainment Group Limited Diagorou 4, Kermia Building, Office 601 CY-1097 Nicosia |
| *Opposition number:* | B 1551194 |

Protection of the above-mentioned mark is provisionally refused for the European Community.

The provisional refusal is based on the fact that an opposition has been filed against the international registration.


I.      The grounds for the opposition are as follows:

Conflict with an earlier mark and likelihood of confusion (Article 8(1) and (2) CTMR**).


II.     Name and address of the opposing party:
        **REGION D'AUVERGNE ( Collectivité Territoriale ) - Hôtel de la Région
        13/15, avenue de Fontmaure
        B.P. 60
        F-63402 Chamalieres
        FRANCIA**

III.    The opposition is based on a mark which was the subject of an application or registration.

        -       type of mark : **National French registered mark.**

        -       filing date, registration date and, if applicable, priority date: 27/02/2002

        -       filing number and, if different, registration number: 02 3 151 315

        -       reproduction of the mark: (see annex)

        -       list of goods and services on which the opposition is based: (see annex)

*Commission Regulation (EC) No 2868/95 of 13 December 1995 implementing Council Regulation (EC) No 207/2009 on the Community trade mark (codified version of Council Regulation (EC) No 40/94).
** Council Regulation (EC) No 207/2009 of 26 February 2009 on the Community trade mark.
Regulations on the internet:
CTM (http://oami.europa.eu/en/mark/aspects/reg.htm )          Madrid Protocol
(http://oami.europa.eu/en/mark/madrid/default.htm)

IV.    The provisional refusal relates to only to the following goods and services covered by the designation of the EC:

Class 41
Organisation d'expositions à buts culturels ou éducatifs, services de loisirs, organisation et animation d'ateliers de formation, organisation de concours (éducation ou divertissement, parcs d'attraction.


V.    The OHIM will notify the opposition separately to the holder of the international registration, including all evidence on which it is based, pursuant to Rule 18(1)*. The OHIM will set time limits for the holder. The notification will open an (extendable) cooling-off period of two months and a further period of two months for the opponent to substantiate the opposition. The notification will set a time limit of, in principle, six months for the holder of the international registration to submit observations.

MARIA JOSE GIL
Examiner


          Annex:        Opposition notice of 10 pages.



**CABINET
RICHEBOURG**

CONSEILS EN PROPRIETE INDUSTRIELLE
EUROPEAN PATENT & TRADEMARK ATTORNEYS



ANNAPOLIS/MD
ALEXANDRIA/VA
BIELEFELD
CLERMONT-FERRAND
SAINT-ETIENNE
PARIS
MÜNCHEN

**OHMI**
Avenida de Europa, 4
E-03008 Alicante
SPAIN

**FAX ( 10 PAGES)**

Saint-Étienne, le 14 septembre 2009

_Par fax uniquement : +34 96 513 13 44_

V/Réf :
N/Réf : D 381 LIT UE - VULCANIA / VULKAN - CB/cm

**Objet :   UNION EUROPEENNE - Opposition formée par la Région Auvergne contre la partie
communautaire de la marque internationale N°984 297, au nom de RITZIO
ENTERTAINMENT GROUP.**

Madame, Monsieur,

Nous vous remercions de bien vouloir trouver ci-joint un acte d'opposition à l'encontre de la
partie communautaire de la marque internationale VULKAN N°984 297.

A titre complémentaire, nous joignons également en annexe :

- une copie du certificat d'enregistrement de la marque française VULCANIA N°02 3 151 315,
  sur la base de laquelle la présente opposition est formée ;
- une copie du document officiel d'inscription, au Registre français des marques, du transfert
  de ladite marque au profit de la Région Auvergne.

Nous vous remercions de bien vouloir accuser bonne réception des présentes.

Nous vous prions d'agréer, Madame, Monsieur, l'expression de nos salutations distinguées.

Gaëlle ROUSSEAU
Représentant N° 40720
CB/cm

PJ :  - Acte d'opposition
      - Copie du certificat d'enregistrement de la marque française VULCANIA N° 02 3 151 315
      - Copie du document d'inscription du transfert de propriété de la marque au profit de la
        région Auvergne.

| SAINT-ETIENNE | CLERMONT-FERRAND | LYON | PARIS |
| 69, RUE SAINT-SIMON | BUREAU SECONDAIRE | (SUR RENDEZ-VOUS) | (SUR RENDEZ-VOUS) |
| BP 301 | 4, RUE DURETTE | 129, RUE SERVIENT | 48, RUE SAINT-HONORE |
| F-42016 SAINT-ETIENNE CEDEX 1 | F-63500 BRENAT | F-69326 LYON | F-75001 PARIS |

TEL. +33 (0) 477 433 710       TEL. +33 (0) 473 286 263       TEL +33 (0) 478 637 925       TEL. +33 (0) 144 889 820
FAX +33 (0) 477 433 719        FAX +33 (0) 473 286 891        FAX +33 (0) 478 637 993       FAX +33 (0) 144 889 846

EMAIL CONTACT@CABINET-RICHEBOURG.FR          S.A. AU CAPITAL DE 45735 EUR          CODE TVA: FR 43393103148 0002
WWW.24IP.COM                                 R.C.S. ST.-ETIENNE B 393 103 148       SIRET: 393 103 148 000 28

 **OFFICE DE L'HARMONISATION DANS LE MARCHE INTERIEUR (OHMI)**

# ACTE D'OPPOSITION

| Nombre de pages (y compris celle-ci) | 4 | Référence de l'opposant / du représentant (pas plus de 20 caractères) <br> D361 LIT UE - CB/cm | Mod.007 |
| --- | --- | --- | --- |

| **Opposant** | **N° d'identification** | 86300 | ☐ pluralité d'opposants |
| --- | --- | --- | --- |
| Nom de l'entité juridique ou prénom et nom | REGION D'AUVERGNE (collectivité territoriale) | | |
| Tél, fax, adresse électronique | | | |
| **Adresse** <br> Rue et numéro | Hôtel de la Région <br> 13/15, avenue de Fontmaure - B.P. 60 | | |
| Ville et code postal | 63402 CHAMALIERES | | |
| Pays | FRANCE | | |
| Adresse postale (si différente) | | | |
| Nationalité / Etat de constitution | FRANCE | | |

| **Représentant** | **N° d'identification** | 15385 | ☐ pluralité de représentants |
| --- | --- | --- | --- |
| **Nom** | CABINET MICHEL RICHEBOURG | | |
| Tél, fax, adresse électronique | +33 (0)4 77 43 37 10 | +33 (0)4 77 43 37 19 | contact@cabinet-nchebourg.fr |
| **Adresse** <br> Rue et numéro | Le Clos du Golf <br> 69, rue Saint Simon | | |
| Ville et code postal | 42000 SAINT ETIENNE | | |
| Pays | FRANCE | | |
| Adresse postale (si différente) | | | |

Type de représentant  ☐ avocat  ☑ mandataire agréé  ☐ groupement de représentants  ☐ employé

| **Demande contestée** | N° demande/ enregistrement international | 984297 | Date de publication (JJ/MM/AAAA) | 15 / 12 / 2008 |
| --- | --- | --- | --- | --- |

| Nom du demandeur ou du titulaire de l'enregistrement international | RITZIO ENTERTAINMENT GROUP LIMITED | Langue de l'opposition | ES ☐ DE ☐ EN ☐ FR ☐ IT ☑ |
| --- | --- | --- | --- |

**Etendue de l'opposition**

☐ contre tous les produits et services de la demande

☑ contre une partie des produits et services de la demande, à savoir :

Classe 41 : Organisation d'expositions à buts culturels ou éducatifs, services de loisirs, organisation et animation d'ateliers de formation, organisation de concours (éducation ou divertissement), parcs d'attractions.

☐ feuillet(s) supplémentaire(s)

| **Paiement de la taxe** | | Total | € 350 | **Signature** | |
| --- | --- | --- | --- | --- | --- |
| Compte courant auprès de l'OHMI | | | | Nom | ROUSSEAU Gaëlle |
| ☑ Compte N° | 459 | | | Signature | |
| ☐ Ne pas utiliser mon compte courant auprès de l'OHMI | | | | | |
| Virement sur le compte de l'OHMI | | | | | |
| ☐ Banco Bilbao Vizcaya Argentaria | | | | | |
| ☐ La Caixa | | | | | |
| Date du virement (JJ/MM/AAAA) | / / | | | | |

# IM007FR



# ACTE D'OPPOSITION

## BASE DE L'OPPOSITION: ENREGISTREMENT/DEMANDE DE MARQUE

**Identification de la marque antérieure**   ☑ Enregistrement de marque   ☐ Demande de marque

☐ Marque communautaire ☑ Marque nationale ☐ Enregistrement International ayant effet dans un ou plusieurs Etat(s) membre(s)

**Etat(s) membre(s)**

| EM | BG | BX | CZ | DK | DE | EE | GR | ES | FR ☑ | IE | IT | CY | LV | LT | HU | MT | AT | PL | PT | RO | SI | SK | FI | SE | GB |

| | |
|---|---|
| Date de dépôt (JJ/MM/AAAA) | 27 / 02 / 2002 |
| N° de dépôt | 02 3 151 315 |
| Date d'enregistrement (JJ/MM/AAAA) | 27 / 02 / 2002 |
| N° d'enregistrement | 02 3 151 315 |

**Représentation de la marque** *(en couleurs, le cas échéant)*

**Type de marque**

☑ Marque verbale    VULCANIA

☐ Marque figurative

☐ Autre (spécifier)

**Produits et services sur lesquels l'opposition est basée:**                                    ☐ jointe
☐ tous les produits et services de l'enregistrement/demande
☑ une partie des produits et services, à savoir:

Voir feuillet supplémentaire 1/2

☑ feuillet(s) supplémentaire(s)

---

**Droit de l'opposant**

☑ Titulaire          Copie de l'enregistrement/de la demande    ☑ jointe    ☐ à suivre
☐ Licencié habilité                          Traduction    ☐ jointe

**Motifs d'opposition**

☐ **Article 8(1)(a) RMC**   - la demande est identique à la marque antérieure et couvre des produits et/ou services identiques

☑ **Article 8(1)(b) RMC**   - il existe un risque de confusion dans l'esprit du public

☐ **Article 8(5) RMC**   - l'usage sans juste motif de la marque demandée tirerait indûment profit du caractère distinctif
ou de la renommée de la marque antérieure ou leur porterait préjudice

**Motivation et autres observations :**

Voir feuillet supplémentaire 2/2

☑ feuillet(s) supplémentaire(s)

**Territoire sur lequel la marque antérieure jouit d'une renommée :**

| EM | BG | BX | CZ | DK | DE | EE | GR | ES | FR | IE | IT | CY | LV | LT | HU | MT | AT | PL | PT | RO | SI | SK | FI | SE | GB |

**Produits et services pour lesquels la marque jouit d'une renommée**

☐ tous les produits et services de l'enregistrement/de la demande
☐ une partie des produits et services de l'enregistrement/de la demande, à savoir:

☐ feuillet(s) supplémentaire(s)

**Preuve de la renommée**    ☐ jointe ☐ à suivre        Traduction    ☐ jointe

CABINET
RICHEBOURG

## FEUILLET SUPPLEMENTAIRE 1/2 - IDENTIFICATION DE LA MARQUE ANTERIEURE

### Produits et services sur lesquels l'opposition est basée :

La présente opposition est basée sur une partie des produits et services, à savoir :

Classe 41 : Parcs d'attractions ; organisation d'expositions, de concours à buts culturels ou éducatifs, organisation et conduite de colloques, de congrès, de séminaires.

CABINET
RICHEBOURG

## FEUILLET SUPPLEMENTAIRE 2/2 - MOTIFS DE L'OPPOSITION

### Motivation et autres observations:

En application de l'article 8(1)(b) du Règlement sur la Marque Communautaire, il existe un risque de confusion dans l'esprit du public entre la marque antérieure et la demande de marque contestée.

Les motifs détaillés de l'opposition vous seront transmis ultérieurement.



**INPI**
INSTITUT
NATIONAL DE
LA PROPRIETE
INDUSTRIELLE

# MARQUES DE FABRIQUE DE COMMERCE OU DE SERVICE

Code de la propriété intellectuelle
Livre IV : Titre premier, chapitre premier
Livre VII : Titre premier ; Livre VIII

## CERTIFICAT D'ENREGISTREMENT

Le Directeur général de l'Institut national de la propriété industrielle certifie que la marque reproduite au verso a été enregistrée.

L'enregistrement produit ses effets à compter de la date de dépôt de la demande pour une période de dix ans indéfiniment renouvelable.

Cet enregistrement sera publié au Bulletin officiel de la propriété industrielle

**n° 02/32 NL Vol. II du 9 août 2002**

Le Directeur général de l'Institut
national de la propriété industrielle

**Daniel HANGARD**



INSTITUT
NATIONAL DE
LA PROPRIETE
INDUSTRIELLE

SIEGE
26 bis, rue de Saint Pétersbourg
75800 PARIS cedex 08
Téléphone : 01 53 04 53 04
Télécopie : 01 42 93 59 30
http://www.inpi.fr

ETABLISSEMENT PUBLIC NATIONAL     CREE PAR LA LOI N° 51-444 DU 19 AVRIL 1951

Cabinet Michel Richebourg Michel Richebourg
"Le Clos du Golf" 69, rue Saint-Simon
42000 Saint-Etienne

**N° National : 02 3 151 315**

Dépôt du : 27 FEVRIER 2002

à : INPI Paris

EM VOLCANS (Société Anonyme d'économie mixte à conseil d'administration), Route de Mazayes, 63230 Saint-Ours Les Roches, SIREN : 423 556 356.

mandataire ou destinataire de la correspondance :
Cabinet Michel Richebourg Michel Richebourg, "Le Clos du Golf" 69, rue Saint-Simon, 42000 Saint-Etienne.

**VULCANIA**

produits ou services désignés : Savons, savons désodorisants, vornettes, sels pour le bain non à usage médical ; préparations pour le bain ; produits de parfumerie ; parfums, eaux de toilette, eau de Cologne, eaux de senteur, extraits de fleurs ; huiles de toilettes ; huiles essentielles ; produits pour parfumer le linge ; pierre à adoucir ; la odorants ; cendres volcaniques pour le nettoyage. Bougies (éclairage), bougies odorantes. Support de données magnétiques ; disques impact vidéo ou optiques, disques compact numérique, disques numériques acoustiques optiques et vidéo ; bandes magnétiques, bandes vidéo, cartes magnétiques ; diapositives ; logiciel, serveur local accessible par code Abat-jour ; porte abat-jour ; lampes d'éclairage ; lampe à huile ; lampe de poche ; lampadaires ; lanterne d'éclairage ; chauffe-plats ; fontaines ; grille-pain. Véhicules ; appareils de locomotion par terre, par air ou par eau ; bicyclettes ; cycles. Joaillerie, bijouterie, pierres précieuses ; horlogerie, et instruments chronométriques ; montres, réveille-matin ; cadrans solaires ; porte-clefs de fantaisie ; épingles de cravates, médailles. Imprimés, journaux, livres, manuels, revues, album, périodiques, almanachs, calendrier, carte géographique, matériel d'enseignement de la volcanologie sous forme de jeu, de savoir cartes à jouer, dessins, maquettes, photographie, carte postale ; affiches, autocollants, articles de papeterie, stylo ; statuettes papier, articles de bureau ; coupe-papier ; sous-main ; dessous de verre, dessous de chop ; set de table en papier ; linge de table en papier ; mouchoirs de poche en papier ; sachets, enveloppes, pochettes en papier ou en matières plastiques ; matériel pédagogique sous forme de jeu, à savoir puzzle ; aquarelles ; lithographies. Articles de maroquinerie en cuir ou imitations du cuir (à l'exception des étuis adaptés aux produits qu'ils sont destinés à contenir des gants et des ceintures), porte-cartes, étuis pour les clés, portefeuille, porte-monnaie non en métaux précieux ; trousse de voyage ; serviettes d'écoliers ; sacs à main ; sacs de voyage ; sacs d'écolier ; sacs à dos ; cartables ; sacs à provision ; « bananes » ; parapluies, parasols, cannes ; fouets et sellerie. Statues, statuettes en pierre, en béton, en marbre. Meubles, glaces (miroirs), cadres ; produits, en bois notamment en bambou, liège, roseau, jonc, osier, corne, os, ivoire, baleine, écaille, ambre, nacre, écume de mer, succédanés de toutes ces matières ou en matières plastiques, à savoir objets d'art en bois, en plâtre ou en matières plastiques, coffrets à bijoux non en métaux précieux, mobiles décoratifs produisant des sons, mobiles faits pour la décoration], objets de publicité gonflables, statues en bois, en cire, en plâtre ou en matières plastiques, statuettes en bois, cire, en plâtre ou en matières plastiques, travaux d'ébénisterie.

Ustensiles et récipients pour la cuisine ou le ménage non en métaux précieux ; verrerie de table ; vaisselles non en métaux précieux ; assiettes de décoration non en métaux précieux, chops à bière ; carafe ; dessous de carafe ; boîte à savon ; boîte en verre ; bols ; tire-bouchons ; dessous-de-plat ; bougeoirs non en métaux précieux ; dessous de plat ; porte-couteau pour la table ; corbeilles à pain ; plateaux à servir ; ronds de serviettes non en métaux précieux ; objets d'art en porcelaine, en terre cuite ou en verre ; brûle-parfum ; pulvérisateur, vaporisateur de parfums ; cache-pot ; porte-carte de menus ; coquetiers ; cure-dents ; porte-cure dents non en métaux précieux ; porte-éponge ; poterie ; sabliers ; tirelires non métalliques. Linge de table ; Linge de maison ; Linge de bain (à l'exception de l'habillement) ; Linge de lit ; napperons ; mouchoirs de poche en matière textile. Vêtements, chaussures, chapellerie, cravates, écharpes. Badges ornementaux ; articles décoratifs pour les cheveux ; barrettes (pinces à cheveux) ; broches (accessoires d'habillement) ; broderies ; dentelle ; ornements de chapeaux non en métaux précieux ; insignes non en métaux précieux, boutons, brassards, bretelles, ceintures, cocardes, écussons. Jeux, jouets ; articles de gymnastique et de sport (à l'exception des vêtements, chaussures et tapis) ; décorations pour arbres de Noël Café, thé, cacao, sucre, riz, tapioca, sagou, succédanés du café ; farines et préparations faites de céréales, pain, pâtisserie et confiserie, glaces comestibles ; miel, glace à rafraîchir. Bières ; eaux minérales et gazeuses et autres boissons non alcooliques (à l'exception de celle à base de café, thé ou de cacao et des boissons lactées) ; boissons de fruits et jus de fruits ; sirops pour boissons. Boissons alcooliques (à l'exception des bières). Agence de communication (relations publiques), abonnements de lettres d'information sur Internet, services de compilation et de compilation d'informations. Agence de presse ; agence d'information ; communication par télévision d'ordinateurs, communication par le réseau Internet et communication par des réseaux internes aux entreprises (Intranet, extranet) ; messagerie électronique ; émissions radiophoniques ; transmission de messages et d'images assistés par ordinateur ; Location de temps d'antenne à un centre serveur de bases de données. Organisation de voyage, d'excursion. Exploitation d'un centre à vocation éducative et culturelle, Parc de découverte et d'initiation à la volcanologie, Parc d'attractions ; Organisation d'exposition, de concours à but culturels ou éducatifs, organisation et conduite de colloque, de congrès, de séminaires ; publications de livres, publication de texte ; production de film ; production de film sur bande vidéo ; divertissement, divertissement télévisé, radiophonique, représentations théâtrales, spectacles, centre de documentation (service de bibliothèque) ; formation ; exploitation de salles de cinéma ; location de films cinématographiques ; services d'édition de lettres publiées sur Internet ; Reportage photographique. Restauration ; hébergement temporaire.

**Classes de produits ou services :** 3, 4, 9, 11, 12, 14, 16, 18, 19, 20, 21, 24, 25, 26, 28, 30, 32, 33, 35, 38, 39, 41, 43.

**BOPI de publication antérieure : 02/15 NL**



**INPI**
INSTITUT NATIONAL DE LA PROPRIÉTÉ INDUSTRIELLE

26 bis, rue de Saint Petersbourg
75800 Paris Cedex 08
Téléphone : 01 53 04 53 04

**Cabinet Michel RICHEBOURG**

**0 6 MARS 2003**

**REÇU - RECEIVED**

**BREVETS D'INVENTION, CCP, TPS
MARQUES, DESSINS ET MODÈLES**  

Code de la propriété intellectuelle - Livres V, VI et VII

**DEMANDE D'INSCRIPTION AU REGISTRE NATIONAL D'UN ACTE
AFFECTANT LA PROPRIÉTÉ OU LA JOUISSANCE D'UN DÉPÔT**

page 1/2

Cet imprimé est à remplir lisiblement à l'encre noire    @ RN 41V/0002/00

N° 11602*01

---

Réserve à l'INPI

DATE D'INSCRIPTION

Inscription
RNM     366341

Date    03/03/2003 REG NAL MARQUES

Lieu    INPI PARIS

No Operation

---

**1 NOM ET ADRESSE DU DEMANDEUR OU DU MANDATAIRE
À QUI LA CORRESPONDANCE DOIT ÊTRE ADRESSÉE**

Cabinet Michel RICHEBOURG
Le Clos du Golf
69 rue Saint Simon
42000 Saint Etienne

---

| Vos références pour ce dossier *(facultatif)* | D381-TMD-454/455-FR/AI |
|---|---|

**2 DEMANDEUR**
*(partie à l'acte demandant l'inscription)*    ☐ S'il y a d'autres demandeurs, cochez la case et utilisez l'imprimé «Suite»

| | |
|---|---|
| Nom ou dénomination sociale | S.E.M. VOLCANS |
| Prénoms | |
| Forme juridique | Société anonyme d'économie mixte à conseil d'administration |
| N° SIREN | \|4\|2\|3\|5\|5\|6\|3\|5\|6\| |

| Adresse | Rue | Route de Mazayes |
|---|---|---|
| | Code postal et ville | \|6\|3\|2\|0\|0\| Saint-Ours |
| | Pays | FRANCE |

| N° de téléphone *(facultatif)* | |
|---|---|
| N° de télécopie *(facultatif)* | |
| Adresse électronique *(facultatif)* | |

**3 AUTRE PARTIE À L'ACTE**    ☐ S'il y a d'autres parties à l'acte, cochez la case et utilisez l'imprimé «Suite»

| | |
|---|---|
| Nom ou dénomination sociale | Région d'Auvergne |
| Prénoms | |
| Forme juridique | collectivité territoriale |
| N° SIREN | \|_\|_\|_\|_\|_\|_\|_\|_\|_\| |

| Adresse | Rue | 13/15 avenue de Fontmaure |
|---|---|---|
| | Code postal et ville | \|6\|3\|4\|0\|0\| Chamalières |
| | Pays | France |

**4 NATURE DE L'OPÉRATION CONSTATÉE
PAR L'ACTE À INSCRIRE**

Cochez la case si cette demande d'inscription est déposée simultanément à :
☐ une déclaration de renouvellement de marque
☐ un recours en restauration ou une demande de relevé de déchéance

| | |
|---|---|
| Transmission totale de propriété | ☒ |
| Transmission partielle de propriété | ☐ |
| Concession de licence | ☐ |
| Résiliation de licence | ☐ |
| Constitution d'un droit de gage | ☐ |
| Radiation d'un droit de gage | ☐ |
| Saisie | ☐ |
| Autre (à préciser) | ☐ |



**INPI**
INSTITUT NATIONAL DE LA PROPRIETE INDUSTRIELLE

**BREVETS D'INVENTION, CCP, TPS**
**MARQUES, DESSINS ET MODÈLES**

DEMANDE D'INSCRIPTION D'UN ACTE AFFECTANT
LA PROPRIÉTÉ OU LA JOUISSANCE D'UN DÉPÔT

page 2/2

| Réservé à l'INPI | |
|---|---|
| **Inscription RNM** | ‖‖‖‖‖ 366341 |
| **Date** | 03/03/2003 REG NAL MARQUES |
| **Lieu** | INPI PARIS |
| **No Opération** | ‖‖‖‖‖ 0 |

@ RN 43W/DSLODU

| | |
|---|---|
| **Vos références pour ce dossier** *(facultatif)* | D381-TMD-454/455-FR/AI |
| **5 TITRE(S) CONCERNÉ(S) PAR LA DEMANDE D'INSCRIPTION** | Indiquez le ou les titre(s) sur les annexes «Brevets», «Marques», et Dessins Modèles» Nombre d'annexes jointes : 1 |
| **6 NATURE DE L'ACTE** | |
| Acte authentique | ☐ *Exemple : acte notarié, jugement* |
| Acte sous seing privé | ☒ *Exemple : contrat* |
| Autre(s) actes(s) | ☐ En cas de mutation par décès ou d'impossibilité matérielle, dûment justifiée, de produire l'acte authentique ou sous seing privé |
| **7 PIÈCES PRODUITES** | |
| | ☒ Dans tous les cas, l'original ou l'expédition de l'acte à inscrire dans son intégralité accompagné le cas échéant de sa traduction |
| | ☒ En cas de demande de restitution de l'original, copie de l'acte ou de l'extrait à inscrire |
| | ☐ Le cas échéant, justification de l'impossibilité matérielle de produire l'acte dont résulte l'opération |
| | ☐ S'il y a lieu, le pouvoir du mandataire ou copie du pouvoir permanent *(sauf CPI)* |
| | ☒ Autre(s) pièce(s) *(précisez lesquelles)* : avenant |
| Si vous avez utilisé l'imprimé «Suite» indiquez le nombre de pages jointes | |
| **8 MANDATAIRE** | ☒ Cochez la case si vous êtes également le destinataire des correspondances afférentes à l'enregistrement ou à la délivrance et au maintien en vigueur du (des) titre(s) concerné(s) |
| Nom | RICHEBOURG |
| Prénom | Michel |
| Cabinet ou Société | Cabinet MICHEL RICHEBOURG |
| N° de pouvoir permanent | CPI 94-0216 |
| Adresse — Rue | Le Clos du Golf 69 rue Saint Simon |
| Adresse — Code postal et ville | 4 2 0 0 0 Saint-Etienne |
| N° de téléphone *(facultatif)* | 04 77 43 37 10 |
| N° de télécopie *(facultatif)* | 04 77 43 37 19 |
| Adresse électronique *(facultatif)* | contact@cabinet-richebourg.fr |
| **9 SIGNATURE DU DEMANDEUR OU DU MANDATAIRE** (Nom et qualité du signataire) | Michel RICHEBOURG Mandataire (CPI 94-0216) |

La loi n°78-17 du 6 janvier 1978 relative à l'informatique, aux fichiers et aux libertés s'applique aux réponses faites à ce formulaire.
Elle garantit un droit d'accès et de rectification pour les données vous concernant auprès de l'INPI

**INPI**
INSTITUT
NATIONAL DE
LA PROPRIETE
INDUSTRIELLE

**DEMANDE D'INSCRIPTION AU REGISTRE NATIONAL**

[X] D'UN ACTE AFFECTANT LA PROPRIÉTÉ
OU LA JOUISSANCE D'UN DÉPÔT

[ ] D'UNE RECTIFICATION

Réservé à l'INPI

**Inscription RNM**
366341

**Date**     03/03/2003   REG NAL MARQUES
**Lieu**     INPI PARIS
**No Operation**   0

**MARQUES CONCERNÉES
PAR LA DEMANDE D'INSCRIPTION**

Annexe N° 1..../ 1....

RN 47 W/132900

| Vos références pour ce dossier *(facultatif)* | D381-TMD-454/455-FR/AI | | |
|---|---|---|---|
| Dénomination *(cochez la case si la marque est enregistrée)* | | Date de dépôt ou d'enregistrement International | N° national (pour les dépôts postérieurs au 27/12/91) ou n° d'enregistrement (pour les dépôts antérieurs au 26/12/91) ou les marques internationales |
| [X] VULCANIA | | 27/02/2002 | 02 3 151 315 |
| [X] (figurative) | | 27/02/2002 | 02 3 151 314 |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |
| [ ] | | | |

# Response Annex 25



OFFICE FOR HARMONIZATION IN THE INTERNAL MARKET (TRADE MARKS AND DESIGNS)

Trade Marks Department

**W211**

Alicante, 15/10/2009

**Notification of provisional refusal of protection based on an opposition pursuant to Article 5 of the Madrid Protocol and Rule 17 (1), (2) of the Common Regulations under the Madrid Agreement and Protocol and to Rule 115\***

| International Registration No: | 0984297 |
|---|---|
| Date of notification to OHIM: | 11-12-2008 |
| Trade mark: | VULKAN |
| Applicant/Holder: | Ritzio Entertainment Group Limited Diagorou 4, Kermia Building, Office 601 CY-1097 Nicosia |
| *Opposition number:* | B 1551814 |

Protection of the above-mentioned mark is provisionally refused for the European Community.

The provisional refusal is based on the fact that an opposition has been filed against the international registration.


I.      The grounds for the opposition are as follows:

Conflict with an earlier mark and likelihood of confusion (Article 8(1) and (2) CTMR\*\*).


II.      Name and address of the opposing party:

**Vulcan Productions, Inc.**
**505 Union Station**
**505 Fifth Avenue South, Suite 900**
**Seattle, WA 98104**
**ESTADOS UNIDOS**

III.      The opposition is based on a mark which was the subject of an application or registration.

-      type of mark : **Community Trade Mark registration.**

-      filing date, registration date and, if applicable, priority date: 24/01/2003; 08/12/2004

-      filing number and, if different, registration number: 003021938

-      reproduction of the mark: (see annex)

-      list of goods and services on which the opposition is based: (see

\*Commission Regulation (EC) No 2868/95 of 13 December 1995 implementing Council Regulation (EC) No 207/2009 on the Community trade mark (codified version of Council Regulation (EC) No 40/94).
\*\* Council Regulation (EC) No 207/2009 of 26 February 2009 on the Community trade mark.
Regulations on the internet:
CTM (http://oami.europa.eu/en/mark/aspects/reg.htm )          Madrid Protocol
(http://oami.europa.eu/en/mark/madrid/default.htm)

annex)

IV.    The provisional refusal relates to all the goods and services covered by the designation of the EC.


V.    The OHIM will notify the opposition separately to the holder of the international registration, including all evidence on which it is based, pursuant to Rule 18(1)*. The OHIM will set time limits for the holder. The notification will open an (extendable) cooling-off period of two months and a further period of two months for the opponent to substantiate the opposition.  The notification will set a time limit of, in principle, six months for the holder of the international registration to submit observations.

MARIA JOSE GIL
Examiner


Annex:      Opposition notice of 4 pages.



# OFFICE FOR HARMONIZATION IN THE INTERNAL MARKET (OHIM)
## NOTICE OF OPPOSITION

| Number of pages (including this one) | Opponent's/representative's reference number (not more than 20 characters) | Mod.007 |
|---|---|---|

**Opponent** — ID number: 153274 — ☐ multiple opponents

Name of legal entity or first name and surname: Vulcan Productions, Inc.
Tel, fax, e-mail:
Address Street and number: 505 Union Station / 505 Fifth Avenue South, Suite 900
City and postal code: Seattle 98104
Country: United States of America
Postal address (if different):
Nationality: United States

**Representative** — ID number: 10591 — ☐ multiple representatives

Name: Carpmaels & Ransford
Tel, fax, e-mail: +44 207 242 8692   +44 207 405 4166   email@carpmaels.com
Address Street and number: 43-45 Bloomsbury Square
City and postal code: London WC1A 2RA
Country: United Kingdom
Postal address (if different):

Type of representative: ☐ legal practitioner  ☐ professional representative  ☑ association of representatives  ☐ employee

**Challenged application**  CTMA / IR No: 984297
Date of publication (DD/MM/YYYY): 15 / 12 / 2008
Name of CTM applicant or IR holder: Ritzio Entertainment Group Limited
Language of the opposition: ES DE EN✓ FR IT

**Extent of the opposition**
☑ against all the goods and services in the application
☐ against part of the goods and services in the application, namely:

☐ continuation sheet(s)

**Payment of fee**  Total: € 350
Signature — Name: Carpmaels & Ransford

**Current account with OHIM**
☑ Account No: 000004
☐ i Do not use my current account with OHIM

**Transfer to account of OHIM**
☐ Banco Bilbao Vizcaya Argentaria
☐ La Caixa
Date of transfer (DD/MM/YYYY):

Signature: 3320



# NOTICE OF OPPOSITION

## BASIS OF OPPOSITION: TRADE MARK REGISTRATION / APPLICATION

**Identification of the earlier mark**    ☑ Trade mark registration    ☐ Trade mark application

☑ Community trade mark    ☐ National trade mark    ☐ International registration with effect in one or more Member State(s)

Member State(s)

| FM ☑ | BG | BX | CZ | DK | DE | EE | GR | ES | FR | IE | IT | CY | LV | LT | HU | MT | AT | PL | PT | RO | SI | SK | FI | SE | GR |

Filing date (DD/MM/YYYY)    24 / 01 / 2003

Filing number    3021938

Registration date (DD/MM/YYYY)    08 / 12 / 2004

Registration number    3021938

**Type of mark**

☑ Word mark    VULCAN PRODUCTIONS

☐ Figurative mark

☐ Other (specify)

Representation of the mark *(in colour if applicable)*

**Goods and services on which the opposition is based:**

☑ all the goods and services covered by the registration / application    ☐ attached

☐ part of the goods and services, namely:

☐ continuation sheet(s)

**Entitlement of opponent**

☑ Owner    Copy of registration / application    ☑ attached    ☐ to follow

☐ Authorised licensee    Translation    ☐ attached

**Grounds for opposition**

☐ **Article 8(1)(a) CTMR** - the CTMA/IR is identical to the earlier mark and covers identical goods and/or services

☑ **Article 8(1)(b) CTMR** - there exists a likelihood of confusion on the part of the public

☐ **Article 8(5) CTMR**    - the use without due cause of the contested mark would take unfair advantage of, or be detrimental to, the distinctive character or the repute of the earlier trade mark

Explanation of grounds and other remarks:

☐ continuation sheet(s)

Territory where the earlier mark has a reputation:

| FM | BG | BX | CZ | DK | DE | EE | GR | ES | FR | IE | IT | CY | LV | LT | HU | MT | AT | PL | PT | RO | SI | SK | FI | SE | GR |

Goods and services for which the trade mark has a **reputation**

☐ all the goods and services covered by the registration / application

☐ part of the goods and services covered by the registration/application, namely.

☐ continuation sheet(s)

Evidence of reputation    ☐ attached    ☐ to follow    Translation ☐ attached

page number    2  of  4



Site language
Select site language: English (en)

- FAQ
- Contact us
- Site Map
- Links

— —— —

**CTM-ONLINE - Detailed trade mark information**

Overview

Trade mark

Graphic representation

List of goods and services

Description of the mark

Owner

Representative

Seniority

Exhibition priority

Priority

Publication

Opposition

Cancellation

Appeals

Recordals

Renewals

Download trade mark details

Link to CTM Bulletin On-line

## CTM-ONLINE - Detailed trade mark information



| Trade mark name : | VULCAN PRODUCTIONS |
| Trade mark No : | 003021938 |
| Trade mark basis: | CTM |
| Number of results: | 1 of 1 |

Online Inspection Request form (for MyPage users with current account only)

811  |  9p  |  9p  |  9pp  |

### Trade mark

| Filing date: | 24/01/2003 |
| Date of registration: | 09/12/2004 |
| Expiry Date: | 24/01/2013 |
| Nice Classification: | 36, 41, 42 ( Nice classification) |
| Trade mark: | Individual |
| Type of mark: | Word |
| Acquired distinctiveness: | No |
| Applicant's reference: | EH/MS/02198 |
| Status of trade mark: | CTM registered        (Glossary) |
| | CTM registration published (B1) |
| | ( Publication B1 or Publication B2 ) |
| | ( History of statuses) |
| Filing language: | English |
| Second language: | French |

### Graphic representation

No entry for application number: 003021938.

### List of goods and services

| Nice Classification: | 36 |
| List of goods and services | Financial services; financing and insurance services; financial sponsorship and backing in the education and entertainment industries; provision of finance and loans for motion pictures, video and television programmes and multimedia productions. |

| Nice Classification: | 41 |
| List of goods and services | Education and entertainment services; production and distribution services for motion pictures, video and television programmes, and multimedia productions. |

| Nice Classification: | 42 |
| List of goods and services | Intellectual property licensing services; consultancy and licensing services in the fields of education and entertainment; promotion and sale of licences in the fields of education and entertainment; licensing of motion pictures, television and multimedia productions, film clips, distribution and distribution rights. |

### Description

| Description of the mark: | |

### Owner

| Name: | Vulcan Productions, Inc. |
| ID No: | 153274 |
| Natural or legal person: | Legal entity |
| Address: | 505 Union Station 505 Fifth Avenue South, Suite 900 |
| Post code: | 98104 |
| Town: | Seattle, |
| Country: | UNITED STATES |

| Correspondence address: | Vulcan Productions, Inc. 505 Union Station 505 Fifth Avenue South, Suite 900 Seattle, WA 98104 ESTADOS UNIDOS (DE AMÉRICA) |

### Representative

| | |
|---|---|
| Name: | MARKS & CLERK LLP |
| ID No: | 10578 |
| Address: | 90 Long Acre |
| Post code: | WC2E 9RA |
| Town: | London |
| Country: | UNITED KINGDOM |
| Correspondence address: | MARKS & CLERK LLP 90 Long Acre London WC2E 9RA REINO UNIDO |
| Telephone: | 00 44-2074700000 |
| Fax: | 00 44-2078363339 |
| E-mail: | ⒤ admin@marks-clerk.com |

### Seniority

No entry for application number: 003021938.

### Exhibition priority

No entry for application number: 003021938

### Priority

| | |
|---|---|
| Country: | UNITED STATES |
| Number of basic application: | 78/153,481 |
| Filing date of basic application: | 12/08/2002 |
| Trade mark status: | Accepted |

| | |
|---|---|
| Country: | UNITED STATES |
| Number of basic application: | 78/153,478 |
| Filing date of basic application: | 12/08/2002 |
| Trade mark status: | Accepted |

| | |
|---|---|
| Country: | UNITED STATES |
| Number of basic application: | 78/153,476 |
| Filing date of basic application: | 12/08/2002 |
| Trade mark status: | Accepted |

| | |
|---|---|
| Country: | UNITED STATES |
| Number of basic application: | 78/148,057 |
| Filing date of basic application: | 26/07/2002 |
| Trade mark status: | Accepted |

### Publication

| | |
|---|---|
| Bulletin no.: | ⒤ 2004/020 |
| Date of publication: | 17/05/2004 |
| Part: | A.1 |

| | |
|---|---|
| Bulletin no.: | ⒮ 2005/005 |
| Date of publication: | 31/01/2005 |
| Part: | B.2 |

### Opposition

No entry for application number: 003021938.

### Cancellation

No entry for application number: 003021938

### Appeals

No entry for application number: 003021938.

### Recordals

| | |
|---|---|
| Title: | Representative |
| Sub-title: | Replacement of representative |
| ID No: | U02901919 |
| Bulletin no.: | ⒮ 2007/067 |
| Date of publication: | 1/12/2007 |
| Part: | C.2.2 |

| | |
|---|---|
| Title: | Representative |
| Sub-title: | Change of name and professional address |
| ID No: | 003773556 |
| Bulletin no.: | ⒮ 2009/012 |
| Date of publication: | 06/04/2009 |
| Part: | C.2.1 |

# Response Annex 26



OFFICE FOR HARMONIZATION IN THE INTERNAL MARKET
(TRADE MARKS AND DESIGNS)

Trade Marks Department

**W211**

Alicante, 15/10/2009

**Notification of provisional refusal of protection based on an opposition
pursuant to Article 5 of the Madrid Protocol and Rule 17 (1), (2) of the Common
Regulations under the Madrid Agreement and Protocol and to Rule 115***

| International Registration No: | 0984297 |
|---|---|
| Date of notification to OHIM: | 11-12-2008 |
| Trade mark: | VULKAN |
| Applicant/Holder: | Ritzio Entertainment Group Limited Diagorou 4, Kermia Building, Office 601 CY-1097 Nicosia |
| *Opposition number:* | B 1550543 |

Protection of the above-mentioned mark is provisionally refused for the European Community.

The provisional refusal is based on the fact that an opposition has been filed against the international registration.

I.      The grounds for the opposition are as follows:

Conflict with an earlier mark and likelihood of confusion (Article 8(1) and (2) CTMR**).

II.      Name and address of the opposing party:

**Nürburg Quelle Hermann Kreuter GmbH
Hillesheimer Str. 29
D-54552 Dreis-Brück
ALEMANIA**

III.      The opposition is based on a mark which was the subject of an application or registration.

-      type of mark : **National German Mark.**

-      filing date, registration date and, if applicable, priority date: 23/02/2005; 12/04/2005

-      filing number and, if different, registration number: **305 09 961.2**

-      reproduction of the mark: (see annex)

-      list of goods and services on which the opposition is based: (see annex)

*Commission Regulation (EC) No 2868/95 of 13 December 1995 implementing Council Regulation (EC) No 207/2009 on the Community trade mark (codified version of Council Regulation (EC) No 40/94).
** Council Regulation (EC) No 207/2009 of 26 February 2009 on the Community trade mark.
Regulations on the internet:
CTM (http://oami.europa.eu/en/mark/aspects/reg.htm )          Madrid Protocol
(http://oami.europa.eu/en/mark/madrid/default.htm)

The opposition is based on more than one earlier right : (see annex)

    III.    The provisional refusal relates to only to the following goods and services covered by the designation of the EC :

Class 32
Beer; mineral and aerated waters and other non-alcoholic drinks, including energetic drinks; fruit drinks and fruit juices; syrups and other preparations for making beverages.

Class 41
Education; providing of training; entertainment; sporting and cultural activities; including rental of tennis courts, billiard halls, booking of seats for shows, videotaping, discotheque services, gaming, publication of books, recreation information, entertainment information, club services (entertainment or education), night clubs, game services provided on-line (from a computer network), publication services provided on-line (not downloaded), practical training (demonstration), organization of exhibitions for cultural or educational purposes, providing recreation facilities, arranging and conducting workshops (training), organization of competitions (education or entertainment), operating lotteries, holiday camp services (entertainment), organization of sports competitions, amusement parks, providing sport facilities, providing amusement arcade services, providing cinema facilities, timing of sport events, videotape film production, film production, rental of sound recordings, rental of audio equipment, rental of video cassette recorders, rental of slot machines, rental of cine-films, rental of stadium facilities, electronic desktop publishing, publication of electronic books and journals on-line, publication of texts (other than publicity texts), entertainer services, party planning (entertainment), providing casino facilities (gambling), translation, photography, production of shows, music-halls.

43: Services for providing food and drink; temporary accommodation, agencies for reservations (hotels, boarding houses), rental of meeting rooms, tourist homes, hotel reservations, temporary accommodation reservations, hotels, snack-bars, cafes, cafeterias restaurants, holiday camp services (lodging), bar services, providing campground faculties, food and drink catering.

    V.    The OHIM will notify the opposition separately to the holder of the international registration, including all evidence on which it is based, pursuant to Rule 18(1)*. The OHIM will set time limits for the holder. The notification will open an (extendable) cooling-off period of two months and a further period of two months for the opponent to substantiate the opposition.  The notification will set a time limit of, in principle, six months for the holder of the international registration to submit observations.

MARIA JOSE GIL
Examiner

    Annex:    Opposition notice of opposition of 16 pages



# NOTICE OF OPPOSITION

## BASIS OF OPPOSITION: TRADE MARK REGISTRATION / APPLICATION

| Identification of the earlier mark | ☑ Trade mark registration | ☐ Trade mark application |

☐ Community trade mark   ☑ National trade mark   ☐ International registration with effect in one or more Member State(s)

Member State(s)

| EM | BG | BX | CZ | DK | DE ☑ | EE | GR | ES | FR | IE | IT | CY | LV | LT | HU | MT | AT | PL | PT | RO | SI | SK | FI | SE | GB |

| Filing date (DD/MM/YYYY) | 23 / 02 / 2005 |

| Filing number | 305 09 961 |

| Registration date (DD/MM/YYYY) | 12 / 04 / 2005 |

| Registration number | 305 09 961.2 |

Representation of the mark *(in colour if applicable)*

### Type of mark

☑ Word mark   VULKAN

☐ Figurative mark

☐ Other (specify)

**Goods and services on which the opposition is based:**

☑ all the goods and services covered by the registration / application     ☐ attached

☐ part of the goods and services, namely:

☐ continuation sheet(s)

### Entitlement of opponent

☑ Owner     Copy of registration / application   ☑ attached   ☐ to follow

☐ Authorised licensee     Translation   ☑ attached   **EA**

### Grounds for opposition

☐ **Article 8(1)(a) CTMR** - the CTMA IR is identical to the earlier mark and covers identical goods and/or services

☑ **Article 8(1)(b) CTMR** - there exists a likelihood of confusion on the part of the public

☐ **Article 8(5) CTMR**   - the use without due cause of the contested mark would take unfair advantage of, or be detrimental to, the distinctive character or the repute of the earlier trade mark

**Explanation of grounds and other remarks:**

The community trademark application 008 984 297 'VULKAN' may not be registered under article 8 because of the similarity/identity to the earlier trademark mentioned in the opposition brief and because of the similarity/identity of the goods and/or services covered by this earlier trademark they are identical/there exists a likelihood of confusion on the part of the mentioned circle of people within the within the territory in question.     ☐ continuation sheet(s)

**Territory where the earlier mark has a reputation:**

| EM | BG | BX | CZ | DK | DE | EE | GR | ES | FR | IE | IT | CY | LV | LT | HU | MT | AT | PL | PT | RO | SI | SK | FI | SE | GB |

**Goods and services for which the trade mark has a reputation**

☐ all the goods and services covered by the registration / application

☐ part of the goods and services covered by the registration/application, namely:

☐ continuation sheet(s)

| **Evidence of reputation** | ☐ attached | ☐ to follow | Translation | ☐ attached |



# NOTICE OF OPPOSITION

## BASIS OF OPPOSITION: TRADE MARK REGISTRATION / APPLICATION

**Identification of the earlier mark**    ☑ Trade mark registration    ☐ Trade mark application

☐ Community trade mark    ☑ National trade mark    ☐ International registration with effect in one or more Member State(s)

Member State(s)

| EU | BG | BX | CZ | DK | DC☑ | EE | GR | ES | FR | IE | IT | CY | LV | LT | HU | MT | AT | PL | PT | RO | SI | SK | FI | SE | GB |

| Filing date (DD/MM/YYYY) | 06 / 05 / 2004 | Representation of the mark *(in colour if applicable)* |
|---|---|---|
| Filing number | 304 25 144 | |
| Registration date (DD/MM/YYYY) | 08 / 07 / 2004 | |
| Registration number | 304 25 144.5 | |

**Type of mark**

☑ Word mark    VULKANIUS

☐ Figurative mark

☐ Other (specify)

**Goods and services on which the opposition is based:**    ☐ attached

☑ all the goods and services covered by the registration / application

☐ part of the goods and services, namely:

☐ continuation sheet(s)

---

**Entitlement of opponent**

☑ Owner    Copy of registration / application    ☑ attached ☐ to follow

☐ Authorised licensee    Translation    ☑ attached

**Grounds for opposition**

☐ **Article 8(1)(a) CTMR** - the CTMA IR is identical to the earlier mark and covers identical goods and/or services

☑ **Article 8(1)(b) CTMR** - there exists a likelihood of confusion on the part of the public

☐ **Article 8(5) CTMR** - the use without due cause of the contested mark would take unfair advantage of, or be detrimental to, the distinctive character or the repute of the earlier trade mark

**Explanation of grounds and other remarks:**

The community trademark application 000 984 297 VULKAN may not be registered under article 8 because of the similarity to the earlier trademark mentioned in the opposition brief and because of the similarity/identity of the goods and/or services covered by this earlier trademark they are identical/there exists a likelihood of confusion on the part of the mentioned circle of people within the within the territory in question.    ☐ continuation sheet(s)

**Territory where the earlier mark has a reputation:**

| EM | BG | BX | CZ | DK | DE | EE | GR | ES | FR | IE | IT | CY | LV | LT | HU | MT | AT | PL | PT | NO | SI | SK | FI | SE | GB |

**Goods and services for which the trade mark has a reputation**

☐ all the goods and services covered by the registration / application

☐ part of the goods and services covered by the registration/application, namely:

☐ continuation sheet(s)

**Evidence of reputation**    ☐ attached    ☐ to follow    Translation ☐ attached

# OFFICE FOR HARMONIZATION IN THE INTERNAL MARKET (OHIM)

## NOTICE OF OPPOSITION

| Number of pages (including this one) **16** | Opponent's/representative's reference number (not more than 20 characters)  686 WZ 05001 A04 | Mod.007 |
|---|---|---|

| **Opponent** | **ID number** | ☐ multiple opponents |
|---|---|---|
| Name of legal entity or first name and surname | Nürburg Quelle Hermann Kreuter GmbH | |
| Tel, fax, e-mail | | |
| **Address** Street and number | Hillesheimer Str. 29 | |
| City and postal code | 54552 Drols-Brück | |
| Country | Germany | |
| Postal address (if different) | | |
| Nationality | german | |

| **Representative** | **ID number** 11824 | ☐ multiple representatives |
|---|---|---|
| Name | Patentanwälte Maxton Langmaack & Partner | |
| Tel, fax, e-mail | 0049 221 380238    0049 221 380230    info@maxton.info | |
| **Address** Street and number | Mathiaskirchplatz 5 | |
| City and postal code | 50968 Köln | |
| Country | Germany | |
| Postal address (if different) | Postfach 51 08 06  50944 Köln | |

Type of representative   ☐ legal practitioner   ☐ professional representative   ☑ association of representatives   ☐ employee

| **Challenged application** | CTMA / IR No 000 984 297 | Date of publication (DD/MM/YYYY) 15 / 12 / 2008 |
|---|---|---|

Name of CTM applicant or IR holder   Ritzio Entertainment Group Ltd.

Language of the opposition   ES ☐   DE ☐   EN ☐   FR ☑   IT ☐

**Extent of the opposition**

☐ against all the goods and services in the application

☑ against part of the goods and services in the application, namely:

all goods/services of classes 32, 41, and 43.

☐ continuation sheet(s)

| **Payment of fee** | Total | € 350 | **Signature** |
|---|---|---|---|
| | | | Name Jochen Maxton, Patent Attorney, ID: 5512 |

**Current account with OHIM**

☑ Account No   000330

☐ Do not use my current account with OHIM

**Transfer to account of OHIM**

☐ Banco Bilbao Vizcaya Argentaria

☐ La Caixa

Date of transfer (DD/MM/YYYY)   /   /

Signature



# NOTICE OF OPPOSITION

## BASIS OF OPPOSITION: TRADE MARK REGISTRATION / APPLICATION

**Identification of the earlier mark**          ☑ Trade mark registration          ☐ Trade mark application

☐ Community trade mark     ☐ National trade mark     ☑ International registration with effect in one or more Member State(s)

Member State(s)

| CM | DG | BX | CZ | DK | DE | EE | GR | ES | FR | IE | IT | CY | LV | LT | HU | M:I | AT | PL | PT | RO | SI | SK | FI | SE | GB |
|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|
|    |    |    |    |    |    |    |    | ☑  | ☑  |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |

| Filing date (DD/MM/YYYY) | 27 / 10 / 2004 | **Representation of the mark** *(in colour if applicable)* |
|---|---|---|
| Filing number | 842 271 | |
| Registration date (DD/MM/YYYY) | 27 / 10 / 2004 | |
| Registration number | 842 271 | |

**Type of mark**

☑ Word mark     VULKANIUS

☐ Figurative mark

☐ Other (specify)

**Goods and services on which the opposition is based:**          ☐ attached
☑ all the goods and services covered by the registration / application
☐ part of the goods and services, namely:

☐ continuation sheet(s)

**Entitlement of opponent**

☑ Owner          Copy of registration / application          ☑ attached     ☐ to follow
☐ Authorised licensee                  Translation          ☑ attached     **E3**

**Grounds for opposition**

☐ **Article 8(1)(a) CTMR** - the CTMA IR is identical to the earlier mark and covers identical goods and/or services

☑ **Article 8(1)(b) CTMR** - there exists a likelihood of confusion on the part of the public

☐ **Article 8(5) CTMR**          - the use without due cause of the contested mark would take unfair advantage of, or be detrimental to, the distinctive character or the repute of the earlier trade mark

**Explanation of grounds and other remarks:**

The community trademark application 000 984 297 'VULKAN' may not be registered under article 8 because of the similarity to the earlier trademark mentioned in the opposition brief and because of the similarity/identity of the goods and/or services covered by this earlier trademark they are identical/there exists a likelihood of confusion on the part of the mentioned circle of people within the within the territory in question.          ☐ continuation sheet(s)

**Territory where the earlier mark has a reputation:**

| CM | DG | BX | CZ | DK | DE | EE | GM | EG | FR | IC | IT | CY | LV | LT | HU | MT | AT | PL | PT | RO | SI | SK | FI | SE | GB |
|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|

**Goods and services for which the trade mark has a reputation**

☐ all the goods and services covered by the registration / application

☐ part of the goods and services covered by the registration/application, namely:

☐ continuation sheet(s)

**Evidence of reputation**          ☐ attached     ☐ to follow          Translation ☐ attached

 **NOTICE OF OPPOSITION**

---

**BASIS OF OPPOSITION: WELL-KNOWN TRADE MARK (Art.6 bis of the Paris Convention)**

**Identification of the earlier mark**

**Member State/s where the trade mark is well known**

| BG | HR | CZ | DK | DE | EE | GR | ES | FR | IE | IT | CY | LV | LT | LU | HU | MT | NL | AT | PL | PT | RO | SI | SK | FI | SE | GB |

**Type of mark**                                          Representation of the mark *(in colour if applicable)*

☐ Word mark

☐ Figurative mark

☐ Other (specify)

                                                                                              ☐ attached

**Goods and/or services for which the trade mark is well known:**

                                                                                              ☐ continuation sheet(s)

**Grounds for opposition**

☐ Article 8(1)(a) CTMR - the CTMA IR is identical to the earlier mark and covers identical goods and/or services.

☐ Article 8(1)(b) CTMR - there exists a likelihood of confusion on the part of the public.

**Explanation of grounds and other remarks:**

                                                                                              ☐ continuation sheet(s)

---

**Evidence of the mark being well known**        ☐ attached      ☐ to follow      Translation ☐ attached



# NOTICE OF OPPOSITION

## BASIS OF OPPOSITION: CONTESTED APPLICATION FILED BY AN AGENT OF THE OPPONENT

**Identification of the earlier mark**

The opponent is the owner of a

☐ Registered trade mark        Registration number [          ]        Date of registration (DD/MM/YYYY) [  /  / ]

☐ Trade mark application       Filing number [          ]             Date of filing (DD/MM/YYYY) [  /  / ]

☐ Non-registered trade mark

in the following country / countries:

[                    ]

**Representation of the mark** *(in colour if applicable)*

[                    ]

**Type of mark**

☐ Word mark [                    ]

☐ Figurative mark

☐ Other (specify) [                    ]

☐ attached

---

The trade mark/application of the opponent covers the following goods and / or services:

[                    ]

☐ continuation sheet(s)

---

**Grounds for opposition**

☐ **Article 8(3) CTMR –**  The opponent is the proprietor of the trade mark on which the opposition is based and the applicant  is/was an agent or representative of the opponent and applied for registration thereof in his own name without the opponent's consent.

**Explanation of grounds and other remarks:**

[                    ]

☐ continuation sheet(s)

**Evidence of entitlement to the trade mark:**                                           ☐ attached        ☐ to follow

**Evidence of the applicant being agent or representative for the opponent:**             ☐ attached        ☐ to follow

Translation                    ☐ attached



# NOTICE OF OPPOSITION

## BASIS OF OPPOSITION: NON-REGISTERED MARK OR SIGN USED IN THE COURSE OF TRADE

### Identification of the earlier right

**Nature of rights**    ☐ Non-registered trade mark    ☐ Trade name    ☐ Company name

☐ Other (specify):

**Territory / Member State(s)**

| EM | BG | BE | CZ | DK | DE | EE | GR | ES | FR | IE | IT | CY | LV | LT | LU | HU | MT | NL | AT | PL | PT | RO | SI | SK | FI | SE | GB |
|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|

**Type of mark / sign**

☐ Word mark / sign

☐ Figurative mark / sign

☐ Other (specify)

**Representation of the mark / sign** *(in colour if applicable)*

☐ attached

**Goods, services or activities for which the mark / sign is used in the course of trade:**

☐ continuation sheet(s)

### Entitlement

☐ Owner

☐ Person authorised under the applicable law

### Grounds for opposition

☐ **Article 8(4) CTMR –**  The earlier non-registered trade mark / sign is used in the course of trade and is of more than mere local significance and, pursuant to the law govening it, the trade mark/sign confers on its proprietor the    right to prohibit the use of a subsequent trade mark.

**Explanation of grounds and other remarks:**

☐ continuation sheet(s)

**Evidence of use/protection :**    ☐ attached    ☐ to follow    Translation    ☐ attached



**Deutsches
Patent- und Markenamt**



DPMAregister

Home > Trade marks > Quick search > Result list > Details

## Entry in result list 1 / 1, Register information

### Register number: 30509961

**Trade mark registered
Query started: Sep 10, 2009**

| Back to Quick search | Back to Result list |

| |< | < | > | >| |

| INID | Criterion | Field | Content |
|---|---|---|---|
| | Data file | DB | DE |
| 111 | Register number | RN | 30509961 |
| 210 | File number | | 305099612 |
| 540 | Reproduction of the trade mark | WM | VULKAN |
| 550 | Type of mark | MF | Word mark |
| 220 | Application date | AT | Feb 23, 2005 |
| 151 | Date of entry into the register | ET | Apr 12, 2005 |
| 730 | Proprietor | INH | Nürburg Quelle Hermann Kreuter GmbH, 54552 Dreis-Brück, DE |
| 740 | Representative | VTR | Patentanwälte Maxton Langmaack & Partner, 50968 Köln, DE |
| 750 | address for service | ZAN | Patentanwälte Maxton Langmaack & Partner, Postfach 510806, 50944 Köln |
| | Version of the Nice classification | | NCL8 |
| 511 | Classes | KL | 32 |
| 510 | List of goods and services | WDV | Classe 32: Mineralwasser, kohlensäurehaltige Wässer und andere alkoholfreie Getränke; Fruchtgetränke und Fruchtsäfte; Sirupe und andere Präparate für die Zubereitung von Getränken |
| | Status of file | AST | Trade mark registered |
| 180 | Date of expiry of term of protection | VED | Feb 28, 2015 |
| 450 | Date of publication of the registration | VT | May 13, 2005 |

| Position | Kind of procedure | Legal status | Date of capture in the IT system ▲ | Published in Markenblatt (Trade Mark Journal) of | Display all details |
|---|---|---|---|---|---|
| 1 | Application procedure | Trade mark registered | Apr 12, 2005 | | Display details |
| 2 | Opposition proceedings | Trade mark registered without opposition | Apr 12, 2005 | | Display details |
| 3 | Transcription - Legal transfer | Transcription completed | Nov 24, 2005 | | Display details |

| |< | < | > | >| |

| Back to Quick search | Back to Result list | PDF-download |

E1

© DPMA, 2009

8116

E 1

| INID | Criterion | Field | Content |
|------|-----------|-------|---------|
| | Data file | DB | DE |
| 111 | Register number | RN | 30509961 |
| 210 | File number | | 305099612 |
| 540 | Reproduction of the trade mark | WM | VULKAN |
| 550 | Type of mark | MF | Word mark |
| 220 | Application date | AT | Feb 23, 2005 |
| 151 | Date of entry into the register | ET | Apr 12, 2005 |
| 730 | Proprietor | INH | Nürburg Quelle Hermann Kreuter GmbH, 54552 Dreis-Brück, DE |
| 740 | Representative | VTR | Patent Attorneys Maxton Langmaack & Partner, 50968 Köln, DE |
| 750 | address for service | ZAN | Patent Attorneys Maxton Langmaack & Partner, Postfach 510806, 50944 Köln |
| | Version of the Nice classification | | NCL8 |
| 511 | Classes | KL | 32 |
| 510 | List of goods and services | WDV | Class 32: Mineral and aerated waters and other non-alcoholic drinks; fruit drinks and fruit juices; syrups and other preparations for making beverages |
| | Status of file | AST | Trade mark registered |
| 180 | Date of expiry of term of protection | VED | Feb 28, 2015 |
| 450 | Date of publication of the registration | VT | May 13, 2005 |

| Position | Kind of procedure | Legal status | Date of capture in the IT system | Published in Markenblatt (Trade Mark Journal) of | Display all details |
|----------|-------------------|--------------|----------------------------------|--------------------------------------------------|---------------------|
| 1 | Application procedure | Trade mark registered | Apr 12, 2005 | | Display details |
| 2 | Opposition proceedings | Trade mark registered without opposition | Apr 12, 2005 | | Display details |
| 3 | Transcription - Legal transfer | Transcription completed | Nov 24, 2005 | | Display details |



Deutsches
Patent- und Markenamt              DPMAregister

Home > Trade marks > Quick search > Result list > Details

## Entry in result list 1 / 1, Register information

### Register number: 30425144

**Trade mark registered**
**Query started: Sep 10, 2009**

Back to Quick search | Back to Result list

|< | < | > | |>

| INID | Criterion | Field | Content |
|---|---|---|---|
| | Data file | DB | DE |
| 111 | Register number | RN | 30425144 |
| 210 | File number | | 304251445 |
| 540 | Reproduction of the trade mark | WM | VULKANIUS |
| 550 | Type of mark | MF | Word mark |
| 220 | Application date | AT | May 6, 2004 |
| 151 | Date of entry into the register | ET | Jul 8, 2004 |
| 730 | Proprietor | INH | Nürburg Quelle Hermann Kreuter GmbH, 54552 Dreis-Brück, DE |
| 740 | Representative | VTR | Patentanwälte Maxton Langmaack & Partner, 50968 Köln, DE |
| 750 | address for service | ZAN | Patentanwälte Maxton Langmaack & Partner, Postfach 510806, 50944 Köln |
| | Version of the Nice classification | | NCL8 |
| 511 | Classes | KL | 32 |
| 510 | List of goods and services | WDV | Classe 32:<br>Mineralwässer, kohlensäurehaltige Wässer und andere alkoholfreie Getränke; Fruchtgetränke und Fruchtsäfte; Sirupe und andere Präparate für die Zubereitung von Getränken |
| | Status of file | AST | Trade mark registered |
| 180 | Date of expiry of term of protection | VED | May 31, 2014 |
| 111 151 | International registration | | International registration number IR842271<br>Date of international registration Oct 27, 2004 |
| 450 | Date of publication of the registration | VT | Aug 13, 2004 |

| Position | Kind of procedure | Legal status | Date of capture in the IT system | Published in Markenblatt (Trade Mark Journal) of | Display all details |
|---|---|---|---|---|---|
| 1 | Application procedure | Trade mark registered | Jul 8, 2004 | | Display details |
| 2 | Opposition proceedings | Trade mark registered without opposition | Jul 8, 2004 | | Display details |
| 3 | Transcription - Legal transfer | Transcription completed | Nov 24, 2005 | | Display details |

|< | < | > | |>

Back to Quick search | Back to Result list | PDF-download

11/16

E2

I Non .

© DPMA, 2009

Regi..

Filter .

Ivi

12/16



| INID | Criterion | Field | Content |
|---|---|---|---|
| | Data file | DB | DE |
| 111 | Register number | RN | 30425144 |
| 210 | File number | | 304251445 |
| 540 | Reproduction of the trade mark | WM | VULKANIUS |
| 550 | Type of mark | MF | Word mark |
| 220 | Application date | AT | May 6, 2004 |
| 151 | Date of entry into the register | ET | Jul 8, 2004 |
| 730 | Proprietor | INH | Nürburg Quelle Hermann Kreuter GmbH, 54552 Dreis-Brück, DE |
| 740 | Representative | VTR | Patent Attorneys Maxton Langmaack & Partner, 50968 Köln, DE |
| 750 | address for service | ZAN | Patent Attorneys Maxton Langmaack & Partner, Postfach 510806, 50944 Köln |
| | Version of the Nice classification | | NCL8 |
| 511 | Classes | KL | 32 |
| 510 | List of goods and services | WDV | Class 32: Mineral and aerated waters and other non-alcoholic drinks; fruit drinks and fruit juices; syrups and other preparations for making beverages |
| | Status of file | AST | Trade mark registered |
| 180 | Date of expiry of term of protection | VED | May 31, 2014 |
| 111 151 | International registration | | International registration number IR842271 Date of international registration Oct 27, 2004 |
| 450 | Date of publication of the registration | VT | Aug 13, 2004 |

| Position | Kind of procedure | Legal status | Date of capture in the IT system☐ | Published in Markenblatt (Trade Mark Journal) of | Display all details |
|---|---|---|---|---|---|
| 1 | Application procedure | Trade mark registered | Jul 8, 2004 | | Display details |
| 2 | Opposition proceedings | Trade mark registered without opposition | Jul 8, 2004 | | Display details |
| 3 | Transcription - Legal transfer | Transcription completed | Nov 24, 2005 | | Display details |

E.3

842271

| 151 | Date of the registration |
| | **27.10.2004** |
| 180 | Expected expiration date of the registration/renewal |
| | **27.10.2014** |
| 270 | Language of the application |
| | **French** |

**Current Status**

| 732 | Name and address of the holder of the registration |
| | **Nürburg Quelle Hermann Kreuter GmbH** |
| | Hilleshelmer Str. 29 |
| | 54552 Drels-Brück (DE) |
| 812 | Contracting State or Contracting Organization in the territory of which the holder has a real and effective industrial or commercial establishment |
| | **DE** |
| 740 | Name and address of the representative |
| | **Maxton Langmaack & Partner** |
| | **Patent Attorneys** |
| | Mathiaskirchplatz 5 |
| | 50968 Köln (Cologne) (DE) |
| 770 | Name and address of the previous holder |
| | **Nürburg-Quelle Hermann Kreuter & Co.** |
| | Hillesheimer Str. 29 |
| | Dreis-Brück (DE) |
| 540 | Mark |
| | ## VULKANIUS |
| 541 | Reproduction of the mark where the mark is represented in standard characters |
| 511 | International Classification of Goods and Services for the Purposes of the Registration of Marks (Nice Classification) - NCL(8) |
| 32 | Eaux minérales et gazeuses et autres boissons non alcooliques; boissons de fruits et jus de fruits; sirops et autres préparations pour faire des boissons. |
| 822 | Basic registration |
| | **DE, 08.07.2004, 304 25 144.5/32** |
| 300 | Data relating to priority under the Paris Convention and other data relating to registration of the mark in the country of origin |
| | **DE, 06.05.2004, 304 25 144.5/32** |
| 834 | Designation(s) under the Madrid Protocol by virtue of Article 9sexies |
| | **BX - FR** |
| ⊟ | Registration |
| 450 | Publication number and date |
| | **2005/8 Gaz, 31.03.2005** |
| 831 | Designation(s) under the Madrid Agreement |
| | **BX - FR** |
| 580 | Date of recording (date of notification from which the time limit to notify the refusal starts) |
| | **10.03.2005** |
| | The refusal period has expired and no notification of provisional refusal has been recorded (application of Rule 5 preserved) |
| | **BX** |
| | The refusal period has expired and no notification of provisional refusal has been recorded (application of Rule 5 preserved) |
| | **FR** |

14|16

**Full details**
**Summary**
**By Office**          **BX FR**

Countries                          Shortcuts

**Print**
**preview**
**Print**

☐

842271

151   Date of the registration

27.10.2004

180   Expected expiration date of the registration/renewal

27.10.2014

270   Language of the application

French

Current Status

732   Name and address of the holder of the registration

Nürburg Quelle Hermann Kreuter GmbH

Hillesheimer Str. 29
54552 Dreis-Brück  (DE)

812   Contracting State or Contracting Organization in the territory of which the holder has
a real and effective industrial or commercial establishment

DE

740   Name and address of the representative

Maxton Langmaack & Partner
Patent Attorneys
Mathiaskirchplatz 5
50968 Köln (Cologne)  (DE)

770   Name and address of the previous holder

Nürburg-Quelle Hermann Kreuter & Co.

Hillesheimer Str. 29
Dreis-Brück  (DE)

540   Mark

11-SEP-2009(FR) 07:59    MAXTON & LANGMAACK              (FAX)+49 221 380230      S.016/016
Case 2:17-cv-00002-RAJ   Document 1-8   Filed 01/03/17   Page 128 of 156

E3

VULKANIUS

541   Reproduction of the mark where the mark is represented in standard characters

511   International Classification of Goods and Services for the Purposes of the
      Registration of Marks (Nice Classification) - NCL(8)

  32  Mineral and aerated waters and other non-alcoholic drinks; fruit drinks and fruit
      juices; syrups and other preparations for making beverages.

822   Basic registration

      DE, 08.07.2004, 304 25 144.5/32

300   Data relating to priority under the Paris Convention and other data relating to
      registration of the mark in the country of origin

      DE, 06.05.2004, 304 25 144.5/32

834   Designation(s) under the Madrid Protocol by virtue of Article 9sexies

      BX - FR


⊞    Registration :  2005/8 Gaz, 31.03.2005, BX, FR


⊟    Registration

450   Publication number and date

      2005/8 Gaz, 31.03.2005

831   Designation(s) under the Madrid Agreement

      BX - FR

580   Date of recording (date of notification from which the time limit to notify the refusal
      starts)

      10.03.2005

      The refusal period has expired and no notification of provisional refusal has been
      recorded (application of Rule 5 preserved)

      BX

      The refusal period has expired and no notification of provisional refusal has been
      recorded (application of Rule 5 preserved)

      FR

# Response Annex 27

ARRANGEMENT DE MADRID
CONCERNANT L'ENREGISTREMENT INTERNATIONAL DES MARQUES
REFUS DE PROTECTION
notifie au Bureau international de l'Organisation Mondiale de la Propriete
Intellectuelle (OMPI) selon l'article 5 de l'Arrangement de Madrid

I. Administration qui notifie le refus:

Institut National de la Propriete intellectuelle (INPI)
Rive gauche, la Maison des ministeres, rue 35, batiment 8, entree 13, bloc 4,
010000, Astana, Kazakhstan
Telephone: +7(7172) 50-28-98        Telecopie: +7(7172) 74-06-26

II. N° de l'enregistrement international faisant l'objet du refus:   984297   de   11.08.2008

III. Nom du titulaire de l'enregistrement international faisant l'objet du refus:

Ritzio Entertainment Group Limited

IV. Motif de refus:
1. Marque nationale anterieure: (540) ВУЛКАН; (111) 16505; (151) 17.05.2004; (220) 08.01.2003; (511)
cl. 35, 39, 41, 42, 43 - voir p.2; (732) Tovarichtchestvo s ogranitchennoy otvetstvennostyu "VULKAN", pr.
Seyfullina, 410, g. Almaty, 480004, Kazakhstan (KZ);
2. Marque internationale anterieure: (540) VULCANO; (111) 717773; (151) 05.08.1999; (300) 03.03.1999;
(511) cl. 32 - voir p.3; (732) Francesco Illy Lettenrain 16, CH-6045 Meggen (CH).

V. Disposition de la loi nationale applicable en la matiere:
Loi sur les marques de produits et de services et les appellations d'origine: pp. 1, p. 1 art. 7

VI.        Refus pour la totalite des produits et/ou services;
   [X] Refus pour les produits et/ou services suivants;
        cl.32,35,39,41,42,43-totalement

VII. Recours contre la decision de refus:
- delai de recours: 3 mois a partir de la prononciation de ce refus; pendant le delai precite le refus est
provisoire. Faute de l'appel de reexamen ou recour contre le present refus ou l'appel de la prolongation
(6 mois, pas plus) celui-ci deviendra definitif;
- autorite a laquelle le recours doit ktre adresse:
  INPI, Rive gauche, la Maison des ministeres, rue 35, batiment 8, entree 13, bloc 4,
  010000, Astana, Kazakhstan
  assistance d'un mandataire local est obligatoire;
- taxe legale adequate;

VII. Date a laquelle le refus a ete prononce:   11.12.2009

IX. Signature et sceau officiel de l'Office qui notifie le refus:
Artykova A.K.
Chef du service des marques

МИНИСТЕРСТВО ЮСТИЦИИ РЕСПУБЛИКИ КАЗАХСТАН
КОМИТЕТ ПО ПРАВАМ ИНТЕЛЛЕКТУАЛЬНОЙ СОБСТВЕННОСТИ
РЕСПУБЛИКАНСКОЕ ГОСУДАРСТВЕННОЕ КАЗЕННОЕ ПРЕДПРИЯТИЕ
«НАЦИОНАЛЬНЫЙ ИНСТИТУТ ИНТЕЛЛЕКТУАЛЬНОЙ СОБСТВЕННОСТИ» (НИИС)
Левобережье, Дом Министерств, блок В, пятно 5, г.Астана, Республика Казахстан, 010000,
тел (3172) 50-28-98, факс (3172) 74-06-26

# ВЫПИСКА ИЗ ГОСУДАРСТВЕННОГО РЕЕСТРА ТОВАРНЫХ ЗНАКОВ РЕСПУБЛИКИ КАЗАХСТАН

| | | |
|---|---|---|
| (111) | свидетельство | 16505 |
| (151) | дата регистрации РК | 17.05.2004 |
| (181) | дата истечения срока действия регистрации | 08.01.2013 |
| (210) | № заявки | 22230 |
| (220) | дата подачи заявки | 08.01.2003 |
| (540) | знак | ВУЛКАН |
| (730) | владелец | "ВУЛКАН" жауапкершілігі шектеулі серіктестігі (KZ)Товарищество с ограниченной ответственностью "ВУЛКАН" (KZ)480035, г.Алматы, ул. Жандосова, д. 51. |
| (511) | классы МКТУ | 6, 17, 19, 35, 37, 39, 41, 42, 43, 44 |

06 - металлические строительные материалы, передвижные металлические
конструкции и сооружения, металлические трубы;
17 - изделия из частично обработанных пластмасс, неметаллические гибкие
трубы, электро - тепло - и звукоизоляционные материалы;
19 - неметаллические строительные материалы, неметаллические жесткие
трубы для строительных целей, неметаллические передвижные конструкции и
сооружения;
35 - аукционная продажа; деловые и коммерческие операции, информация
деловая, статистическая; консультационные услуги, изучение рынка,
маркетинга, организация выставок для коммерческих и рекламных целей;
реализация товаров, оптовая и розничная торговля, реклама, сделки,
экспортно-импортные операции;
37 - строительство и ремонт зданий; проверка строительных проектов;
ремонт электропроводки, мебели, оборудования, инструментов;
39 - доставка товаров; упаковка и хранение товаров;

организация
путешествий, перевозка и сопровождение
путешественников, перевозки
автомобильным, водным, железнодорожным транспортом,
туристические
экскурсии, экспедирование грузов;
41 - организация и проведение семинаров, симпозиумов;
42 - использование запатентованных изобретений;
промышленные и научные
исследования и разработки; проектно - конструкторские
разработки;
43 - бары, кафе, кафетерии, рестораны, гостиницы;
44 - услуги медицинские; услуги в области гигиены и
косметики для людей и
животных, парикмахерские, химчистки.

1 de 1

---

**(151)** 05.08.1999                                                      717773

**(180)** 05.08.2009

**(171)** 10

**(732)** Francesco Illy
*Lettenrain 16,*
*CH-6045 Meggen (CH)*

**(812)** CH

**(740)** Dr. Lusuardi AG
*Kreuzbühlstrasse 8*
*CH-8008 Zürich (CH)*

**(540)** VULCANO

**(541)** Reproduction de la marque lorsque celle-ci est représentée en caractères
standard

**(511)**

30 Thé, cacao, sucre, riz, tapioca, sagou, farines et préparations faites de
céréales, pâtes alimentaires, pain, biscuits, gâteaux, pâtisserie et confiserie,
glaces comestibles; miel, sirop de mélasse; levure, poudre pour faire lever;
sel; moutarde; poivre, vinaigre, sauces; épices; glace.
*Tea, cocoa, sugar, rice, tapioca, sago, flour and preparations made from*
*cereals, pasta, bread, biscuits, cakes, pastry and confectionery, edible ice;*
*honey, treacle; yeast, baking powder; salt; mustard; pepper, vinegar,*
*sauces; spices; ice.*

32 Bière, ale et porter; eaux minérales et gazeuses et autres boissons non
alcooliques; sirops et autres préparations pour faire des boissons.
*Beer, ale and porter; mineral and sparkling water and other non-alcoholic*
*beverages; syrups and other preparations for making beverages.*

**(822)** CH, 03.03.1999, 463777

**(300)** CH, 03.03.1999, 463777

**(831)** DZ, EG, KZ, SD, TJ

**(832)** DK, GB, NO, SE, UZ

**(834)** AM, AT, BA, BG, BX, CN, CU, CZ, DE, ES, FR, HR, HU, IT, KG, KP, LI,
LV, MA, MC, MD, MK, MN, PL, PT, RO, RS, RU, SI, SK, SM, UA, VN

**(527)** GB

# Response Annex 28

# ARANGEMENT ET PROTOCOLE DE MADRID

## REFUS PROVISOIRE DE PROTECTION
### Règle 17.1)

| | |
|---|---|
| **I** | Nom de l'Administration qui a prononcé le refus:<br><br>**REPUBLIQUE DE SERBIE**<br><br>**OFFICE DE LA PROPRIÉTÉ INTELLECTUELLE**, Kneginje Ljubice 5, 11000 Beograd |
| **II** | No de l'enregistrement international faisant l'objet du refus: **984 297**<br><br>No de l'enregistrement national de base: **353692.** |
| **III** | Nom et adresse du titulaire de l'enregistrement international faisant l'objet du refus: **Ritzio Entertainment Group Limited Diagorou 4, Kermia Building, Office 601 CY-1097 Nicosia (CY).** |

| **IV** | Nature du refus: | **X** | **Refus provisoire partiel fondé sur un examen d'office** | | |
|---|---|---|---|---|---|

| | |
|---|---|
| **V** | Motifs de refus |

Collision avec la marque internationale No 462455 Vulkan, pour tous les produits de la classe 09, Vaillant GmbH Berghauser Strasse 40, 42859 Remscheid (DE), origine : 15.05.1981, date d'enregistrement : 24.06.1981.

Etant donné que la marque nationale VULKAN (No 57932, voir copie ci-joint), le titulaire de la marque et les produits et services des classes suivantes : 09, 16, 28, 35, 38, 39, 41, 42, 43 sont identiques avec la marque en question (No 984297), celle-ci est contraire à l'ordre public. Elle ne peut être protégée pour tous les produits et services des classes  09, 16, 28, 35, 38, 39, 41, 42 et 43.

| | |
|---|---|
| **VI** | Articles de la loi nationale applicables en la matière (voir extrait de la loi au verso):<br><br>**5, al. 1, No 9        5, al. 1, No 1** |

| **VII** | | Refus pour la totalité des produits et/ou services : |
|---|---|---|
| | **X** | Refus pour les produits et/ou services  suivants :   pour tous les produits et services des classes suivantes :   09, 16, 28, 35, 38, 39, 41, 42 et 43. |

| | |
|---|---|
| **VIII** | Recours possible contre de la décision de refus<br><br>a) délai de recours:  [**X**] 6 mois dès la prononciation du présent refus<br><br>  [ ] 30 jours dès la réception du présent refus<br><br>b) autorité à laquelle le recours doit être adressé:  [**X**] cet Office<br><br>  [ ] Cour de Serbie<br><br>Assistance d'un mandataire local est obligatoire: |

| | |
|---|---|
| **IX** | Numéro et date à laquelle le refus a été prononcé  4359 – le 19 octobre 2009 |

# LOI SUR LES MARQUES
(le 1er janvier 2005)

### Article 1

L'acquisition et la protection du droit sur le signe dans la circulation des produits et des services sont régularisées par cette loi.

La marque est le droit par lequel on protège le signe qui est susceptible de faire distinguer des produits ou services d'une personne morale ou physique par rapport à d'autres produits ou services identiques ou similaires de l'autre personne physique ou morale.

### Article 4

Le signe qui est susceptible de faire distinguer des produits ou des services dans leur circulation peut être protégé par marque. Il peut être présenté graphiquement. Le signe peut contenir les mots, les lettres, les chiffres, les dessins, les images, la combinaison de couleurs, les formes de trois dimensions, la combinaison de ces signes et les phrases de musique pouvant être présentées graphiquement.

### Article 5

Ne peut être protégé comme marque le signe:

**1)** qui est contraire à la morale ou à l'ordre public;

**2)** qui n'est pas susceptible, par son apparence, de distinguer des produits ou des services dans leur circulation ;

**3)** qui présente uniquement la forme déterminée par la nature des produits ou la forme des produits nécessaire pour obtenir un résultat technique;

**4)** qui désigne uniquement l'espèce des produits ou des services, leur destination, le temps ou le mode de leur production, leur qualité, leur prix, leur quantité, leur poids et l'origine géographique;

**5)** qui est usuel pour désigner une espèce déterminée des produits ou des services;

**6)** qui est susceptible, par son apparence ou par son contenu, de créer la confusion dans la circulation des produits et des services en ce qui concerne l'origine, l'espèce, la qualité ou autres caractéristiques des produits ou des services;

**7)** qui contient des signes ou des poinçons officiels de contrôle ou de garantie de qualité ou qui les imite;

**8)** qui est identique au signe antérieurement protégé d'une autre personne pour les produits ou services identiques ou similaires;

**9)** qui ressemble au signe antérieurement protégé d'une autre personne pour les produits ou services identiques ou similaires, si cette ressemblance peut créer la confusion dans la circulation des produits et des services, ou induire en erreur les consommateurs dans la circulation;

**10)** qui est identique ou similaire, pour les produits ou services identiques ou similaires, à un signe notoire en Serbie,conformément à l'article 6bis de la Convention de Paris sur la protection de la propriété industrielle ;

**11)** qui représente, sans prenant en considération les produits et services auxquels il se rapporte, la reproduction, l'imitation, la traduction ou la translittération d'un signe protégé ou de sa partie importante, qui est,entre les participants dans la circulation en Serbie, notoire en tant que signe d'une haute réputation (dans le texte suivant : la marque notoire), que l'autre personne utilise pour désigner ses produits et services. Par utilisation d'un tel signe, le bénéfice serait tiré, d'une manière déloyale, de la réputation acquise de la marque notoire, ou son caractère distinctif ou sa réputation subiraient un dommage ;

**12)** qui, par son apparence ou par son contenu, viole le droit d'auteur ou les droits de la propriété industrielle;

**13)** qui contient des armoiries d'Etat ou d'autres armoiries publiques, le drapeau ou l'emblème, le nom ou l'abrégé d'un pays ou d'une organisation internationale, ainsi que leur imitation, sauf sur l'autorisation de l'organe compétent du pays ou de l'organisation en question;

**14)** qui présente ou imite le symbol national ou religieux.

Le signe de l'alinéa 1., numéros 2., 4. et 5. de cet article peut être protégé en tant que marque si le déposant de la demande prouve que ce signe est devenu susceptible de distinguer des produits et services par son utilisation sérieuse.

Le signe protégé de l'alinéa 1., numéros 8. et 9. de cet article est considéré en tant que signe faisant l'objet de la demande de la marque, sous condition que la marque faisant l'objet de cette demande soit protégée.

Pour vérifier si le signe de l'alinéa 1. numéro 11. de cet article est notoire en tant que signe d'une haute réputation, on prend en considération si une partie importante du public connaît ce signe, la promotion du signe où elle peut le connaître, ci-incluse. La partie importante du public représente tous les consommateurs réels et potentiels des produits et services protégés par ce signe, ainsi que des personnes incluses dans les courants distributifs de ces produits ou services.

L'effigie ou le nom d'une personne ne peuvent être protégés qu'avec le consentement de cette personne.

L'effigie ou le nom d'une personne décédée ne peuvent être protégés qu'avec le consentement du conjoint, des parents ou des enfants du décédé.

L'effigie d'une personnalité historique ou d'une autre personnalité célèbre décédée peut être protégé avec l'autorisation de l'organe compétent ou de ses parents jusqu'au troisième degré de parenté.

### Article 15

Le déposant de la marque collective est tenu de joindre l'acte général sur la marque collective tandis que le déposant de la marque de garantie est tenu de joindre l'acte général sur la marque de garantie.

---

*Annexes (marquées ci-dessous d'une croix)*
 - *1 reproduction de marque(s) nationale(s) opposée(s) comportant un élément figuratif ou un graphisme spécial*
 - *Liste indiquant, pour chaque marque nationale opposée, son no d'enregistrement et les produits et/ou services auxquels elle s'applique*
 - *Liste des mandataires agréés*

Signature ou sceau officiel de l'Office qui
a prononcé le refus:

Marija Bozic, Chef
Section des marques internationales

**462455**

| | | |
|---|---|---|
| 151 | Date of the registration | |
| | 24.06.1981 | |
| 180 | Expected expiration date of the registration/renewal | |
| | 24.06.2011 | |
| 270 | Language of the application | |
| | French | |

**Current Status**

| | |
|---|---|
| 732 | Name and address of the holder of the registration |
| | Vaillant GmbH |
| | Berghauser Strasse 40 |
| | 42859 Remscheid  (DE) |
| 811 | Contracting State of which the holder is a national |
| | DT |
| 750 | Address for correspondence |
| | Vaillant GmbH |
| | 42850 Remscheid  (DE) |
| 740 | Name and address of the representative |
| | Pat.-Ing. Johann L. Heim |
| | c/o Joh. Vaillant Gmbh u. Co |
| | 40, Berghauser Strasse |
| | 42859 REMSCHEID  (DE) |
| 770 | Name and address of the previous holder |
| | JOH. VAILLANT GMBH U. Co |
| | 40, Berghauser Strasse |
| | REMSCHEID  (DE) |
| 540 | Mark |

# Vulkan

| | |
|---|---|
| 511 | International Classification of Goods and Services for the Purposes of the Registration of Marks (Nice Classification) |

09  Appareils de mesurage, de commande et de régulation, en particulier pour les produits cités dans la classe 11.

11  Appareils de chauffage à combustible, en particulier radiateurs produisant un effet direct, chaudières de chauffage et chauffe-eau à circulation pour installations de chauffage central et pour la préparation d'eau chaude.

| | |
|---|---|
| 822 | Basic registration |
| | DT, 15.05.1981, 1 017 925 |
| 300 | Data relating to priority under the Paris Convention and other data relating to registration of the mark in the country of origin |
| | DT, 11.03.1981, 1 017 925 |
| 831 | Designation(s) under the Madrid Agreement |
| | DZ |
| 834 | Designation(s) under the Madrid Protocol by virtue of Article 9sexies |
| | AT - BX - CH - DE - FR - HR - IT - LI - MA - MC - RS - RU - SI - SM - UA |

⊞ Registration : 1981/8 LMi, 01.10.1981, AT, BX, CH, DD, DE, DZ, FR, IT, LI, MA, MC, PT, SM, SU, TN, YU

⊞

Statement indicating that protection of the mark is protected for some of the goods and services requested :

**CH**

⊞     **Continuation of effect :  1993/5 LMi, 16.07.1993, UA**

⊞     **Continuation of effect :  1993/6 LMi, 17.08.1993, HR, SI**

⊞     **Total invalidation :  1993/7 LMi, 17.09.1993, PT**

⊞     **Renewal :  2001/14 Gaz, 16.08.2001**

⊞     **Designated contracting party(ies) which has not been the subject of a renewal (Rule 31(4)(b))**



РЕПУБЛИКА СРБИЈА
**ЗАВОД ЗА ИНТЕЛЕКТУАЛНУ СВОЈИНУ**

# ПОДАЦИ О ЖИГУ

Регистарски број: 57932          датум регистровања:31/03/2009

Број пријаве:      2007 - 2888      датум подношења:07/12/2007

Приоритет:                              важи до:        07/12/2017

Знак: VULKAN

Боје:

Класе: 9, 16, 25, 28, 35, 38, 39, 41, 42 и 43

Фирма:  Ritzio International Limited

Адреса: Diagorou, 4, KERMIA BUILDING, 6th floor, Flat/Office 601, PC 1097 Nicosia, CY

Пуномоћник: Алексић ". Ненад, адвокат, 11000 Београд, Риге од Фере бр. 3

Списак производа и услуга:

Кл. 9)  апарати за снимање, пренос и репродуковање звука или слике; магнетни носиоци података, дискови за
снимање; аутоматске машине и механизми за апарате који се покрећу новцем или жетоном; опрема за обраду
података и компјутери; апарати за издавање улазница (ticket dispenser); џу-боксови (музички) машине за
аутоматску дистрибуцију, електрични апарати за мониторинг, апарати за снимање звука, електрични апарати
за комуникацију, видео касете, видео екрани, флопи дискови, грамофонске плоче, оптички дискови, компакт
дискови (read-only меморија), компакт дискови (аудио-видео), декоративни магнети, механизми за апарате
који се покрећу новцем или жетоном; носачи за снимање звука, магнетски медији за чување података, оптички
медији за чување података; програми за рад компјутера, снимљени; програми за компјутерске игре,
компјутерски програми (софтвер који се може даунлоудовати), електронска издања (која се могу
даунлоудовати), картице интегрисаних кола (смарт картице), тотализатори, апарати за игре прилагођени само
за коришћење са телевизијским апаратима, апарати за забаву прилагођени само за коришћење са
телевизијским апаратима, периферни компјутерски уређаји, апарати за упозоравање у случају крађе, чипови
(интегрисана кола).
Кл. 16)  хартија, картон и производи од њих, који нису укључени у друге класе; штампане ствари;
фотографије; канцеларијски материјал (изузев лепка); уметнички материјали; материјали за обуку и наставу
(изузев апарата); пластични материјали за паковање (који нису укључени у друге класе) укључујући налив
пера, албуме, албуме, постере, етикете, обрасце (одштампане), роковнике, регистраторе, памфлете, брошуре,
њузлетери, новине, гравуре, држаче за оловке, држаче за креде, држаче за печате, штамбиље, држаче за чекове,
пунцеве (канцеларијски реквизити), етикете за картотеке, копче на оловкама, граничници за књиге, штампана
издања, торбе (коверти и кесе) од папира или пластике, за паковање, графичко репрезентовање, календари,
календари са одвојивим страницама (tear-off календари), оловке, слике, декалкоманије; пресе за кредитне
картице, које нису електричне; карте, географске карте, каталози, књиге, трговачке књиге (књиге), коверте

(канцеларијски материјал), графички отисци, материјали за наставу (осим апарата), инструменти за писање, налепнице (канцеларијски материјал), секачи папира (канцеларијски реквизити), омоти за боце од картона или папира, омотачи (канцеларијски материјал), музичке честитке, честитке, разгледнице, купасте папирне торбе, фасцикле за папир, papier mache, магазини (периодични), држачи књига, подметачи за пивске флаше, држачи за пера и оловке, држачи фотографија, јастучићи за мастило, притискивачи за папир, мастионице, канцеларијски реквизити осим намештаја, материјали за писање, спајалице за папир, зарезачи оловака (електрични и они који нису електрични), проспекти, штампани планови рада, графичке репродукције, пера, фигуре (статуе) од papier mache-а, дијапозитиви (канцеларијски материјал), заставице од папира, гравиране фотографије, отисци (гравирани), етикете које нису од текстила.

Кл. 25:  одећа, обућа, покривала за главу.

Кл. 28:  игре и играчке; гимнастички и спортски артикли који нису обухваћени другим класама укључујући машине за забаву, аутоматске и оне које се покрећу новцем или жетоном, шоље за коцкице за игру, коцкице за игру, карте за игру, билијарски штапови, креда за билијарске штапове, мартинела за билијарске столове, држачи за билијарске штапове, аксесор за игре, маркери за билијар, столови за билијар, столови за билијар који се покрећу новцем или жетоном, столови за стони тенис, апарати за електронске игре осим оних који су намењени за употребу само са телевизијским апаратима, бројачи (дискови) за игре, мале лопте за игре, билијарски столови.

Кл. 35:  оглашавање; вођење послова; пословно управљање; канцеларијски послови, агенције за увоз и извоз, стручњаци за ефикасност, презентација добара, тржишне студије, пословно истраживање, тржишно истраживање, саветовање о вођењу и организацији послова, саветовање о организацији послова, саветовање о вођењу послова, саветовање о пословном управљању, професионално пословно саветовање, организација изложби у трговинске или рекламне сврхе, организација сајмова у трговинске или рекламне сврхе, пословне процене, претраживање података у компјутерским фајловима (за друге), привредна предвиђања, организовање аукција, продајне промоције (за друге), изнајмљивање канцеларијских машина и опреме, изнајмљивање машина за аутоматску дистрибуцију, објављивање саопштења за јавност, дистрибуција узорака, оглашавање путем директне поште, on-line оглашавање на Интернету, сакупљање информација у компјутерске базе података, систематизација информација у компјутерским базама података, односи с јавношћу, услуге набавке за другог (куповање и обезбеђивање добара за другог), продаја на велико и мало.

Кл. 38:  телекомуникације укључујући услуге панела за електронске билтене (телекомуникационе услуге), обезбеђивање корисницима приступа глобалној компјутерској мрежи (сервис провајдери), обезбеђивање телекомуникационе везе са глобалном компјутерском мрежом, везе помоћу мрежа оптичких влакана.

Кл. 39:  организовање путовања укључујући резервацију места за путовања, резервацију путовања, резервацију превоза, испоруку добара, организовање крстарења, превоз путника, превоз аутомобила, изнајмљивање аутомобила, пратња путника, увијање добара, паркирање аутомобила, возачке сервисе, курирске сервисе (поруке или роба), туристичке агенције (изузев за резервацију хотела), складиштење добара, разгледање знаменитости (туризам).

Кл. 41:  образовне услуге; услуге обуке; разонода; спортске и културне активности укључујући изнајмљивање тениских терена, сала за билијар, резервацију места за представе, снимање на видео-траку, услуге дискотека, играње игара, објављивање књига, информисање о рекреацији, информисање о разоноди, услуге клубова (разонода или образовање), ноћне клубове, услуге on-line игара (са компјутерске мреже), објављивање on-line издања (која нису за daunloud), практична обука (демонстрација), организација изложби у културне или образовне сврхе, услуге објеката за рекреацију, организовање и вођење радионица (обука), организовање такмичења (образовање или разонода), организовање лутрија, услуге кампова за одмор (разонода), организовање спортских такмичења, забавне паркове, услуге спортских објеката, пружање услуга аркада за забаву, услуге биоскопских објеката, мерење времена на спортским догађајима, продукција филмова на видео-тракама, филмска продукција, изнајмљивање звучних снимака, изнајмљивање аудио опреме, изнајмљивање видео-рекордера, изнајмљивање аутомата који се покрећу новцем или жетоном, изнајмљивање филмских трака, изнајмљивање стадионских објеката, објављивање електронских радних површина, on-line објављивање електронских књига и журнала, објављивање текстова (различитих од саопштења за јавност), услуге забављача, осмишљавање забава (разонода), услуге објеката за коцкарнице (коцкање), превођење, фотографију, продукцију представа.

Кл. 42:  пројектовање и развој компјутерског хардвера и софтвера; анализа компјутерског система, инсталација компјутерског софтвера, ажурирање компјутерског софтвера, одржавање компјутерског софтвера, пројектовање компјутерског система, изнајмљивање компјутера, изнајмљивање компјутерског софтвера, хоустовање компјутерских сајтова (web сајтови), израда и одржавање web сајтова за друге.

Кл. 43:  услуге обезбеђивања хране и пића; привремени смештај, агенције за резервацију (хотели, пансиони), изнајмљивање простора за састанке, туристички домови, резервације хотела, резервације привременог смештаја, хотели, снек-барови, кафеи, кафетерије, ресторани, услуге кампова за одмор (боравак), услуге барова, услуге објеката кампова, кетеринг хране и пића.

VULKAN

# Response Annex 29

ARRANGEMENT DE MADRID

CONCERNANT L'ENREGISTREMENT INTERNATIONAL DES MARQUE

ET PROTOCOLE RELATIF À CET ARRANGEMENT

REFUS PROVISOIRE DE LA PROTECTION

notifié au Bureau International de l'Organisation Mondiale de la Propriété Intellectuelle (OMPI)

selon l'article 5 de l'Arrangement de Madrid et du Protocole de Madrid

| | |
|---|---|
| I. Office qui notifie le refus:<br>Institut d'Ukraine de la Propriété Industrielle<br>1, vul. Glazunova<br>01601 Kyiv-42 | |

II.No de l'enregistrement international faisant l'objet du refus: **984 297**

III. Nom et adresse du titulaire de l'enregistrementd international faisant l'objet du refus:
Ritzio Entertainment Group Limited
Diagorou 4, Kermia Building,
Office 601
CY-1097 Nicosia (CY)

IV.Motifs du refus : Le signe « VULKAN » ne peut pas être pris en tant que marque, parce que les signes semblables ont été pris antérieurement en Ukraine aux noms de "VOLCANO" Gaming Clubs Ltd. ul. Pokrovka, 3/7, str. 1 RU-101000 Moscow; RU – enreg. international 791 038 de 03.09.2002 (PR :RU, 03.04.2002, 2002707649) ; Francesco Illy Lettenrain 16, CH-6045 Meggen; CH – enreg. international 717 773 de 05.08.1999 (PR :CH, 03.03.1999, 463777) ; REEVES S.p.A. Via A, Costa, 2 Milano; IT – enreg. international 824 949 de 05.04.2004 (PR :IT, 30.12.2003, MI2003C012859) ; Obshestvo s ogranichennoj otvetstvennostju "Firma "Bars"str. 1, 56/17, Baumanskaya RU-105005 Moskva; RU – enreg. international 905 612 de 07.06.2006 (PR :RU, 16.12.2005, 2005732554) ; Tovaristvo s obmegenoyou vidpovidalnistyou « Agrosfera) ; vul. Sobinova ,1, Dnipropetrovsk ; 49083 (UA) – certificat No. 34425 de 15.08.2003 (dem. nationale 2001106400 de 15.10.2001) ; Dochirne pidpriemstvo « Konditerska korporatsia « Roschen » ; vul. Pavla Usenka, 8, Kyiv 02105 (UA) – certificat No. 35975 de 17.11.2003 (dem. nationale 2002020890 de 08.02.2002) ; Tovaristvo s obmegenoyou vidpovidalnistyou « Sinnis Ltd » ; vul. Hkreschatik 195, Cherkasi, 18002 (UA) – certificat No. 56105 de 15.11.2005 (dem. nationale 2004043570 de 06.04.2004) ; Otkritoe Aksionernoe Obschestvo « Koncern « Igmasch » ; proezd Deryabina, 3 ; Igevsk, 426006 (RU) – certificat 59679 de 15.03.2006 (dem. nationale 2004010581 de 26.01.2004) ;Leschenko Igor ; prov. Sovetskyi 7 ; Odesa, 65113 (UA) – certificat No. 95925 de 26.08.2008 (dem. nationale 200707210 de 03.05.2007).

| V. | Dispositions de la loi nationale applicables en matiéres [(voir texte sous le point X)]: |
|---|---|

VI.

■ Refus pour la totalité des produits et services

☐ Refus pour les produits et services suivants:

☐ Acceptance spécifiée (voir point V. ci-dessus)

VII. Conformément à la «Loi d'Ukraine sur la protection du droit des marques commerciales et des marques de service», il est admissibles de faire valoir le recours contre cette décision en le présentant à l'Institut d'Ukraine de la Propriété Industrielle à Kiev dans **le délai de 3 mois à compter de la date de la présente notification.**
Le recours présenté à temps met en suspens l'entrée en vigueur de la décision susmentionnée

VIII. Date à laquelle le refus a été prononcé: le **06 novembre 2009**

IX. . Signature ou sceau officiel de l'Office qui notifie le refus:

УКРАЇНСЬКИЙ
ІНСТИТУТ
ПРОМИСЛОВОЇ
ВЛАСНОСТІ

Chef de la Section des
marques internationales
Mme Svitlana Sukhinova

X. **Extrait de la «Loi d'Ukraine sur la protection de droit des marques commerciales et des marques de services»**

**DIVISION II
PROTECTION DE DROIT DES MARQUES**

Article 5. Conditions d'octroi de la protection de droit.

☐ 1. La protection de droit accorde à la marque qui n'est pas contraire en son fond à l'ordre public, à la moralité ou aux principes d'humanité et qui n'est pas de raisons pour le refus de protection de droit établies par la présente Loi.

Article 6. Raisons pour le refus de protection de droit.
☐ 1. Selon la présente Loi ne peuvent pas être enregistrés en tant que marques les signes qui: sont des armoiries d'Etat, des drapeaux et des emblémes, des noms officiels d'Etat; des abréviations ou des noms complets d'organisations internationales intergouvernementales; des poinçons de contrôle et de garantie; des sceaux; des décorations et des insignes de grade. Ces désignations peuvent être incorporées dans la marque comme les éléments non-protegeables s'il y a l'autorisation de l'organe compétent correspondant ou de son propriétaire.

2. Selon la présente Loi ne peuvent pas être enregistrés en tant que marques les signes qui:
☐ ne posséde pas de caractère distinctif;
☐ sont d'un usage général pour les produits d'un certain aspect;
☐ indiquent l'aspect, la qualité, la quantité, la nature, la destination, la valeur des produits et des services ainsi que l'origine, l'époque de fabrication, la distribution des produits ou l'octroi des services;
☐ ont été falsifiés ou peuvent induire un consommateur en erreur au sujet du fabricant ou du produit et des services;
☐ sont des symboles et des termes d'usage général.
Les désignations indiquées dans les points 1,2,3,5 peuvent être incorporées dans la marque comme les éléments non-protégeables, si elles ne s'occupent pas de position dominante dans la marque.

3. Ne peuvent pas être enregistrés en tant que marques les signes qui sont identiques, semblables :
■ aux marques prises ou demandés antérieurement en Ukraine au nom de tiers pour les produits ou services similaires;
☐ aux marques appartenants aux tiers dont la protection est accordée en Ukraine en vertu d'accords internationaux auxquels Ukraine est partie, à savoir aux marques notoirement connues en vertu de l'article 6 bis de la Convention de Paris pour la protection de la Propriété Industrielle ;
☐ aux dénominations de raisons sociales ou commerciales (ou leurs parties), qui appartiennent aux tiers ayant acquis le droit d'usage de ces dénominations antérieurement en question pour les produits similaires;
☐ aux appelations d'origine, à l'exception des cas quand elles sont incorporées dans la marque comme les éléments non-ptotegeables et enregistrées aux noms de personnes ayant le droit d'utiliser telles dénominations;
☐ aux marques de certification enregistrées en formes légales.

4. Ne peuvent pas être enregistrés en tant que marques les signes représentées:

☐ des modéles industriels dont les droits appartiennent aux tiers en Ukraine;
☐ des titres des travaux scientifiques et des oeuvres littéraires et d'art ou leurs extraits sans le consentement de l'auteur ou de l'organe compétent correspondant;
☐ des prénoms, des noms, des pseudonymes et leurs dérivés, des portraits et des fac-similés de personnes sans leur consentement.

## 791038

| | |
|---|---|
| (151) | 03.09.2002 |
| (180) | 03.09.2012 |
| (270) | Англійська |
| (834) | Зазначено відповідно до статті 9sexies Мадридського Протоколу |
| (300) | RU, 03.04.2002, 2002707649 |
| (561) | VULKAN |
| (566) | VOLCANO |
| (591) | Blue, dark blue - background; black - lightning; yellow, green, violet - stars; red - word "VULKAN"; black, blue, dark blue - letters' shadow. Blue, dark blue, black, red, green, yellow, violet. |



(732) **"VOLCANO" Gaming Clubs Ltd.**
ul. Pokrovka, 3/7, str. 1
RU-101000 Moscow; RU

| | | | |
|---|---|---|---|
| 01.01.00 | 01.01.05 | 25.01.00 | 25.01.19 |
| 28.05.00 | 29.01.00 | 29.01.15 | |

(812)   RU

(740)   **Joint-Stock company
"Patentny Poverenny"
Galina N. Andruschak**
ul Aviamotornaya, d. 53
RU-111250 Moskwa; RU

(822)   RU, 03.07.2002, 216203

(511)   Кл.: 41

41   Modelling of artists; rental of tennis courts; lending libraries; booking of seats for shows; videotaping; nursery schools; physical education; discotheque services; animal training; dubbing; gaming; publication of books; educational information; recreational information; entertainment information; movie studios; health club services; club services (entertainment or education); night clubs; correspondence courses; microfilming; videotape editing; production of radio and television programmes; music-halls; game services provided on-line (from a computer network); religious education; gymnastic instruction; practical training (demonstration); organisation of balls; organisation of exhibitions for cultural or educational purposes; providing recreational facilities; arranging and conducting of colloquiums; arranging and conducting of congresses; arranging and conducting conferences; arranging and conducting of workshops (training); arranging and conducting of seminars; arranging and conducting of symposiums; arranging of beauty contests; organisation of competitions (education or entertainment); lotteries; holiday camp services (entertainment); organisation of shows (impresario services); vocational guidance (education or training advice); boarding schools; amusement park; sign language interpretation; television entertainment; bookmobile services; providing karaoke services; providing golf facilities; providing amusement arcade services; providing cinema facilities; presentation of live performances; theatre productions; educational examination; videotape film production; film production; rental of sound recordings; rental of audio equipment;

rental of camcorders; rental of video cassette recorders; rental of videotapes; rental of show scenery; rental of cine-films; rental of lighting apparatus for theatrical sets or television studios; rental of radio and television sets; rental of skin diving equipment; rental of stage scenery; electronic desktop publishing; publication of electronic books and journals online; publication of texts (other than publicity texts); radio entertainment; entertainer services; zoological gardens; news reporters services; party planning (entertainment); music composition services; subtitling; providing of casino facilities (gambling); providing museum facilities (presentation, exhibitions); educational services; orchestra services; translation; scriptwriting services; recording studio services; digital imaging services; circuses; production of shows.

## Реєстрація

(580)   05.12.2002

**717773**                                    VULCANO

(151)   05.08.1999

(180)   05.08.2009

(270)   Французька

(834)   Зазначено відповідно до статті
        9sexies Мадридського Протоколу

(300)   CH, 03.03.1999, 463777

(541)   Зображення знака, якщо знак
        представлений стандартними
        символами

(732)   **Francesco Illy**
        Lettenrain 16,
        CH-6045 Meggen; CH

(812)   CH

(740)   **Dr. Lusuardi AG**
        Kreuzbühlstrasse 8
        CH-8008 Zürich; CH

(822)   CH, 03.03.1999, 463777

(511)   Кл.: 30, 32

   30   Thé, cacao, sucre, riz, tapioca, sagou, farines et préparations faites de céréales, pâtes
        alimentaires, pain, biscuits, gâteaux, pâtisserie et confiserie, glaces comestibles;
        miel, sirop de mélasse; levure, poudre pour faire lever; sel; moutarde; poivre,
        vinaigre, sauces; épices; glace.

   32   Bière, ale et porter; eaux minérales et gazeuses et autres boissons non alcooliques;
        sirops et autres préparations pour faire des boissons.

# VULCANO

### Реєстрація

(580)   09.09.1999

_____

*Дані станом на WIPO Gazette № 2009/40 від 22.10.2009*

## 824949

VULCAN

(151)  05.04.2004

(180)  05.04.2014

(270)  Англійська

(834)  Зазначено відповідно до статті
9sexies Мадридського Протоколу

(300)  IT, 30.12.2003, MI2003C012859

(541)  Зображення знака, якщо знак
представлений стандартними
символами

# VULCAN

(732)  **REEVES S.p.A.**
Via A, Costa, 2
Milano; IT

(812)  IT

(740)  **NOTARBARTOLO & GERVASI
S.P.A.**
Corso di Porta Vittoria, 9
I-20122 MILANO; IT

(822)  IT, 05.04.2004, 926946

(511)  Кл.: 07, 16, 24

07  Machines and machine tools for imprinting; printing equipment.

16  Offset printing blankets not of textile.

24  Offset printing blankets of textile; light weight fabrics for industrial and household use.

## Реєстрація

(580)  10.06.2004

---

*Дані станом на WIPO Gazette № 2009/40 від 22.10.2009*

## 905612

(151)   07.06.2006

(180)   07.06.2016

(270)   Англійська

(834)   Зазначено відповідно до статті
9sexies Мадридського Протоколу

(300)   RU, 16.12.2005, 2005732554

(561)   Vulkan.

(566)   Volcano.

(591)   White, yellow, orange, red, light blue,
blue and dark blue.



(732)   **Obshestvo s ogranichennoj
otvetstvennostju "Firma "Bars"**
str. 1, 56/17, Baumanskaya
RU-105005 Moskva; RU

(812)   RU

(740)   **Obshestvo s ogranichennoj
otvetstvennostju "Intellect
Patent"**
28 Post Box
RU-125009 Moskva; RU

| | | | |
|---|---|---|---|
| 01.01.00 | 01.01.01 | 26.02.00 | 26.02.07 |
| 26.07.00 | 26.07.09 | 26.07.11 | 28.05.00 |
| 29.01.00 | 29.01.01 | 29.01.04 | |

(822)   RU, 01.06.2006, 307722

(511)   Кл.: 09, 16, 21, 28, 35, 38, 39, 41, 42, 43, 45

09   Apparatus for recording, transmission or reproduction of sound or images; magnetic data carriers, recording discs; automatic vending machines and mechanisms for coin-operated apparatus; data processing equipment and computers; ticket dispensers, musical juke boxes, automatic distribution machines, electric monitoring apparatus, sound recording apparatus, electric apparatus for communication, video cassettes, video screens, floppy disks, phonograph records, optical disks, read-only memory compact disks, audio-video compact disks, decorative magnets, mechanisms for coin-operated apparatus, sound recording carriers, magnetic data media, optical data media, recorded computer operating programs, computer game programs, computer programs (downloadable software), electronic publications (downloadable), smart cards, totalizators, apparatus for games adapted for use with television receivers only, amusement apparatus adapted for use with television receivers only, computer peripheral devices, anti-theft warning apparatus, chips (integrated circuits).

16   Printed matter, almanacs, affiches, posters, tickets, blanks, pamphlets, booklets, newsletters, newspapers, engravings, printed publications, calendars, tear-off calendars, non-electric credit card imprinters, catalogues, books, graphic prints, magazines (periodicals), prospectuses, printed timetables, graphic reproductions.

21   Household or kitchen utensils and containers (not of precious metal or coated therewith); combs and sponges; brushes (except paint brushes); brush-making materials; articles for cleaning purposes; steelwool; unworked or semi-worked glass (except glass used in building); glassware, porcelain and earthenware not included

in other classes; including ornaments, dishes, saucers, goblets made of porcelain; bottles, busts of china, terra-cotta or glass; vases, non-electric waffle irons, coolers, napkin holders, clothing stretchers, decanters, combs for the hair, deodorising apparatus for personal use, containers for household or kitchen use boxes of glass, heat insulated containers for beverages, thermally insulated containers for food, glass jars, frying pans, toothpicks, ceramics for household purposes; works of art, of porcelain, terra-cotta or glass; stew-pans, napkin rings, piggy banks, not of metal, bread baskets (domestic), baskets for domestic use, non-electric coffee percolators, hand-operated coffee grinders, beer mugs, covers for dishes, jugs, non-electric portable coldboxes, mixing spoons (kitchen utensils), scoops (tableware), spatulas (kitchen utensils), hand-operated pepper mills, basins, soap boxes, cooking pot sets, fitted picnic baskets (including dishes), toilet cases, cookie (biscuit) cutters, pastry cutters, sprinklers, cocktail stirrers, pepper pots, gloves for household purposes, trays for domestic purposes, trays (kitchen utensils), candle sticks, trivets (table utensils), coasters, not of paper and other than table linen, menu card holders, knife rests for table, flat-iron stands, tableware (other than knives, forks and spoons); porcelain ware, terra-cotta ware, crockery and crystal (glassware); cosmetic utensils, toilet utensils, spice sets, non-electric appliances for removing make-up, food cooling devices containing heat exchange fluids, for household purposes, bottle openers, glass caps, powder compacts, soap dispensers, combs, shoe horns, salad bowls, sugar bowls, services (tableware), coffee services and tea services, tea strainers, siphons for carbonated water, blenders for household purposes, fruit presses for household purposes, salt cellars, drinking vessels, refrigerating bottles, cups of paper or plastic, glasses, drinking glasses, status and figurines of porcelain, terra-cotta or glass; soup bowls, table plates, grater (household utensils), insulating flasks, urns, aerosol dispensers, not for medical purposes, wax-polishing appliances, non-electric, for shoes, sprinkling devices, utensils for household purposes, kitchen utensils, cooking utensils, strainers for household purposes, coffee filters, flasks, bottle gourds, molds (kitchen utensils), bread bins, teapots, kettles, cups, mixers, manual (cocktail shakers), corkscrews, dishwashing brushes and brushes for cleaning tanks and containers, toothbrushes, brushes for footwear, boxes of metal, for dispensing paper towels, dustbins.

28   Games and playthings; gymnastic and sporting articles not included in other classes; including automatic and coin-operated amusement machines, cups for dice, dice, playing cards, billiard cues, chalk for billiard cues, billiard table cushions, billiard cue tips, accessories for games, billiard markers, billiard tables, coin-operated billiard tables, tables for table tennis, apparatus for electronic games other than those adapted for use with television receivers only, counters (discs) for games, play balloons, billiard tables.

35   Office functions, data search in computer files (for other), office machines and equipment rental, trade equipment rental, compilation of information into computer databases, systematization of information into computer databases, public relations.

38   Telecommunications; including electronic bulletin board services (telecommunication services), providing user access to a global computer network (service providers), providing telecommunications connections to a global computer network, communications by fiber (fibre) optic networks.

39   Arranging of tours, including booking of seats for travel, travel reservation, transport reservation, delivery of goods, arranging of cruises, transport of travellers, car transport, car rental, escorting of travellers, wrapping of goods, car parking, chauffeur services, courrier services (messages or merchandise), tourist offices (except for hotel reservation), storage of goods, sightseeing.

Education; providing of training; entertainment; cultural activities; billiard saloon, booking of seats for shows, videotaping, discotheque services, gaming, publication of books, recreation information, entertainment information, club services (entertainment or education), night clubs, game services provided on-line (from a computer network), electronic publication services provided on-line (not downloaded), practical training (demonstration), organization of exhibitions for cultural and educational purposes, providing recreation facilities, arranging and conducting of workshops (training), organization of competitions (education or entertainment), operating lotteries, holiday camp services (entertainment), amusement parks, providing amusement arcade services, providing cinema facilities, videotape film production and film production, rental of sound recordings, rental of audio equipment, rental of video cassette recorders, rental of automatic amusement machines, rental of cine-films, electronic desktop publishing, publication of electronic books and journals on-line, publication of texts (other than publicity texts), entertainer services, party planning (entertainment), providing casino facilities (gambling), translation, photography, production of shows.

42  Design and development of computer hardware and software; computer systems analysis, installation of computer software, updating of computer software, maintenance of computer software, computer system design, computer rental, rental of computer software, hosting computer sites (web sites), creating and maintaining web sites for others.

43  Services for providing food and drink; temporary accommodation, agencies for reservations (hotels, house bookings), rental of meeting rooms, tourist homes, hotel reservations, temporary accomodation reservations, hotels, snack-bars, cafes, cafeterias, restaurants, holiday camp services (lodging), bar services, providing campground facilities, food and drink catering.

45  Personal and social services rendered by others to meet the needs of individuals, guards, dating services, personal body guarding.

## Реєстрація

(580)  14.12.2006

## Попередня часткова відмова в охороні знаку

(851)

## Заява про надання охорони знаку для всіх товарів та послуг

(450)  07/2009 Gaz, 05.03.2009

Бібліографічні дані свідоцтва №34425

(111)  34425                                    (540)
(151)  15.08.2003
(181)  **15.10.2011**
(210)  2001106400
(220)  15.10.2001
(450)  15.08.2003. Бюл. № 8
(591)  чорний, червоний, білий                  
(731)  Торгово-виробнича корпорація «АЛЕФ»;
       вул. Радгоспна, 76, смт Ювілейне,
       Дніпропетровський р-н, Дніпропетровська
       обл., 52005 (UA)
(732)  **Товариство з обмеженою відповідальністю "Агросфера";**
       **вул. Собінова, 1, м. Дніпропетровськ, 49083 (UA)**
(750)  Товариство з обмеженою відповідальністю "Агросфера";
       вул. Собінова, 1, м. Дніпропетровськ, 49083 (UA)
(770)  Торгівельно-виробнича корпорація "Алеф";
       вул. Собінова, 1, м. Дніпропетровськ, 49083 (UA)
(771)  Торгівельно-виробнича корпорація "Алеф";
       вул. Радгоспна, 76, смт Ювілейне, Дніпропетровський р-н,
       Дніпропетровська обл., 52005 (UA)
(511)  Кл.: 1, 5, 42
       1 - Хімічні продукти, призначені для використовування в промисловості,
       науці, фотографії, сільському господарстві, садівництві та лісівництві;
       необроблені синтетичні смоли, необроблені пластмаси; добрива; хімічні
       речовини для гасіння вогню; препарати для термооброблення і паяння
       металів; хімічні речовини для консервування харчових продуктів; дубильні
       речовини; клейкі речовини на промислові потреби; всі товари, що
       включені до 1 класу.
       5 - Фармацевтичні, ветеринарні і гігієнічні препарати; дієтичні речовини
       на лікарські потреби, дитяче харчування; пластирі, перев'язувальні
       матеріали; матеріали для пломбування зубів і виготовляння зубних
       виліпків; дезінфікувальні засоби; препарати для нищення паразитів і
       шкідників; фунгіциди, гербіциди; всі товари, що включені до 5 класу, в
       тому числі засоби захисту рослин.
       42 - Забезпечування харчами і напоями; забезпечування тимчасовим
       житлом; лікарське, гігієнічне та косметичне доглядання; ветеринарні та
       сільськогосподарські послуги; правничі послуги; наукове та промислове
       досліджування; програмування; всі послуги, що включені до 42 класу.

Бібліографічні дані свідоцтва №35975

(111)  35975

(540)

(151)  17.11.2003

(181)  **08.02.2012**

(210)  2002020890

(220)  08.02.2002

(450)  17.11.2003. Бюл. № 11

# Вулкан

(731)  Дочірнє підприємство «Кондитерська корпорація «Рошен»; бульв. Перова, 40, м. Київ, 139, 02139 (UA)

(732)  **Дочірнє підприємство "Кондитерська корпорація "Рошен"; вул. Павла Усенка, 8, м. Київ, 02105 (UA)**

(740)  Пікалов Сергій Юрійович; вул. Миколи Кравченка, 15, кв. 24, м. Київ, 04050 (UA)

(750)  Дочірнє підприємство "Кондитерська корпорація "Рошен"; вул. Електриків, 26/9, м. Київ, 04176 (UA)

(771)  Дочірнє підприємство «Кондитерська корпорація «Рошен»; бульв. Перова, 40, м. Київ, 139, 02139 (UA)

(511)  Кл.: 16, 30, 35

16 - Буклети; вивіски, таблички паперові або картонні; видання друкові (друковані); друкарська продукція; етикетки, крім тканинних; інформаційні бюлетні; календарі; каталоги; коробки картонні або паперові (шабатури); кульки, пакети (паперові); мішки, конверти (торбинки), що належать до 16 класу; обгортковий папір; папір на опакування; перевідні малюнки; плакати; пластмасові плівки обгорткові; пластикові розтяжні плівки для пакування; проспекти рекламні.

30 - Борошняні кондитерські вироби; вафлі; галетне печиво; желе фруктові (кондитерські вироби); жуйки (жуйні гумки) нелікарські (немедичні); карамелі (цукерки); карамельки-таблетки (кондитерські вироби); кондитерські вироби (солодощі); ласощі для прикрашання новорічних ялинок; локричні кондитерські вироби; льодяники; марципани; печиво; помадки (кондитерські вироби); пряники; солодове сухе печиво; сухе печиво; тістечка; тонке сухе печиво (крекер); торти; пироги; халва; цукерки; цукрові кондитерські вироби; шоколад.

35 - Аукціонний продаж; вивчання ринку; влаштовування виставок на комерційні або рекламні потреби; влаштовування ярмарків на комерційні або рекламні потреби; демонстрування кондитерських виробів; ділове досліджування; допомога покупцям у виборі та придбанні продовольчих товарів, зокрема кондитерських виробів, на підприємствах роздрібної торгівлі; досліджування ринкове; імпортно-експортні агентства; оформляння вітрин; надавання консультаційних та маркетингових послуг; рекламування; розміщування в одному місці, на користь іншим особам, асортименту продовольчих товарів, зокрема кондитерських виробів, що дозволяє покупцям оглядати та купувати ці товари; розповсюджування зразків; сприяння продажеві (посередництво).

Бібліографічні дані свідоцтва №56105

(111)  56105
(540)

(151)  15.11.2005

(181)  **06.04.2014**

(210)  2004043570

(220)  06.04.2004

(450)  15.11.2005. Бюл. № 11

(591)  синій, блакитний, білий, червоний



(731)  Товариство з обмеженою відповідальністю
«Сінніс, Лтд»;
вул. Хрещатик, 195, м. Черкаси, 18002 (UA)

(732)  **Товариство з обмеженою
відповідальністю «Сінніс, Лтд»;
вул. Хрещатик, 195, м. Черкаси, 18002 (UA)**

(740)  Ярмак Наталія Григорівна;
Фірма "Регіон", вул. Велика Житомирська, 33, м. Київ, 01025 (UA)

(750)  Фірма «Регіон» ТПП України; Ярмак Н. Г.;
вул. В. Житомирська, 33, м. Київ, 25, 01025 (UA)

(511)  Кл.: 37, 41, 43
37 - Встановлювання, технічне доглядання і лагодження гральних автоматів.
41 - Надання послуг у сфері грального бізнесу, а саме: організація і утримування гральних закладів, казино, залів гральних автоматів з грошовим виграшем, більярдів; дозвілля; забезпечування приміщенням для дозвілля, ігор; послуги щодо ігор на гроші; ігрові послуги через комп'ютерні мережі; інформування щодо дозвілля; інформування щодо розваг; нічні клуби; облаштовування дозвілля; розваги.
43 - Послуги щодо забезпечування харчами та напоями; готелі; наймання (орендування) тимчасового житла; житлові агентства (готелі; пансіонати); замовляння тимчасового житла; кав'ярні; кафе; кафетерії; мотелі; ресторани; ресторани самообслуговування; туристські бази; постачання харчів та напоїв; шинки чи буфети (заклади швидкого і повсякчасного обслуговування).

Бібліографічні дані свідоцтва №59679

(111)  59679

(540)

(151)  15.03.2006

(181)  **26.01.2014**

(210)  2004010581

(220)  26.01.2004

(450)  15.03.2006. Бюл. № 3

# ВУЛКАН
# VULKAN

(731)  Открите Акціонєрне Общєство «Концерн
«Іжмаш»;
проєзд Дєрябіна, д. 3, г. Іжевск, 426006,
Російська Федерація (RU)

(732)  **Откритоє Акціонєрноє Общєство
«Концерн «Іжмаш»;
просзд Дєрябіна, д. 3, г. Іжевск, 426006, Російська Федерація (RU)**

(740)  Мошинська Ніна Миколаївна;
вул. Щорса, 27, кв. 7, м. Київ, 03027 (UA)

(750)  Мошинська Ніна Миколаївна;
вул. Л. Первомайського, 11, кв. 45, м. Київ, 23, 01023 (UA)

(511)  Кл.: 13, 28
13 - Вогнепальна зброя; карабіни; мисливська вогнепальна зброя; пневматичні пістолети (зброя); рушниці (зброя); чохли на вогнепальну зброю; запасні частини, що належать до 13 класу, до вищезазначених товарів.
28 - Іграшки; іграшки з рухомими частинами або пересувні; ігри автоматичні, крім телевізорних; ігри; мішені; пістолети іграшкові; автомати іграшкові; рушниці іграшкові; пістолети пневматичні; автомати пневматичні; рушниці пневматичні; рушниці гарпунні (спортивне знаряддя); пристрої для електронних ігор (за виключенням пристроїв з обов'язковим використанням телевізійних приймачів).

1

Бібліографічні дані свідоцтва №95925

(111)   95925

(540)



(151)   26.08.2008

(181)   **03.05.2017**

(210)   m 2007 07210

(220)   03.05.2007

(450)   26.08.2008. Бюл. № 16

(731)   Лещенко Ігор Вікторович;
        пров. Советський, 7, м. Одеса, 65113 (UA)

(732)   **Лещенко Ігор Вікторович;
        пров. Советський, 7, м. Одеса, 65113 (UA)**

(740)   Михайлова Тетяна Вікторівна;
        пров. Квітковий, 12, м. Одеса, 65017 (UA)

(750)   Михайлова Тетяна Вікторівна;
        пров. Квітковий, 12, м. Одеса, 65017 (UA)

(511)   Кл.: 25, 35

        25 - Бриджі (одяг); одяг для велосипедистів; верхній одяг; взуття; взуття
        спортивне; вовняний трикотаж (одяг); одяг з габардину; гаман поясний
        (одяг); гетри; гімнастичні туфлі; готовий одяг; дитячі пелюшки з текстилю;
        дитячі штанці; дублянки; жилети; кальсони; капелюхи; капці; кашне; кепки;
        кожухи; колготки; комбінації (спідня білизна); комбінезони (одяг); костюми;
        костюми для водних лиж; костюми для купання; костюми для плавання;
        костюми маскарадні; краватки; плавки для купання; халати для купання;
        куртки; ліфчики; майки; наголовні пов'язки (одяг); накидки (одяг); натільна
        білизна (одяг) (спідня білизна (одяг)); натільні майки; непромокавий одяг;
        одяг; одяг для гімнастики; пальта; панчішні вироби; панчохи; паски
        (пояси) (одяг); піжами; плащі; пляжний одяг; робочий одяг; рукавиці;
        сандалі; светри; сорочки; спідниці; спортивні трикотажні вироби;
        спортивні туфлі; сукні; трикотажні вироби (одяг); труси; туфлі; формений
        одяг; футболки; футбольні черевики; халати; хустинки; хустки (нашийні);
        хутро (одяг); черевики; черевики із шнурками; чоботи; шапки; шарфи;
        шкарпетки.
        35 - Розміщування в одному місці, на користь іншим особам, асортименту
        товарів 25 класу для надавання можливості покупцям зручно оглядати і
        купувати ці товари.