# EXHIBIT B
# PART 3

# Response Annex 30



OFFICE FOR HARMONIZATION IN THE INTERNAL MARKET
(TRADE MARKS AND DESIGNS)

Trade Marks Department

**W211**

Alicante, 18/12/2009

**Notification of provisional refusal of protection based on an opposition
pursuant to Article 5 of the Madrid Protocol and Rule 17 (1), (2) of the Common
Regulations under the Madrid Agreement and Protocol and to Rule 115\***

| International Registration No: | 0989103 |
|---|---|
| Date of notification to OHIM: | 22-01-2009 |
| Trade mark: | VOLCANO |
| Applicant/Holder: | Ritzio Entertainment Group Limited Diagorou 4, Kermia Building, Office 601 Nicosia |
| *Opposition number:* | B 1566333 |

Protection of the above-mentioned mark is provisionally refused for the European Community.

The provisional refusal is based on the fact that an opposition has been filed against the international registration.


I.      The grounds for the opposition are as follows:

Conflict with an earlier mark and likelihood of confusion (Article 8(1) and (2) CTMR\*\*).


II.     Name and address of the opposing party:
        **REGION D'AUVERGNE ( Collectivité Territoriale ) - Hôtel de la Région**

        **13/15, avenue de Fontmaure
        B.P. 60
        F-63402 Chamalieres
        FRANCIA**


III.    The opposition is based on a mark which was the subject of an application or registration.

        -       type of mark : **National French mark.**

        -       filing date, registration date and, if applicable, priority date: 27/02/2002

        -       filing number and, if different, registration number: 02 3151315

        -       reproduction of the mark: (see annex)

        -       list of goods and services on which the opposition is based: (see annex)

\*Commission Regulation (EC) No 2868/95 of 13 December 1995 implementing Council Regulation (EC) No 207/2009 on the Community trade mark (codified version of Council Regulation (EC) No 40/94).
\*\* Council Regulation (EC) No 207/2009 of 26 February 2009 on the Community trade mark.
Regulations on the internet:
CTM (http://oami.europa.eu/en/mark/aspects/reg.htm )        Madrid Protocol
(http://oami.europa.eu/en/mark/madrid/default.htm)

III.     The provisional refusal relates to only to the following goods and services covered by the designation of the EC:

Class 41: Class 41
Organization of exhibitions for cultural or educational purposes ; providing recreation facilities ; arranging and conducting workshops (training) ; organization of competitions (education or entertainment) ; amusement parks.


V.     The OHIM will notify the opposition separately to the holder of the international registration, including all evidence on which it is based, pursuant to Rule 18(1)*. The OHIM will set time limits for the holder. The notification will open an (extendable) cooling-off period of two months and a further period of two months for the opponent to substantiate the opposition.  The notification will set a time limit of, in principle, six months for the holder of the international registration to submit observations.

MARIA JOSE GIL

            Annex:          opposition notice of 10 pages.

**CABINET**
**RICHEBOURG**

CONSEILS EN PROPRIÉTÉ INDUSTRIELLE
EUROPEAN PATENT & TRADEMARK ATTORNEYS





ANNAPOLIS/MD
ALEXANDRIA/VA
BIELEFELD
CLERMONT-FERRAND
SAINT-ETIENNE
PARIS
MÜNCHEN

**OHMI**
Avenida de Europa, 4
E-03008 Alicante
SPAIN

Saint-Étienne, le 21 octobre 2009

_Par fax uniquement : +34 96 513 13 44_

V/Réf :
N/Réf : D 381 LIT UE – VULCANIA / VOLCANO - CB/cm

**Objet :** **UNION EUROPEENNE** – Opposition formée par la Région Auvergne contre la partie communautaire de la marque internationale VOLCANO N°989 103, au nom de RITZIO ENTERTAINMENT GROUP.

Madame, Monsieur,

Nous vous remercions de bien vouloir trouver ci-joint un acte d'opposition à l'encontre de la partie communautaire de la marque internationale VOLCANO N°989 103.

A titre complémentaire, nous joignons également en annexe :

–   une copie du certificat d'enregistrement de la marque française VULCANIA N° 02 3 151 315, sur la base de laquelle la présente opposition est formée ;
–   une copie du document officiel d'inscription, au Registre français des marques, du transfert de ladite marque au profit de la Région Auvergne.

Nous vous remercions de bien vouloir accuser bonne réception des présentes.

Nous vous prions d'agréer, Madame, Monsieur, l'expression de nos salutations distinguées.

Gaëlle ROUSSEAU
Représentant N° 40720
CB/cm

PJ : - Acte d'opposition
     - Copie du certificat d'enregistrement de la marque française VULCANIA N° 02 3 151 315
     - Copie du document d'inscription du transfert de propriété de la marque au profit de la Région Auvergne.

| SAINT-ETIENNE | CLERMONT-FERRAND | LYON | PARIS |
| 69, RUE SAINT-SIMON | BUREAU SECONDAIRE | (SUR RENDEZ-VOUS) | (SUR RENDEZ-VOUS) |
| BP 301 | 4, RUE DURETTE | 129, RUE SERVIENT | 48, RUE SAINT-HONORE |
| F-42016 SAINT-ETIENNE CEDEX 1 | F-63500 BRENAT | F 69326 LYON | F-75001 PARIS |

TÉL. +33 (0) 477 433 710          TÉL. +33 (0) 473 286 263          TÉL. +33 (0) 478 637 925          TÉL. + 33 (0) 144 889 820
FAX  +33 (0) 477 433 719          FAX + 33 (0) 473 286 891          FAX  + 33 (0) 478 637 993          FAX  + 33 (0) 144 889 846
EMAIL  CONTACT@CABINET-RICHEBOURG.FR          S.A. AU CAPITAL DE 45735 EUR          CODE TVA: FR 43393103148000
WWW.24IP.COM                                  R.C S. ST. ETIENNE B 393 103 148          SIRET: 393 103 148 000 28



# OFFICE DE L'HARMONISATION DANS LE MARCHE INTERIEUR (OHMI)

## ACTE D'OPPOSITION

| Nombre de pages (y compris celle-ci) | **4** | Référence de l'opposant / du représentant (pas plus de 20 caractères) <br> D381 LIT UE - CB/cm | Mod.007 |
|---|---|---|---|

| **Opposant** | N° d'identification | 86300 | ☐ pluralité d'opposants |
|---|---|---|---|

| Nom de l'entité juridique ou prénom et nom | REGION D'AUVERGNE (Collectivité Territoriale) |
|---|---|
| Tél, fax, adresse électronique | |
| **Adresse** Rue et numéro | Hotel de la Région <br> 13/15, avenue de Fontmaure - B.P. 60 |
| Ville et code postal | 63402 CHAMALIERES |
| Pays | FRANCE |
| Adresse postale (si différente) | |
| Nationalité / Etat de consti-tution | FRANCE |

| **Représentant** | N° d'identification | 40720 | ☐ pluralité de représentants |
|---|---|---|---|

| **Nom** | CABINET MICHEL RICHEBOURG | | |
|---|---|---|---|
| Tél, fax, adresse électronique | +33 (0)4 77 43 37 10 | +33 (0)4 77 43 37 19 | contact@cabinet-richebourg.fr |
| **Adresse** Rue et numéro | Le Clos du Golf <br> 69, rue Saint Simon | | |
| Ville et code postal | 42000 SAINT ETIENNE | | |
| Pays | FRANCE | | |
| Adresse postale (si différente) | | | |

Type de représentant   ☐ avocat   ☑ mandataire agréé   ☐ groupement de représentants   ☐ employé

| **Demande contestée** | N° demande/ enregistrement International | 989103 | Date de publication (JJ/MM/AAAA) | 26 / 01 / 2009 |
|---|---|---|---|---|

| Nom du demandeur ou du titulaire de l'enregistrement International | RITZIO ENTERTAINMENT GROUP LIMITED | Langue de l'opposition | ES ☐ DE ☐ EN ☐ FR ☑ IT ☐ |
|---|---|---|---|

**Etendue de l'opposition**

☐ contre tous les produits et services de la demande

☑ contre une partie des produits et services de la demande, à savoir :

> Classe 41 : Organisation d'expositions à vocation culturelle ou pédagogique, services de loisirs, organisation et conduite d'ateliers de formation, organisation de concours (éducation ou divertissement), parcs d'attractions.

[ ☐ feuillet(s) supplémentaire(s)

| Paiement de la taxe | | Total | € 350 | Signature | |
|---|---|---|---|---|---|

Compte courant auprès de l'OHMI

☑ Compte N°   459

☐ Ne pas utiliser mon compte courant auprès de l'OHMI

Virement sur le compte de l'OHMI

☐ Banco Bilbao Vizcaya Argentaria

☐ La Caixa

Date du virement (JJ/MM/AAAA)   /   /

Nom   ROUSSEAU Gaëlle

Signature

#TM007FR



# ACTE D'OPPOSITION

## BASE DE L'OPPOSITION: ENREGISTREMENT/DEMANDE DE MARQUE

| **Identification de la marque antérieure** | ☑ Enregistrement de marque | ☐ Demande de marque |
| --- | --- | --- |

☐ Marque communautaire ☑ Marque nationale ☐ Enregistrement international ayant effet dans un ou plusieurs Etat(s) membre(s)

**Etat(s) membre(s)**

| EM | BG | BX | CZ | DK | DE | EE | GR | ES | FR | IE | IT | CY | LV | LT | HU | MT | AT | PL | PT | RO | SI | SK | FI | SE | GB |
|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|
|    |    |    |    |    |    |    |    |    | ✓  |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |

Date de dépôt (JJ/MM/AAAA)   27 / 02 / 2002

N° de dépôt   02 3 151 315

Date d'enregistrement (JJ/MM/AAAA)   27 / 02 / 2002

N° d'enregistrement   02 3 151 315

**Représentation de la marque** *(en couleurs, le cas échéant)*

**Type de marque**

☑ Marque verbale   VULCANIA

☐ Marque figurative

☐ Autre (spécifier)

**Produits et services sur lesquels l'opposition est basée:**

☐ tous les produits et services de l'enregistrement/demande

☑ une partie des produits et services, à savoir:

Voir feuillet supplémentaire 1/2

☐ jointe

☑ feuillet(s) supplémentaire(s)

| **Droit de l'opposant** |
| --- |

☑ Titulaire   Copie de l'enregistrement/de la demande   ☑ jointe   ☐ à suivre

☐ Licencié habilité   Traduction   ☐ jointe

| **Motifs d'opposition** |
| --- |

☐ **Article 8(1)(a) RMC** - la demande est identique à la marque antérieure et couvre des produits et/ou services identiques

☑ **Article 8(1)(b) RMC** - il existe un risque de confusion dans l'esprit du public

☐ **Article 8(5) RMC** - l'usage sans juste motif de la marque demandée tirerait indûment profit du caractère distinctif ou de la renommée de la marque antérieure ou leur porterait préjudice

**Motivation et autres observations :**

Voir feuillet supplémentaire 2/2

☑ feuillet(s) supplémentaire(s)

**Territoire sur lequel la marque antérieure jouit d'une renommée :**

| EM | BG | BX | CZ | DK | DE | EE | GR | ES | FR | IE | IT | CY | LV | LT | HU | MT | AT | PL | PT | RO | SI | SK | FI | SE | GB |
|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|
|    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |    |

**Produits et services pour lesquels la marque jouit d'une renommée**

☐ tous les produits et services de l'enregistrement/de la demande

☐ une partie des produits et services de l'enregistrement/de la demande, à savoir:

☐ feuillet(s) supplémentaire(s)

**Preuve de la renommée**   ☐ jointe ☐ à suivre   Traduction   ☐ jointe

n° de page

| 2 | de | 4 |

CABINET
RICHEBOURG

**FEUILLET SUPPLEMENTAIRE 1/2 - IDENTIFICATION DE LA MARQUE ANTERIEURE**

**Produits et services sur lesquels l'opposition est basée :**

La présente opposition est basée sur une partie des produits et services, à savoir :

Classe 41 :  Parcs d'attractions ; organisation d'expositions, de concours à buts culturels ou éducatifs, organisation et conduite de colloques, de congrès, de séminaires.

## FEUILLET SUPPLEMENTAIRE 2/2 – MOTIFS DE L'OPPOSITION

### Motivation et autres observations:

En application de l'article 8(1)(b) du Règlement sur la Marque Communautaire, il existe un risque de confusion dans l'esprit du public entre la marque antérieure et la demande de marque contestée.

Les motifs détaillés de l'opposition vous seront transmis ultérieurement.



**INPI**
INSTITUT
NATIONAL DE
LA PROPRIÉTÉ
INDUSTRIELLE

# MARQUES DE FABRIQUE
# DE COMMERCE
# OU DE SERVICE

**Code de la propriété intellectuelle**
Livre IV : Titre premier, chapitre premier
Livre VII : Titre premier ; Livre VIII

## CERTIFICAT D'ENREGISTREMENT

Le Directeur général de l'Institut national de la propriété industrielle certifie que la marque reproduite au verso a été enregistrée.

L'enregistrement produit ses effets à compter de la date de dépôt de la demande pour une période de dix ans indéfiniment renouvelable.

Cet enregistrement sera publié au Bulletin officiel de la propriété industrielle

**n° 02/32 NL Vol. II du 9 août 2002**

Le Directeur général de l'Institut
national de la propriété Industrielle

**Daniel HANGARD**



INSTITUT
NATIONAL DE
LA PROPRIÉTÉ
INDUSTRIELLE

**SIEGE**
26 bis, rue de Saint Petersbourg
75800 PARIS cedex 08
Téléphone : 01 53 04 53 04
Télécopie : 01 42 93 59 30
http://www.inpi.fr

ETABLISSEMENT PUBLIC NATIONAL    CREE PAR LA LOI n° 51-444 DU 19 AVRIL 1951

Cabinet Michel Richebourg Michel Richebourg
"Le Clos du Golf" 69, rue Saint-Simon
42000 Saint-Étienne

**Nº National : 02 3 151 315**

*Dépôt du :* 27 FEVRIER 2002

*à :* INPI Paris

EM VOLCANS (Société Anonyme d'économie mixte à conseil
administration), Route de Mazayes, 63230 Saint-Ours Les Roches,
SIREN : 423 556 356.

Mandataire ou destinataire de la correspondance :
Cabinet Michel Richebourg Michel Richebourg, "Le Clos du Golf" 69,
rue Saint-Simon, 42000 Saint-Étienne.

**VULCANIA**

Produits ou services désignés : Savons, savons désodorisants, serviettes, sels pour le bain non à usage médical ; préparations pour le bain ; produits de parfumerie ; parfums, eaux de toilette, eau de Cologne, eaux de senteur, extraits de fleurs ; huiles de toilettes ; les essentielles ; produits pour parfumer le linge ; pierre à adoucir ; le colorants ; cendres volcaniques pour le nettoyage. Bougies (éclairage), bougies odorantes. Support de données magnétiques ; disques impact vidéo ou optiques, disques compact numérique, disques magnétiques acoustiques optiques et vidéo ; bandes magnétiques, ndes vidéo, cartes magnétiques ; diapositives ; logiciel, serveur cal accessible par code Abat-jour ; porte abat-jour ; lampes d'éclairage ; lampe à huile ; lampe de poche ; lampadaires ; lanterne d'éclairage ; chauffe-plats ; fontaines ; grille-pain. Véhicules ; appareils de omotion par terre, par air ou par eau ; bicyclettes ; cycles. Joaillerie, suterie, pierres précieuses ; horlogerie, et instruments chronométriques ; intres, réveille-matin ; cadrans solaires ; porte-clefs de fantaisie ; ingles de cravates, médailles. Imprimés, journaux, livres, manuels, ues, album, périodiques, almanachs, calendrier, carte géographique, matériel d'enseignement de la volcanologie sous forme de jeu, savoir cartes à jouer, dessins, maquettes, photographie, carte stale ; affiches, autocollants, articles de papeterie, stylo ; statuettes papier, articles de bureau ; coupe-papier ; sous-main ; dessous de re, dessous de chop ; set de table en papier ; linge de table en ier ; mouchoirs de poche en papier ; sachets, enveloppes, pochet-en papier ou en matières plastiques ; matériel pédagogique sous ne de jeu, à savoir puzzle ; aquarelles ; lithographies. Articles de roquinerie en cuir ou imitations du cuir (à l'exception des étuis aptés aux produits qu'ils sont destinés à contenir des gants et des ntures), porte-cartes, étuis pour les clés, portefeuille, porte-monnaie non en métaux précieux ; trousse de voyage ; serviettes d'écoliers ; sacs à main ; sacs de voyage ; sacs d'écolier ; sacs à dos ; hattes ; sacs à provision ; « bananes » ; parapluies, parasols, nnes ; fouets et sellerie. Statues, statuettes en pierre, en béton, en rbre. Meubles, glaces (miroirs), cadres ; produits, en bois notamment en bambou, liège, roseau, jonc, osier, corne, os, ivoire, baleine, ille, ambre, nacre, écume de mer, succédanés de toutes ces ères ou en matières plastiques, à savoir objets d'art en bois, en , en plâtre ou en matières plastiques, coffrets à bijoux non en aux précieux, mobiles décoratifs produisant des sons, mobiles ets pour la décoration], objets de publicité gonflables, statues en , en cire, en plâtre ou en matières plastiques, statuettes en bois, cire, en plâtre ou en matières plastiques, travaux d'ébénisterie.

Ustensiles et récipients pour la cuisine ou le ménage non en métaux précieux ; verrerie de table ; vaisselles non en métaux précieux ; assiettes de décoration non en métaux précieux, chope à bière ; carafe ; dessous de carafe ; boîte à savon ; boîte en verre ; bois ; tire-bouchons ; dessous-de-plat ; bougeoirs non en métaux précieux ; dessous de plat ; porte-couteau pour la table ; corbeilles à pain ; plateaux à servir ; ronds de serviettes non en métaux précieux ; objets d'art en porcelaine, en terre cuite ou en verre ; brûle-parfum ; pulvérisateur, vaporisateur de parfums ; cache-pot ; porte-carte de menus ; coquetiers ; cure-dents ; porte-cure dents non en métaux précieux ; porte-éponge ; poterie ; sabliers ; tirelires non métalliques. Linge de table ; Linge de maison ; Linge de bain (à l'exception de l'habillement) ; Linge de lit ; napperons ; mouchoirs de poche en matière textile. Vêtements, chaussures, chapellerie, cravates, écharpes. Badges ornementaux ; articles décoratifs pour les cheveux ; barrettes (pinces à cheveux) ; broches (accessoires d'habillement) ; broderies ; dentelle ; ornements de chapeaux non en métaux précieux ; insignes non en métaux précieux, boutons, brassards, bretelles, ceintures, cocardes, écussons. Jeux, jouets ; articles de gymnastique et de sport (à l'exception des vêtements, chaussures et tapis) ; décorations pour arbres de Noël Café, thé, cacao, sucre, riz, tapioca, sagou, succédanés du café ; farines et préparations faites de céréales, pain, pâtisserie et confiserie, glaces comestibles ; miel, glace à rafraîchir. Bières ; eaux minérales et gazeuses et autres boissons non alcooliques (à l'exception de celle à base de café, thé ou de cacao et des boissons lactées) ; boissons de fruits et jus de fruits ; sirops pour boissons. Boissons alcooliques (à l'exception des bières). Agence de communication (relations publiques), abonnements de lettres d'information sur Internet, services de compilation de données et de compilation d'informations. Agence de presse ; agence d'information ; communication par terminaux d'ordinateurs, communication par le réseau Internet et communication par des réseaux internes aux entreprises (intranet, extranet) ; messagerie électronique ; émissions radiophoniques ; transmission de messages et d'images assistés par ordinateur ; Location de temps d'accès à un centre serveur de bases de données. Organisation de voyage, d'excursion. Exploitation d'un centre à vocation éducative et culturelle, Parc de découverte et d'initiation à la volcanologie, Parc d'attractions ; Organisation d'exposition, de concours à but culturels ou éducatifs, organisation et conduite de colloque, de congrès, de séminaires ; publications de livres, publication de texte ; production de film ; production de film sur bande vidéo ; divertissement, divertissement télévisé, radiophonique, représentations théâtrales, spectacles, centre de documentation (service de bibliothèque) ; formation ; exploitation de salles de cinéma ; location de films cinématographiques ; services d'édition de lettres publiées sur Internet ; Reportage photographique. Restauration ; hébergement temporaire.

Classes de produits ou services : 3, 4, 9, 11, 12, 14, 16, 18, 19, 20, 21, 24, 25, 26, 28, 30, 32, 33, 35, 38, 39, 41, 43.

BOPI de publication antérieure : 02/15 NL



**Cabinet Michel RICHEBOURG**

**0'6 MARS 2003**

**REÇU - RECEIVED**

INPI
INSTITUT NATIONAL DE LA PROPRIÉTÉ INDUSTRIELLE
26 bis, rue de Saint Pétersbourg
75600 Paris Cedex 08
Téléphone : 01 53 04 53 04



**BREVETS D'INVENTION, CCP, TPS MARQUES, DESSINS ET MODÈLES**

cerfa
N° 11602*01

Code de la propriété intellectuelle - Livres V, VI et VII

**DEMANDE D'INSCRIPTION AU REGISTRE NATIONAL D'UN ACTE AFFECTANT LA PROPRIÉTÉ OU LA JOUISSANCE D'UN DÉPÔT**

page 1/2

Cet imprimé est à remplir lisiblement à l'encre noire

---

Réservé à l'INPI

DATE D'INSCRIPTION

Inscription RNM  366341

Date  03/03/2003 REG NAL MARQUES

Lieu  INPI PARIS

No Operation

---

**1 NOM ET ADRESSE DU DEMANDEUR OU DU MANDATAIRE À QUI LA CORRESPONDANCE DOIT ÊTRE ADRESSÉE**

Cabinet Michel RICHEBOURG
Le Clos du Golf
69 rue Saint Simon
42000 Saint Etienne

---

| Vos références pour ce dossier (facultatif) | D381-TMD-454/455-FR/AI |
|---|---|
| **2 DEMANDEUR** (partie à l'acte demandant l'inscription) | ☐ S'il y a d'autres demandeurs, cochez la case et utilisez l'imprimé «Suite» |
| Nom ou dénomination sociale | S.E.M. VOLCANS |
| Prénoms | |
| Forme juridique | Société anonyme d'économie mixte à conseil d'administration |
| N° SIREN | 4 2 3 5 5 6 3 5 6 |

| Adresse | Rue | Route de Mazayes |
|---|---|---|
| | Code postal et ville | 6 3 2 0 0 Saint-Ours |
| | Pays | FRANCE |

| N° de téléphone (facultatif) | |
|---|---|
| N° de télécopie (facultatif) | |
| Adresse électronique (facultatif) | |

| **3 AUTRE PARTIE À L'ACTE** | ☐ S'il y a d'autres parties à l'acte, cochez la case et utilisez l'imprimé «Suite» |
|---|---|
| Nom ou dénomination sociale | Région d'Auvergne |
| Prénoms | |
| Forme juridique | collectivité territoriale |
| N° SIREN | |

| Adresse | Rue | 13/15 avenue de Fontmaure |
|---|---|---|
| | Code postal et ville | 6 3 4 0 0 Chamalières |
| | Pays | France |

**4 NATURE DE L'OPÉRATION CONSTATÉE PAR L'ACTE À INSCRIRE**

Cochez la case si cette demande d'inscription est déposée simultanément à :
☐ une déclaration de renouvellement de marque
☐ un recours en restauration ou une demande de relevé de déchéance

| Transmission totale de propriété | ☒ |
|---|---|
| Transmission partielle de propriété | ☐ |
| Concession de licence | ☐ |
| Résiliation de licence | ☐ |
| Constitution d'un droit de gage | ☐ |
| Radiation d'un droit de gage | ☐ |
| Saisie | ☐ |
| Autre (à préciser) | ☐ |



**INPI**
INSTITUT NATIONAL DE
LA PROPRIÉTÉ
INDUSTRIELLE

**BREVETS D'INVENTION, CCP, TPS**
**MARQUES, DESSINS ET MODÈLES**

DEMANDE D'INSCRIPTION D'UN ACTE AFFECTANT
LA PROPRIÉTÉ OU LA JOUISSANCE D'UN DÉPÔT

page 2/2

Réservé à l'INPI

**Inscription RNM**     366841

**Date**     03/03/2003 REG NAL MARQUES

**Lieu**     INPI PARIS

**No Operation**     O

RN 41W/05UI00

| Vos références pour ce dossier *(facultatif)* | D381-TMD-454/455-FR/AI |
|---|---|
| **5** TITRE(S) CONCERNÉ(S) PAR LA DEMANDE D'INSCRIPTION | Indiquez le ou les titre(s) sur les annexes «Brevets», «Marques», et Dessins Modèles»<br>Nombre d'annexes jointes : 1 |

**6** NATURE DE L'ACTE

| Acte authentique | ☐ *Exemple : acte notarié, jugement.* |
|---|---|
| Acte sous seing privé | ☒ *Exemple : contrat* |
| Autre(s) acte(s) | ☐ En cas de mutation par décès ou d'impossibilité matérielle, dûment justifiée, de produire l'acte authentique ou sous seing privé |

**7** PIÈCES PRODUITES

| | ☒ Dans tous les cas, l'original ou l'expédition de l'acte à inscrire dans son intégralité accompagné le cas échéant de sa traduction |
|---|---|
| | ☒ En cas de demande de restitution de l'original, copie de l'acte ou de l'extrait à inscrire |
| | ☐ Le cas échéant, justification de l'impossibilité matérielle de produire l'acte dont résulte l'opération |
| | ☐ S'il y a lieu, le pouvoir du mandataire ou copie du pouvoir permanent *(sauf CPI)* |
| | ☒ Autre(s) pièce(s) *(précisez lesquelles)* :<br>avenant |
| Si vous avez utilisé l'imprimé «Suite» indiquez le nombre de pages jointes | |

**8** MANDATAIRE     ☒ Cochez la case si vous êtes également le destinataire des correspondances afférentes à l'enregistrement ou à la délivrance et au maintien en vigueur du (des) titre(s) concerné(s)

| Nom | RICHEBOURG |
|---|---|
| Prénom | Michel |
| Cabinet ou Société | Cabinet MICHEL RICHEBOURG |
| N° de pouvoir permanent | CPI 94-0216 |
| Adresse | Rue | Le Clos du Golf<br>69 rue Saint Simon |
| | Code postal et ville | 4 2 0 0 0 Saint-Etienne |
| N° de téléphone *(facultatif)* | 04 77 43 37 10 |
| N° de télécopie *(facultatif)* | 04 77 43 37 19 |
| Adresse électronique *(facultatif)* | contact@cabinet-richebourg.fr |

**9** SIGNATURE DU DEMANDEUR OU DU MANDATAIRE (Nom et qualité du signataire)     Michel RICHEBOURG
Mandataire (CPI 94-0216)

La loi n°78-17 du 6 janvier 1978 relative à l'informatique, aux fichiers et aux libertés s'applique aux réponses faites à ce formulaire.
Elle garantit un droit d'accès et de rectification pour les données vous concernant auprès de l'INPI.

**INPI**
Institut
NATIONAL DE
LA PROPRIETE
INDUSTRIELLE

**DEMANDE D'INSCRIPTION AU REGISTRE NATIONAL**

[x] **D'UN ACTE AFFECTANT LA PROPRIÉTÉ
OU LA JOUISSANCE D'UN DÉPÔT**

[ ] **D'UNE RECTIFICATION**

**MARQUES CONCERNÉES
PAR LA DEMANDE D'INSCRIPTION**

| | |
|---|---|
| Réservé à l'INPI | |

**Inscription
RNM** 366341

**Date** 03/03/2003  REG NAL MARQUES

**Lieu** INPI PARIS

**No Operation** 0

Annexe N° 1 / 1

RN 47 W/130500

| Vos références pour ce dossier *(facultatif)* | D381-TMD-454/455-FR/AI | |
|---|---|---|
| Dénomination *(cochez la case si la marque est enregistrée)* | Date de dépôt ou d'enregistrement international | N° national (pour les dépôts postérieurs au 27/12/91) ou n°d'enregistrement (pour les dépôts antérieurs au 28/12/91) ou les marques internationales |
| [x] VULCANIA | 27/02/2002 | 02 3 151 315 |
| [x] (figurative) | 27/02/2002 | 02 3 151 314 |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |
| [ ] | | |

# Response Annex 31

ARRANGEMENT DE MADRID
CONCERNANT L'ENREGISTREMENT INTERNATIONAL DES MARQUES
REFUS DE PROTECTION
notifie au Bureau international de l'Organisation Mondiale de la Propriete
Intellectuelle (OMPI) selon l'article 5 de l'Arrangement de Madrid

I.Administration qui notifie le refus:

Institut National de la Propriete intellectuelle (INPI)
Rive gauche, la Maison des ministeres, rue 35, batiment 8, entree 13, bloc 4,
010000, Astana, Kazakhstan
Telephone: +7(7172) 50-28-98        Telecopie: +7(7172) 74-06-26

II. N° de l'enregistrement international faisant l'objet du refus:    989103    de    11.08.2008

III. Nom du titulaire de l'enregistrement international faisant l'objet du refus:

Ritzio Entertainment Group Limited

IV. Motif de refus:
1. Marque nationale anterieure: (540) ВУЛКАН; (111) 16505; (151) 17.05.2004; (220) 08.01.2003; (511) cl.
35, 39, 41, 42, 43 - voir p.2; (730) Tovarichtchestvo s ogranitchennoy otvetstvennostyu "VULKAN", d. 51,
ul. Zhandossova, g.Almaty, 480035, Kazakhstan (KZ).
2. Marque nationale anterieure: (540) ВУЛКАН; (111) 19287; (151) 15.11.2005; (210) 26162; (220)
05.02.2004; (511) cl. 09 - voir p.2; (730) Tovarichtchestvo s ogranitchennoy otvetstvennostyu
"VULKAN-K", d. 2, kv. 2, ul. Buhar zhyrau, g.Almaty, Kazakhstan (KZ).
3.Marque internationale anterieure: (540) fig; (111) 791038; (151) 03.09.2002 ; (300) 03.04.2002; (511) cl.
41 - voir p.2; (732) "VOLCANO" Gaming Clubs Ltd., ul. Pokrovka, 3/7, str. 1, RU-101000 Moscow (RU)
 4. Marque internationale anterieure: (540) VOLCANO VR ; (111) 934189; (151) 25.07.2007; (511) cl. 42 -
voir p.2; (732) EUROHEAT HQ Sp. z o.o. , ul. Szkolna 24, Suchy Dwor, PL-81-198 Kosakowo (PL)
 5. Marque internationale anterieure: (540) fig. ; (111) 905612; (151) 07.06.2006 ; (511) cl. 16, 21, 28, 38,
45 - voir p.2; (732) Obshestvo s ogranichennoj otvetstvennostju "Firma "Bars", str. 1, 56/17,
Baumanskaya , RU-105005 Moskva (RU)

V. Disposition de la loi nationale applicable en la matiere:
Loi sur les marques de produits et de services et les appellations d'origine: pp. 1, p. 1 art. 7

VI.        Refus pour la totalite des produits et/ou services;
    [X] Refus pour les produits et/ou services suivants;
        cl. 09, 16, 21,28, 35, 38, 39, 41, 42, 43, 45- totalement

VII. Recours contre la decision de refus:
- delai de recours: 3 mois a partir de la prononciation de ce refus; pendant le delai precite le refus est
provisoire. Faute de l'appel de reexamen ou recour contre le present refus ou l'appel de la prolongation
(6 mois, pas plus) celui-ci deviendra definitif;
- autorite a laquelle le recours doit ktre adresse:
 INPI, Rive gauche, la Maison des ministeres, rue 35, batiment 8, entree 13, bloc 4,
 010000, Astana, Kazakhstan
 assistance d'un mandataire local est obligatoire;  ......
- taxe legale adequate;

VII. Date a laquelle le refus a ete prononce:    15.01.2010

IX. Signature et sceau officiel de l'Office qui notifie le refus:
                                          Artykova A.K.
                                      Chef du service des marques

**МИНИСТЕРСТВО ЮСТИЦИИ РЕСПУБЛИКИ КАЗАХСТАН
КОМИТЕТ ПО ПРАВАМ ИНТЕЛЛЕКТУАЛЬНОЙ СОБСТВЕННОСТИ
РЕСПУБЛИКАНСКОЕ ГОСУДАРСТВЕННОЕ КАЗЕННОЕ ПРЕДПРИЯТИЕ
«НАЦИОНАЛЬНЫЙ ИНСТИТУТ ИНТЕЛЛЕКТУАЛЬНОЙ СОБСТВЕННОСТИ» (НИИС)**
Левобережье, Дом Министерств, блок В, пятно 5, г.Астана, Республика Казахстан, 010000,
тел (3172) 50-28-98, факс (3172) 74-06-26

# ВЫПИСКА ИЗ ГОСУДАРСТВЕННОГО РЕЕСТРА ТОВАРНЫХ ЗНАКОВ РЕСПУБЛИКИ КАЗАХСТАН

| | | |
|---|---|---|
| (111) | свидетельство | 16505 |
| (151) | дата регистрации РК | 17.05.2004 |
| (181) | дата истечения срока действия регистрации | 08.01.2013 |
| (210) | № заявки | 22230 |
| (220) | дата подачи заявки | 08.01.2003 |
| (540) | знак | ВУЛКАН |
| (730) | владелец | "ВУЛКАН" жауапкершілігі шектеулі серіктестігі (KZ)Товарищество с ограниченной ответственностью "ВУЛКАН" (KZ)480035, г.Алматы, ул. Жандосова, д. 51. |
| (511) | классы МКТУ | 6, 17, 19, 35, 37, 39, 41, 42, 43, 44 |

35 - аукционная продажа; деловые и коммерческие операции, информация
деловая, статистическая; консультационные услуги, изучение рынка,
маркетинга, организация выставок для коммерческих и рекламных целей;
реализация товаров, оптовая и розничная торговля, реклама, сделки,
экспортно-импортные операции;
39 - доставка товаров; упаковка и хранение товаров; организация
путешествий, перевозка и сопровождение путешественников, перевозки
автомобильным, водным, железнодорожным транспортом, туристические
экскурсии, экспедирование грузов;
41 - организация и проведение семинаров, симпозиумов;
42 - использование запатентованных изобретений; промышленные и научные
исследования и разработки; проектно - конструкторские разработки;
43 - бары, кафе, кафетерии, рестораны, гостиницы;

**МИНИСТЕРСТВО ЮСТИЦИИ РЕСПУБЛИКИ КАЗАХСТАН**
**КОМИТЕТ ПО ПРАВАМ ИНТЕЛЛЕКТУАЛЬНОЙ СОБСТВЕННОСТИ**
**РЕСПУБЛИКАНСКОЕ ГОСУДАРСТВЕННОЕ КАЗЕННОЕ ПРЕДПРИЯТИЕ**
**«НАЦИОНАЛЬНЫЙ ИНСТИТУТ ИНТЕЛЛЕКТУАЛЬНОЙ СОБСТВЕННОСТИ» (НИИС)**
Левобережье, Дом Министерств, блок В, пятно 5, г.Астана, Республика Казахстан, 010000,
тел (3172) 50-28-98, факс (3172) 74-06-26

# ВЫПИСКА ИЗ ГОСУДАРСТВЕННОГО РЕЕСТРА ТОВАРНЫХ ЗНАКОВ РЕСПУБЛИКИ КАЗАХСТАН

(111)  свидетельство          19287
(151)  дата регистрации РК     15.11.2005
(181)  дата истечения срока    05.02.2014
действия регистрации
(210)  № заявки                26162
(220)  дата подачи заявки      05.02.2004
(540)  знак                    ВУЛКАН
(591)  указание цветов         голубой, синий, красный, белый
(730)  владелец                "Вулкан-К" жауапкершілігі шектеулі
(511)  классы МКТУ             9
                               9 - игровые автоматы с предварительной оплатой;
                               устройства с обязательным
                               использованием телевизионных приемников для игр и
                               развлечений; аппаратура
                               электрическая для наблюдения и контроля; музыкальные
                               автоматы с
                               предварительной оплатой; программное обеспечение
                               вычислительных машин.

**791038**

| | |
|---|---|
| 151 | Date de l'enregistrement |
| | 03.09.2002 |
| 180 | Date prévue de l'expiration de l'enregistrement/du renouvellement |
| | 03.09.2012 |
| 270 | Langue de la demande |
| | Anglais |
| | |
| | État actuel |
| 732 | Nom et adresse du titulaire de l'enregistrement |
| | "VOLCANO" Gaming Clubs Ltd. |
| | ul. Pokrovka, 3/7, str. 1 |
| | RU-101000 Moscow  (RU) |
| 812 | État contractant ou organisation contractante sur le territoire duquel ou de laquelle le titulaire a un établissement industriel ou commercial effectif et sérieux |
| | RU |
| 740 | Nom et adresse du mandataire |
| | Joint-Stock company |
| | "Patentny Poverenny" |
| | Galina N. Andruschak |
| | ul Aviamotornaya, d. 53 |
| | RU-111250 Moskwa  (RU) |
| 770 | Nom et adresse du titulaire précédent |
| | "FIRM "BARS" LTD |
| | ul. Baumanskaya, 56/17, str. 1 |
| | Moskva  (RU) |
| 540 | Marque |



| | |
|---|---|
| 531 | Classification internationale des éléments figuratifs des marques (classification de Vienne) - VCL(4) |
| | 01.01.05 ; 25.01.19 ; 28.05.00 ; 29.01.15 |
| 591 | Informations concernant les couleurs revendiquées |
| | Blue, dark blue, black, red, green, yellow, violet. |
| | Blue, dark blue - background; black - lightning; yellow, green, violet - stars; red - word "VULKAN"; black, blue, dark blue - letters' shadow. |
| | Bleu, bleu foncé, noir, rouge, vert, jaune, violet. |
| | L'arrière-plan est en bleu et bleu foncé; l'éclair est en noir; les étoiles sont en jaune, vert et violet; le mot "VULKAN" est en rouge; l'entourage des lettres est en noir, bleu et bleu foncé. |
| 561 | Translittération de la marque |
| | VULKAN |
| 566 | Traduction de la marque ou de mots contenus dans la marque |
| | VOLCANO |

VOLCAN

**511**   **Classification internationale des produits et des services aux fins de l'enregistrement des marques (classification de Nice) - NCL(8)**

    **41**   Modelling of artists; rental of tennis courts; lending libraries; booking of seats for shows; videotaping; nursery schools; physical education; discotheque services; animal training; dubbing; gaming; publication of books; educational information; recreational information; entertainment information; movie studios; health club services; club services (entertainment or education); night clubs; correspondence courses; microfilming; videotape editing; production of radio and television programmes; music-halls; game services provided on-line (from a computer network); religious education; gymnastic instruction; practical training (demonstration); organisation of balls; organisation of exhibitions for cultural or educational purposes; providing recreational facilities; arranging and conducting of colloquiums; arranging and conducting of congresses; arranging and conducting conferences; arranging and conducting of workshops (training); arranging and conducting of seminars; arranging and conducting of symposiums; arranging of beauty contests; organisation of competitions (education or entertainment); lotteries; holiday camp services (entertainment); organisation of shows (impresario services); vocational guidance (education or training advice); boarding schools; amusement park; sign language interpretation; television entertainment; bookmobile services; providing karaoke services; providing golf facilities; providing amusement arcade services; providing cinema facilities; presentation of live performances; theatre productions; educational examination; videotape film production; film production; rental of sound recordings; rental of audio equipment; rental of camcorders; rental of video cassette recorders; rental of videotapes; rental of show scenery; rental of cine-films; rental of lighting apparatus for theatrical sets or television studios; rental of radio and television sets; rental of skin diving equipment; rental of stage scenery; electronic desktop publishing; publication of electronic books and journals online; publication of texts (other than publicity texts); radio entertainment; entertainer services; zoological gardens; news reporters services; party planning (entertainment); music composition services; subtitling; providing of casino facilities (gambling); providing museum facilities (presentation, exhibitions); educational services; orchestra services; translation; scriptwriting services; recording studio services; digital imaging services; circuses; production of shows.

      Agences de modèles pour artistes; location de cours de tennis; bibliothèques de prêt; réservation de places de spectacles; enregistrement sur bandes vidéo; écoles maternelles; éducation physique; services de discothèques; dressage d'animaux; postsynchronisation; jeux; édition de livres; informations à buts éducatifs; informations en matière de loisirs; informations en matière de divertissement; studios cinématographiques; clubs de santé; services de clubs (divertissement ou éducation); boîtes de nuit; cours par correspondance; microfilmage; montage de bandes vidéo; production d'émissions radiophoniques et télévisées; music-hall; services de jeu proposés en ligne (depuis un réseau informatique); éducation religieuse; enseignement de la gymnastique; formation pratique (démonstration); organisation de bals; organisation d'expositions à vocation culturelle ou pédagogique; services de loisirs; organisation et animation de colloques; organisation et tenue de congrès; organisation et animation de conférences; organisation et conduite d'ateliers de formation; organisation et animation de séminaires; organisation et animation de symposiums; organisation de concours de beauté; organisation de concours (à caractère pédagogique ou récréatif); loteries; services de camps de vacances (divertissement); organisation de spectacles (services d'impresario); orientation professionnelle (conseils pédagogiques ou en matière de formation); pensionnats; parcs d'attractions; interprétation du langage gestuel; divertissements télévisuels; services de bibliothèque itinérante; services de karaoké; exploitation de parcours de golf; exploitation de salles de jeux; exploitation de salles de cinéma; représentation de spectacles; représentations théâtrales; épreuves pédagogiques; production de films sur bandes vidéo; production cinématographique; location d'enregistrements sonores; location d'appareils audio; location de caméras vidéo; location de magnétoscopes; location de bandes vidéo; location de décors de spectacles; location de films cinématographiques; location d'appareils d'éclairage pour des scènes de théâtre ou des studios de télévision; location de postes de radio et de télévision; location d'équipements de plongée sous-marine; location de décors de théâtre; publication assistée par ordinateur; publication en ligne de livres et de revues électroniques; publication de textes (autres que publicitaires); divertissements radiophoniques; services d'artistes de spectacles; jardins zoologiques; services de reporters; organisation de fêtes (divertissement); services de composition musicale; sous-titrage; exploitation de casinos de jeux; services de musées (présentation, expositions); services d'enseignement; services d'orchestres; services de traduction; rédaction de scénarios; services de studio d'enregistrement; services d'imagerie numérique; cirques; production de spectacles.

**822**   **Enregistrement de base**

    RU, 03.07.2002, 216203

**300**   **Données relatives à la priorité selon la Convention de Paris et autres données relatives à l'enregistrement de la marque dans le pays d'origine**

    RU, 03.04.2002, 2002707649

**831**   **Désignation(s) selon l'Arrangement de Madrid**

    KZ - TJ

**832**   **Désignation(s) selon le Protocole de Madrid**

    EE - GE - LT - TM - UZ

**834**   **Désignation(s) selon le Protocole de Madrid en vertu de l'article 9sexies**

    AM - AZ - BY - KG - LV - MD - UA

  ⊟   **Enregistrement**

**934189**

| | |
|---|---|
| 151 | Date de l'enregistrement |
| | 25.07.2007 |
| 180 | Date prévue de l'expiration de l'enregistrement/du renouvellement |
| | 25.07.2017 |
| 270 | Langue de la demande |
| | Anglais |

État actuel

| | |
|---|---|
| 732 | Nom et adresse du titulaire de l'enregistrement |

EUROHEAT HQ Sp. z o.o.

ul. Szkolna 24,

Suchy Dwór

PL-81-198 Kosakowo  (PL)

811   État contractant dont le titulaire est ressortissant

PL

812   État contractant ou organisation contractante sur le territoire duquel ou de laquelle le titulaire a un établissement industriel ou commercial effectif et sérieux

PL

813   État contractant ou organisation contractante sur le territoire duquel ou de laquelle le titulaire a son domicile

PL

842   Nature juridique du titulaire (personne morale) et État ainsi que, le cas échéant, territoire à l'intérieur de cet État, où la personne morale est constituée

Spółka z ograniczona odpowiedzialnoscia, Poland

740   Nom et adresse du mandataire

Czabajski Jacek

Skarżyńskiego 8 E/10

PL-80-422 Gdańsk  (PL)

770   Nom et adresse du titulaire précédent

TS GROUP Sp. z o.o.

ul. Szkolna 24,

Suchy Dwór

Kosakowo  (PL)

540   Marque

**VOLCÁNO VR**

531   Classification internationale des éléments figuratifs des marques (classification de Vienne) - VCL(5)

27.05.01 ; 29.01.12

591   Informations concernant les couleurs revendiquées

Gray and orange.

Gris et orange.

Gris y naranja.

511   Classification internationale des produits et des services aux fins de l'enregistrement des marques (classification de Nice) - NCL(9)

11   Air purifying apparatus and machines, ventilation installations and apparatus, air conditioning installations and apparatus, air reheaters, air cooling apparatus.

Appareils et machines pour la purification d'air, installations et appareils de ventilation, installations et appareils de climatisation, réchauffeurs d'air, appareils pour le refroidissement d'air.

Aparatos y máquinas para la purificación del aire, instalaciones y aparatos de ventilación, aparatos e instalaciones de aire acondicionado, calentadores de aire, dispositivos para el enfriamiento del aire.

37   Air conditioning apparatus installation and repair.

Installation et réparation d'appareils de climatisation.

Instalación y reparación de aparatos de aire acondicionado.

42  Technical project studies concerning air conditioning, ventilating and heating apparatus.

Etudes de projets techniques portant sur des appareils de climatisation, de ventilation et de chauffage.

Estudio de proyectos técnicos relacionados con aparatos de aire acondicionado, ventilación y calefacción.

822   **Enregistrement de base**

**PL, 18.01.2007, 186581**

831   **Désignation(s) selon l'Arrangement de Madrid**

**KZ**

832   **Désignation(s) selon le Protocole de Madrid**

**DK - EE - FI - GB - IE - LT - SE**

834   **Désignation(s) selon le Protocole de Madrid en vertu de l'article 9sexies**

**AT - BA - BG - BX - BY - CH - CZ - DE - ES - FR - HU - IT - LI - LV - MC - MD - MK - PT - RO - RS - RU - SI - SK - SM - UA**

527   **Indications relatives aux exigences d'utilisation**

**GB - IE**

⊟   **Enregistrement**

450   **Date et numéro de publication**

**2007/36 Gaz, 11.10.2007**

831   **Désignation(s) selon l'Arrangement de Madrid**

**AT - BA - BG - BX - BY - CH - CZ - DE - ES - FR - HU - IT - KZ - LI - LV - MC - MD - MK - PT - RO - RS - RU - SI - SK - SM - UA**

832   **Désignation(s) selon le Protocole de Madrid**

**DK - EE - FI - GB - IE - LT - SE**

527   **Indications relatives aux exigences d'utilisation**

**GB - IE**

580   **Date de l'inscription (date de notification à partir de laquelle commence à courir le délai pour émettre le refus de protection)**

**20.09.2007**

**Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de l'application de la règle 5)**

**AT**

**Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de l'application de la règle 5)**

**BA**

**Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de l'application de la règle 5)**

**BG**

**Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de l'application de la règle 5)**

**BY**

**Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de l'application de la règle 5)**

**CH**

**Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de l'application de la règle 5)**

**DE**

**Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de l'application de la règle 5)**

**DK**

**Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de l'application de la règle 5)**

**FR**

**905612**

| | | |
|---|---|---|
| 151 | Date de l'enregistrement | |
| | 07.06.2006 | |
| 180 | Date prévue de l'expiration de l'enregistrement/du renouvellement | |
| | 07.06.2016 | |
| 270 | Langue de la demande | |
| | Anglais | |

État actuel

732   Nom et adresse du titulaire de l'enregistrement
      Obshestvo s ogranichennoj
      otvetstvennostju "Firma "Bars"
      str. 1, 56/17, Baumanskaya
      RU-105005 Moskva  (RU)

812   État contractant ou organisation contractante sur le territoire duquel ou de laquelle le titulaire a un établissement industriel ou commercial effectif et sérieux
      RU

740   Nom et adresse du mandataire
      Obshestvo s ogranichennoj
      otvetsvennostju "Intellect Patent"
      28 Post Box
      RU-125009 Moskva  (RU)

540   Marque



531   Classification internationale des éléments figuratifs des marques (classification de Vienne) - VCL(5)
      01.01.01 ; 26.02.07 ; 26.07.09 ; 26.07.11 ; 28.05.00 ; 29.01.01 ; 29.01.04

591   Informations concernant les couleurs revendiquées
      White, yellow, orange, red, light blue, blue and dark blue.
      Blanc, jaune, orange, rouge, bleu clair, bleu et bleu foncé.
      Blanco, amarillo, anaranjado, rojo, azul claro, azul y azul oscuro.

561   Translittération de la marque
      Vulkan.

566   Traduction de la marque ou de mots contenus dans la marque
      Volcano.

511   Classification internationale des produits et des services aux fins de l'enregistrement des marques (classification de Nice) - NCL(8)

09   Apparatus for recording, transmission or reproduction of sound or images; magnetic data carriers, recording discs; automatic vending machines and mechanisms for coin-operated apparatus; data processing equipment and computers; ticket dispensers, musical juke boxes, automatic distribution machines, electric monitoring apparatus, sound recording apparatus, electric apparatus for communication, video cassettes, video screens, floppy disks, phonograph records, optical disks, read-only memory compact disks, audio-video compact disks, decorative magnets, mechanisms for coin-operated apparatus, sound recording carriers, magnetic data media, optical data media, recorded computer operating programs, computer game programs, computer programs (downloadable software), electronic publications (downloadable), smart cards, totalizators, apparatus for games adapted for use with television receivers only, amusement apparatus adapted for use with television receivers

only, computer peripheral devices, anti-theft warning apparatus, chips (integrated circuits).

Appareils d'enregistrement, de transmission ou de reproduction de sons ou d'images; supports d'enregistrement magnétiques, disques acoustiques; distributeurs automatiques et mécanismes pour appareils à prépaiement; équipements de traitement de données et ordinateurs; distributeurs de billets [tickets], chargeurs automatiques de disques, distributeurs automatiques, appareils électriques de surveillance, appareils pour l'enregistrement de son, appareils électriques de communication, cassettes vidéo, écrans vidéo, disquettes, disques phonographiques, disques optiques, cd-rom (unité de disque compact à mémoire morte), disques compacts audiovidéo, aimants décoratifs, mécanismes pour appareils à prépaiement, supports d'enregistrements sonores, supports de données magnétiques, supports de données optiques, programmes de système d'exploitation pour ordinateurs, programmes de jeux électroniques, programmes informatiques (logiciels téléchargeables), publications électroniques téléchargeables, cartes à mémoire ou à microprocesseur, totalisateurs, appareils pour jeux conçus pour être utilisés seulement avec récepteur de télévision, appareils pour le divertissement conçus pour être utilisés seulement avec un récepteur de télévision, périphériques d'ordinateur, avertisseurs contre le vol, puces (circuits intégrés).

Aparatos para la grabación, la transmisión y la reproducción de sonido o imágenes; soportes de grabación magnéticos, discos acústicos; distribuidores automáticos y mecanismos para aparatos de previo pago; equipos y ordenadores para el procesamiento de datos; distribuidores de billetes, máquinas de discos de previo pago, máquinas de distribución automática, aparatos eléctricos de vigilancia, aparatos de grabación de sonido, aparatos eléctricos de comunicación, casetes de vídeo, pantallas de vídeo, discos flexibles, discos fonográficos, discos ópticos, discos compactos con memoria de sólo lectura, discos compactos audio-video, imanes decorativos, mecanismos para aparatos de previo pago, soportes para grabaciones sonoras, soportes de datos magnéticos, soportes de datos ópticos, programas de sistemas operativos grabados para ordenadores, programas de juegos informáticos, programas informáticos (software descargables), publicaciones electrónicas (descargables), tarjetas con circuitos integrados, totalizadores, aparatos para juegos concebidos para ser utilizados únicamente con televisores, aparatos recreativos diseñados para ser utilizados únicamente con televisores, periféricos informáticos, alarmas antirrobo, chips (circuitos integrados).

16  Printed matter, almanacs, affiches, posters, tickets, blanks, pamphlets, booklets, newsletters, newspapers, engravings, printed publications, calendars, tear-off calendars, non-electric credit card imprinters, catalogues, books, graphic prints, magazines (periodicals), prospectuses, printed timetables, graphic reproductions.

Produits imprimés, almanachs, affiches, billets, carton pour affiches, brochures, livrets, bulletins d'information, journaux, gravures, publications, calendriers, éphémérides, presses à cartes de crédit, non électriques, catalogues, livres, dessins, magazines, prospectus, horaires imprimés, reproductions graphiques.

Material impreso, almanaques, carteles, pósters, tickets, láminas, panfletos, folletos, circulares, periódicos, grabados, publicaciones impresas, calendarios, calendarios de taco, prensas no eléctricas para tarjetas de crédito, catálogos, libros, dibujos, revistas (publicaciones periódicas), prospectos, horarios impresos, reproducciones gráficas.

21  Household or kitchen utensils and containers (not of precious metal or coated therewith); combs and sponges; brushes (except paint brushes); brush-making materials; articles for cleaning purposes; steelwool; unworked or semi-worked glass (except glass used in building); glassware, porcelain and earthenware not included in other classes; including ornaments, dishes, saucers, goblets made of porcelain; bottles, busts of china, terra-cotta or glass; vases, non-electric waffle irons, coolers, napkin holders, clothing stretchers, decanters, combs for the hair, deodorising apparatus for personal use, containers for household or kitchen use boxes of glass, heat insulated containers for beverages, thermally insulated containers for food, glass jars, frying pans, toothpicks, ceramics for household purposes; works of art, of porcelain, terra-cotta or glass; stew-pans, napkin rings, piggy banks, not of metal, bread baskets (domestic), baskets for domestic use, non-electric coffee percolators, hand-operated coffee grinders, beer mugs, covers for dishes, jugs, non-electric portable coldboxes, mixing spoons (kitchen utensils), scoops (tableware), spatulas (kitchen utensils), hand-operated pepper mills, basins, soap boxes, cooking pot sets, fitted picnic baskets (including dishes), toilet cases, cookie (biscuit) cutters, pastry cutters, sprinklers, cocktail stirrers, pepper pots, gloves for household purposes, trays for domestic purposes, trays (kitchen utensils), candle sticks, trivets (table utensils), coasters, not of paper and other than table linen, menu card holders, knife rests for table, flat-iron stands, tableware (other than knives, forks and spoons); porcelain ware, terra-cotta ware, crockery and crystal (glassware); cosmetic utensils, toilet utensils, spice sets, non-electric appliances for removing make-up, food cooling devices containing heat exchange fluids, for household purposes, bottle openers, glass caps, powder compacts, soap dispensers, combs, shoe horns, salad bowls, sugar bowls, services (tableware), coffee services and tea services, tea strainers, siphons for carbonated water, blenders for household purposes, fruit presses for household purposes, salt cellars, drinking vessels, refrigerating bottles, cups of paper or plastic, glasses, drinking glasses, status and figurines of porcelain, terra-cotta or glass; soup bowls, table plates, grater (household utensils), insulating flasks, urns, aerosol dispensers, not for medical purposes, wax-polishing appliances, non-electric, for shoes, sprinkling devices, utensils for household purposes, kitchen utensils, cooking utensils, strainers for household purposes, coffee filters, flasks, bottle gourds, molds (kitchen utensils), bread bins, teapots, kettles, cups, mixers, manual (cocktail shakers), corkscrews, dishwashing brushes and brushes for cleaning tanks and containers, toothbrushes, brushes for footwear, boxes of metal, for dispensing paper towels, dustbins.

Ustensiles et récipients pour le ménage ou la cuisine (ni en métaux précieux, ni en plaqué); peignes et éponges; brosses (à l'exception des pinceaux); matériaux pour la brosserie; matériel de nettoyage; paille de fer; verre brut ou mi-ouvré (à l'exception du verre de construction); verrerie, porcelaine et faïence non comprises dans d'autres classes, y compris des objets décoratifs, plats, soucoupes, gobelets en porcelaine; bouteilles, bustes en porcelaine, terre cuite ou verre; vases, gaufriers non électriques, seaux à rafraîchir, porte-serviettes, tendeurs de vêtements, carafes, peignes à cheveux, appareils de désodorisation à usage personnel, récipients pour le

OMPI - ROMARIN - Détails de l'enregistrement international                                      Стр. 3 из 9

ménage ou la cuisine boîtes en verre, récipients calorifuges pour boissons, récipients calorifuges pour les
aliments, bocaux, poêles à frire, cure-dents, produits céramiques pour le ménage; objets d'art en porcelaine, terre
cuite ou verre; faitouts, ronds de serviettes, tirelires non métalliques, corbeilles à pain (à usage ménager), paniers
à usage domestique, percolateurs à café non électriques, moulins à café à main, chopes à bière, couvercles de
plats, cruches, glacières portatives non électriques, cuillers à mélanger (ustensiles de cuisine), pelles
(accessoires de table), spatules (ustensiles de cuisine), moulins à poivre à main, jattes, boîtes à savon, batteries
de cuisine, paniers équipés pour pique-nique (avec vaisselle), trousses de toilette, emporte-pièces, coupe-pâte,
arroseurs, bâtonnets pour cocktails, poivriers, gants de ménage, plateaux à usage domestique, plateaux
(ustensiles de cuisine), bougies, dessous-de-plat (ustensiles de table), dessous de carafes non en papier et
autres que linge de table, porte-cartes de menus, porte-couteaux de table, supports de fers à repasser, vaisselle
(hormis couteaux fourchettes et cuillers); articles en porcelaine, terre cuite, vaisselle et articles en cristal
(verrerie); ustensiles cosmétiques, ustensiles de toilette, services à épices, appareils pour le démaquillage non
électriques, articles de réfrigération d'aliments contenant des fluides d'échange de chaleur à usage domestique,
ouvre-bouteilles, bouchons en verre, poudriers, distributeurs de savon, peignes, chausse-pieds, saladiers,
sucriers, services (vaisselle), services à café et à thé, filtres à thé, siphons pour eaux gazeuses, mixeurs à usage
domestique, presses à fruits à usage domestique, salières, récipients à boire, bouteilles réfrigérantes, gobelets
en papier ou en matières plastiques, verres, verres à boire, statues et figurines en porcelaine, terre cuite ou
verre; soupières, plateaux de tables, râpes (ustensiles de maison), bouteilles isolantes, urnes, appareils destinés
à la projection d'aérosols non à usage médical, cireuses à chaussures non électriques, instruments d'arrosage,
ustensiles à usage domestique, ustensiles de cuisine, ustensiles de cuisson, filtres pour le ménage, filtres à café,
gourdes, bidons, moules (ustensiles de cuisine), boîtes à pain, théières, bouilloires, tasses, shakers (à main), tire-
bouchons, pinceaux pour laver la vaisselle et brosses pour nettoyer les récipients, brosses à dents, brosses à
chaussures, boîtes en métal pour la distribution de serviettes en papier, poubelles.

Utensilios y recipientes para la casa y la cocina (que no sean de metales preciosos ni chapados); peines y
esponjas; cepillos (excepto pinceles); materiales para la fabricación de cepillos; material de limpieza; viruta de
hierro; vidrio en bruto o semielaborado (excepto vidrio de construcción); cristalería, porcelana y loza no
comprendidas en otras clases; incluidos adornos, fuentes, platillos, copas de porcelana; botellas, bustos de
porcelana, de barro o de cristal; jarrones, barquilleros no eléctricos, cubiteras, servilleteros, tendedores de
vestidos, decantadores, peines para el cabello, aparatos de desodorización para uso personal, recipientes para
uso culinario o doméstico, cajas de cristal, recipientes calorífugos para bebidas, recipientes termoaislantes para
alimentos, bocales, sartenes, mondadientes, productos de cerámica para el hogar; objetos de arte de porcelana,
de barro o de cristal; cacerolas, servilleteros de aro, huchas no metálicas, cestas para el pan (uso doméstico),
cestas para uso doméstico, cafeteras con filtro de café no eléctricas, molinillos de café manuales, jarras para
cerveza, tapaderas de bandejas, jarras, neveras portátiles no eléctricas, cucharas para mezclar (utensilios de
cocina), palas (vajilla), espátulas (utensilios de cocina), molinillos de pimienta manuales, palanganas, jaboneras,
baterías de cocina, cestas para picnic (con vajilla incluida), neceseres de tocador, moldes para cortar galletas,
cortapastas, regaderas, agitadores para cocteles, pimenteros, guantes para uso doméstico, bandejas para uso
doméstico, bandejas (utensilios de cocina), candelabros, reposaplatos (utensilios de mesa), posavasos, que no
sean de papel ni ropa de mesa, portatarjetas de menú, portacuchillos para la mesa, soportes de planchas de
planchar, vajilla (excepto cuchillos, tenedores y cucharas); artículos de porcelana, artículos de barro, vajilla y
artículos de cristal; utensilios cosméticos, utensilios de tocador, especieros, aparatos para el desmaquillaje no
eléctricos, dispositivos para enfriar alimentos que contienen fluidos para el intercambio de calor, para uso
doméstico, abrebotellas, tapones de cristal, polveras, distribuidores de jabón, peines, calzadores, ensaladeras,
azucareros, servicios (vajilla), juegos de café y té, coladores de té, sifones para aguas gaseosas, licuadoras para
uso doméstico, exprimidores de frutas para uso doméstico, saleros, recipientes para beber, botellas
refrigerantes, tazas de papel o de plástico, vasos, vasos para beber, estatuas y figuritas de porcelana, barro o
vidrio; soperas, platos, ralladores (utensilios domésticos), botellas térmicas, urnas, aparatos destinados a la
proyección de aerosoles que no sean para uso médico, enceradoras, no eléctricas, para zapatos, instrumentos
de riego, utensilios para uso doméstico, utensilios de cocina, utensilios para cocinar, coladores para uso
doméstico, filtros de café, frascos, cantimploras, moldes (utensilios de cocina), paneras, teteras, hervidores,
tazas, cocteleras, sacacorchos, cepillos para lavar la vajilla y cepillos para limpiar depósitos y recipientes,
cepillos de dientes, cepillos para el calzado, cajas metálicas, para la distribución de toallitas de papel, papeleras.

28  Games and playthings; gymnastic and sporting articles not included in other classes; including automatic and
coin-operated amusement machines, cups for dice, dice, playing cards, billiard cues, chalk for billiard cues,
billiard table cushions, billiard cue tips, accessories for games, billiard markers, billiard tables, coin-operated
billiard tables, tables for table tennis, apparatus for electronic games other than those adapted for use with
television receivers only, counters (discs) for games, play balloons, billiard tables.

Jeux et jouets; articles de gymnastique et de sport non compris dans d'autres classes, y compris jeux
automatiques à prépaiement, gobelets pour jeux, dés, cartes à jouer, queues de billard, craie pour queues de
billards, bandes de billard, procédés pour queues de billard, accessoires de jeux, dispositifs à marquer les points
pour billards, tables de billard, tables de billard à prépaiement, tables de ping-pong, appareils de jeux
électroniques autres que ceux conçus pour être utilisés seulement avec récepteur de télévision, compteurs
(disques) de jeux, ballons de jeu.

Juegos, juguetes; artículos de gimnasia y de deporte no comprendidos en otras clases; incluidas máquinas
recreativas automáticas y de monedas, cubiletes para dados, dados, naipes, tacos de billar, tiza para tacos de
billar, bandas de billar, suelas para tacos de billar, accesorios para juegos, marcadores de billar, mesas de billar,
mesas de billar accionadas con monedas, mesas de ping-pong, aparatos de juegos electrónicos que no sean los
concebidos para ser utilizados únicamente con un receptor de televisión, fichas (discos) para juegos, balones de
juego, mesas de billar.

35  Office functions, data search in computer files (for other), office machines and equipment rental, trade equipment

rental, compilation of information into computer databases, systematization of information into computer databases, public relations.

Travaux de bureau, recherche de données dans des fichiers informatiques (pour le compte de tiers), location de machines et d'appareils de bureau, location d'équipements commerciaux, compilation d'informations dans des bases de données informatiques, systématisation d'informations dans des bases de données informatiques, relations publiques.

Trabajos de oficina, búsqueda de datos en archivos informáticos (para terceros), alquiler de máquinas y aparatos de oficina, alquiler de equipos comerciales, compilación de información en bases de datos informáticas, sistematización de la información en bases de datos informáticas, servicios de relaciones públicas.

38  Telecommunications; including electronic bulletin board services (telecommunication services), providing user access to a global computer network (service providers), providing telecommunications connections to a global computer network, communications by fiber (fibre) optic networks.

Télécommunications, notamment services de tableaux d'affichage électroniques (services de télécommunications), fourniture d'accès aux utilisateurs à un réseau mondial d'ordinateurs (prestataires de services), mise à disposition de connexions de télécommunication pour l'accès à un réseau mondial d'ordinateurs, communications par le biais de réseaux de fibres optiques.

Telecomunicaciones; incluidos servicios de anuncios electrónicos (servicios de telecomunicación), facilitación de acceso de usuarios a una red informática mundial (proveedores de servicios), facilitación de conexiones de telecomuniación a una red informática mundial, comunicaciones por redes de fibras ópticas.

39  Arranging of tours, including booking of seats for travel, travel reservation, transport reservation, delivery of goods, arranging of cruises, transport of travellers, car transport, car rental, escorting of travellers, wrapping of goods, car parking, chauffeur services, courrier services (messages or merchandise), tourist offices (except for hotel reservation), storage of goods, sightseeing.

Organisation de voyages, y compris réservation de places de voyage, réservation de voyages, réservations de transport, livraison de marchandises, organisation de croisières, transport de voyageurs, transport en voiture, location de voitures, accompagnement de voyageurs, emballage de marchandises, services de parcs de stationnement, services de chauffeurs, messagerie (courrier ou marchandises), agences de tourisme (à l'exception de la réservation d'hôtels), dépôt de marchandises, visites touristiques.

Servicios de organización de viajes, incluidas reservas de plazas de viajes, reservas de viajes, reservas para el transporte, reparto de mercancías, organización de cruceros, transporte de viajeros, transporte en automóvil, alquiler de automóviles, acompañamiento de viajeros, empaquetado de mercancías, servicios de aparcamiento, servicios de conductores, servicios de correo (mensajes o mercancías), agencias de turismo (excepto para reservas de hoteles), almacenamiento de mercancías, visitas turísticas.

41  Education; providing of training; entertainment; cultural activities; billiard saloon, booking of seats for shows, videotaping, discotheque services, gaming, publication of books, recreation information, entertainment information, club services (entertainment or education), night clubs, game services provided on-line (from a computer network), electronic publication services provided on-line (not downloaded), practical training (demonstration), organization of exhibitions for cultural and educational purposes, providing recreation facilities, arranging and conducting of workshops (training), organization of competitions (education or entertainment), operating lotteries, holiday camp services (entertainment), amusement parks, providing amusement arcade services, providing cinema facilities, videotape film production and film production, rental of sound recordings, rental of audio equipment, rental of video cassette recorders, rental of automatic amusement machines, rental of cine-films, electronic desktop publishing, publication of electronic books and journals on-line, publication of texts (other than publicity texts), entertainer services, party planning (entertainment), providing casino facilities (gambling), translation, photography, production of shows.

Enseignement; formations; divertissement; activités culturelles; salles de billard, réservation de places de spectacles, enregistrement sur bandes vidéo, services de discothèques, jeux d'argent, publication de livres, informations en matière de loisirs, informations en matière de divertissement, services de clubs (divertissement ou éducation), boîtes de nuit, services de jeu en ligne (sur réseau informatique), services de publications électroniques fournis en ligne (non téléchargeables), formation pratique (démonstrations), organisation d'expositions à vocation culturelle et pédagogique, services de loisirs, organisation et conduite d'ateliers de formation, organisation de concours (éducation ou divertissement), organisation de loteries, services de camps de vacances (divertissement), parcs d'attractions, exploitation de salles de jeux, exploitation de salles de cinéma, production de films cinématographiques et de bandes vidéo, location d'enregistrements sonores, location d'appareils audio, location de magnétoscopes, location de jeux automatiques à prépaiement, location de films cinématographiques, publication assistée par ordinateur, publication en ligne de livres et revues électroniques, publication de textes (autres que textes publicitaires), services d'artistes de spectacles, planification de réceptions (divertissement), services de casino, services de traduction, photographie, production de spectacles.

Educación; formación; esparcimiento; actividades culturales; salas de billar, reserva de entradas para espectáculos, grabación en cintas de vídeo, servicios de discotecas, juegos de azar, publicación de libros, información sobre actividades recreativas, información sobre esparcimiento, servicios de clubes (educación y esparcimiento), clubes nocturnos, servicios de juegos en línea (a través de una red informática), servicios de publicación electrónica prestados en línea (no descargados), formación práctica (demostración), organización de exposiciones con fines culturales y educativos, facilitación de instalaciones recreativas, organización y dirección de talleres de formación, organización de concursos (educación o esparcimiento), organización de loterías, servicios de campamentos de vacaciones (esparcimiento), parques de atracciones, explotación de salas de juegos, explotación de salas de cine, producción de películas y cintas de vídeo, alquiler de grabaciones sonoras, alquiler de equipos de audio, alquiler de vídeos, alquiler de máquinas recreativas automáticas, alquiler de

películas cinematográficas, autoedición electrónica, publicación de libros y diarios electrónicos en línea, publicación de textos (que no sean textos publicitarios), servicios de artistas de espectáculos, planificación de recepciones (entretenimiento), servicios de casino (juegos), traducción, fotografía, producción de espectáculos.

42  Design and development of computer hardware and software; computer systems analysis, installation of computer software, updating of computer software, maintenance of computer software, computer system design, computer rental, rental of computer software, hosting computer sites (web sites), creating and maintaining web sites for others.

Conception et développement d'ordinateurs et de logiciels; analyse de systèmes informatiques, installation de logiciels, mise à jour de logiciels, maintenance de logiciels, conception de systèmes informatiques, location d'ordinateurs, location de logiciels, hébergement de sites informatiques (sites Web), création et maintenance de sites Web pour des tiers.

Diseño y desarrollo de hardware y software; análisis de sistemas informáticos, instalación de software, actualización de software, mantenimiento de software, diseño de sistemas informáticos, alquiler de ordenadores, alquiler de software, superservidor (sitios Web), creación y mantenimiento de sitios Web para terceros.

43  Services for providing food and drink; temporary accommodation, agencies for reservations (hotels, house bookings), rental of meeting rooms, tourist homes, hotel reservations, temporary accomodation reservations, hotels, snack-bars, cafes, cafeterias, restaurants, holiday camp services (lodging), bar services, providing campground facilities, food and drink catering.

Services de restauration (alimentation); hébergement temporaire, agences de réservation (réservations de maisons, hôtels), location de salles de réunion, logements de vacances, réservation d'hôtels, réservation d'hébergements temporaires, hôtels, snack-bars, cafés, cafétérias, restaurants, services de camps de vacances (hébergement), bars, exploitation de terrains de camping, restauration (aliments et boissons).

Servicios de restauración (alimentación); hospedaje temporal, agencias de reservas (reservas de hoteles y casas), alquiler de salas de reunión, casas de vacaciones, reservas de hoteles, reservas de alojamiento temporal, hoteles, restaurantes de servicio rápido, cafés, cafeterías, restaurantes, servicios de campamentos de vacaciones (hospedaje), servicios de bar, facilitación de terrenos de camping, servicios de comidas preparadas.

45  Personal and social services rendered by others to meet the needs of individuals, guards, dating services, personal body guarding.

Services personnels et sociaux rendus par des tiers destinés à satisfaire les besoins des individus, gardes, clubs de rencontres, services de gardes du corps.

Servicios personales y sociales prestados por terceros destinados a satisfacer necesidades individuales, servicios de guardias, servicios de encuentros, servicios de escolta personal.

822  **Enregistrement de base**

RU, 01.06.2006, 307722

300  **Données relatives à la priorité selon la Convention de Paris et autres données relatives à l'enregistrement de la marque dans le pays d'origine**

RU, 16.12.2005, 2005732554

831  **Désignation(s) selon l'Arrangement de Madrid**

KZ - TJ

832  **Désignation(s) selon le Protocole de Madrid**

EE - GE - LT - TM - UZ

834  **Désignation(s) selon le Protocole de Madrid en vertu de l'article 9sexies**

AM - AZ - BY - CY - CZ - DE - ES - KG - LV - MD - PL - RO - UA

⊟  **Enregistrement**

450  **Date et numéro de publication**

2006/48 Gaz. 04.01.2007

831  **Désignation(s) selon l'Arrangement de Madrid**

AM - AZ - BY - CY - CZ - DE - ES - KG - KZ - LV - MD - PL - RO - TJ - UA - UZ

832  **Désignation(s) selon le Protocole de Madrid**

EE - GE - LT - TM

580  **Date de l'inscription (date de notification à partir de laquelle commence à courir le délai pour émettre le refus de protection)**

14.12.2006

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de l'application de la règle 5)

AZ

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de

# Response Annex 32

# ARRANGEMENT ET PROTOCOLE DE MADRID

## REFUS PROVISOIRE DE PROTECTION

RÈGLE 17.1) DU RÈGLEMENT D'EXÉCUTION COMMUN À L'ARRANGEMENT DE MADRID CONCERNANT L'ENREGISTREMENT INTERNATIONAL DES MARQUES ET AU PROTOCOLE RELATIF À CET ARRANGEMENT

---

I. Administration qui notifie le refus: **Centre National de la Propriété Intellectuelle**
**20, oul. Kozlova, 220034 Minsk, Bélarus**
**Téléphone (Division des marques): (+375 17) 294 36 99, (+375 17) 285 25 71,**
**Télécopieur: (+375 17) 294 36 56**

---

II. No de l'enregistrement international: 992 196

---

III. Nom et adresse du titulaire de l'enregistrement international:

Ritzio Entertainment Group Limited
Diagorou 4, Kermia Building, Office 601, CY-1097 Nicosia (Chypre)

---

IV. Refus provisoire fondé sur un examen d'office

---

V. Motifs du refus:

La marque contenant la dénomination «ИГРОВЫЕ КЛУБЫ» est déceptive pour tous les produits et services mentionnés de ladite marque  sauf les produits de la cl. 28 : jeux automatiques à prépaiement, gobelets pour jeux, dés (jeux), cartes à jouer, queues de billard, craie pour queues de billards, bandes de billard, procédés pour queues de billard, accessoires de jeux, dispositifs à marquer les points pour billards, tables de billard, tables de billard à prépaiement, tables de ping-pong, appareils de jeux électroniques autres que ceux conçus pour être utilisés seulement avec un récepteur de télévision, jetons de jeux, petites boules pour jeux, tables de billard ; et services de la cl. 41: jeux d'argent, mise à disposition de salles de jeux sur machines, services de casinos (jeux).

La marque est semblable au point de prêter à confusion à la marque verbale en cyrillique "ВУЛКАН VULKAN" faisant l'objet de l'enregistrement national No 26079 (date de dépôt: le 2005.04.05) enregistrée au nom de Zelepouga Oksana Anatolievna (adresse: kv. 4, k. 2, d. 18, pr-t Stroitelei, BY-211000 Vitebsk, Bélarus); à la marque "ВУЛКАН, fig." faisant l'objet de l'enregistrement international No 791 038 enregistrée le 2002.09.03 au nom de "VOLCANO" Gaming Clubs Ltd. (adresse: ul. Pokrovka, 3/7, str. 1, RU-101000 Moscow, Fédération de Russie); à la marque "ВУЛКАН, fig" faisant l'objet de l'enregistrement international No 905 612 enregistrée le 2006.06.07 au nom de Obshestvo s ogranichennoj otvetstvennostju "Firma "Bars" (adresse: str. 1, 56/17, Baumanskaya, RU-105005 Moskva, Fédération de Russie).

Pour les listes des produits et services desdites marques et les reproductions des marques No 791 038 et No 905 612 voir l'annexe.

---

VI. Dispositions de la loi nationale applicables en la matière  (voir extrait de la loi sous le point X): 4.5.1; 5.1.1; 5.1.2

---

VII.

☒ Refus pour la totalité des produits et/ou services: Cl. 03, 09, 16, 18, 21, 24, 25, 26, 27, 28, 30, 32, 33, 34, 35, 36, 37, 38, 39, 41, 42, 43, 45.

☐ Refus pour les produits et/ou services suivants:

☐ Protection seulement pour les produits et/ou services suivants:

---

VIII. Recours contre la décision de refus:
a) délai de recours: 3 mois à partir de la date de réception de la présente notification par le titulaire de l'enregistrement international;
b) autorité à laquelle le recours doit être adressé: Centre National de la Propriété Intellectuelle  (à l'adresse indiquée à la case 1);
c) assistance obligatoire d'un mandataire domicilié en République du Bélarus (une liste des mandataires peut être obtenu sur le site internet du Centre National de la Propriété Intellectuelle:
http://www.belgospatent.org.by/index.php?option=com_content&view=article&id=136&Itemid=54

---

IX.  Date:  2010.01.15

X.           LOI SUR LES MARQUES DE PRODUITS (MARQUES DE SERVICES)
                      DE LA REPUBLIQUE DU BELARUS

(entrée en vigueur le 5 février 1993, révisée le 27 octobre 2000 et modifiée le 05 janvier 2004)

(Extrait)

## 1. Marque de produits ou de services

1. La marque de produits (la marque de services) (ci-après dénommée "marque") est un signe permettant de distinguer les produits fabriqués et les services offerts par une personne physique ou morale des produits ou des services (ci-après dénommés "produits") du même type fabriqués ou offerts par une autre personne physique ou morale.

2. Sont enregistrés en tant que marques les signes susceptibles d'une représentation graphique: dénominations verbales y compris les noms partonymiques, les lettres, les chiffres, les signes figuratifs, les combinaisons de couleurs, les signes tridimentionnels y compris la forme du produit ou son conditionnement ou les combinaisons de ces éléments.

3. Une marque peut être enregistrée en n'importe quelle couleur ou en n'importe quelle association de couleurs.

## 2. Protection juridique de la marque

3. Le droit sur la marque est protégé par l'Etat. L'enregistrement de la marque est attesté par un certificat. Le certificat atteste la date de priorité et le droit exclusif du titulaire sur la marque pour les produits indiqués dans le certificat; il contient une représentation de la marque.

## 4. Motifs objectifs d'un refus d'enregistrement

1. Ne peuvent être enregistrées les marques :
1.1- qui ne présentent pas de caractère distinctif;
1.2- qui sont devenues une désignation usuelle des produits d'un type déterminé;
1.3- qui constituent des symboles ou des termes courants;
1.4- qui sont composées exclusivement de signes ou d'indications pouvant servir à désigner l'espèce, la qualité, la quantité,     les propriétés, la destination, la valeur des produits ou encore le lieu et l'époque de leur production ou de leur écoulement;
1.5- qui sont constituées par la forme du produit ou de son conditionnement qui est imposée exclusivement ou principalement par la nature même du produit ou est nécessaire pour l'obtention d'un résultat technique ou donne une valeur substantielle au produit.

2. Ces signes ou indications peuvent être inclus dans la marque en qualité d'éléments non protégés dans la mesure où ils ne prédominent pas dans celle-ci.

4. Ne peuvent être enregistrées les marques qui consistent exclusivement en signes ou indications qui constituent des armoiries, drapeaux ou emblèmes d'Etats, des dénominations officielles d'Etats, des drapeaux, emblèmes ou dénominations abrégées ou complètes d'organisations internationales intergouvernementales, des poinçons officiels de contrôle, de garantie ou d'essai, ou encore des décorations ou d'autres signes honorifiques, ou qui sont semblables à ceux-ci au point de prêter à confusion.

Ces signes ou indications peuvent être inclus dans la marque en qualité d'éléments non protégés, sous réserve du consentement de leur titulaire ou de l'organe compétent.

5. Ne peuvent être enregistrés en qualité de marques les signes ou indications:
5.1- qui sont inexactes ou susceptibles d'induire le consommateur en erreur quant au produit, à son lieu de production ou à son producteur;
5.2- qui sont constitués d'indications géographiques identifiant des vins ou des spiritueux protégées dans la République du Bélarus en vertu de traités internationaux, pour désigner les vins ou les spiritueux qui ne sont pas originaires du lieu indiqué;
5.3- qui sont contraires à l'ordre public, aux principes humanitaires ou à la morale.

## 5. Autres motifs d'un refus d'enregistrement

1. Ne peuvent être enregistrés en qualité de marques les signes ou indications identiques ou semblables au point de prêter à confusion:
1.1- à des marques enregistrées ou ayant fait l'objet d'une demande d'enregistrement dans la République du Bélarus avec une date de priorité antérieure au profit d'un tiers, pour les produits du même type;
1.2- à des marques de tiers protégées dans la République du Bélarus en vertu de traités internationaux, pour les produits du même type;
1.3- à des marques de tiers qui sont reconnues notoires par l'administration nationale pour quelque type de produits que ce soit.

---

XI. Annexes (marquées ci-dessous d'une croix)

☒   Reproduction(s) de la (des) marque(s) qui
    semble(ent) être en conflit comportant un
    élément figuratif ou un graphisme spécial


☒   Liste indiquant, pour chaque marque qui
    semble être en conflit, les produits et/ou
    services auxquels elle s'applique

XII. Signature ou sceau officiel de l'Office
     qui émet la notification :

---

ENREGISTREMENT NATIONAL No 26079

LISTE DES SERVICES

Cl. 35: реклама; менеджмент в сфере бизнеса; административная деятельность в сфере бизнеса; офисная служба; ведение автоматизированных баз данных, запись сообщений, поиск информации в компьютерных файлах (для третьих лиц), продвижение товаров (для третьих лиц), сбор информации по компьютерным базам данных, систематизация информации в компьютерных базах данных, услуги снабженческие для третьих лиц (закупка и обеспечение предпринимателей товарами, относящимися к 07 и 09 классам МКТУ), услуги, связанные с оптовой и розничной торговлей товарами, относящимися к 07 и 09 классам МКТУ.
Cl. 36: страхование; финансовая деятельность; кредитно-денежные операции; операции с недвижимостью; сдача в аренду жилых и нежилых помещений.
Cl. 37: строительство; ремонт; установка оборудования; установка и ремонт электроприборов, установка, техническое обслуживание и ремонт компьютеров, теле- и радиотоваров.
Cl. 38: телекоммуникации; обеспечение доступа в Интернет (услуги провайдеров), обеспечение телекоммуникационного подключения к Интернету, передача сообщений, передача сообщений и изображений с использованием компьютера, связь волоконно-оптическая, радиотелефонная, с использованием компьютерных терминалов, спутниковая, телеграфная, телефонная, факсимильная, пейджинговая (с использованием радио, телефона или других средств электронной связи)
Cl. 42: научные и технологические услуги и относящиеся к ним научные исследования и разработки; услуги по промышленному анализу и научным исследованиям; разработка и усовершенствование технического и программного обеспечения компьютеров; юридическая служба; восстановление компьютерных баз данных, инсталляция программного обеспечения, консультации в области компьютерной техники, модернизация программного обеспечения, обслуживание техническое программного обеспечения, проектирование компьютерных систем, прокат компьютеров и средств программного обеспечения, размещение веб-сайтов, размножение компьютерных программ, разработка программного обеспечения, создание и техническое обслуживание веб-сайтов для третьих лиц, составление программ для компьютеров.

ENREGISTREMENT INTERNATIONAL No 791 038

REPRODUCTION DE LA MARQUE



LISTE DES SERVICES

Cl. 41: Agences de modèles pour artistes; location de cours de tennis; bibliothèques de prêt; réservation de places de spectacles; enregistrement sur bandes vidéo; écoles maternelles; éducation physique; services de discothèques; dressage d'animaux; postsynchronisation; jeux; édition de livres; informations à buts éducatifs; informations en matière de loisirs; informations en matière de divertissement; studios cinématographiques; clubs de santé; services de clubs (divertissement ou éducation); boîtes de nuit; cours par correspondance; microfilmage; montage de bandes vidéo; production d'émissions radiophoniques et télévisées; music-hall;

services de jeu proposés en ligne (depuis un réseau informatique); éducation religieuse; enseignement de la gymnastique; formation pratique (démonstration); organisation de bals; organisation d'expositions à vocation culturelle ou pédagogique; services de loisirs; organisation et animation de colloques; organisation et tenue de congrès; organisation et animation de conférences; organisation et conduite d'ateliers de formation; organisation et animation de séminaires; organisation et animation de symposiums; organisation de concours de beauté; organisation de concours (à caractère pédagogique ou récréatif); loteries; services de camps de vacances (divertissement); organisation de spectacles (services d'impresario); orientation professionnelle (conseils pédagogiques ou en matière de formation); pensionnats; parcs d'attractions; interprétation du langage gestuel; divertissements télévisuels; services de bibliothèque itinérante; services de karaoké; exploitation de parcours de golf; exploitation de salles de jeux; exploitation de salles de cinéma; représentation de spectacles; représentations théâtrales; épreuves pédagogiques; production de films sur bandes vidéo; production cinématographique; location d'enregistrements sonores; location d'appareils audio; location de caméras vidéo; location de magnétoscopes; location de bandes vidéo; location de décors de spectacles; location de films cinématographiques; location d'appareils d'éclairage pour des scènes de théâtre ou des studios de télévision; location de postes de radio et de télévision; location d'équipements de plongée sous-marine; location de décors de théâtre; publication assistée par ordinateur; publication en ligne de livres et de revues électroniques; publication de textes (autres que publicitaires); divertissements radiophoniques; services d'artistes de spectacles; jardins zoologiques; services de reporters; organisation de fêtes (divertissement); services de composition musicale; sous-titrage; exploitation de casinos de jeux; services de musées (présentation, expositions); services d'enseignement; services d'orchestres; services de traduction; rédaction de scénarios; services de studio d'enregistrement; services d'imagerie numérique; cirques; production de spectacles.

## ENREGISTREMENT INTERNATIONAL No 905 612

## REPRODUCTION DE LA MARQUE



## LISTE DES PRODUITS ET SERVICES

Cl. 09: appareils d'enregistrement, de transmission ou de reproduction de sons ou d'images; supports d'enregistrement magnétiques, disques acoustiques; distributeurs automatiques et mécanismes pour appareils à prépaiement; équipements de traitement de données et ordinateurs; distributeurs de billets [tickets], chargeurs automatiques de disques, distributeurs automatiques, appareils électriques de surveillance, appareils pour l'enregistrement du son, appareils électriques de communication, cassettes vidéo, écrans vidéo, disquettes, disques phonographiques, disques optiques, cd-rom (unité de disque compact à mémoire morte), disques compacts audiovidéo, aimants décoratifs, mécanismes pour appareils à prépaiement, supports d'enregistrements sonores, supports de données magnétiques, supports de données optiques, programmes de système d'exploitation pour ordinateurs, programmes de jeux électroniques, programmes informatiques (logiciels téléchargeables), publications électroniques téléchargeables, cartes à mémoire ou à microprocesseur, totalisateurs, appareils pour jeux conçus pour être utilisés seulement avec récepteur de télévision, appareils pour le divertissement conçus pour être utilisés seulement avec un récepteur de télévision, périphériques d'ordinateur, avertisseurs contre le vol, puces (circuits intégrés).

Cl. 16: produits imprimés, almanachs, affiches, billets, carton pour affiches, brochures, livrets, bulletins d'information, journaux, gravures, publications, calendriers, éphémérides, presses à cartes de crédit, non électriques, catalogues, livres, dessins, magazines, prospectus, horaires imprimés, reproductions graphiques.

Cl. 21: ustensiles et récipients pour le ménage ou la cuisine (ni en métaux précieux, ni en plaqué); peignes et éponges; brosses (à l'exception des pinceaux); matériaux pour la brosserie; matériel de nettoyage; paille de fer; verre brut ou mi-ouvré (à l'exception du verre de construction); verrerie, porcelaine et faïence non comprises dans d'autres classes, y compris des objets décoratifs, plats, soucoupes, gobelets en porcelaine; bouteilles, bustes en porcelaine, terre cuite ou verre; vases, gaufriers non électriques, seaux à rafraîchir, porte-serviettes, tendeurs de vêtements, carafes, peignes à cheveux, appareils de désodorisation à usage

personnel, récipients pour le ménage ou la cuisine boîtes en verre, récipients calorifuges pour boissons, récipients calorifuges pour les aliments, bocaux, poêles à frire, cure-dents, produits céramiques pour le ménage; objets d'art en porcelaine, terre cuite ou verre; faitouts, ronds de serviettes, tirelires non métalliques, corbeilles à pain (à usage ménager), paniers à usage domestique, percolateurs à café non électriques, moulins à café à main, chopes à bière, couvercles de plats, cruches, glacières portatives non électriques, cuillers à mélanger (ustensiles de cuisine), pelles (accessoires de table), spatules (ustensiles de cuisine), moulins à poivre à main, jattes, boîtes à savon, batteries de cuisine, paniers équipés pour pique-nique (avec vaisselle), trousses de toilette, emporte-pièces, coupe-pâte, arroseurs, bâtonnets pour cocktails, poivriers, gants de ménage, plateaux à usage domestique, plateaux (ustensiles de cuisine), bougies, dessous-de-plat (ustensiles de table), dessous de carafes non en papier et autres que linge de table, porte-cartes de menus, porte-couteaux de table, supports de fers à repasser, vaisselle (hormis couteaux fourchettes et cuillers); articles en porcelaine, terre cuite, vaisselle et articles en cristal (verrerie); ustensiles cosmétiques, ustensiles de toilette, services à épices, appareils pour le démaquillage non électriques, articles de réfrigération d'aliments contenant des fluides d'échange de chaleur à usage domestique, ouvre-bouteilles, bouchons en verre, poudriers, distributeurs de savon, peignes, chausse-pieds, saladiers, sucriers, services (vaisselle), services à café et à thé, filtres à thé, siphons pour eaux gazeuses, mixeurs à usage domestique, presses à fruits à usage domestique, salières, récipients à boire, bouteilles réfrigérantes, gobelets en papier ou en matières plastiques, verres, verres à boire, statues et figurines en porcelaine, terre cuite ou verre; soupières, plateaux de tables, râpes (ustensiles de maison), bouteilles isolantes, urnes, appareils destinés à la projection d'aérosols non à usage médical, cireuses à chaussures non électriques, instruments d'arrosage, ustensiles à usage domestique, ustensiles de cuisine, ustensiles de cuisson, filtres pour le ménage, filtres à café, gourdes, bidons, moules (ustensiles de cuisine), boîtes à pain, théières, bouilloires, tasses, shakers (à main), tire-bouchons, pinceaux pour laver la vaisselle et brosses pour nettoyer les récipients, brosses à dents, brosses à chaussures, boîtes en métal pour la distribution de serviettes en papier, poubelles.

Cl. 28: jeux et jouets; articles de gymnastique et de sport non compris dans d'autres classes, y compris jeux automatiques à prépaiement, gobelets pour jeux, dés, cartes à jouer, queues de billard, craie pour queues de billards, bandes de billard, procédés pour queues de billard, accessoires de jeux, dispositifs à marquer les points pour billards, tables de billard, tables de billard à prépaiement, tables de ping-pong, appareils de jeux électroniques autres que ceux conçus pour être utilisés seulement avec récepteur de télévision, compteurs (disques) de jeux, ballons de jeu.

Cl. 39: organisation de voyages, y compris réservation de places de voyage, réservation de voyages, réservations de transport, livraison de marchandises, organisation de croisières, transport de voyageurs, transport en voiture, location de voitures, accompagnement de voyageurs, emballage de marchandises, services de parcs de stationnement, services de chauffeurs, messagerie (courrier ou marchandises), agences de tourisme (à l'exception de la réservation d'hôtels), dépôt de marchandises, visites touristiques.

Cl. 43: services de restauration (alimentation); hébergement temporaire, agences de réservation (réservations de maisons, hôtels), location de salles de réunion, logements de vacances, réservation d'hôtels, réservation d'hébergements temporaires, hôtels, snack-bars, cafés, cafétérias, restaurants, services de camps de vacances (hébergement), bars, exploitation de terrains de camping, restauration (aliments et boissons).

Cl. 45: services personnels et sociaux rendus par des tiers destinés à satisfaire les besoins des individus, gardes, clubs de rencontres, services de gardes du corps.

# Response Annex 33

ARRANGEMENT DE MADRID
CONCERNANT L'ENREGISTREMENT INTERNATIONAL DES MARQUES
REFUS DE PROTECTION
notifie au Bureau international de l'Organisation Mondiale de la Propriete
Intellectuelle (OMPI) selon l'article 5 de l'Arrangement de Madrid

---

I.Administration qui notifie le refus:

Institut National de la Propriete intellectuelle (INPI)
Rive gauche, la Maison des ministeres, rue 35, batiment 8, entree 13, bloc 4,
010000, Astana, Kazakhstan
Telephone: +7(7172) 50-28-98          Telecopie: +7(7172) 74-06-26

---

II. N° de l'enregistrement international faisant l'objet du refus:     992196     de     17.10.2008

---

III. Nom du titulaire de l'enregistrement international faisant l'objet du refus:

Ritzio Entertainment Group Limited

---

IV. Motif de refus:
1. Marque nationale anterieure: (540) ВУЛКАН; (111) 16505; (151) 17.05.2004; (220) 08.01.2003; (511) cl.
35, 37, 39, 41, 42, 43 - voir p.2; (730) Tovarichtchestvo s ogranitchennoy otvetstvennostyu "VULKAN", d.
51, ul. Zhandossova, g.Almaty, 480035, Kazakhstan (KZ).
2.Marque internationale anterieure: (540) fig; (111) 791038; (151) 03.09.2002 ; (300) 03.04.2002; (511) cl.
41 - voir p.3; (732) "VOLCANO" Gaming Clubs Ltd., ul. Pokrovka, 3/7, str. 1, RU-101000 Moscow  (RU)
3. Marque internationale anterieure: (540) fig. ; (111) 905612; (151) 07.06.2006 ; (511) cl. 16, 21, 28, 38,
45 - voir p.4; (732)  Obshestvo s ogranichennoj otvetstvennostju "Firma "Bars", str. 1, 56/17,
Baumanskaya , RU-105005 Moskva  (RU)
4.La denomination "ИГРОВЫЕ КЛУБЫ" faisant partie de la marque enregistree ne fait pas l' objet de la
protection legale particuliere comme depourvue de caractere distinctif

---

V. Disposition de la loi nationale applicable en la matiere:
Loi sur les marques de produits et de services et les appellations d'origine: pp. 1,  p. 1 art. 7, pp. 3,  p. 1
art. 6

---

VI.       Refus pour la totalite des produits et/ou services;
    [X]  Refus pour les produits et/ou services suivants;
         cl.16, 21, 28, 35, 37,38, 39, 41, 42, 43,45- totalement

---

VII. Recours contre la decision de refus:
- delai de recours: 3 mois a partir de la prononciation de ce refus; pendant le delai precite le refus est
provisoire. Faute de l'appel de reexamen ou recour contre le present refus ou l'appel de la prolongation

(6 mois, pas plus) celui-ci deviendra definitif;
- autorite a laquelle le recours doit ktre adresse:
  INPI, Rive gauche, la Maison des ministeres, rue 35, batiment 8, entree 13, bloc 4,
  010000, Astana, Kazakhstan
  assistance d'un mandataire local est obligatoire;
- taxe legale adequate;

---

VII. Date a laquelle le refus a ete prononce:     19.02.2010

---

IX. Signature et sceau officiel de l'Office qui notifie le refus:

Artykova A.K.
Chef du service des marques

МИНИСТЕРСТВО ЮСТИЦИИ РЕСПУБЛИКИ КАЗАХСТАН
КОМИТЕТ ПО ПРАВАМ ИНТЕЛЛЕКТУАЛЬНОЙ СОБСТВЕННОСТИ
РЕСПУБЛИКАНСКОЕ ГОСУДАРСТВЕННОЕ КАЗЕННОЕ ПРЕДПРИЯТИЕ
«НАЦИОНАЛЬНЫЙ ИНСТИТУТ ИНТЕЛЛЕКТУАЛЬНОЙ СОБСТВЕННОСТИ» (НИИС)
Левобережье, Дом Министерств, блок В, пятно 5, г.Астана, Республика Казахстан, 010000,
тел (3172) 50-28-98, факс (3172) 74-06-26

## ВЫПИСКА ИЗ ГОСУДАРСТВЕННОГО РЕЕСТРА ТОВАРНЫХ ЗНАКОВ РЕСПУБЛИКИ КАЗАХСТАН

| | | |
|---|---|---|
| (111) | свидетельство | 16505 |
| (151) | дата регистрации РК | 17.05.2004 |
| (181) | дата истечения срока действия регистрации | 08.01.2013 |
| (210) | № заявки | 22230 |
| (220) | дата подачи заявки | 08.01.2003 |
| (540) | знак | ВУЛКАН |
| (730) | владелец | "ВУЛКАН" жауапкершілігі шектеулі серіктестігі (KZ)Товарищество с ограниченной ответственностью "ВУЛКАН" (KZ)480035, г.Алматы, ул. Жандосова, д. 51. |
| (511) | классы МКТУ | 6, 17, 19, 35, 37, 39, 41, 42, 43, 44 |

35 - аукционная продажа; деловые и коммерческие операции, информация
деловая, статистическая; консультационные услуги, изучение рынка,
маркетинга, организация выставок для коммерческих и рекламных целей;
реализация товаров, оптовая и розничная торговля, реклама, сделки,
экспортно-импортные операции;
37 - строительство и ремонт зданий; проверка строительных проектов;
ремонт электропроводки, мебели, оборудования, инструментов;
39 - доставка товаров; упаковка и хранение товаров; организация
путешествий, перевозка и сопровождение путешественников, перевозки
автомобильным, водным, железнодорожным транспортом, туристические
экскурсии, экспедирование грузов;
41 - организация и проведение семинаров, симпозиумов;
42 - использование запатентованных изобретений; промышленные и научные
исследования и разработки; проектно - конструкторские разработки;
43 - бары, кафе, кафетерии, рестораны, гостиницы;

OMPI - ROMARIN - Détails de l'enregistrement international                                    Стр. 1 из 4

791038

| 151 | Date de l'enregistrement |
| | 03.09.2002 |
| 180 | Date prévue de l'expiration de l'enregistrement/du renouvellement |
| | 03.09.2012 |
| 270 | Langue de la demande |
| | Anglais |
| | État actuel |
| 732 | Nom et adresse du titulaire de l'enregistrement |
| | "VOLCANO" Gaming Clubs Ltd. |
| | ul. Pokrovka, 3/7, str. 1 |
| | RU-101000 Moscow  (RU) |
| 812 | État contractant ou organisation contractante sur le territoire duquel ou de laquelle le titulaire a un établissement industriel ou commercial effectif et sérieux |
| | RU |
| 740 | Nom et adresse du mandataire |
| | Joint-Stock company |
| | "Patentny Poverenny" |
| | Galina N. Andruschak |
| | ul Aviamotornaya, d. 53 |
| | RU-111250 Moskwa  (RU) |
| 770 | Nom et adresse du titulaire précédent |
| | "FIRM "BARS" LTD |
| | ul. Baumanskaya, 56/17, str. 1 |
| | Moskva  (RU) |
| 540 | Marque |



| 531 | Classification internationale des éléments figuratifs des marques (classification de Vienne) - VCL(4) |
| | 01.01.05 ; 25.01.19 ; 28.05.00 ; 29.01.15 |
| 591 | Informations concernant les couleurs revendiquées |
| | Blue, dark blue, black, red, green, yellow, violet. |
| | Blue, dark blue - background; black - lightning; yellow, green, violet - stars; red - word "VULKAN"; black, blue dark blue - letters' shadow. |
| | Bleu, bleu foncé, noir, rouge, vert, jaune, violet. |
| | L'arrière-plan est en bleu et bleu foncé; l'éclair est en noir; les étoiles sont en jaune, vert et violet, le mot VU_KAN´ est en rouge; l'entourage des lettres est en noir, bleu et bleu foncé. |
| 561 | Translittération de la marque |
| | VULKAN |
| 566 | Traduction de la marque ou de mots contenus dans la marque |
| | VOLCANO |

VOLCAN

511  **Classification internationale des produits et des services aux fins de l'enregistrement des marques (classification de Nice) - NCL(8)**

41  Modeling of artists; rental of tennis courts; lending libraries, booking of seats for shows; videotaping; nursery schools, physical education, discotheque services; animal training, dubbing, gaming; publication of books; educational guidance; recreational information; entertainment information; movie studios; health club services; club services (entertainment or education); night clubs, correspondence courses; microfilming; videotape editing; production of radio and television programmes; music-halls; game services provided on-line (from a computer network), religious education; gymnastic instruction, practical training (demonstration); organisation of balls, organisation of exhibitions for cultural or educational purposes; providing recreational facilities; arranging and conducting of colloquiums; arranging and conducting of congresses; arranging and conducting conferences, arranging and conducting of workshops (training); arranging and conducting of seminars; arranging and conducting of symposiums; arranging of beauty contests; organisation of competitions (education or entertainment); lotteries; holiday camp services (entertainment); organisation of shows (impresario services); vocational guidance (education or training advice); boarding schools; amusement park; sign language interpretation; television entertainment; bookmobile services; providing karaoke services; providing golf facilities, providing amusement arcade services; providing cinema facilities; presentation of live performances; theatre productions, educational examination; videotape film production; film production; rental of sound recordings. rental of audio equipment; rental of camcorders; rental of video cassette recorders; rental of videotapes  rental of show scenery; rental of cine-films; rental of lighting apparatus for theatrical sets or television studios; rental of radio and television sets; rental of skin diving equipment; rental of stage scenery; electronic desktop publishing, publication of electronic books and journals online; publication of texts (other than publicity texts), radio entertainment; entertainer services; zoological gardens; news reporters services; party planning (entertainment); music composition services; subtitling; providing of casino facilities (gambling); providing museum facilities (presentation, exhibitions); educational services; orchestra services; translation; scriptwriting services; recording studio services; digital imaging services; circuses; production of shows.

Agences de modèles pour artistes; location de cours de tennis; bibliothèques de prêt, réservation de places de spectacles; enregistrement sur bandes vidéo; écoles maternelles; éducation physique; services de discothèques; dressage d'animaux; postsynchronisation; jeux; edition de livres  informations à buts éducatifs; informations en matière de loisirs; informations en matière de divertissement, studios cinématographiques; clubs de santé; services de clubs (divertissement ou éducation), boîtes de nuit; cours par correspondance; microfilmage; montage de bandes vidéo; production d'émissions radiophoniques et télévisées; music-hall; services de jeu proposés en ligne (depuis un réseau informatique); éducation religieuse  enseignement de la gymnastique; formation pratique (démonstration); organisation de bals; organisation d'expositions à vocation culturelle ou pédagogique; services de loisirs; organisation et animation de colloques; organisation et tenue de congrès organisation et animation de conférences; organisation et conduite d'ateliers de formation; organisation et animation de séminaires; organisation et animation de symposiums; organisation de concours de beauté; organisation de concours (à caractère pédagogique ou récréatif); loteries; services de camps de vacances (divertissement); organisation de spectacles (services d'impresario); orientation professionnelle (conseils pédagogiques ou en matière de formation); pensionnats; parcs d'attractions; interprétation du langage gestuel  divertissements télévisuels; services de bibliothèque itinérante, services de karaoke; exploitation de parcours de golf; exploitation de salles de jeux; exploitation de salles de cinéma; représentation de spectacles; représentations théâtrales, épreuves pédagogiques; production de films sur bandes vidéo  production cinématographique; location d'enregistrements sonores; location d'appareils audio; location de caméras vidéo, location de magnétoscopes; location de bandes vidéo; location de décors de spectacles; location de films cinématographiques; location d'appareils d'éclairage pour des scènes de théâtre ou des studios de télévision, location de postes de radio et de télévision; location d'équipements de plongée sous-marine; location de décors de théâtre; publication assistée par ordinateur; publication en ligne de livres et de revues électroniques; publication de textes (autres que publicitaires); divertissements radiophoniques; services d'artistes de spectacles; jardins zoologiques, services de reporters, organisation de fêtes (divertissement), services de composition musicale; sous-titrage; exploitation de casinos de jeux; services de musées (présentation, expositions), services d'enseignement; services d'orchestres; services de traduction, rédaction de scénarios; services de studio d'enregistrement; services d'imagerie numérique; cirques; production de spectacles

822  **Enregistrement de base**

RU, 03.07.2002, 216203

300  **Données relatives à la priorité selon la Convention de Paris et autres données relatives à l'enregistrement de la marque dans le pays d'origine**

RU, 03.04.2002, 2002707649

831  **Désignation(s) selon l'Arrangement de Madrid**

KZ - TJ

832  **Désignation(s) selon le Protocole de Madrid**

EE - GE - LT - TM - UZ

834  **Désignation(s) selon le Protocole de Madrid en vertu de l'article 9sexies**

AM - AZ - BY - KG - LV - MD - UA

⊟  **Enregistrement**

905612

| | | |
|---|---|---|
| 151 | Date de l'enregistrement | |
| | 07.06.2006 | |
| 180 | Date prévue de l'expiration de l'enregistrement/du renouvellement | |
| | 07.06.2016 | |
| 270 | Langue de la demande | |
| | Anglais | |

État actuel

732  Nom et adresse du titulaire de l'enregistrement
     Obshestvo s ogranichennoj
     otvetstvennostju "Firma "Bars"
     str. 1, 56/17, Baumanskaya
     RU-105005 Moskva  (RU)

812  État contractant ou organisation contractante sur le territoire duquel ou de laquelle le titulaire a un
     établissement industriel ou commercial effectif et sérieux
     RU

740  Nom et adresse du mandataire
     Obshestvo s ogranichennoj
     otvetstvennostju "Intellect Patent"
     28 Post Box        . ...  ..;
     RU-125009 Moskva  (RU)

540  Marque



531  Classification internationale des éléments figuratifs des marques (classification de Vienne) - VCL(5)
     01.01.01 ; 25.02.07 ; 26.07.09 ; 26.07.11 ; 28.05.00 ; 29.01.01 ; 29.01.04

591  Informations concernant les couleurs revendiquées
     White, yellow, orange, red, light blue, blue and dark blue.
     Blanc, jaune, orange, rouge, bleu clair, bleu et bleu foncé.
     Blanco, amarillo, anaranjado, rojo, azul claro, azul y azul oscuro.

561  Translittération de la marque
     Vulkan

566  Traduction de la marque ou des mots contenus dans la marque
     Volcano.

511  Classification internationale des produits et des services aux fins de l'enregistrement des marques
     (classification de Nice) - NCL(8)

09   Apparatus for recording, transmission or reproduction of sound or images; magnetic data carriers, recording
     discs, automatic vending machines and mechanisms for coin-operated apparatus; data processing equipment
     and computers; ticket dispensers, musical juke boxes, automatic distribution machines, electric monitoring
     apparatus, sound recording apparatus, electric apparatus for communication, video cassettes, video screens,
     floppy disks, phonograph records, optical disks, read-only memory compact disks, audio-video compact disks,
     decorative magnets, mechanisms for coin-operated apparatus, sound recording carriers, magnetic data media,
     optical data media, recorded computer operating programs, computer game programs, computer programs
     (downloadable software), electronic publications (downloadable), smart cards, totalizators, apparatus for games
     adapted for use with television receivers only, amusement apparatus adapted for use with television receivers

only, computer peripheral devices, anti-theft warning apparatus, chips (integrated circuits)

Appareils d'enregistrement, de transmission ou de reproduction de sons ou d'images; supports d'enregistrement magnétiques, disques acoustiques, distributeurs automatiques et mécanismes pour appareils à prépaiement équipements de traitement de données et ordinateurs; distributeurs de billets [tickets], chargeurs automatiques de disques, distributeurs automatiques, appareils électriques de surveillance, appareils pour l'enregistrement de son, appareils électriques de communication, cassettes vidéo, écrans vidéo, disquettes, disques phonographiques, disques optiques, cd-rom (unité de disque compact à mémoire morte), disques compacts audiovidéo, aimants décoratifs, mécanismes pour appareils à prépaiement, supports d'enregistrements sonores, supports de données magnétiques, supports de données optiques, programmes de système d'exploitation pour ordinateurs, programmes de jeux électroniques, programmes informatiques (logiciels téléchargeables), publications électroniques téléchargeables, cartes à mémoire ou à microprocesseur, totalisateurs, appareils pour jeux conçus pour être utilisés seulement avec récepteur de télévision, appareils pour le divertissement conçus pour être utilisés seulement avec un récepteur de télévision, périphériques d'ordinateur, avertisseurs contre le vol, puces (circuits intégrés).

Aparatos para la grabación, la transmisión y la reproducción de sonido o imágenes; soportes de grabación magnéticos, discos acústicos, distribuidores automáticos y mecanismos para aparatos de previo pago; equipos y ordenadores para el procesamiento de datos; distribuidores de billetes, máquinas de discos de previo pago, máquinas de distribución automática, aparatos eléctricos de vigilancia, aparatos de grabación de sonido, aparatos eléctricos de comunicación, casetes de vídeo, pantallas de vídeo, discos flexibles, discos fonográficos, discos ópticos, discos compactos con memoria de sólo lectura, discos compactos audio-vídeo, imanes decorativos mecanismos para aparatos de previo pago, soportes para grabaciones sonoras, soportes de datos magnéticos, soportes de datos ópticos, programas de s stemas operativos grabados para ordenadores, programas de juegos informáticos, programas informáticos (software descargables), publicaciones electrónicas (descargables), tarjetas con circuitos integrados, totalizadores, aparatos para juegos concebidos para ser utilizados únicamente con televisores, aparatos recreativos diseñados para ser utilizados únicamente con televisores, periféricos informáticos, alarmas antirrobo, chips (circuitos integrados).

16  Printed matter, almanacs, affiches, posters, tickets, blanks, pamphlets, booklets, newsletters, newspapers, engravings, printed publications, calendars, tear-off calendars, non-electric credit card imprinters, catalogues, books, graphic prints, magazines (periodicals), prospectuses, printed timetables, graphic reproductions.

Produits imprimés, almanachs, affiches, billets, carton pour affiches, brochures, livrets, bulletins d'information, journaux, gravures, publications, calendriers, éphémérides, presses à cartes de crédit, non électriques, catalogues, livres, dessins, magazines, prospectus, horaires imprimés, reproductions graphiques.

Material impreso, almanaques, carteles, pósters, tickets, láminas, panfletos, folletos, circulares, periódicos, grabados, publicaciones impresas calendarios calendarios de taco, prensas no eléctricas para tarjetas de crédito, catálogos, libros, dibujos, revistas (publicaciones periódicas), prospectos, horarios impresos, reproducciones gráficas.

21  Household or kitchen utensils and containers (not of precious metal or coated therewith); combs and sponges; brushes (except paint brushes); brush-making materials; articles for cleaning purposes; steelwool; unworked or semi-worked glass (except glass used in building); glassware, porcelain and earthenware not included in other classes; including ornaments, dishes, saucers, goblets made of porcelain; bottles, busts of china, terra-cotta or glass; vases, non-electric waffle irons, coolers, napkin holders, clothing stretchers, decanters, combs for the hair, deodorising apparatus for personal use, containers for household or kitchen use boxes of glass, heat insulated containers for beverages, thermally insulated containers for food, glass jars, frying pans, toothpicks, ceramics for household purposes; works of art, of porcelain terra-cotta or glass' stew-pans, napkin rings, piggy banks, not of metal, broad baskets (domestic), baskets for domestic use, non-electric coffee percolators, hand-operated coffee grinders, beer mugs, covers for dishes, jugs, non-electric portable coldboxes, mixing spoons (kitchen utensils), scoops (tableware), spatulas (kitchen utensils), hand-operated pepper mills, basins, soap boxes, cooking pot sets, fitted picnic baskets (including dishes), toilet cases, cookie (biscuit) cutters, pastry cutters, sprinklers, cocktail stirrers, pepper pots, gloves for household purposes, trays for domestic purposes, trays for kitchen utensils), candle sticks, trivets (table utensils), coasters, not of paper and other than table linen, menu card holders, knife rests for table, flat-iron stands tableware (other than knives, forks and spoons); porcelain ware, terra-cotta ware, crockery and crystal (glassware); cosmetic utensils, toilet utensils, spice sets, non-electric appliances for removing make-up, food cooling devices containing heat exchange fluids, for household purposes bottle openers, glass caps, powder compacts, soap dispensers, combs, shoe horns, salad bowls, sugar bowls, services (tableware), coffee services and tea services, tea strainers, siphons for carbonated water, blenders for household purposes, fruit presses for household purposes, salt cellars, drinking vessels, refrigerating bottles, cups of paper or plastic, glasses, drinking glasses, status and figurines of porcelain, terra-cotta or glass; soup bowls, table plates, grater (household utensils), insulating flasks, urns, aerosol dispensers, not for medical purposes, wax-polishing appliances, non-electric, for shoes, sprinkling devices, utensils for household purposes, kitchen utensils, cooking utensils, strainers for household purposes, coffee filters, flasks, bottle gourds, molds (kitchen utensils), bread bins, teapots, kettles, cups, mixers, manual (cocktail shakers), corkscrews, dishwashing brushes and brushes for cleaning tanks and containers, toothbrushes, brushes for footwear, boxes of metal, for dispensing paper towels, dustbins.

Ustensiles et récipients pour le ménage ou la cuisine (ni en métaux précieux, ni en plaqué); peignes et éponges brosses (à l'exception des pinceaux); matériaux pour la brosserie; matériel de nettoyage; paille de fer; verre brut ou mi-ouvré (à l'exception du verre de construction); verrerie, porcelaine et faïence non comprises dans d'autres classes, y compris des objets décoratifs, plats, soucoupes, gobelets en porcelaine; bouteilles, bustes en porcelaine, terre cuite ou verre; vases, gaufriers non électriques, seaux à rafraîchir, porte-serviettes, tendeurs de vêtements, carafes, peignes à cheveux, appareils de désodorisation à usage personnel, récipients pour le

OMPI - ROMARIN - Détails de l'enregistrement international                                                   Стр. 3 из 5

ménage ou la cuisine boîtes en verre, récipients calorifuges pour boissons récipients calorifuges pour les aliments, bocaux, poêles à frire, cure-dents, produits céramiques pour le ménage; objets d'art en porcelaine, terre cuite ou verre; faitouts, ronds de serviettes, tirelires non métalliques, corbeilles à pain (à usage ménager), paniers à usage domestique, percolateurs à café non électriques, moulins à café à main, chopes à bière, couvercles de plats, cruches, glacières portatives non électriques, cuillers à mélanger (ustensiles de cuisine) pelles (accessoires de table), spatules (ustensiles de cuisine), moulins à poivre à main, jattes, boîtes à savon, batteries de cuisine, paniers équipés pour pique-nique (avec vaisselle), trousses de toilette, emporte-pièces, coupe-pâte arroseurs, bâtonnets pour cocktails, poivriers, gants de ménage, plateaux à usage domestique, plateaux (ustensiles de cuisine), bougies, dessous-de-plat (ustensiles de table), dessous de carafes non en papier et autres que linge de table, porte-cartes de menus, porte-couteaux de table, supports de fers à repasser, vaisselle (hormis couteaux fourchettes et cuillers); articles en porcelaine, terre cuite, vaisselle et articles en cristal (verrerie); ustensiles cosmétiques, ustensiles de toilette, services à épices, appareils pour le démaquillage non électriques, articles de réfrigération d'aliments contenant des fluides d'échange de chaleur à usage domestique, ouvre-bouteilles, bouchons en verre, poudriers, distributeurs de savon, peignes, chausse-pieds, saladiers, sucriers, services (vaisselle), services à café et à thé, filtres à thé, siphons pour eaux gazeuses, mixeurs à usage domestique, presses à fruits à usage domestique, salières, récipients à boire, bouteilles réfrigérantes, gobelets en papier ou en matières plastiques, verres, verres à boire, statues et figurines en porcelaine, terre cuite ou verre; écuelles, plateaux de tables, râpes (ustensiles de maison), bouteilles isolantes, urnes, appareils destinés à la projection d'aérosols non à usage médical, cireuses à chaussures non électriques, instruments d'arrosage, ustensiles à usage domestique, ustensiles de cuisine, ustensiles de cuisson, filtres pour le ménage, filtres à café, gourdes, bidons, moules (ustensiles de cuisine), boîtes à pain, théières, bouilloires, tasses, shakers (a main), tire-bouchons, pinceaux pour laver la vaisselle et brosses pour nettoyer les récipients, brosses à dents, brosses à chaussures, boîtes en métal pour la distribution de serviettes en papier, poubelles.

Utensilios y recipientes para la casa y la cocina (que no sean de metales preciosos ni chapados); peines y esponjas' cepillos (excepto pinceles); materiales para la fabricación de cepillos; material de limpieza, viruta de hierro; vidrio en bruto o semielaborado (excepto vidrio de construcción), cristalería, porcelana y loza no comprendidas en otras clases; incluidos adornos, fuentes, platillos, copas de porcelana; botellas, bustos de porcelana, de barro o de cristal; jarrones, barquilleros no eléctricos, cubileras, servilleteros, tenedores de vestidos, decantadores, peines para el cabello, aparatos de desodorización para uso personal, recipientes para uso culinario o doméstico, cajas de cristal, recipientes caloríferos para bebidas, recipientes termoaislantes para alimentos bocales, sartenes, mondadientes, productos de cerámica para el hogar, objetos de arte de porcelana, de barro o de cristal; cacerolas, servilleteros de oro, huchas no metálicas, cestas para el pan (uso doméstico), cestas para uso doméstico, cafeteras con filtro de café no eléctricas, molinillos de café manuales, jarras para cerveza, tapaderas de bandejas, jarras, neveras portátiles no eléctricas, cucharas para mezclar (utensilios de cocina), palas (vajilla), espátulas (utensilios de cocina) molinillos de pimienta manuales, palanganas, jaboneras, baterías de cocina, cestas para picnic (con vajilla incluida), neceseres de tocador, moldes para cortar galletas, cortapastas, regaderas, agitadores para cocteles, pimenteros, guantes para uso doméstico, bandejas para uso doméstico, bandejas (utensilios de cocina), candelabros, reposaplatos (utensilios de mesa), posavasos, que no sean de papel ni ropa de mesa, portatarjetas de menú, portacuchillos para la mesa, soportes de planchas de planchar, vajilla (excepto cuchillos, tenedores y cucharas); artículos de porcelana, artículos de barro, vajilla y artículos de cristal; utensilios cosméticos, utensilios de tocador, especieros, aparatos para el desmaquillaje no eléctricos, dispositivos para enfriar alimentos que contienen fluidos para el intercambio de calor, para uso doméstico, abrebotellas, tapones de cristal, polveras, distribuidores de jabón, peines, calzadores, ensaladeras, azucareros, servicios (vajilla), juegos de café y té, coladores de té, sifones para aguas gaseosas, licuadoras para uso doméstico, exprimidores de frutas para uso doméstico, saleros, recipientes para beber botellas refrigerantes, tazas de papel o de plástico, vasos, vasos para beber, estatuas y figuritas de porcelana, barro o vidrio; soperas, platos, ralladores (utensilios domésticos) botellas térmicas, urnas, aparatos destinados a la proyección de aerosoles que no sean para uso médico, enceradoras, no eléctricas, para zapatos, instrumentos de riego, utensilios para uso doméstico, utensilios de cocina, utensilios para cocinar, coladores para uso doméstico, filtros de café, frascos cantimploras, moldes (utensilios de cocina), paneras, teteras, hervidores, tazas, cocteleras, sacacorchos, cepillos para lavar la vajilla y cepillos para limpiar depósitos y recipientes, cepillos de dientes, cepillos para el calzado, cajas metálicas, para la distribución de toallitas de papel, papeleras.

28   Games and playthings; gymnastic and sporting articles not included in other classes; including automatic and coin-operated amusement machines, cups for dice, dice, playing cards, billiard cues, chalk for billiard cues billiard table cushions, billiard cue tips, accessories for games, billiard markers, billiard tables, coin-operated billiard tables, tables for table tennis, apparatus for electronic games other than those adapted for use with television receivers only  counters (discs) for games, play balloons, billiard tables.

Jeux et jouets; articles de gymnastique et de sport non compris dans d'autres classes, y compris jeux automatiques à prépaiement, gobelets pour jeux, dés, cartes à jouer, queues de billard, craie pour queues de billards, bandes de billard, procédés pour queues de billard, accessoires de jeux, dispositifs à marquer les points pour billards, tables de billard, tables de billard à prépaiement, tables de ping-pong, appareils de jeux électroniques autres que ceux conçus pour être utilisés seulement avec récepteur de télévision, compteurs (disques) de jeux, ballons de jeu.

Juegos, juguetes; artículos de gimnasia y de deporte no comprendidos en otras clases; incluidas máquinas recreativas automáticas y de monedas, cubiletes para dados, dados, naipes, tacos de billar, tiza para tacos de billar, bandas de billar, suelas para tacos de billar, accesorios para juegos, marcadores de billar, mesas de billar, mesas de billar accionadas con monedas, mesas de ping-pong, aparatos de juegos electrónicos que no sean los concebidos para ser utilizados únicamente con un receptor de televisión, fichas (discos) para juegos, balones de juego, mesas de billar.

35   Office functions, data search in computer files (for other), office machines and equipment rental, trade equipment

OMPI - ROMARIN - Détails de l'enregistrement international                     Стр. 4 из 9

rental, compilation of information into computer databases, systematization of information into computer databases, public relations.

Travaux de bureau, recherche de données dans des fichiers informatiques (pour le compte de tiers), location de machines et d'appareils de bureau, location d'équipements commerciaux, compilation d'informations dans des bases de données informatiques, systématisation d'informations dans des bases de données informatiques, relations publiques.

Trabajos de oficina, búsqueda de datos en archivos informáticos (para terceros), alquiler de máquinas y aparatos de oficina, alquiler de equipos comerciales, compilación de información en bases de datos informáticas, sistematización de la información en bases de datos informáticas, servicios de relaciones públicas.

38  Telecommunications; including electronic bulletin board services (telecommunication services), providing user access to a global computer network (service providers), providing telecommunications connections to a global computer network, communications by fiber (fibre) optic networks.

Télécommunications, notamment services de tableaux d'affichage électroniques (services de télécommunications), fourniture d'accès aux utilisateurs à un réseau mondial d'ordinateurs (prestataires de services), mise à disposition de connexions de télécommunication pour l'accès à un réseau mondial d'ordinateurs, communications par le biais de réseaux de fibres optiques.

Telecomunicaciones; incluidos servicios de anuncios electrónicos (servicios de telecomunicación), facilitación de acceso de usuarios a una red informática mundial (proveedores de servicios), facilitación de conexiones de telecomunicación a una red informática mundial, comunicaciones por redes de fibras ópticas.

39  Arranging of tours, including booking of seats for travel, travel reservation, transport reservation, delivery of goods, arranging of cruises, transport of travellers, car transport, car rental, escorting of travellers, wrapping of goods, car parking, chauffeur services, courrier services (messages or merchandise), tourist offices (except for hotel reservation), storage of goods, sightseeing.

Organisation de voyages, y compris réservation de places de voyage, réservation de voyages, réservations de transport, livraison de marchandises, organisation de croisières, transport de voyageurs, transport en voiture, location de voitures, accompagnement de voyageurs, emballage de marchandises, services de parcs de stationnement, services de chauffeurs, messagerie (courrier ou marchandises), agences de tourisme (à l'exception de la réservation d'hôtels), dépôt de marchandises, visites touristiques.

Servicios de organización de viajes, incluidas reservas de plazas de viajes, reservas de viajes, reservas para el transporte, reparto de mercancías, organización de cruceros, transporte de viajeros, transporte en automóvil, alquiler de automóviles, acompañamiento de viajeros, empaquetado de mercancías, servicios de aparcamiento, servicios de conductores, servicios de correo (mensajes o mercancías), agencias de turismo (excepto para reservas de hoteles), almacenamiento de mercancías, visitas turísticas.

41  Education; providing of training; entertainment; cultural activities; billiard saloon, booking of seats for shows, videotaping, discotheque services, gaming, publication of books, recreation information, entertainment information, club services (entertainment or education), night clubs, game services provided on-line (from a computer network), electronic publication services provided on-line (not downloaded), practical training (demonstration), organization of exhibitions for cultural and educational purposes, providing recreation facilities, arranging and conducting of workshops (training), organization of competitions (education or entertainment), operating lotteries, holiday camp services (entertainment), amusement parks, providing amusement arcade services, providing cinema facilities, videotape film production and film production, rental of sound recordings, rental of audio equipment, rental of video cassette recorders, rental of automatic amusement machines, rental of cine-films, electronic desktop publishing, publication of electronic books and journals on-line, publication of texts (other than publicity texts), entertainer services, party planning (entertainment), providing casino facilities (gambling), translation, photography, production of shows.

Enseignement; formations; divertissement; activités culturelles; salles de billard, réservation de places de spectacles, enregistrement sur bandes vidéo, services de discothèques, jeux d'argent, publication de livres, informations en matière de loisirs, informations en matière de divertissement, services de clubs (divertissement ou éducation), boîtes de nuit, services de jeu en ligne (sur réseau informatique), services de publications électroniques fournis en ligne (non téléchargeables), formation pratique (démonstrations), organisation d'expositions à vocation culturelle et pédagogique, services de loisirs, organisation et conduite d'ateliers de formation, organisation de concours (éducation ou divertissement), organisation de loteries, services de camps de vacances (divertissement), parcs d'attractions, exploitation de salles de jeux, exploitation de salles de cinéma, production de films cinématographiques et de bandes vidéo, location d'enregistrements sonores, location d'appareils audio, location de magnétoscopes, location de jeux automatiques à prépaiement, location de films cinématographiques, publication assistée par ordinateur, publication en ligne de livres et revues électroniques, publication de textes (autres que textes publicitaires), services d'artistes de spectacles, planification de réceptions (divertissement), services de casino, services de traduction, photographie, production de spectacles.

Educación; formación; esparcimiento; actividades culturales; salas de billar, reserva de entradas para espectáculos, grabación en cintas de vídeo, servicios de discotecas, juegos de azar, publicación de libros, información sobre actividades recreativas, información sobre esparcimiento, servicios de clubes (educación y esparcimiento), clubes nocturnos, servicios de juegos en línea (a través de una red informática), servicios de publicación electrónica prestados en línea (no descargados), formación práctica (demostración), organización de exposiciones con fines culturales y educativos, facilitación de instalaciones recreativas, organización y dirección de talleres de formación, organización de concursos (educación o esparcimiento), organización de loterías servicios de campamentos de vacaciones (esparcimiento), parques de atracciones, explotación de salas de juegos, explotación de salas de cine, producción de películas y cintas de vídeo, alquiler de grabaciones sonoras, alquiler de equipos de audio, alquiler de vídeos, alquiler de máquinas recreativas automáticas, alquiler de

OMPI - ROMARIN - Détails de l'enregistrement international

películas cinematográficas, autoedición electrónica, publicación de libros y diarios electrónicos en línea, publicación de textos (que no sean textos publicitarios), servicios de artistas de espectáculos, planificación de recepciones (entretenimiento), servicios de casino (juegos), traducción, fotografía, producción de espectáculos.

42 Design and development of computer hardware and software; computer systems analysis, installation of computer software, updating of computer software, maintenance of computer software, computer system design, computer rental, rental of computer software, hosting computer sites (web sites), creating and maintaining web sites for others.

Conception et développement d'ordinateurs et de logiciels; analyse de systèmes informatiques, installation de logiciels, mise à jour de logiciels, maintenance de logiciels, conception de systèmes informatiques, location d'ordinateurs, location de logiciels, hébergement de sites informatiques (sites Web), création et maintenance de sites Web pour des tiers.

Diseño y desarrollo de hardware y software; análisis de sistemas informáticos, instalación de software, actualización de software, mantenimiento de software, diseño de sistemas informáticos, alquiler de ordenadores alquiler de software, superservidor (sitios Web), creación y mantenimiento de sitios Web para terceros.

43 Services for providing food and drink; temporary accommodation, agencies for reservations (hotels, house bookings), rental of meeting rooms, tourist homes, hotel reservations, temporary accomodation reservations, hotels, snack-bars, cafes, cafeterias, restaurants, holiday camp services (lodging), bar services, providing campground facilities, food and drink catering.

Services de restauration (alimentation); hébergement temporaire, agences de réservation (réservations de maisons, hôtels), location de salles de réunion, logements de vacances, réservation d'hôtels, réservation d'hébergements temporaires, hôtels, snack-bars, cafés, cafétérias, restaurants, services de camps de vacances (hébergement), bars, exploitation de terrains de camping, restauration (aliments et boissons).

Servicios de restauración (alimentación); hospedaje temporal, agencias de reservas (reservas de hoteles y casas), alquiler de salas de reunión, casas de vacaciones, reservas de hoteles, reservas de alojamiento temporal, hoteles, restaurantes de servicio rápido, cafés, cafeterias, restaurantes, servicios de campamentos de vacaciones (hospedaje), servicios de bar, facilitación de terrenos de camping, servicios de comidas preparadas.

45 Personal and social services rendered by others to meet the needs of individuals, guards, dating services, personal body guarding.

Services personnels et sociaux rendus par des tiers destinés à satisfaire les besoins des individus, gardes, clubs de rencontres, services de gardes du corps

Servicios personales y sociales prestados por terceros destinados a satisfacer necesidades individuales, servicios de guardias, servicios de encuentros, servicios de escolta personal.

822  Enregistrement de base

RU, 01.06.2006, 307722

300  Données relatives à la priorité selon la Convention de Paris et autres données relatives à l'enregistrement de la marque dans le pays d'origine

RU, 16.12.2005, 2005732554

831  Désignation(s) selon l'Arrangement de Madrid

KZ - TJ

832  Désignation(s) selon le Protocole de Madrid

EE - GE - LT - TM - UZ

834  Désignation(s) selon le Protocole de Madrid en vertu de l'article 9sexies

AM - AZ - BY - CY - CZ - DE - ES - KG - LV - MD - PL - RO - UA

⊟  Enregistrement

450  Date et numéro de publication

2006/48 Gaz, 04.01.2007

831  Désignation(s) selon l'Arrangement de Madrid

AM - AZ - BY - CY - CZ - DE - ES - KG - KZ - LV - MD - PL - RO - TJ - UA - UZ

832  Désignation(s) selon le Protocole de Madrid

EE - GE - LT - TM

580  Date de l'inscription (date de notification à partir de laquelle commence à courir le délai pour émettre le refus de protection)

14.12.2006

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de l'application de la règle 5)

AZ

Le délai de refus est expiré et aucune notification de refus provisoire n'a été inscrite (sous réserve de

# Response Annex 34

**ARRANGEMENT DE MADRID**

**CONCERNANT L'ENREGISTREMENT INTERNATIONAL DES MARQUE**

**ET PROTOCOLE RELATIF À CET ARRANGEMENT**

**REFUS PROVISOIRE DE LA PROTECTION**

notifié au Bureau International de l'Organisation Mondiale de la Propriété Intellectuelle (OMPI)

selon l'article 5 de l'Arrangement de Madrid  et du Protocole de Madrid

| | |
|---|---|
| I. Office qui notifie le refus:<br>**Institut d'Ukraine de la Propriété Industrielle**<br>**1, vul. Glazunova**<br>**01601 Kyiv-42**<br>**Ukraine** | |
| II.No de l'enregistrement international faisant l'objet du refus:  **992 196** | |
| III. Nom  et adresse  du titulaire de l'enregistrement international faisant l'objet du refus:<br>**Ritzio Entertainment Group Limited**<br>**Diagorou 4, Kermia Building,**<br>**Office 601**<br>**CY-1097 Nicosia  (CY)** | |

IV.Motifs du refus : **Le signe  «ВУЛКАН , fig.  «  ne peut pas être  pris en tant que marque par rapport à la partie des produits et des services , parce que les signes semblables  ont  été  pris  antérieurement en Ukraine aux noms de  Obshestvo s ogranichennoj  otvetstvennostju "Firma "Bars"  str. 1, 56/17, Baumanskaya  RU-105005 Moskva; RU – enreg. international 905 612 de 07.06.2006 (PR :RU, 16.12.2005, 2005732554) ;"VOLCANO" Gaming Clubs Ltd.  ul. Pokrovka, 3/7, str. 1  RU-101000 Moscow; RU – enreg. international 791 038 de 03.09.2002 (PR :RU, 03.04.2002, 2002707649) ; Tovaristvo s obmegenoyou vidpovidalnistyou « Sinnis, Ltd. » ; vul. Khreschatik 195, Cherkasi 18002 (UA) – certificat No. 56105 de 15.11.2005 (dem. nationale 2004043570 de 06.04.2004) ; Tovaristvo s obmegenoyou vidpovidalnistyou  « Agrosfera » ; vul. Sobinova 1, Dnipropetrovsk, 49083 (UA) – certificat No. 34425 de 15.08.2003 (dem. nationale 2001106400 de 15.10.2001) ; Otkritoe Aktsionernoе Obschestvo « Koncern « Igmasch » ; proezd Deryabina 3, Igevsk, 426006 (RU) – certificat No. 59679 de 15.03.2006 (dem. nationale 2004010581 de 26.01.2004) ; Dochirne pidpriemstvo « Konditerska korporatsia « Roschen « ; vul. Pavla Usenka 8, Kyiv, 02105 (UA) – certificat No. 35975 de 17.11.2003 (dem. nationale 2002020890 de 08.02.2002).**

| | |
|---|---|
| V. | Dispositions de la loi nationale applicables en matiéres [(voir texte sous le point X)]: |

VI.

☐   Refus pour la totalité des produits et services

■   Refus pour les produits et services suivants: **Tous les produits des classes 09,16,21,28,30.**
   **Tous les services des classes 35,37,38,39,41,42,43,45.**

☐   Acceptance spécifiée (voir point V. ci-dessus)

VII.   Conformément à la «Loi d'Ukraine sur la protection du droit des marques  commerciales
   et des marques de service», il est admissibles de faire valoir le recours contre cette  décision
   en le présentant à l'Institut d'Ukraine de la Propriété Industrielle à Kiev dans
   **le  délai de  3  mois  à compter de la date de la présente notification.**
   Le recours présenté à temps met en suspens l'entrée en vigueur de la décision susmentionnée.

VIII.   Date à laquelle le refus a été  prononcé:  le  15  janvier  2010.

IX.   Signature ou sceau officiel de l'Office qui notifie le refus:

Український
ІНСТИТУТ
ПРОМИСЛОВОЇ
ВЛАСНОСТІ

Chef de la Section des
marques internationales

**Mme Svitlana Sukhinova**

**X.    Extrait de la «Loi d'Ukraine sur la protection de droit des marques commerciales et des marques de services»**

**DIVISION II**
**PROTECTION DE DROIT DES MARQUES**

Article 5. Conditions d'octroi de la protection de droit.

☐ 1. La protection de droit accorde  à la marque qui n'est pas contraire en son fond à l'ordre public, à la moralité ou aux principes d'humanité et qui n'est pas de raisons pour le refus de protection de droit établies par la présente Loi.

Article 6. Raisons pour le refus de protection de droit.
1. Selon la présente Loi ne peuvent pas être enregistrés en tant que marques les signes qui:
☐ sont des armoiries d'Etat, des drapeaux et des emblémes, des noms officiels d'Etat; des abréviations ou des noms complets d'organisations internationales intergouvernementales: des poinçons de contrôle et de garantie; des sceaux; des décorations et des insignes de grade. Ces désignations peuvent être incorporées dans la marque comme les éléments non-protegeables s'il y a l'autorisation de l'organe compétent correspondant ou de son propriétaire.

2. Selon la présente Loi ne peuvent pas être enregistrés en tant que marques les signes qui:
☐ ne possède pas de caractère distinctif;
☐ sont d'un usage général pour les produits d'un certain aspect;
☐ indiquent l'aspect, la qualité, la quantité , la nature, la destination, la valeur des produits  et des services ainsi que l'origine , l'époque de fabrication , la distribution des produits ou l'octroi des services;
☐ ont été falsifiés ou peuvent induire un consommateur en erreur au sujet du fabricant ou du  produit et des  services ;
☐ sont des symboles et des termes d'usage général.
Les désignations indiquées dans les points 1,2,3,5 peuvent être incorporées dans la marque comme les éléments  non-protégeables, si elles ne s'occupent pas de  position dominante dans la marque.

3. Ne peuvent pas être enregistrés en tant que marques les signes qui sont identiques, semblables :
■ aux marques  prises  ou demandés antérieurement en Ukraine au nom de tiers pour les produits ou services similaires;
☐ aux marques appartenants aux tiers dont la protection est accordée en Ukraine en vertu d'accords internationaux auxquels Ukraine est partie, à savoir  aux  marques notoirement connues en vertu de l'article 6 bis de la Convention de Paris pour la protection de la Propriété Industrielle ;
☐ aux dénominations de raisons sociales ou commerciales (ou leurs parties), qui appartiennent aux tiers ayant acquis le droit d'usage de ces dénominations antérieurement en question pour les produits similaires;
☐ aux appelations d'origine, à l'exception des  cas quand elles sont incorporées dans la marque comme les éléments non-ptotegeables et enregistrées aux noms de personnes ayant le droit d'utiliser telles dénominations;
☐ aux marques de certification enregistrées  en   formes légales.

4. Ne peuvent pas être enregistrés en tant que marques les signes représentées:

☐ des modèles industriels dont les droits appartiennent aux tiers en Ukraine;
☐ des titres des travaux scientifiques et des oeuvres littéraires et d'art ou leurs extraits sans le consentement de l'auteur ou de l'organe compétent correspondant;
☐ des prénoms, des noms, des pseudonymes et leurs dérivés, des portraits et des fac-similés de personnes sans leur consentement.

# 905612

(151)  **07.06.2006**

(180)  07.06.2016

(270)  Англійська

(300)  RU, 16.12.2005, 2005732554

(561)  Vulkan.

(566)  Volcano.

(591)  White, yellow, orange, red, light blue, blue and dark blue.

Blanc, jaune, orange, rouge, bleu clair, bleu et bleu foncé.

Blanco, amarillo, anaranjado, rojo, azul claro, azul y azul oscuro.



(732)  **Obshestvo s ogranichennoj otvetstvennostju "Firma "Bars"** str. 1, 56/17, Baumanskaya RU-105005 Moskva; RU

| 01.01.01 | 26.02.07 | 26.07.09 | 26.07.11 |
| 28.05.00 | 29.01.01 | 29.01.04 | |

(812)  RU

(740)  **Obshestvo s ogranichennoj otvetsvennostju "Intellect Patent"** 28 Post Box RU-125009 Moskva; RU

(822)  RU, 01.06.2006, 307722

(834)  Зазначено відповідно до статті 9sexies Мадридського Протоколу

(511)  **Кл.: 09, 16, 21, 28, 35, 38, 39, 41, 42, 43, 45**

09  Apparatus for recording, transmission or reproduction of sound or images; magnetic data carriers, recording discs; automatic vending machines and mechanisms for coin-operated apparatus; data processing equipment and computers; ticket dispensers, musical juke boxes, automatic distribution machines, electric monitoring apparatus, sound recording apparatus, electric apparatus for communication, video cassettes, video screens, floppy disks, phonograph records, optical disks, read-only memory compact disks, audio-video compact disks, decorative magnets, mechanisms for coin-operated apparatus, sound recording carriers, magnetic data media, optical data media, recorded computer operating programs, computer game programs, computer programs (downloadable software), electronic publications (downloadable), smart cards, totalizators, apparatus for games adapted for use with television receivers only, amusement apparatus adapted for use with television receivers only, computer peripheral devices, anti-theft warning apparatus, chips (integrated circuits).

Appareils d'enregistrement, de transmission ou de reproduction de sons ou d'images; supports d'enregistrement magnétiques, disques acoustiques; distributeurs automatiques et mécanismes pour appareils à prépaiement; équipements de traitement de données et ordinateurs; distributeurs de billets [tickets], chargeurs automatiques de disques, distributeurs automatiques, appareils électriques de surveillance, appareils pour l'enregistrement de son, appareils électriques de communication, cassettes vidéo, écrans vidéo, disquettes, disques phonographiques, disques optiques, cd-rom (unité de disque compact à mémoire morte), disques compacts audiovidéo, aimants décoratifs, mécanismes

pour appareils à prépaiement, supports d'enregistrements sonores, supports de données magnétiques, supports de données optiques, programmes de système d'exploitation pour ordinateurs, programmes de jeux électroniques, programmes informatiques (logiciels téléchargeables), publications électroniques téléchargeables. cartes à mémoire ou à microprocesseur, totalisateurs, appareils pour jeux conçus pour être utilisés seulement avec récepteur de télévision, appareils pour le divertissement conçus pour être utilisés seulement avec un récepteur de télévision, périphériques d'ordinateur, avertisseurs contre le vol, puces (circuits intégrés).

Aparatos para la grabación, la transmisión y la reproducción de sonido o imágenes; soportes de grabación magnéticos, discos acústicos; distribuidores automáticos y mecanismos para aparatos de previo pago; equipos y ordenadores para el procesamiento de datos; distribuidores de billetes, máquinas de discos de previo pago, máquinas de distribución automática, aparatos eléctricos de vigilancia, aparatos de grabación de sonido, aparatos eléctricos de comunicación, casetes de vídeo, pantallas de vídeo, discos flexibles, discos fonográficos, discos ópticos, discos compactos con memoria de sólo lectura, discos compactos audio-vídeo, imanes decorativos, mecanismos para aparatos de previo pago, soportes para grabaciones sonoras, soportes de datos magnéticos, soportes de datos ópticos, programas de sistemas operativos grabados para ordenadores, programas de juegos informáticos, programas informáticos (software descargables), publicaciones electrónicas (descargables), tarjetas con circuitos integrados, totalizadores, aparatos para juegos concebidos para ser utilizados únicamente con televisores, aparatos recreativos diseñados para ser utilizados únicamente con televisores, periféricos informáticos, alarmas antirrobo, chips (circuitos integrados).

16    Printed matter, almanacs, affiches, posters, tickets, blanks, pamphlets, booklets, newsletters, newspapers, engravings, printed publications, calendars, tear-off calendars, non-electric credit card imprinters, catalogues, books, graphic prints, magazines (periodicals), prospectuses, printed timetables, graphic reproductions.

Produits imprimés, almanachs, affiches, billets, carton pour affiches, brochures, livrets, bulletins d'information, journaux, gravures, publications, calendriers, éphémérides, presses à cartes de crédit, non électriques, catalogues, livres, dessins, magazines, prospectus, horaires imprimés, reproductions graphiques.

Material impreso, almanaques, carteles, pósters, tickets, láminas, panfletos, folletos, circulares, periódicos, grabados, publicaciones impresas, calendarios, calendarios de taco, prensas no eléctricas para tarjetas de crédito, catálogos, libros, dibujos, revistas (publicaciones periódicas), prospectos, horarios impresos, reproducciones gráficas.

21    Household or kitchen utensils and containers (not of precious metal or coated therewith); combs and sponges; brushes (except paint brushes); brush-making materials; articles for cleaning purposes; steelwool; unworked or semi-worked glass (except glass used in building); glassware, porcelain and earthenware not included in other classes; including ornaments, dishes, saucers, goblets made of porcelain; bottles, busts of china, terra-cotta or glass; vases, non-electric waffle irons, coolers, napkin holders, clothing stretchers, decanters, combs for the hair, deodorising apparatus for personal use, containers for household or kitchen use boxes of glass, heat insulated containers for beverages, thermally insulated containers for food, glass jars, frying pans, toothpicks, ceramics for household purposes; works of art, of porcelain, terra-cotta or glass; stew-pans, napkin rings, piggy banks, not of metal, bread baskets (domestic), baskets for domestic use, non-electric coffee percolators, hand-operated coffee grinders, beer mugs, covers for dishes, jugs, non-electric portable coldboxes, mixing spoons (kitchen utensils), scoops (tableware), spatulas (kitchen utensils), hand-operated pepper mills, basins, soap boxes, cooking pot sets, fitted picnic baskets (including dishes), toilet cases, cookie (biscuit) cutters, pastry cutters, sprinklers, cocktail stirrers, pepper pots, gloves for household purposes, trays for domestic purposes, trays (kitchen utensils), candle sticks, trivets (table utensils), coasters, not of paper and other

than table linen, menu card holders, knife rests for table, flat-iron stands, tableware (other than knives, forks and spoons); porcelain ware, terra-cotta ware, crockery and crystal (glassware); cosmetic utensils, toilet utensils, spice sets, non-electric appliances for removing make-up, food cooling devices containing heat exchange fluids, for household purposes, bottle openers, glass caps, powder compacts, soap dispensers, combs, shoe horns, salad bowls, sugar bowls, services (tableware), coffee services and tea services, tea strainers, siphons for carbonated water, blenders for household purposes, fruit presses for household purposes, salt cellars, drinking vessels, refrigerating bottles, cups of paper or plastic, glasses, drinking glasses, status and figurines of porcelain, terra-cotta or glass; soup bowls, table plates, grater (household utensils), insulating flasks, urns, aerosol dispensers, not for medical purposes, wax-polishing appliances, non-electric, for shoes, sprinkling devices, utensils for household purposes, kitchen utensils, cooking utensils, strainers for household purposes, coffee filters, flasks, bottle gourds, molds (kitchen utensils), bread bins, teapots, kettles, cups, mixers, manual (cocktail shakers), corkscrews, dishwashing brushes and brushes for cleaning tanks and containers, toothbrushes, brushes for footwear, boxes of metal, for dispensing paper towels, dustbins.

Ustensiles et récipients pour le ménage ou la cuisine (ni en métaux précieux, ni en plaqué); peignes et éponges; brosses (à l'exception des pinceaux); matériaux pour la brosserie; matériel de nettoyage; paille de fer; verre brut ou mi-ouvré (à l'exception du verre de construction); verrerie, porcelaine et faïence non comprises dans d'autres classes, y compris des objets décoratifs, plats, soucoupes, gobelets en porcelaine; bouteilles, bustes en porcelaine, terre cuite ou verre; vases, gaufriers non électriques, seaux à rafraîchir, porte-serviettes, tendeurs de vêtements, carafes, peignes à cheveux, appareils de désodorisation à usage personnel, récipients pour le ménage ou la cuisine boîtes en verre, récipients calorifuges pour boissons, récipients calorifuges pour les aliments, bocaux, poêles à frire, cure-dents, produits céramiques pour le ménage; objets d'art en porcelaine, terre cuite ou verre; faitouts, ronds de serviettes, tirelires non métalliques, corbeilles à pain (à usage ménager), paniers à usage domestique, percolateurs à café non électriques, moulins à café à main, chopes à bière, couvercles de plats, cruches, glacières portatives non électriques, cuillers à mélanger (ustensiles de cuisine), pelles (accessoires de table), spatules (ustensiles de cuisine), moulins à poivre à main, jattes, boîtes à savon, batteries de cuisine, paniers équipés pour pique-nique (avec vaisselle), trousses de toilette, emporte-pièces, coupe-pâte, arroseurs, bâtonnets pour cocktails, poivriers, gants de ménage, plateaux à usage domestique, plateaux (ustensiles de cuisine), bougies, dessous-de-plat (ustensiles de table), dessous de carafes non en papier et autres que linge de table, porte-cartes de menus, porte-couteaux de table, supports de fers à repasser, vaisselle (hormis couteaux fourchettes et cuillers); articles en porcelaine, terre cuite, vaisselle et articles en cristal (verrerie); ustensiles cosmétiques, ustensiles de toilette, services à épices, appareils pour le démaquillage non électriques, articles de réfrigération d'aliments contenant des fluides d'échange de chaleur à usage domestique, ouvre-bouteilles, bouchons en verre, poudriers, distributeurs de savon, peignes, chausse-pieds, saladiers, sucriers, services (vaisselle), services à café et à thé, filtres à thé, siphons pour eaux gazeuses, mixeurs à usage domestique, presses à fruits à usage domestique, salières, récipients à boire, bouteilles réfrigérantes, gobelets en papier ou en matières plastiques, verres, verres à boire, statues et figurines en porcelaine, terre cuite ou verre; soupières, plateaux de tables, râpes (ustensiles de maison), bouteilles isolantes, urnes, appareils destinés à la projection d'aérosols non à usage médical, cireuses à chaussures non électriques, instruments d'arrosage, ustensiles à usage domestique, ustensiles de cuisine, ustensiles de cuisson, filtres pour le ménage, filtres à café, gourdes, bidons, moules (ustensiles de cuisine), boîtes à pain, théières, bouilloires, tasses, shakers (à main), tire-bouchons, pinceaux pour laver la vaisselle et brosses pour nettoyer les récipients, brosses à dents, brosses à chaussures, boîtes en métal pour la distribution de serviettes en papier, poubelles.

Utensilios y recipientes para la casa y la cocina (que no sean de metales preciosos ni chapados); peines y esponjas; cepillos (excepto pinceles); materiales para la fabricación de

cepillos; material de limpieza; viruta de hierro; vidrio en bruto o semielaborado (excepto vidrio de construcción); cristalería, porcelana y loza no comprendidas en otras clases; incluidos adornos, fuentes, platillos, copas de porcelana; botellas, bustos de porcelana, de barro o de cristal; jarrones, barquilleros no eléctricos, cubiteras, servilleteros, tendedores de vestidos, decantadores, peines para el cabello, aparatos de desodorización para uso personal, recipientes para uso culinario o doméstico, cajas de cristal, recipientes calorífugos para bebidas, recipientes termoaislantes para alimentos, bocales, sartenes, mondadientes, productos de cerámica para el hogar; objetos de arte de porcelana, de barro o de cristal; cacerolas, servilleteros de aro, huchas no metálicas, cestas para el pan (uso doméstico), cestas para uso doméstico, cafeteras con filtro de café no eléctricas, molinillos de café manuales, jarras para cerveza, tapaderas de bandejas, jarras, neveras portátiles no eléctricas, cucharas para mezclar (utensilios de cocina), palas (vajilla), espátulas (utensilios de cocina), molinillos de pimienta manuales, palanganas, jaboneras, baterías de cocina, cestas para picnic (con vajilla incluida), neceseres de tocador, moldes para cortar galletas, cortapastas, regaderas, agitadores para cocteles, pimenteros, guantes para uso doméstico, bandejas para uso doméstico, bandejas (utensilios de cocina), candelabros, reposaplatos (utensilios de mesa), posavasos, que no sean de papel ni ropa de mesa, portatarjetas de menú, portacuchillos para la mesa, soportes de planchas de planchar, vajilla (excepto cuchillos, tenedores y cucharas); artículos de porcelana, artículos de barro, vajilla y artículos de cristal; utensilios cosméticos, utensilios de tocador, especieros, aparatos para el desmaquillaje no eléctricos, dispositivos para enfriar alimentos que contienen fluidos para el intercambio de calor, para uso doméstico, abrebotellas, tapones de cristal, polveras, distribuidores de jabón, peines, calzadores, ensaladeras, azucareros, servicios (vajilla), juegos de café y té, coladores de té, sifones para aguas gaseosas, licuadoras para uso doméstico, exprimidores de frutas para uso doméstico, saleros, recipientes para beber, botellas refrigerantes, tazas de papel o de plástico, vasos, vasos para beber, estatuas y figuritas de porcelana, barro o vidrio; soperas, platos, ralladores (utensilios domésticos), botellas térmicas, urnas, aparatos destinados a la proyección de aerosoles que no sean para uso médico, enceradoras, no eléctricas, para zapatos, instrumentos de riego, utensilios para uso doméstico, utensilios de cocina, utensilios para cocinar, coladores para uso doméstico, filtros de café, frascos, cantimploras, moldes (utensilios de cocina), paneras, teteras, hervidores, tazas, cocteleras, sacacorchos, cepillos para lavar la vajilla y cepillos para limpiar depósitos y recipientes, cepillos de dientes, cepillos para el calzado, cajas metálicas, para la distribución de toallitas de papel, papeleras.

28    Games and playthings; gymnastic and sporting articles not included in other classes; including automatic and coin-operated amusement machines, cups for dice, dice, playing cards, billiard cues, chalk for billiard cues, billiard table cushions, billiard cue tips, accessories for games, billiard markers, billiard tables, coin-operated billiard tables, tables for table tennis, apparatus for electronic games other than those adapted for use with television receivers only, counters (discs) for games, play balloons, billiard tables.

Jeux et jouets; articles de gymnastique et de sport non compris dans d'autres classes, y compris jeux automatiques à prépaiement, gobelets pour jeux, dés, cartes à jouer, queues de billard, craie pour queues de billards, bandes de billard, procédés pour queues de billard, accessoires de jeux, dispositifs à marquer les points pour billards, tables de billard, tables de billard à prépaiement, tables de ping-pong, appareils de jeux électroniques autres que ceux conçus pour être utilisés seulement avec récepteur de télévision, compteurs (disques) de jeux, ballons de jeu.

Juegos, juguetes; artículos de gimnasia y de deporte no comprendidos en otras clases; incluidas máquinas recreativas automáticas y de monedas, cubiletes para dados, dados, naipes, tacos de billar, tiza para tacos de billar, bandas de billar, suelas para tacos de billar, accesorios para juegos, marcadores de billar, mesas de billar, mesas de billar accionadas con monedas, mesas de ping-pong, aparatos de juegos electrónicos que no sean los concebidos para ser utilizados únicamente con un receptor de televisión, fichas (discos) para juegos,

balones de juego, mesas de billar.

35  Office functions, data search in computer files (for other), office machines and equipment
rental, trade equipment rental, compilation of information into computer databases,
systematization of information into computer databases, public relations.

Travaux de bureau, recherche de données dans des fichiers informatiques (pour le compte
de tiers), location de machines et d'appareils de bureau, location d'équipements
commerciaux, compilation d'informations dans des bases de données informatiques,
systématisation d'informations dans des bases de données informatiques, relations
publiques.

Trabajos de oficina, búsqueda de datos en archivos informáticos (para terceros), alquiler de
máquinas y aparatos de oficina, alquiler de equipos comerciales, compilación de
información en bases de datos informáticas, sistematización de la información en bases de
datos informáticas, servicios de relaciones públicas.

38  Telecommunications; including electronic bulletin board services (telecommunication
services), providing user access to a global computer network (service providers), providing
telecommunications connections to a global computer network, communications by fiber
(fibre) optic networks.

Télécommunications, notamment services de tableaux d'affichage électroniques (services de
télécommunications), fourniture d'accès aux utilisateurs à un réseau mondial d'ordinateurs
(prestataires de services), mise à disposition de connexions de télécommunication pour
l'accès à un réseau mondial d'ordinateurs, communications par le biais de réseaux de fibres
optiques.

Telecomunicaciones; incluidos servicios de anuncios electrónicos (servicios de
telecomunicación), facilitación de acceso de usuarios a una red informática mundial
(proveedores de servicios), facilitación de conexiones de telecomuniación a una red
informática mundial, comunicaciones por redes de fibras ópticas.

39  Arranging of tours, including booking of seats for travel, travel reservation, transport
reservation, delivery of goods, arranging of cruises, transport of travellers, car transport, car
rental, escorting of travellers, wrapping of goods, car parking, chauffeur services, courrier
services (messages or merchandise), tourist offices (except for hotel reservation), storage of
goods, sightseeing.

Organisation de voyages, y compris réservation de places de voyage, réservation de
voyages, réservations de transport, livraison de marchandises, organisation de croisières,
transport de voyageurs, transport en voiture, location de voitures, accompagnement de
voyageurs, emballage de marchandises, services de parcs de stationnement, services de
chauffeurs, messagerie (courrier ou marchandises), agences de tourisme (à l'exception de la
réservation d'hôtels), dépôt de marchandises, visites touristiques.

Servicios de organización de viajes, incluidas reservas de plazas de viajes, reservas de
viajes, reservas para el transporte, reparto de mercancías, organización de cruceros,
transporte de viajeros, transporte en automóvil, alquiler de automóviles, acompañamiento de
viajeros, empaquetado de mercancías, servicios de aparcamiento, servicios de conductores,
servicios de correo (mensajes o mercancías), agencias de turismo (excepto para reservas de
hoteles), almacenamiento de mercancías, visitas turísticas.

41  Education; providing of training; entertainment; cultural activities; billiard saloon, booking
of seats for shows, videotaping, discotheque services, gaming, publication of books,
recreation information, entertainment information, club services (entertainment or
education), night clubs, game services provided on-line (from a computer network),
electronic publication services provided on-line (not downloaded), practical training
(demonstration), organization of exhibitions for cultural and educational purposes,
providing recreation facilities, arranging and conducting of workshops (training),

organization of competitions (education or entertainment), operating lotteries, holiday camp services (entertainment), amusement parks, providing amusement arcade services, providing cinema facilities, videotape film production and film production, rental of sound recordings, rental of audio equipment, rental of video cassette recorders, rental of automatic amusement machines, rental of cine-films, electronic desktop publishing, publication of electronic books and journals on-line, publication of texts (other than publicity texts), entertainer services, party planning (entertainment), providing casino facilities (gambling), translation, photography, production of shows.

Enseignement; formations; divertissement; activités culturelles; salles de billard, réservation de places de spectacles, enregistrement sur bandes vidéo, services de discothèques, jeux d'argent, publication de livres, informations en matière de loisirs, informations en matière de divertissement, services de clubs (divertissement ou éducation), boîtes de nuit, services de jeu en ligne (sur réseau informatique), services de publications électroniques fournis en ligne (non téléchargeables), formation pratique (démonstrations), organisation d'expositions à vocation culturelle et pédagogique, services de loisirs, organisation et conduite d'ateliers de formation, organisation de concours (éducation ou divertissement), organisation de loteries, services de camps de vacances (divertissement), parcs d'attractions, exploitation de salles de jeux, exploitation de salles de cinéma, production de films cinématographiques et de bandes vidéo, location d'enregistrements sonores, location d'appareils audio, location de magnétoscopes, location de jeux automatiques à prépaiement, location de films cinématographiques, publication assistée par ordinateur, publication en ligne de livres et revues électroniques, publication de textes (autres que textes publicitaires), services d'artistes de spectacles, planification de réceptions (divertissement), services de casino, services de traduction, photographie, production de spectacles.

Educación; formación; esparcimiento; actividades culturales; salas de billar, reserva de entradas para espectáculos, grabación en cintas de vídeo, servicios de discotecas, juegos de azar, publicación de libros, información sobre actividades recreativas, información sobre esparcimiento, servicios de clubes (educación y esparcimiento), clubes nocturnos, servicios de juegos en línea (a través de una red informática), servicios de publicación electrónica prestados en línea (no descargados), formación práctica (demostración), organización de exposiciones con fines culturales y educativos, facilitación de instalaciones recreativas, organización y dirección de talleres de formación, organización de concursos (educación o esparcimiento), organización de loterías, servicios de campamentos de vacaciones (esparcimiento), parques de atracciones, explotación de salas de juegos, explotación de salas de cine, producción de películas y cintas de vídeo, alquiler de grabaciones sonoras, alquiler de equipos de audio, alquiler de vídeos, alquiler de máquinas recreativas automáticas, alquiler de películas cinematográficas, autoedición electrónica, publicación de libros y diarios electrónicos en línea, publicación de textos (que no sean textos publicitarios), servicios de artistas de espectáculos, planificación de recepciones (entretenimiento), servicios de casino (juegos), traducción, fotografía, producción de espectáculos.

42   Design and development of computer hardware and software; computer systems analysis, installation of computer software, updating of computer software, maintenance of computer software, computer system design, computer rental, rental of computer software, hosting computer sites (web sites), creating and maintaining web sites for others.

Conception et développement d'ordinateurs et de logiciels; analyse de systèmes informatiques, installation de logiciels, mise à jour de logiciels, maintenance de logiciels, conception de systèmes informatiques, location d'ordinateurs, location de logiciels, hébergement de sites informatiques (sites Web), création et maintenance de sites Web pour des tiers.

Diseño y desarrollo de hardware y software; análisis de sistemas informáticos, instalación de software, actualización de software, mantenimiento de software, diseño de sistemas informáticos, alquiler de ordenadores, alquiler de software, superservidor (sitios Web),

creación y mantenimiento de sitios Web para terceros.

43   Services for providing food and drink; temporary accommodation, agencies for reservations (hotels, house bookings), rental of meeting rooms, tourist homes, hotel reservations, temporary accomodation reservations, hotels, snack-bars, cafes, cafeterias, restaurants, holiday camp services (lodging), bar services, providing campground facilities, food and drink catering.

Services de restauration (alimentation); hébergement temporaire, agences de réservation (réservations de maisons, hôtels), location de salles de réunion, logements de vacances, réservation d'hôtels, réservation d'hébergements temporaires, hôtels, snack-bars, cafés, cafétérias, restaurants, services de camps de vacances (hébergement), bars, exploitation de terrains de camping, restauration (aliments et boissons).

Servicios de restauración (alimentación); hospedaje temporal, agencias de reservas (reservas de hoteles y casas), alquiler de salas de reunión, casas de vacaciones, reservas de hoteles, reservas de alojamiento temporal, hoteles, restaurantes de servicio rápido, cafés, cafeterías, restaurantes, servicios de campamentos de vacaciones (hospedaje), servicios de bar, facilitación de terrenos de camping, servicios de comidas preparadas.

45   Personal and social services rendered by others to meet the needs of individuals, guards, dating services, personal body guarding.

Services personnels et sociaux rendus par des tiers destinés à satisfaire les besoins des individus, gardes, clubs de rencontres, services de gardes du corps.

Servicios personales y sociales prestados por terceros destinados a satisfacer necesidades individuales, servicios de guardias, servicios de encuentros, servicios de escolta personal.

### Ресстрація

(450)   2006/48 Gaz, 04.01.2007

(831)   AM - AZ - BY - CY - CZ - DE - ES - KG - KZ - LV - MD - PL - RO - TJ - **UA** - UZ

(832)   EE - GE - LT - TM

(580)   14.12.2006

**UA**          **Попередня часткова відмова в наданні охорони знаку**          🉐

(450)   2007/47 Gaz, 27.12.2007

**UA**          **Заява про надання охорони знаку для всіх товарів та послуг**          🉐

(450)   2009/7 Gaz, 05.03.2009

---

*Дані станом на 07.01.2010*

## 791038

| | |
|---|---|
| (151) | **03.09.2002** |
| (180) | 03.09.2012 |
| (270) | Англійська |
| (300) | RU, 03.04.2002, 2002707649 |
| (561) | VULKAN |
| (566) | VOLCANO |
| | VOLCAN |



(591)  Blue, dark blue - background; black - lightning; yellow, green, violet - stars; red - word "VULKAN"; black, blue, dark blue - letters' shadow.

Blue, dark blue, black, red, green, yellow, violet.

L'arrière-plan est en bleu et bleu foncé;     01.01.05    25.01.19    28.05.00    29.01.15
l'éclair est en noir; les étoiles sont en
jaune, vert et violet; le mot "VULKAN" est en rouge; l'entourage des lettres est en noir, bleu et bleu foncé.

Bleu, bleu foncé, noir, rouge, vert, jaune, violet.

(732)  **"VOLCANO" Gaming Clubs Ltd.**
ul. Pokrovka, 3/7, str. 1
RU-101000 Moscow; RU

(812)  RU

(740)  **Joint-Stock company
"Patentny Poverenny"
Galina N. Andruschak**
ul Aviamotornaya, d. 53
RU-111250 Moskwa; RU

(770)  **"FIRM "BARS" LTD**
ul. Baumanskaya, 56/17, str. 1
Moskva; RU

(822)  RU, 03.07.2002, 216203

(834)  Зазначено відповідно до статті 9sexies Мадридського Протоколу

(511)  **Кл.: 41**

41  Modelling of artists; rental of tennis courts; lending libraries; booking of seats for shows; videotaping; nursery schools; physical education; discotheque services; animal training; dubbing; gaming; publication of books; educational information; recreational information; entertainment information; movie studios; health club services; club services (entertainment or education); night clubs; correspondence courses; microfilming; videotape editing; production of radio and television programmes; music-halls; game services provided on-line (from a computer network); religious education; gymnastic instruction; practical training (demonstration); organisation of balls; organisation of exhibitions for cultural or educational purposes; providing recreational facilities; arranging and conducting of colloquiums; arranging and conducting of congresses; arranging and conducting conferences; arranging and conducting of workshops (training); arranging and conducting of seminars; arranging

and conducting of symposiums; arranging of beauty contests; organisation of competitions (education or entertainment); lotteries; holiday camp services (entertainment); organisation of shows (impresario services); vocational guidance (education or training advice); boarding schools; amusement park; sign language interpretation; television entertainment; bookmobile services; providing karaoke services; providing golf facilities; providing amusement arcade services; providing cinema facilities; presentation of live performances; theatre productions; educational examination; videotape film production; film production; rental of sound recordings; rental of audio equipment; rental of camcorders; rental of video cassette recorders; rental of videotapes; rental of show scenery; rental of cine-films; rental of lighting apparatus for theatrical sets or television studios; rental of radio and television sets; rental of skin diving equipment; rental of stage scenery; electronic desktop publishing; publication of electronic books and journals online; publication of texts (other than publicity texts); radio entertainment; entertainer services; zoological gardens; news reporters services; party planning (entertainment); music composition services; subtitling; providing of casino facilities (gambling); providing museum facilities (presentation, exhibitions); educational services; orchestra services; translation; scriptwriting services; recording studio services; digital imaging services; circuses; production of shows.

Agences de modèles pour artistes; location de cours de tennis; bibliothèques de prêt; réservation de places de spectacles; enregistrement sur bandes vidéo; écoles maternelles; éducation physique; services de discothèques; dressage d'animaux; postsynchronisation; jeux; édition de livres; informations à buts éducatifs; informations en matière de loisirs; informations en matière de divertissement; studios cinématographiques; clubs de santé; services de clubs (divertissement ou éducation); boîtes de nuit; cours par correspondance; microfilmage; montage de bandes vidéo; production d'émissions radiophoniques et télévisées; music-hall; services de jeu proposés en ligne (depuis un réseau informatique); éducation religieuse; enseignement de la gymnastique; formation pratique (démonstration); organisation de bals; organisation d'expositions à vocation culturelle ou pédagogique; services de loisirs; organisation et animation de colloques; organisation et tenue de congrès; organisation et animation de conférences; organisation et conduite d'ateliers de formation; organisation et animation de séminaires; organisation et animation de symposiums; organisation de concours de beauté; organisation de concours (à caractère pédagogique ou récréatif); loteries; services de camps de vacances (divertissement); organisation de spectacles (services d'impresario); orientation professionnelle (conseils pédagogiques ou en matière de formation); pensionnats; parcs d'attractions; interprétation du langage gestuel; divertissements télévisuels; services de bibliothèque itinérante; services de karaoké; exploitation de parcours de golf; exploitation de salles de jeux; exploitation de salles de cinéma; représentation de spectacles; représentations théâtrales; épreuves pédagogiques; production de films sur bandes vidéo; production cinématographique; location d'enregistrements sonores; location d'appareils audio; location de caméras vidéo; location de magnétoscopes; location de bandes vidéo; location de décors de spectacles; location de films cinématographiques; location d'appareils d'éclairage pour des scènes de théâtre ou des studios de télévision; location de postes de radio et de télévision; location d'équipements de plongée sous-marine; location de décors de théâtre; publication assistée par ordinateur; publication en ligne de livres et de revues électroniques; publication de textes (autres que publicitaires); divertissements radiophoniques; services d'artistes de spectacles; jardins zoologiques; services de reporters; organisation de fêtes (divertissement); services de composition musicale; sous-titrage; exploitation de casinos de jeux; services de musées (présentation, expositions); services d'enseignement; services d'orchestres; services de traduction; rédaction de scénarios; services de studio d'enregistrement; services d'imagerie numérique; cirques; production de spectacles.

**Реєстрація**

(450)   2002/23 Gaz, 26.12.2002

(831)    AM - AZ - BY - KG - KZ - LV - MD - TJ - **UA** - UZ

(832)    EE - GE - LT - TM

(580)    05.12.2002

---

*Дані станом на 07.01.2010*

Бібліографічні дані свідоцтва №59679

| | | |
|---|---|---|
| **(111)** | **59679** | **(540)** |
| **(151)** | 15.03.2006 | |
| **(181)** | **26.01.2014** | |
| **(210)** | 2004010581 | |
| **(220)** | 26.01.2004 | |
| **(450)** | 15.03.2006. Бюл. № 3 | |

# ВУЛКАН
# VULKAN

**(731)** Открытое Акціонєрноє Общество «Концерн «Іжмаш»; проєзд Дєрябіна, д. 3, г. Іжевск, 426006, Російська Федерація (RU)

**(732)** **Открытоє Акціонєрноє Общество «Концерн «Іжмаш»; проєзд Дєрябіна, д. 3, г. Іжевск, 426006, Російська Федерація (RU)**

**(740)** Мошинська Ніна Миколаївна; вул. Щорса, 27, кв. 7, м. Київ, 03027 (UA)

**(750)** Мошинська Ніна Миколаївна; вул. Л. Первомайського, 11, кв. 45, м. Київ, 23, 01023 (UA)

**(511)** Кл.: 13, 28

13 - Вогнепальна зброя; карабіни; мисливська вогнепальна зброя; пневматичні пістолети (зброя); рушниці (зброя); чохли на вогнепальну зброю; запасні частини, що належать до 13 класу, до вищезазначених товарів.

28 - Іграшки; іграшки з рухомими частинами або пересувні; ігри автоматичні, крім телевізорних; ігри; мішені; пістолети іграшкові; автомати іграшкові; рушниці іграшкові; пістолети пневматичні; автомати пневматичні; рушниці пневматичні; рушниці гарпунні (спортивне знаряддя); пристрої для електронних ігор (за виключенням пристроїв з обов'язковим використанням телевізійних приймачів).

1

Бібліографічні дані свідоцтва №56105

(111)   56105

(540)

(151)   15.11.2005

(181)   **06.04.2014**

(210)   2004043570

(220)   06.04.2004

(450)   15.11.2005. Бюл. № 11

(591)   синій, блакитний, білий, червоний



(731)   Товариство з обмеженою відповідальністю
«Сінніс, Лтд»;
вул. Хрещатик, 195, м. Черкаси, 18002 (UA)

(732)   **Товариство з обмеженою
відповідальністю «Сінніс, Лтд»;
вул. Хрещатик, 195, м. Черкаси, 18002 (UA)**

(740)   Ярмак Наталія Григорівна;
Фірма "Регіон", вул. Велика Житомирська, 33, м. Київ, 01025 (UA)

(750)   Фірма «Регіон» ТПП України; Ярмак Н. Г.;
вул. В. Житомирська, 33, м. Київ, 25, 01025 (UA)

(511)   Кл.: 37, 41, 43
37 - Встановлювання, технічне доглядання і лагодження гральних
автоматів.
41 - Надання послуг у сфері грального бізнесу, а саме: організація і
утримування гральних закладів, казино, залів гральних автоматів з
грошовим виграшем, більярдів; дозвілля; забезпечування приміщенням для
дозвілля, ігор; послуги щодо ігор на гроші; ігрові послуги через комп'ютерні
мережі; інформування щодо дозвілля; інформування щодо розваг; нічні
клуби; облаштовування дозвілля; розваги.
43 - Послуги щодо забезпечування харчами та напоями; готелі; наймання
(орендування) тимчасового житла; житлові агентства (готелі; пансіонати);
замовляння тимчасового житла; кав'ярні; кафе; кафетерії; мотелі;
ресторани; ресторани самообслуговування; туристські бази; постачання
харчів та напоїв; шинки чи буфети (заклади швидкого і повсякчасного
обслуговування).

1

Бібліографічні дані свідоцтва №34425

| | | |
|---|---|---|
| (111) | **34425** | (540) |
| (151) | 15.08.2003 | |
| (181) | **15.10.2011** | |
| (210) | 2001106400 | |
| (220) | 15.10.2001 | |
| (450) | 15.08.2003. Бюл. № 8 | |
| (591) | чорний, червоний, білий | |



(731) Торгово-виробнича корпорація «АЛЕФ»;
вул. Радгоспна, 76, смт Ювілейне,
Дніпропетровський р-н, Дніпропетровська
обл., 52005 (UA)

(732) **Товариство з обмеженою відповідальністю "Агросфера";**
**вул. Собінова, 1, м. Дніпропетровськ, 49083 (UA)**

(750) Товариство з обмеженою відповідальністю "Агросфера";
вул. Собінова, 1, м. Дніпропетровськ, 49083 (UA)

(770) Торгівельно-виробнича корпорація "Алеф";
вул. Собінова, 1, м. Дніпропетровськ, 49083 (UA)

(771) Торгівельно-виробнича корпорація "Алеф";
вул. Радгоспна, 76, смт Ювілейне, Дніпропетровський р-н,
Дніпропетровська обл., 52005 (UA)

(511) Кл.: 1, 5, 42

1 - Хімічні продукти, призначені для використовування в промисловості, науці, фотографії, сільському господарстві, садівництві та лісівництві; необроблені синтетичні смоли, необроблені пластмаси; добрива; хімічні речовини для гасіння вогню; препарати для термооброблення і паяння металів; хімічні речовини для консервування харчових продуктів; дубильні речовини; клейкі речовини на промислові потреби; всі товари, що включені до 1 класу.

5 - Фармацевтичні, ветеринарні і гігієнічні препарати; дієтичні речовини на лікарські потреби, дитяче харчування; пластирі, перев'язувальні матеріали; матеріали для пломбування зубів і виготовляння зубних виліпків; дезінфікувальні засоби; препарати для нищення паразитів і шкідників; фунгіциди, гербіциди; всі товари, що включені до 5 класу, в тому числі засоби захисту рослин.

42 - Забезпечування харчами і напоями; забезпечування тимчасовим житлом; лікарське, гігієнічне та косметичне доглядання; ветеринарні та сільськогосподарські послуги; правничі послуги; наукове та промислове досліджування; програмування; всі послуги, що включені до 42 класу.

Бібліографічні дані свідоцтва №35975

| | | |
|---|---|---|
| (111) | 35975 | (540) |
| (151) | 17.11.2003 | |
| (181) | **08.02.2012** | |
| (210) | 2002020890 | |
| (220) | 08.02.2002 | |
| (450) | 17.11.2003. Бюл. № 11 | |

# Вулкан

(731) Дочірнє підприємство «Кондитерська корпорація «Рошен»; бульв. Перова, 40, м. Київ, 139, 02139 (UA)

(732) **Дочірнє підприємство "Кондитерська корпорація "Рошен"; вул. Павла Усенка, 8, м. Київ, 02105 (UA)**

(740) Пікалов Сергій Юрійович; вул. Миколи Кравченка, 15, кв. 24, м. Київ, 04050 (UA)

(750) Дочірнє підприємство "Кондитерська корпорація "Рошен"; вул. Електриків, 26/9, м. Київ, 04176 (UA)

(771) Дочірнє підприємство «Кондитерська корпорація «Рошен»; бульв. Перова, 40, м. Київ, 139, 02139 (UA)

(511) Кл.: 16, 30, 35

16 - Буклети; вивіски, таблички паперові або картонні; видання друкові (друковані); друкарська продукція; етикетки, крім тканинних; інформаційні бюлетні; календарі; каталоги; коробки картонні або паперові (шабатури); кульки, пакети (паперові); мішки, конверти (торбинки), що належать до 16 класу; обгортковий папір; папір на опакування; перевідні малюнки; плакати; пластмасові плівки обгорткові; пластикові розтяжні плівки для пакування; проспекти рекламні.

30 - Борошняні кондитерські вироби; вафлі; галетне печиво; желе фруктові (кондитерські вироби); жуйки (жуйні гумки) нелікарські (немедичні); карамелі (цукерки); карамельки-таблетки (кондитерські вироби); кондитерські вироби (солодощі); ласощі для прикрашання новорічних ялинок; локричні кондитерські вироби; льодяники; марципани; печиво; помадки (кондитерські вироби); пряники; солодове сухе печиво; сухе печиво; тістечка; тонке сухе печиво (крекер); торти; пироги; халва; цукерки; цукрові кондитерські вироби; шоколад.

35 - Аукціонний продаж; вивчання ринку; влаштовування виставок на комерційні або рекламні потреби; влаштовування ярмарків на комерційні або рекламні потреби; демонстрування кондитерських виробів; ділове дослідування; допомога покупцям у виборі та придбанні продовольчих товарів, зокрема кондитерських виробів, на підприємствах роздрібної торгівлі; досліджування ринкове; імпортно-експортні агентства; оформляння вітрин; надавання консультаційних та маркетингових послуг; рекламування; розміщування в одному місці, на користь іншим особам, асортименту продовольчих товарів, зокрема кондитерських виробів, що дозволяє покупцям оглядати та купувати ці товари; розповсюджування зразків; сприяння продажеві (посередництво).

# Response Annex
# 35



# WIPO Arbitration and Mediation Center

**ADMINISTRATIVE PANEL DECISION**

**Webvan Group, Inc. v. Stan Atwood**

**Case No. D2000-1512**

## 1. The Parties

Complainant is Webvan Group, Inc., a Delaware corporation located in Foster City, California, USA.

Respondent Stan Atwood is an individual residing in Dallas, Texas, USA.

## 2. The Domain Name(s) and Registrar(s)

The domain name at issue is <internethomegrocer.com> (the "Domain Name").

The registrar is Network Solutions, Inc., in Herndon, Virginia, USA.

## 3. Procedural History

This action was brought in accordance with the ICANN Uniform Domain Name Dispute Resolution Policy, dated October 24, 1999 ("the Policy") and the ICANN Rules for Uniform Domain Name Dispute Resolution Policy, dated October 24, 1999 ("the Rules").

Complainant submitted its complaint in this proceeding on November 3, 2000. Respondent submitted its Response on November 30, 2000.

WIPO Arbitration and Mediation Center appointed Mark V.B. Partridge as panelist on January 5, 2001.

On January 19, 2001, the Panel issued Procedural Order No. 1 instructing Respondent to submit evidence to support the claims made in its Response. Respondent's submission in response to that Order were received on January 27, 2001. Complainant's reply was submitted on February 14, 2001.

## 4. Factual Background

HomeGrocer.com, Inc., a wholly owned subsidiary of Complainant, began using the mark HOMEGROCER in February, 1998. It filed applications for registration of the marks HOMEGROCER and HOMEGROCER.COM on October 9, 1997, and

May 7, 1998, respectively and now owns registrations for each.

HomeGrocer.com, Inc. provides online ordering and home delivery service of groceries and other products in various parts of the country. The HOMEGROCER mark has enjoyed substantial sales and extensive media recognition since its first use in

February, 1998. On November 9, 1999, media articles appeared in Dallas, Texas, that referred to the expansion of the HOMEGROCER services into the Dallas area.

Respondent registered the Domain Name on November 13, 1999, and has used it for an online grocery delivery service in the Dallas area. In his response, he candidly acknowledges the possibility that confusion might exist between the terms HOMEGROCER.COM and INTERNET HOME GROCER. Respondent insists, however, that the Domain Name was selected without knowledge of Complainant's plan to move into the Dallas market. In June, 2000, Respondent discontinued its services in the Dallas area .

Respondent first had knowledge of this dispute when notified of the Complainant in November, 2000.

The Procedural Order issued in this case called for Respondent to submit documentation supporting Respondent's assertions that:

1. It selected the name "internet home grocer" before Complainant made public use of the name "home grocer."

2. It made demonstrable plans to make bona fide use of name "internet home grocer" prior to knowledge of this dispute.

3. It has made bona fide use of the name "internet home grocer" to provide grocery delivery services.

4. Any other documentation it deems relevant to show that it adopted the name "internet home grocer" in good faith.

The materials submitted by the Respondent included the following:

- An invoice dated March 1, 2000, regarding server certification for the www.internethomegrocer.com site.

- Letter from Network Solutions, Inc. regarding the registration of the domain name.

- A certified Assumed Name Certificate for "Internet Home Grocer" dated January 14, 2000.

- A transaction report for orders placed with Respondent by four customers from March to November, 2000.

- A DUNS number issued by Dun & Bradstreet.


**5. Parties' Contentions**

Complainant contends that the Domain Name is confusingly similar to its mark, that Respondent has no rights or legitimate interests in the Domain Name, and that Respondent has registered and used the Domain Name in bad faith.

Respondent contends that it made bona fide use of the domain name prior to notice of this dispute and did not register or use the Domain Name in bad faith.


**6. Discussion**

To obtain relief under the ICANN Uniform Domain Name Dispute Resolution Policy, Paragraph 4(a) of the Policy requires the complainant to prove each of the following:

(i) that the domain name registered by the respondent is identical or confusingly similar to a trademark or service mark in which the complainant has rights; and

(ii) that the respondent has no rights or legitimate interest in the domain name; and

(iii) the domain name has been registered and used in bad faith.

## A. Confusing Similarity

Complainant has nationwide rights in its marks as of the filing date of its federal trademark applications, which predate the registration of the Domain Name.

While the marks are not identical, it is obvious that the Domain Name includes Complainant's mark in its entirety. Thus, the question is whether the addition of "Internet" avoids confusingly similarity. In general, the addition of a generic term to a distinctive trademark will not avoid a finding of confusing similarity when the generic term is an apt term for the good or services associated with the mark. For example, "walmartcanada.com" has been deemed confusingly similar to the WAL-MART mark. *Wal-Mart Stores, Inc. v. Walmarket Canada*, D2000-0150 (WIPO, May 2, 2000). However, when the mark is a relatively weak, non-distinctive term, courts have found that the scope of protection may be limited to the identical term and that the addition of other descriptive matter may avoid confusion.

Here, HOMEGROCER seems to be descriptive or at least highly suggestive of a service that provides home ordering and delivery of groceries. As a descriptive term, the mark should receive limited protection even though it is a registered mark. This weakness, however, seems to be offset by the promotion and media attention that the mark has received. Moreover, given that both business are Internet-based, Internet users are likely to believe that <internethomegrocer.com> is related to <homegrocer.com>. Indeed, Respondent has acknowledged that such confusion may exist. Therefore, based on the record before me, I find that <internethomegrocer.com> is confusingly similar to <homegrocer> or homegrocer.com>.

## B. Rights or Legitimate Interests

Under the Policy, legitimate interests in a domain name may be demonstrated by a showing that: (i) before any notice of this dispute, respondent used, or demonstrably prepared to use, the domain name or a name corresponding to the domain name in connection with a bona fide offering of goods or services; (ii) respondent has been commonly known by the domain name, even if no trademark or service mark rights have been acquired; or (iii) respondent is making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert customers or to tarnish the trademark at issue. Policy 4(c).

Here, the relevant question is whether Respondent made bona fide use of the domain name, or had plans to do so, prior to notice of the dispute. Of course, the fact that a domain name has been used prior to notice of the dispute is not itself sufficient to show bona fide use, otherwise the Policy could be circumvented in nearly every case. As prior decisions have noted, deliberately infringing use should not be viewed as bona fide use. See *Ciccone v. Parisi*, D2000-0847 (WIPO, October 12, 2000). However, a plausible, non-infringing explanation for selection of the domain name is evidence that the use is bona fide.

The evidence submitted by Respondent shows some effort to engage in business under the name "Internet Home Grocer" prior to notice of this dispute and it appears that a small number of transactions occurred. The name used by Respondent is an apt choice for the services rendered and it is not identical to Complainant's prior trademark. It is plausible that Respondent selected the name based on its descriptive meaning without any intent to trade on Complainant's goodwill. The bona fide nature of Respondent's use is confirmed by the fact that Respondent registered its assumed name and obtained a DUNS number before notice of this dispute. These actions evidence a demonstrable plan to engage in a bona fide business under the name INTERNET HOME GROCER and add credibility to Respondent's claim that it selected the name for the purpose of doing business.

Complainant does not challenge the validity of the Respondent's sales records. Rather, Complainant contends that four orders is insufficient to demonstrate prior bona fide use. While I agree that the amount of use is minimal, I cannot say that it is insufficient to meet the standard set by the Policy.

Based on the record presented, I find that Complainant has failed to prove that Respondent's lacks any legitimate interest in the Domain Name as required by Paragraph 4(a)(ii) of the Policy.

## C. Bad Faith Registration and Use

I also find that Complainant has failed to show bad faith registration and use under the Paragraph 4(a)(iii). There is no indication that Respondent registered the Domain Name with the intent of selling it for profit. Rather, the evidence indicates that Respondent registered the Domain Name for the purpose of engaging in the Internet grocery business.

Respondent's domain name registration does not prevent Complainant from reflecting its marks as a domain name or disrupt the business of a competitor.

A closer question is whether Respondent intentionally attempted to attract, for commercial gain, Internet users to a web site by creating a likelihood of confusion with the complainant's mark. Policy 4(b)(iv). The evidence in support of this contention is the confusingly similarity of the names, the fact that Complainant's mark was in use at the time the Domain Name was registered, and the fact that an announcement about Complainant's expansion plans to Dallas appeared in Respondent's local press a few days prior to registration of the Domain Name.

Respondent denies knowledge of Complainant's expansion plans, stating: "At no time did we ever obtain our name because we were aware of "homegrocer.com's" plan to penetrate the [Dallas] market. It was purely coincidental." That claim is plausible. The Dallas news article submitted by Complainant is primarily about another online grocery business, GroceryWorks.com and only mentions HomeGrocer in passing. The reference could easily have gone unnoticed. At the time Complainant registered the Domain Name, it is admitted that HomeGrocer was not yet providing services in the Dallas area.

Respondent's stated reason for adopting the Domain Name is also plausible: "The term 'internet home grocer,' which is how we advertised our services in the Dallas area, was adopted in order for us to identify ourselves as an online grocery delivery service. Because of the nature of our business, we felt the work 'internet' was needed in order for us to identify and market ourselves as an online entity."


## 7. Conclusion

I conclude that Complainant has failed to prove that Respondent lacks rights or legitimate interest in the Domain Name, or that Respondent registered and used the Domain Name in bad faith. Therefore, I find in favor of Respondent and deny Complainant's request for transfer of the <internethomegrocer.com> Domain Name.

---

Mark V B Partridge
Sole Panelist

Dated: February 20, 2001

# Response Annex 36

**WIPO**

WORLD **INTELLECTUAL PROPERTY** ORGANIZATION

# WIPO Arbitration and Mediation Center

## ADMINISTRATIVE PANEL DECISION

## Mile, Inc. v. Michael Burg

## Case No. D2010-2011

### 1. The Parties

The Complainant is Mile, Inc. of Worthington, Ohio, United States of America represented by Schottenstein, Zox & Dunn, Co., L.P.A., United States of America.

The Respondent is Michael Burg of Lebanon, New Hampshire, United States of America, represented by AlvaradoSmith, APC, United States of America.

### 2. The Domain Name and Registrar

The disputed domain name <lionsden.com> (The "Domain Name") is registered with Network Solutions, LLC (The "Registrar").

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on November 22, 2010. On November 23, 2010, the Center transmitted by email to the Registrar a request for registrar verification in connection with the Domain Name. On November 23, 2011, the Registrar transmitted by email to the Center its verification response confirming that the Respondent is listed as the registrant and providing the contact details. The Center verified that the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondent of the Complaint, and the proceedings commenced November 29, 2010. In accordance with the Rules, paragraph 5(a), the due date for Response December 19, 2010. The Response was filed with the Center on December 19, 2010. On January 12, 2011, the Complainant filed a Supplemental Submission.

The Center appointed W. Scott Blackmer, David H. Bernstein, and David E. Sorkin as panelists in this matter on January 14, 2011. The Panel finds that it was properly constituted. Each member of the Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

### 4. Factual Background

The Complainant, a retailer of adult videos, sex products, and lingerie, is a corporation organized under Ohio law and headquartered in Worthington, Ohio, United States of America. The Complainant operates 40 retail stores in 18 states of the United States, as well as a commercial website at "www.lionsdenadult.com."

The Complainant uses the service mark THE LION'S DEN to identify its stores and website, holding United States Trademark Registration No. 2,301,567 for this standard-character mark. The mark was registered December 21, 1999, with commercial use claimed since February 1971.

The Domain Name was registered on May 8, 1995. According to the Response and the Declaration of Mr. Burg, the Respondent is an individual residing in Lebanon, New Hampshire, United States of America. The Respondent states that he registered the Domain Name for personal use and has continuously owned the Domain Name since May 1995. The Respondent states that he owns some fifteen domain names, including another incorporating the word "lions" (<lionsburg.com>), and uses them for "family email, personal projects, and hobbies."

It is undisputed that, in October and November 2010, the Domain Name resolved to a pay-per-click ("PPC") advertising website with links to a variety of commercial and informational websites. As demonstrated by screenshots furnished with the Complaint, the PPC website has at times prominently featured links for adult products such as "sexy lingerie" competing with products sold by the Complainant. Links on the PPC website have in some instances been labeled similarly to the Complainant's mark, such as "Lions Den Adult Superstore" and "Lions Den Retail Store." One printout shows that the PPC website formerly included a link to the Complainant's website. Currently, the website associated with the Domain Name displays only unrelated banner advertising.

## 5. Parties' Contentions

### A. Complainant

The Complainant asserts that the Domain Name is confusingly similar to its mark THE LION'S DEN, for which it claims common law protection since 1971, and that the Respondent has no rights or legitimate interests in the Domain Name.

The Complainant infers from the PPC website formerly associated with the Domain Name that the Respondent registered and used the Domain Name in bad faith, in an attempt to mislead Internet users and exploit the Complainant's mark for commercial gain.

### B. Respondent

The Respondent argues that the Complainant does not have exclusive rights to use the phrase "the lion's den" and that the Respondent is not a competitor and has not infringed on the Complainant's trademark rights.

The Respondent denies any knowledge of the Complainant or its mark prior to this dispute. He observes that the mark was not registered until four and a half years after the Domain Name registration and also that the Complainant does not operate retail stores in New Hampshire, where the Respondent resides, or, indeed, in the New England region.

The Respondent contends that he used the Domain Name for years as an email address and for a personal website and only recently subscribed to Google Adsense to obtain PPC advertising revenue from a website associated with the Domain Name. The Respondent refers to the Internet Archive's Wayback Machine for evidence of his previous personal website. However, the Wayback Machine currently indicates that access to historical versions of the website associated with the Domain Name has been "blocked by the site owner via robots.txt."

The Respondent also asks the Panel to apply the equitable doctrine of laches to deny the Complaint, which was brought fifteen years after the Respondent first registered the Domain Name.

## 6. Discussion and Findings

Paragraph 4(a) of the Policy provides that, in order to divest a respondent of a domain name, a complainant must demonstrate each of the following:

(i) the domain name is identical or confusingly similar to a trademark or service mark in which the complainant has rights; and

(ii) the respondent has no rights or legitimate interests in respect of the domain name; and

(iii) the domain name has been registered and is being used in bad faith.

Under paragraph 15(a) of the Rules:

"A Panel shall decide a complaint on the basis of the statements and documents submitted and in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

### A. Supplemental Submission

The Policy contemplates prompt, efficient resolution of domain name disputes on a narrow range of issues and with only two limited remedies, transfer or cancellation of a domain name. Accordingly, the Rules and Supplemental Rules contemplate only a complaint and response, with strict time and page limits. There is no explicit provision for additional filings except for further statements or documents provided in response to a request from the Panel (Rules, paragraph 12). Paragraph 10 of the Rules directs the Panel to conduct the proceeding "with due expedition" and empowers the Panel to "determine the admissibility, relevance, materiality and weight of the evidence." Panels are consequently reluctant to encourage delay through additional rounds of pleading and typically accept supplemental filings only to consider new evidence or provide a fair opportunity to respond to new arguments. See, *e.g.*, *The E.W. Scripps Company v. Sinologic Industries*, WIPO Case No. D2003-0447, which ably describes appropriate criteria for considering supplemental filings.

The Complainant's Supplemental Submission offers rebuttal arguments on several issues, including the Respondent's asserted defense of laches, and challenges certain factual assertions in the Response concerning the registration and use of the Domain Name. The Supplemental Submission does not offer evidence that was previously unavailable on these points. The Panel considers the Complainant's reply to

the Respondent's laches argument (an issue Complainant may not have anticipated being raised), which is discussed further below, but otherwise declines to accept the Supplemental Submission as a part of the record in this proceeding.

## B. Laches

The Respondent argues that the Complaint should be denied because the Complainant has allowed the Domain Name to be used unchallenged for fifteen years:

"At some point, a domain name registrant is entitled to quiet enjoyment of his domain name, free from the fear that a trademark owner can take it from him by a UDRP."

The parties in the current proceeding are both located in the United States, where courts recognize the equitable doctrine of laches, which can result in the dismissal of a complaint for undue delay in asserting legal claims. However, in the United States, the defense of laches typically bars the recovery of *damages* incurred before the filing of a lawsuit, and courts have concluded that the rationale behind the doctrine of laches does not militate against injunctive relief in a trademark action that seeks to avoid future confusion in the marketplace. See 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (4th ed. 2005) §31:10, p. 31-35 and cases cited therein. The remedies under the Policy are similarly injunctive rather than compensatory in nature, and the focus is on avoiding confusion in the future as to the source of goods or services. Thus, UDRP panels have generally declined to apply the doctrine of laches. See, *e.g.*, *Progman Consulting Oy v. Whois Watchdog*, WIPO Case No. D2010-1393 ("It is by now well established that trademark doctrines of laches or estoppel have not been incorporated into the Policy"); *The E.W. Scripps Company, supra* (the Policy does not contemplate a defense of laches, which is inimical to the Policy's purposes); see also cases cited in the Index of WIPO UDRP Panel Decisions, sec. III(G)(1)(c).

The Respondent cites a recent UDRP decision, *The New York Times Company v. Name Administration Inc. (BVI)*, NAF Claim No. 1349045. There, the panel rejected the complainant's contentions that the respondent had no rights or legitimate interests in the disputed domain name, and that the respondent had registered the domain name in bad faith, because the panel found that "Respondent's rights are senior to Complainant's." The panel also concluded that "the circumstances of this case are the type that support a decision for the Respondent based on laches." The panel opined that "the doctrine of laches should be expressly recognized as a valid defense in any domain dispute where the facts so warrant," on the theory that an administrative proceeding offering an essentially equitable remedy (transfer of a disputed domain name) should also recognize equitable defenses such as laches.

The Panel in the current proceeding declines to endorse this approach. As noted above, the Policy offers a limited remedy to avoid future confusion in the marketplace, and it does not contemplate that such a remedy would be unavailable because of delay in instituting a Policy proceeding. However, the Panel observes that lengthy delays in seeking legal or administrative remedies can often have the effect of eroding or undermining the complainant's arguments with respect to the respondent's rights or legitimate interests in the disputed domain name, or the respondent's alleged bad faith in registering and using the domain name. The Panel considers it more appropriate to address such issues squarely within the terms of paragraphs 4(a)(ii) and (iii) of the Policy, rather than analyzing them under the equitable doctrine of laches.

## A. Identical or Confusingly Similar

The Complainant indisputably has rights in the registered mark THE LION'S DEN. The Domain Name is nearly identical, omitting only the article "the" and the punctuation and spaces that are not technically possible to include in DNS addresses.

The Respondent's contentions concerning priority and non-infringing use are inapposite. The Policy is not based on proof of trademark infringement. Rather, this "standing" element of the Policy concerns only the identity or confusing similarity of the Domain Name and a mark in which the Complainant currently has rights. UDRP panels typically apply a "low threshold" test for confusing similarity under the first element of a Policy complaint, proceeding to the merits of the case under the other elements of the Policy if there is "sufficient similarity" between the disputed domain name and the relevant trademark. See, *e.g.*, *Research in Motion Limited v. One Star Global LLC*, WIPO Case No. D2009-0227; *Sermo, Inc. v. CatalystMD, LLC*, WIPO Case No. D2008-0647. This is commonly tested by comparing the mark and the disputed domain name in appearance, sound, meaning, and overall impression.

In cases involving slight differences in punctuation or spelling, UDRP panels regularly find sufficient similarity to proceed to a consideration of the other Policy elements. See, *e.g.*, *Teva Pharmaceutical USA, Inc. v. Mode L*, WIPO Case No. D2007-0369 (finding the domain name <adipexp.com> confusingly similar to the trademark ADIPEX-P because they are "pronounced in the same way despite the removal of the dash"). As stated in *Advance Magazine Publishers Inc. d/b/a Condé Nast Publications v. MSA, Inc. and Moniker Privacy Services*, WIPO Case No. D2007-1743:

"Panels have routinely held that the question under paragraph 4(a)(i) of the Policy is simply whether the alphanumeric string comprising the challenged domain name is identical to the Complainant's mark or sufficiently approximates it, visually or phonetically, so that the domain name on its face is 'confusingly similar' to the mark."

The Panel finds that the Domain Name is visually and phonetically confusingly similar to the Complainant's mark and concludes that this element of the Policy has been satisfied.

## B. Rights or Legitimate Interests

Although the Complainant bears the ultimate burden of establishing all three elements of paragraph 4(a) of the Policy, panels have recognized that this could result in the often impossible task of proving a negative proposition, requiring information that is primarily if not exclusively within the knowledge of the Respondent. Thus, the consensus view is that paragraph 4(c) of the Policy shifts the burden to the Respondent to come forward with evidence of a right or legitimate interest in the Domain Name, once the Complainant has made a *prima facie* showing indicating the absence of such rights or interests. See, *e.g., Document Technologies, Inc. v. International Electronic Communications Inc.*, WIPO Case No. D2000-0270.

Here, the Complainant relies on the fact that there is no evidence, apart from the Burg Declaration, that the Respondent used the Domain Name for anything but a PPC website, which in some instances advertised competing products. This effectively shifts the burden to the Respondent to demonstrate rights or legitimate interests in the Domain Name.

The Response says that the Domain Name was chosen with reference to the "lions den" from which the ancient prophet Daniel was delivered in the Biblical account (which is the source of a common expression for being placed in dire circumstances). This is not mentioned in the Burg Declaration, however, and the Respondent has not offered evidence of any planned use of the Domain Name consistent with this generic meaning. Screenshots of the PPC website formerly associated with the Domain Name indicate that Google Adsense servers automatically displayed links to the Complainant and to competitors, as well as to biblical websites and unrelated commercial websites.

The Burg Declaration claims the Respondent's interest in using the Domain Name for a "personal" website and email. But the Respondent offers as supporting evidence of such use only a link to archived versions of the website, which the Respondent has now apparently disabled with robots.txt.

On the present record, then, the Panel does not find that the Respondent has presented sufficient evidence of rights or legitimate interests in the Domain Name to rebut the Complainant's *prima facie* case to the contrary. The Panel concludes that the second element of the Complaint has been established.

## C. Registered and Used in Bad Faith

The Policy's non-exhaustive list of instances of bad faith in paragraph 4(b) includes the following:

"(iv) by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your web site or location or of a product or service on your web site or location."

The Complainant argues that this is precisely how the Respondent has used the Domain Name, at least since associating it with a PPC advertising service that prominently featured links to the Complainant and its competitors. The Burg Declaration denies such intent. However, given the Panel's conclusion below on the issue of bad faith in the registration of the Domain Name, it is unnecessary to address the issue of the Respondent's responsibility for the automated PPC advertising links displayed on the website that was associated with the Domain Name for some period of time.

The Policy, paragraph 4(a)(iii), obliges the Complainant to establish that the Domain Name "has been registered and is being used in bad faith." The consensus view since the Policy was implemented in 1999 has been that the conjunctive "and" indicates that there must be bad faith both at the time of registration and subsequently. Apart from unusual cases of a respondent's advance knowledge of a trademark, it is not logically possible for a respondent to register a domain name in bad faith contemplation of a mark that does not yet exist or of which the respondent is not aware. See WIPO Overview of WIPO Panel Views on Selected UDRP Questions, paragraph 3.1, and cases cited therein ("Normally speaking, when a domain name is registered before a trademark right is established, the registration of the domain name was not in bad faith because the registrant could not have contemplated the complainant's non-existent right.") By contrast, the dispute resolution policies for some top-level domains, such as ".eu" and ".uk", state the requirement disjunctively, expressly providing that a complainant may prevail by establishing bad faith in the registration "or" use of the domain name.

The consensus view that the Policy requires bad faith at the time of registration of the domain name has been challenged in some recent UDRP decisions, prominently *City Views Limited v. Moniker Privacy Services / Xander, Jeduyu, ALGEBRALIVE*, WIPO Case No. D2009-0643 ("*Mummygold*") and *Octogen Pharmacal Company, Inc. v. Domains By Proxy, Inc. / Rich Sanders and Octogen e-Solutions*, WIPO Case No. D2009-0786 ("*Octogen*"); see also *Ville de Paris v. Jeff Walter*, WIPO Case No. D2009-1278; *Jappy GmbH v. Satoshi Shimoshita*, WIPO Case No. D2010-1001. These decisions treat the requirement to establish that the respondent "registered and used the domain name in bad faith" as a "unified concept."

The *Mummygold/Octogen* approach draws support from the fact that the example of bad faith given in paragraph 4(b)(iv) of the Policy describes a use of the domain name at some time following registration. In the view of the current Panel, however, this example does not alter the conjunctive requirement of paragraph 4(a)(iii). Evidence of subsequent use as described in paragraph 4(a)(iii) often gives rise to an inference of the respondent's intent to make such use of the domain name from the time the Respondent selected and registered it. Moreover, paragraph 4(b)(iv) is listed as "evidence of the registration and use in bad faith"; it is not listed as conclusively demonstrating registration and use in bad faith. (Compare Policy paragraph 4(c), which lists examples of conduct that "shall demonstrate your rights or legitimate interests")[1].

More fundamentally, the *Mummygold/Octogen* decisions depend on the Respondent's representation and warranty in the registration agreement (in language mandated by the Policy, paragraph 2) that in registering a domain name, and in maintaining or renewing a registration:

"you will not knowingly use the domain name in violation of any applicable laws or regulations. It is your responsibility to determine whether your domain name infringes or violates someone else's rights."

The *Mummygold/Octogen* panels observed that this warranty could be breached by post-registration abuses and concluded, as expressed in *Octogen*, that such conduct "may be deemed to be retroactive bad faith registration."

The current Panel recognizes the value, in appropriate cases, of inferences of original intent based on subsequent conduct. But the Panel does not find a compelling Policy or legal basis for retroactively characterizing later abuses as bad faith in the "registration" of a domain name. In company with other panels that have critiqued the *Mummygold/Octogen* decisions, this Panel is unwilling to overlook the plain language of paragraph 4(a)(iii) of the Policy requiring a conclusion that the domain name has been "registered" *and* "used" in bad faith. See, *e.g.*, *Validas, LLC v. SMVS Consultancy Private Limited*, WIPO Case No. D2009-1413; *Eastman Sporto Group LLC v. Jim and Kenny*, WIPO Case No. D2009-1688. In the Panel's opinion, reading "registered" as a continuous act that can be abused at any time would appear to make it essentially synonymous with "use" and deprive the conjunctive phrase of its full meaning.

The Panel is concerned as well that the *Mummygold/Octogen* reasoning runs counter to a decade of decisions addressing the UDRP's conjunctive requirements for a demonstration of bad faith. This Panel subscribes to the ideal of striving for a reasonable degree of predictability in Policy decisions, to guide domain name registrants and trademark owners. As articulated in the WIPO Overview, paragraph 4.1:

"The UDRP does not operate on a strict doctrine of precedent. However panels consider it desirable that their decisions are consistent with prior panel decisions dealing with similar fact situations. This ensures that the UDRP system operates in a fair, effective and predictable manner for all parties."

If a consensus developed that a line of prior decisions had reached the wrong result, and if panels generally adopted a new approach on an issue, this Panel also would be open to considering whether a new approach was appropriate, both substantively under the Policy and in order to promote consistency. However, the *Mummygold/Octogen* reasoning has not prompted any such consensus; to the contrary, a number of decisions have expressly considered and rejected it. See, e.g., *Validas*, *supra*; *Eastman Sporto, supra*; *Torus Insurance Holdings Limited v. Torus Computer Resources,* WIPO Case No. D2009-1455; *Camon S.p.A. v. Intelli-Pet, LLC,* WIPO Case No. D2009-1716; *Tata Communications International Pte Ltd (f/k/a VSNL International Pte Ltd) v. Portmedia Inc. / TRUEROOTS.COM c/o Nameview Inc. Whois,* WIPO Case No. D2010-0217 (majority opinion); *Burn World-Wide, Ltd. d/b/a BGT Partners v. Banta Global Turnkey Ltd,* WIPO Case No. D2010-0470; *A. Nattermann & Cie. GmbH and Sanofi-aventis v. Watson Pharmaceuticals, Inc.*, WIPO Case No. D2010-0800 (majority opinion). The fact that so many panelists have declined to follow the *Mummygold/Octogen* approach argues against an emerging consensus to overturn a long-established doctrine and provides yet another reason for this Panel to decline to adopt the *Mummygold/Octogen* reasoning.

The Panel emphasizes that its decision not to follow *Mummygold* and *Octogen,* does not discount the relevance of paragraph 2 of the Policy to the question of bad faith registration in appropriate cases. Paragraph 2 of the Policy requires a domain name registrant "to determine whether your domain name infringes or violates someone else's rights." That may create an obligation on a registrant to conduct some due diligence in order to determine whether the domain name at issue infringes any third party rights, especially if the registrant intends to use it for commercial purposes such as a PPC website. *Cf. Mobile Communication Service Inc. v. WebReg, RN,* WIPO Case No. D2005-1304. In this case, though, Respondent has persuasively shown that he registered the Domain Name for personal purposes and was inspired by the biblical meaning and common usage of the Domain Name, not Complainant's trademark. In these circumstances, where the intended use at the time of registration was noncommercial and the Respondent is not a professional domainer, the registration cannot be considered to have been in bad faith because the use to which Respondent intended to put the Domain Name, at the time of registration, could not be considered infringing. *Cf. mVisible Technologies, Inc. v. Navigation Catalyst Systems, Inc.*, WIPO Case No. D2007-1141 ("[A] sophisticated domainer who regularly registers domain names for use as PPC landing pages cannot be willfully blind to whether a particular domain name may violate trademark rights. In this context, a failure to conduct adequate searching may give rise to an inference of knowledge.").

Having decided that the Complainant must adduce persuasive evidence of bad faith at the time of registration of the Domain Name, the Panel finds the Complaint fatally deficient[2]. The Complainant contends that the Respondent must have been aware of the Complainant's mark when the Respondent registered or obtained the Domain Name. The mark was registered only in December 1999, however, four and a half years after the Domain Name was created in May 1995. The Burg Declaration states that the Respondent registered the Domain Name at that time and has continuously maintained the registration since, and that the Respondent was not aware of the Complainant or its mark in 1995.

The Complainant speculates that the Respondent actually may have obtained the registration at some later date, but there is no persuasive evidence of this in the record. The Complainant has not, for example, submitted archived versions of historical WhoIs database records, such as those that might be available from DomainTools.com, showing that the Domain Name was previously registered to another party. This is the sort of evidentiary issue that might be more fully explored in litigation than in a UDRP administrative

proceeding in which there are no discovery procedures or evidentiary hearings. The Panel finds the statements in the Burg Declaration, signed under penalty of perjury, to be credible and consistent with the limited record available in this proceeding.

The Respondent plausibly denies prior knowledge of the Complainant's adult stores and website. He does not reside in a metropolitan area where one of the stores is located, and there is no evidence before the Panel indicating that the Complainant even operated a website in 1995. Indeed, according to the relevant Registrar's WhoIs database, the Complainant did not register the domain name currently used for its website until August 1999, more than four years after the Respondent registered the Domain Name. Thus, even if the Panel were to accept the Complainant's claim of common law trademark rights in 1995, there is no persuasive evidence that the Respondent was likely aware of the Complainant's mark. There is no evidence in the record, for example, of direct dealings between the Complainant and the Respondent or of pervasive advertising and publicity in 1995 that would cast doubt on the Respondent's denial. It appears from the record that the Respondent's PPC use of the Domain Name, with links relevant to the Complainant's business, did not commence until several years after the Respondent registered the Domain Name.

Accordingly, the Panel concludes that the Complainant has not met its burden of establishing the probability that the Respondent registered the Domain Name in a bad faith effort to exploit the Complainant's mark.

## 7. Decision

For all the foregoing reasons, the Complaint is denied.

W. Scott Blackmer
Presiding Panelist

David H. Bernstein
Panelist

David E. Sorkin
Panelist
Dated: February 7, 2011

---

[1] "Section 6 above makes now reference to paragraph 4(b)(iv) of the Policy. When the decision was originally issued, paragraph 4(b)(iii) of the Policy was mentioned, but the typographical error has been subsequently identified and corrected."

[2] The Panel notes that the representations required by paragraph 2 of the Policy apply to the renewal as well as the initial registration of a domain name: "By applying to register a domain name, *or asking us to renew a domain name registration*, you hereby represent and warrant to us that ... (d) you will not knowingly use the domain name in violation of any applicable laws or regulations. It is your responsibility to determine whether your domain name infringes or violates someone else's rights." Policy, paragraph 2 (emphasis

added). However, it is not necessary for the Panel in this proceeding to determine whether the Respondent's intentions at the time of renewal reflect bad faith in the "registration" of the Domain Name, as there is no evidence in the record concerning the renewal of the Domain Name registration.

# Response Annex 37



# WIPO Arbitration and Mediation Center

**ADMINISTRATIVE PANEL DECISION**

**WWF-World Wide Fund for Nature aka WWF International v. Moniker Online Services LLC and Gregory Ricks**

**Case No. D2006-0975**

## 1. The Parties

The Complainant is WWF-World Wide Fund for Nature aka WWF International, (formerly World Wildlife Fund), Gland, Switzerland, represented by Edwin Coe, United Kingdom of Great Britain and Northern Ireland.

The Respondents are:

(i) Moniker Online Services LLC, Florida, United States of America; and

(ii) Gregory Ricks, Texas, United States of America, represented by John B. Berryhill, Ph.d. Esq., United States of America.

## 2. The Domain Name and Registrar

The disputed Domain Name <wwf.com> is registered with Moniker Online Services, LLC.

## 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on August 2, 2006. On August 3, 2006, the Center transmitted by email to Moniker Online Services, LLC ("Moniker") a request for registrar verification in connection with the Domain Name at issue. On August 8, 2006, Moniker transmitted by email to the Center its verification response. It advised that Gregory Ricks was the registrant (371299) and provided contact details for his administrative, billing, and technical contacts. In response to a notification by the Center that the Complaint should show Mr. Ricks as another Respondent, the Complainant filed, under protest, an amendment to the Complaint on August 30, 2006. The Center verified that the Complaint, together with the amendment to the Complaint, satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondent of the Complaint, and the proceedings commenced on August 31, 2006. In accordance with the Rules, paragraph 5(a), the due date for the Response was September 20, 2006. The Response was filed with the Center on September 20, 2006 by Mr. Ricks.

The Center appointed the Honorable Sir Ian Barker QC, Mr. Kiyoshi I. Tsuru and Professor David E. Sorkin as panelists in this matter on September 29, 2006. The Panel finds that it was properly constituted. Each member of the Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

On September 21, 2006, the Complainant lodged with the Center a witness statement from its solicitor, Mr. Clark, seeking to comment on one particular matter raised in the Response, namely the date on which Mr. Ricks acquired the disputed Domain Name. This statement suggested that the disputed Domain Name had been acquired by Mr. Ricks on January 20, 2003, and not "in late 2003" as stated by Mr. Ricks in a statement annexed to the Response.

The Respondent, to whom the Complainant had copied the statement of Mr. Clark, filed a memorandum both acknowledging his

mistake and also commenting on additional material in Mr. Clark's statement. The Respondent had alleged in his initial statement, made under penalty of perjury, that promptly upon purchase of the Domain Name, he had set up the Web Wrestling Forum. A later similar declaration claimed that he had "confused" the timeframe within which he had set up the Web Wrestling Forum with the time of purchase of the Domain Name and that his error had been unintentional.

The Panel, on October 6, 2006, issued a Procedural Order indicating that these two documents would be considered by the Panel which would then make a decision whether to admit them once it had consideration. The Panel noted that no application had been made for leave by the Complainant to file this document.

Parties have been reminded many times by WIPO Panels that there is no right as such to make supplementary filings and that the leave of the Panel should always be obtained rather than presumed. In the event, because the supplementary filings proved the date of the registration of the disputed Domain Name, an important fact in this case, the Panel has decided to consider these filings.

On October 13, 2006, the Panel requested comment from the parties on a demand that had been made to the Center by Moniker that it be removed from the proceedings on the ground that Mr. Ricks was now shown in the WHOis information as the registrant. The Panel also sought a report from Moniker on how the registration had changed after the Complaint had been filed, if that was what had occurred. The answers provided have been considered by the Panel.

On October 20, 2006, the parties and Moniker sought to file further submissions. The Panel refused this unmotivated request. The Panel considered that the parties had had ample opportunity to present their cases, including the filing of further submissions already.

On October 20, 2006, the Panel noted with concern and disapproval the unnecessarily large volume of documents produced by the Complainant in support of its Complaint. The exhibits weighed some five kilograms.

In the Panel's view, for example, it was not necessary for the Complainant to have exhibited the text of so many different trademark registrations (some in languages other than English – the language of the registration agreement) from a whole variety of countries with which the Respondent has no connection. One should have thought it sufficient for the relevant United States trademark to have been exhibited along with a summary of registration details of trademarks in other countries. In general, there was what can only be described as an "overkill" of documentation by the Complainant in areas where a summary would have sufficed. Such "overkill" is oppressive for both the Center and the Panel. Submission of such a large amount of documentation with a complaint gives rise to a prima facie presumption that the dispute is not readily susceptible to the streamlined adjudication process available under the UDRP.


## 4. Proper Respondent(s)

The name of the Registrant of the disputed Domain Name at the time when the Complaint was filed was Moniker Privacy Services. After the Complaint had been filed, the Center sought particulars of the registration and was advised by Moniker that Mr. Gregory Ricks was the registrant and his details were provided immediately.

From the material before the Panel, it transpires that Mr. Ricks acquired the disputed Domain Name through a privacy service operated by Moniker, known as Moniker Privacy Services. His aim in using a privacy service, as alleged in the Response, was to avoid unwanted junk and spam email and telephone solicitations made on the basis of information published in the WHOis database. Mr. Ricks acknowledged that the Domain Name had been registered by him using the Moniker Proxy service. The Complaint was amended at the request of the Center to show both Moniker and Gregory Ricks as Respondents. The Complainant had opposed this request but in the end went along with it.

Mr. Ricks has acknowledged his involvement as the registrant and has invited the Panel to regard his conduct as that of the Respondent for the purposes of decision. It is accordingly appropriate to refer to him as the Respondent. References hereafter to the Respondent will be to Mr. Ricks.

Mr. Ricks used a proxy service to achieve registration of the disputed Domain Name. This is becoming an increasingly common occurrence. Under this arrangement the name of the true registrant is not displayed in the Registrar's WHOis database. It is said that proxy registrations have become popular with the rise of automatic harvesting of email and postal addresses and telephone numbers for the purpose of email spamming, direct marketing by mail and phone and also for fraud and identity theft. (See *Fifth Third Bancorp v. Secure Whois Information Service,* WIPO Case No. D2006-0696.)

In the early days of cases under the Policy, there were numerous instances where respondents had provided false or misleading contact information. The famous *Telstra v. Nuclear Marshmallows,* WIPO Case No. D2000-0003, is a good example. In almost all those cases, Panels were able to take a rather jaundiced view of the provision of false information by registrants hiding behind an alias or the name of some other person. However, there can be wholly legitimate reasons for a person wishing to protect privacy by means of a proxy service. Many reputable registration services now offer a proxy registration service.

Difficulty arises when an administrative proceeding is brought under the Policy, at which stage the domain name should become frozen pending resolution of the Complaint. Without addressing here the proper position vis à vis trademark owners making enquiries in the context of a possible complaint, it is for the Proxy to disclose the contact information of the beneficial owner to the dispute resolution provider and any Panel appointed by that provider. In the present case, full disclosure of Mr. Ricks' beneficial ownership of the disputed Domain Name has been made by Moniker. But there could be difficulty if the Proxy did not do so. There is a potential for abuse by cybersquatters.

Clause 3.7.7.3 of the ICANN Registrar Accreditation Agreement is relied on by Moniker and provides as follows:

"Any Registered Name Holder that intends to license use of a domain name to the third party is nonetheless a registered domain holder of record that is responsible for providing its own full contact information and providing and updating accurate administrative contact information that it could to facilitate timely resolution of any problems that arise in connection with a registered domain name. A Registered Domain Name Holder licensing use of a registered name according to this provision shall accept liability for harm caused by wrongful use of the registered name, unless it promptly discloses the identity of the licensee to the party providing the Registered Name Holder reasonable evidence of actionable harm."

The Panel is not satisfied that the above clause really covers the proxy phenomenon. It seems to refer to the licensing of the use of a domain name in much the same way as to the licensing of the use of a trademark.

Once it was aware of the Complaint, Moniker should not have changed the publicly-available WHOis information as to the identity of the registrant, in addition to making the above-mentioned disclosure. It has taken on the responsibility of the registration of domain names on behalf of another and presumably, has obtained some business advantage for this service. One of the consequences of this mode of doing business is that during the pendency of a UDRP proceeding the Proxy as registrant cannot change the domain name registration or transfer it to the beneficial owner.

Under the Policy and Rules as presently worded, any transfer of the name of the registrant, no matter how well-intentioned, should not occur because of paragraph 8(a) of the Policy. Nor is proxy registration the same thing as naming the true registrant in the register but giving the registrant's address as being care of the Registrar. The Panel further notes that any transfers by proxy holders in the context of a UDRP case also raise questions as to how to ensure that the transferee was indeed the beneficial owner for whom that registration had been made.

If the Complainant were to prevail in this proceeding, then there would normally have to be a transfer from the registrant (in this case Moniker) to the Complainant in terms of the Policy, despite the underlying beneficial ownership.

The Panel in the *Fifth Third Bancorp* case considered that the party who registered the domain name is a proper respondent in a UDRP proceeding. However, this Panel disagrees with the view expressed in that case that the Policy does not contemplate *in rem* proceedings against the Domain Name as if it were a certain kind of property such as land or ships where the register is paramount. Because of the complications that may arise from the use of proxies or indeed from cases where wholly fictitious registration information has been provided and the true registrant cannot be known, then there is much to be said for considering the disputed Domain Name as an asset *in rem* susceptible to a cancellation or transfer order. That would make the system similar with, for example, land registration under the Torrens system (used in many common law jurisdictions) or ship registration. It may also offer a practical approach in the context of the UDRP to the increasing use of automated registration programs, which seem to make 'moving targets' out of registrants.

Indeed, the definition of Respondent in the Rules "*means the holder of a domain name registration against which a Complaint is initiated*". The Rules seem to contemplate only the holder of the registration as the respondent. The practice of having naming both the Proxy Service and the beneficial owner of the registration was followed in two recent WIPO decisions *Midwest/GRS Inc and Others v. Moniker Privacy Services/Forum LLC/Registrant 187640 info@fashionid.com*, WIPO Case No. D2006-0478 and *MBI, Inc. v. Moniker Privacy Services/Nevis Domains LLC*, WIPO Case No. D2006-0550.

The procedure in proceedings involving a proxy WHOis service was described in *Ohio Savings Bank v. 1&1 Internet, Inc. and David Rosenbaum*, WIPO Case No. D2006-0881 as follows:

"When such circumstances arise, the Panel understands that the Center's current practice is typically to require the complainant to amend the complaint – either to name both the privacy service registrant and the party using the privacy service or to simply name the party using the privacy service. This practice is sensible and has the benefit of trying to get notice of the proceeding to the party that is most affected the proceeding. However, it may simply be that one of the disadvantages of using a privacy service – to be weighed against the advantages of using such a service – are delays or lack of notice of proceedings that rely on the information contained in the registration record to provide notice. By this the Panel does not intend to suggest that such a delay or lack of notice is insignificant, but that they may simple be one of the consequences of the choice to use such a service, particularly where proceedings under the Policy look to and rely on information in the registration record maintained by the registrar."

The practice of having two Respondents to a proceeding under the Policy where one is the entity against which any order has to be made and the other is the party vitally interested in the outcome and whose conduct is in issue is well-recognised in litigation and in rules of civil procedure – certainly in common law jurisdictions, as it helps to inform interested parties. This may not always be practicable, however, and in any event is not a requirement under the Policy or Rules, which are predicated on the responsibility of the registered holder of the domain name.

Moniker made a preemptory demand to the Center that its name be discharged from the proceedings. The Panel referred this request to the parties for comment. It also requested Moniker to advise whether the name of the registrant had been changed and its justification for so doing. The Complainant insisted that Moniker should remain and the Respondent submitted that it should not but it was indifferent. The Panel has considered these comments.

Moniker replied to this invitation somewhat acerbically. It challenged the right of the Center to make the enquiry. It relied on Clause 3.7.7.3 of the Registrar Accreditation Agreement, cited earlier, as a justification for showing Mr. Ricks as registrant on receipt of the Complaint.

It is not part of the Panel's functions to adjudicate on a registrar's obligations except to the extent those obligations impinge on a UDRP complaint. The Panel, as indicated earlier, does not read that clause in that way, but this proceeding provides no forum for the proper disposition of that point of interpretation. All the Panel can do is make its own interpretation of the clause which does not, on its terms, permit a change in the publicly notified registrant while a complaint about the disputed Domain Name remains unresolved.

The Panel considers that this Complaint should proceed with both named parties for the reasons discussed above. It should be stressed that Moniker remains a *pro forma* respondent: that the conduct to be discussed in this decision is that of Mr. Ricks and not that of Moniker and that Moniker has acted promptly in supplying Mr. Ricks' details.

## 5. Factual Background

The Complainant is a Swiss-registered charitable organization founded in 1961 as World Wildlife Fund. It is now known as WWF Worldwide Fund for Nature and also as WWF International. It is the largest private international nature organization in the world. Via affiliated national organizations, it has virtually a worldwide presence, having some 5 million individual contributors. Over the last 10 years, it had been engaged in 3682 conservation programs in 184 different countries.

Generally, the Complainant uses the initials WWF with a depiction of a great panda. The initials with the Panda device are used to raise its profile through extensive merchandising activities throughout the world.

The Complainant owns numerous trademarks throughout the world for WWF and also for WWF plus the Panda device. Most of these marks were registered before the Respondent acquired the disputed Domain Name, including registrations in the United States long before that date. 261 out of 311 registrations of the letters WWF predate January 20, 2003, in 94 different countries – 385 out of 401 registrations of the letters WWF plus the Panda device in 108 different countries, predate January 20, 2003. The national organizations affiliated to the Complainant are licensed to use the marks. These have been used on periodicals, reports and goods by licensees of the Complainant and/or its national organizations for many years, including prior to January 20, 2003.

No license to use any of its trademarks was ever given to the Respondent, by the Complainant or any of its authorized national institutions.

The disputed Domain Name was first used by a company originally called Worldwide Wrestling Federation, more recently, World Wrestling Federation ("the Federation"). In 1979, it traded under the initials WWF and its activities were broadly confined to the United States until the late 1980s. The key business of the Federation was live wrestling entertainment events. It marketed magazines, videos and other merchandise through the use of the WWF mark.

There had been a number of law suits between the Complainant and the Federation relating to trademark applications made by the Federation in various parts of the world which led to an agreement between the Complainant and the Federation dated January 20, 1994, over the use of the marks. In 1992, a Court in Switzerland had issued an *ex parte* injunction at the behest of the Complainant against the Federation, prohibiting the distribution of the Federation's WWF magazine. The Judge in that case noted that the Complainant had for some time been widely known as WWF and that various products had been marketed by the Complainant under this name with a high degree of recognition, both of the mark WWF both in isolation and also in conjunction with the panda image.

In 1999, the Complainant issued proceedings in the High Court of Justice in England against the Federation over its use of the initials WWF in alleged breach of the 1994 agreement, which had settled previous disputes regarding the use of the initials. On August 2001, the Complainant was granted an injunction and other relief. Following unsuccessful appeals by the Federation, the injunction became effective on November 10, 2002. Part of the Court's order against the Federation was that it should take the necessary steps, at its option, to transfer to the Complainant or to cancel or change any of its domain names incorporating the initials WWF.

The legal proceedings against the Federation received considerable publicity and numerous media extracts were provided by the Complainant showing that this publicity was quite extensive in the United States, including in newspapers circulating in the areas where Mr. Ricks resides. The thrust of the articles was to emphasize that the Complainant had prevailed over the Federation in the use of the letters WWF.

The Federation did not take the option of transferring the disputed Domain Name to the Complainant given to it by the judgment. Despite efforts by the Complainant to acquire the name via a domain name watching service, the disputed Domain Name was acquired from the Federation by one Frank Baach, trading as Newbrand, on December 1, 2002. It was offered for sale by him on an Internet domain name discussion forum for a minimum price of $10,000. The circumstances of Mr. Baach's acquisition of this disputed Domain Name were made public on the "www.dnforum.com" website, then run by Mr. Ricks.

The Complainant contacted Mr. Baach with a view to negotiating a transfer and had prepared an administrative proceeding for submission to WIPO. However, on January 20, 2003, the Domain Name was transferred to Mr. Ricks, trading as "Motherboards.com Inc.". Following this transfer, the Domain Name resolved to a website that provided links to other websites offering various goods and services. Later, the Domain Name resolved to a website carrying a discussion forum for wrestling entertainment fans.

The exact date on which the Web Wrestling Forum website first appeared is unclear. According to the Complainant's research into archival material, this may not have occurred before June 2004. Copies of the same page in June, October and November 2004, show links to third-party websites offering goods and services unrelated to wrestling. A website archive of April 2005 shows links to "World wild life fund", "Wildlife" and "conservation". The Respondent contends that the archived pages are not necessarily reliable.

On October 6, 2005 the website of the disputed Domain Name resolved to a series of links to third-party websites selling various goods and services. Some of the links have titles associated with the Complainant and its activities such as the link titles of "giant panda", "environmental education", "wild life" and "WWF". Since the Complaint was prepared, there has been a change in the content of the website.

The Respondent registered the disputed Domain Name on January 20, 2003. He pointed to four WIPO decisions in 2000 where the Federation had successfully upheld its rights to the disputed Domain Name against parties other than the Complainant in the present case.

The Respondent in January 2003 owned <dmforum.com>, which he later sold. He has a history of operating multi-party, advertising-supported weblogs such as <dmforum.com>. He operated the Web Wrestling Forum until September 2005, when he had a disagreement with the administrator whom he designated to run the Web Wrestling Forum.

The Respondent, through affiliates, has been involved as Respondent in other UDRP proceedings both with WIPO and NAF (National Arbitration Forum). In the two WIPO decisions, *Welch Foods, Inc., A Cooperative v. MSS*, WIPO Case No. D2001-1065, and *Philip Morris USA Inc. v. Domain Admin*, WIPO Case No. D2005-0108, the Respondent filed no Response and was ordered to transfer domain names of well-known marks. He was also sued by the *Playboy* organisation over the use of one of its domain names. In the two NAF cases in which he prevailed, one was for a generic term and in the other, the mark was registered two years after the domain name.

The Complainant did not file this proceeding until some three-and-a-half years after the disputed Domain Name was registered. It claims it had prepared a Complaint against Mr. Baach but did not proceed with it after Mr. Baach had transferred the Domain Name. It then prepared an amended complaint, but before it was filed, the Domain Name referred to a website for wrestling. According to the Complainant's research, this did not happen until June 2004. No reason for the Complainant's inaction between January 2003 and June 2004 was given. The Complainant perceived this new use might make its chances of success more difficult. It claims to have been unaware of the transfer to Moniker "for some time".


## 6. Parties' Contentions

### A. Complainant

The disputed Domain Name is identical to the numerous trademarks for the letters WWF owned by the Complainant and is identical to the numerous trademarks for WWF plus the Panda device.

The Respondent has no rights or legitimate interests in respect of the Domain Name and was not granted any by the Complainant or by its national organizations nor is he commonly known by the initials WWF.

The date at which good faith should be considered is the date on which the Domain Name was acquired by the present Respondent, namely January 20, 2003.

Anonymous registration under Moniker's Domain WHOis Privacy Service is an indication of bad faith. The Respondent must have known of the success of the Complainant against the Federation in the English Court case because of the extensive publicity throughout the world including particularly on the Internet and in the United States media.

The Respondent's registration of a Domain Name corresponding to a well-known mark is evidence of registration in bad faith and the ongoing holding of such a Domain Name is evidence of use in bad faith.

By using the disputed Domain Name, the Respondent has intentionally attempted to attract for commercial gain Internet users to its website by creating a likelihood of confusion with the Complainant's mark as to the source, sponsorship, affiliation or endorsement of its website. This is proved by the fact that many of the links have titles associated with the Complainant and its activities. It is well-known that persons in the position of the Respondent receive "click-through" commissions. After the Domain Name had been acquired, there was a period when the website was used for "click-through" purposes long before the Web Wrestling Forum website got under way.

The Respondent has previously engaged in a pattern of conduct of registering domain names in order to prevent a Complainant from reflecting marks in a corresponding domain name. Mr. Ricks acknowledged, in the domain name forum discussion, that he had been sued by Playboy over his registration of <playboybunny.com>. In two cited WIPO decisions and one NAF decision, domain names registered by him had been ordered to be transferred.

Long before the Respondent's dispute with an employee in September 2005, he had used the website for "click through" sales of third party goods and services.

### B. Respondent

The Complainant has historically not been associated with the letters WWF but the Federation has been. There were references to WIPO decisions in 2000, where the Federation had upheld its right to the disputed domain names against others than the Complainant in the present case. The Respondent purchased the disputed Domain Name from a party that had utilized a back-order service for abandoned domain names. The Respondent then established the Web Wrestling Forum which, as the Complainant acknowledged, point to a website containing discussion forum for wrestling entertainment fans.

The Respondent stressed that the Complainant stated in its Complaint that it had perceived "*that this new use might make it more difficult to mount a successful administrative proceeding complaint*".

As an archived page from November 13, 2004 shows, the Web Wrestling Forum had grown to encompass 5996 registered users and an archive of 151,472 messages posted. During this time, the only contact made by a third party to the Respondent was by a representative of the Federation to confirm that the Respondent was not representing himself to be the Federation.

The Respondent has a well-established history of operating multi-party advertising supporting web logs such as DN Forum. Current examples include "www.wallyworldsucks.com", an online forum devoted to discussions concerning the retailer Wal-Mart. Mr. Ricks purchased DN Forum from its originator and has subsequently sold it.

The Internet archive shows that prior to notification to him of the dispute, the Respondent was using the Domain Name for a *bona fide* offering of goods and services i.e., the Web Wrestling Forum, which has nothing to do with wildlife conservation.

The Respondent was not a party to any agreement or judgment arising out of the litigation between the Complainant and the Federation. In September 2005, Mr. Ricks had experienced difficulty with his administrator of the Web Wrestling Forum. Therefore he shut down the Forum and parked the home page pending its resurrection.

As to bad faith the Respondent provided a statement under sanction of perjury that he had no knowledge of the litigation or dispute between the Federation and the Complainant when he registered the disputed Domain Name in January 2003.

He operated the Forum with express knowledge of the former registrant, namely the Federation. His use of a proxy service is not per se evidence of bad faith. The situation is quite unlike that of the *Telstra v Nuclear Marshmallows* case which involved fictional Whois data expressly designed to evade notice and liability. Here the Complainant knows from its own research, the exact identity of the Respondent who has filed the Response and Moniker provided the information promptly.

The Respondent ultimately prevailed in one of the UDRP decisions mentioned by the Complainant and succeeded in three other named NAF decisions under the Policy, particulars of which were given.

The Respondent criticizes the Complainant's delay in filing this Complaint. It refutes the imputation that the use of the temporary, recent parking page suggests that the Respondent was badly motivated at the time when he acquired the disputed Domain Name. The reason for the parking page was that the Respondent's forum site had been sabotaged by a former employee and that the Respondent had therefore shut down the forum and parked the home page. He has no control over the links provided by the parking service which included, for a brief period of time, links relating to wild life.

Even if the situation relative to the Complainant's prior litigation was understood by the Respondent at the time of registration, it was not bad faith directed towards the Complainant. To persons such as the Respondent, not directly involved in the litigation between the Complainant and the Federation, the external appearance was that the Complainant was seeking to have the Federation cease all uses of WWF as its mark whether online or offline. The Complainant did not want to obtain a transfer of the Domain Name as a result of the litigation because it did not obtain an order expressly requiring the transfer of the Domain Name. It is a reasonable assumption that it did not want it. No mention was made to the Respondent by Mr. Baach of any contact of him by the Complainant.

In summary, Internet users would naturally assume that the disputed Domain Name related to the subject of wrestling because that is what it had been used for over a period of 10 years. The Federation had protected its use of the disputed Domain Name over that period.


**7. Discussion and Findings**

**A. Identical or Confusingly Similar**

The disputed Domain Name is identical to numerous trademarks for the letters WWF owned by the Complainant in the United States and in many other countries. It is also confusingly similar to those marks which have the letters WWF plus the device of the Panda.

It matters not whether the disputed Domain Name was owned by the Federation until the conclusion of the litigation with the Complainant in 2002. The Policy merely requires that Complainant demonstrate that it has rights in trademarks registered or unregistered as at the time of filing its Complaint. It has clearly succeeded in doing just that.

There is overwhelming evidence that the Complainant owns a large number of trademarks worldwide. It has shown the indicia for a common law mark as well. Therefore the first criterion under the Policy is proved.

**B. Rights or Legitimate Interests, Registration and Use in Bad Faith**

Whilst it is clear that the Complainant or its national organization gave no rights to the Respondent, it is possible for a Respondent to demonstrate that it is not caught by this limb of the Policy if it can show that before notice of the dispute, he had made reasonable preparations for the conducting of a legitimate business using the disputed Domain Name. Consideration of this aspect is often linked with the consideration of bad faith. In this case, the two are so intertwined that the Panel considers them in tandem.

Under the Policy bad faith registration and use both have to be proved separately. There have been many cases where ample evidence of bad faith use has been able to justify the inference of bad faith registration.

A complicating factor here is that the Complainant did not file its Complaint until three-and-a-half years after the disputed Domain Name had been transferred to the Respondent. It is clear from WIPO jurisprudence that the date of bad faith registration must be assessed as at the date on which the current Respondent acquired the disputed Domain Name, which is established as January 20, 2003. Whilst there is no time limit for filing a complaint under the Policy, nor does the equitable doctrine of laches find any place in the Policy, it can nevertheless become more difficult for a Complainant to infer bad faith registration the greater the distance between the dates of registration and of the filing of the Complaint.

The Respondent in his first statement under penalty of perjury, said that his acquisition of the disputed Domain Name was "late 2003". When the Complainant pointed out that it was January 2003, the Respondent claimed to have made an error in his first sworn statement and to have confused the timeframe within which he had planned to launch the Web Wrestling Forum. The Panel does not find this explanation convincing. In a statement made under penalty of perjury, precision is to be expected. The relevant facts must have been readily available to the Respondent at the time of making the first statement.

The Panel notes that the Complainant apparently did not obtain an order from the Court in England requiring the Federation to transfer the disputed Domain Name to the Complainant, which allowed the name to become disused and, as happened, to be picked up by the various services which scavenge for discarded domain names. Be that as it may, the Complainant clearly knew from its dealings with Mr. Baach that the Federation was trying to sell the name.

Any decision on the second two criteria under the Policy must focus in this case on whether bad faith registration occurred when Mr. Ricks purchased the Domain Name from Mr. Baach. It is difficult to see why a complaint could not have been made at that time. The situation could not have changed three-and-a-half years later. The Panel finds curious the Complainant's equivocation about filing a Complaint. The Complainant says that it considered that it had less chance of success because of the advertising of wrestling and the creation of a wrestling forum at the website of the disputed Domain Name but that did not occur until 2004 at the earliest, so it is hard to see why the Complaint was not filed before then.

It is only either in April 2005 or after the later falling-out between Mr. Ricks and his employee that there was created a parking site which had click sites through to environmental websites which could have created confusion into thinking that the Domain Name was associated with the Complainant. That in the Panel's view could be evidence of bad faith use but, given the lapse of time between registration and April 2005, that fact does not help in assessing whether there had been bad faith registration.

Even if the Respondent had been aware of the dispute between the Complainant and the Federation he could well have been unaware of the details of the Court's order such as that relating to the use of the disputed Domain Name. He did know that the Federation had lost the case and that the Complainant had prevailed with its trademark rights upheld.

What the Panel finds unexplained by the Respondent is the fact, unchallenged by him, that his first use of the disputed Domain Name – well before the wrestling forum was instituted – was of a site offering goods and services by click-through.

The Respondent claims that, if he registered in bad faith, then that bad faith was directed at the Federation and not the Complainant. Yet he admitted in his first statement under penalty he knew that the Federation had resolved a dispute with the Complainant and that the Federation had changed its name because of legal action. He claimed as his understanding at the time that any resolution of the dispute would have been seen the Domain Name transferred to the Complainant rather than the name available for purchase through a service for the sale of disused domain names.

The Panel is able to infer from the facts as follows:

(a) The Respondent is highly-experienced in domain name disputes under the UDRP.

(b) He must have seen considerable value in owning the disputed Domain Name for which he paid $10,000.

(c) That value lay not only in its being a 3-letter domain, but in its notoriety as letters representing the Federation which were now held by a Court, with worldwide publicity, rightly to belong to the Complainant.

(d) The fact that the disputed Domain Name was on the market and not transferred to the Complainant was an indication to the Respondent (and anyone else) that the disputed Domain Name had not been part of any order made in the litigation. One could not expect the media to carry, or the Respondent to know, the minute detail of the Court's order.

Bad faith at registration against the Federation cannot be inferred as bad faith against the Complainant. There is probably not bad faith against the Federation if that body elected to release the disputed Domain Name on to the market.

The interval between the Domain Name registration in January 2003 and the appearance of wild-life etc. links on the website some time after April 2005 is just too long to justify an inference of bad faith registration at the time of registration.

The Panel is faced on one hand with the Respondent's statement under penalty of perjury that he did not know of the Complainant's interest in the disputed Domain Name at the time. On the other hand, there is a rather weak inference that as at January 2003, Mr. Ricks knew not just that the Domain Name related to the Federation, but that the corresponding trademark rights really belonged now to the Complainant. The Panel is in no position to find which stance is correct. There would have to be a finding made by a Court after hearing evidence.

In other words the Panel has not found it proved that there has been bad faith registration against the Complainant. It also means that if what the Respondent asserts is true, then he has shown "demonstrable preparations" to use the name in respect of a legitimate business (the Web Wrestling Forum) before notice of a dispute, thus bringing the Respondent within one of the provisions of

paragraph 4(c) of the Policy. In that event, the second and third limbs of the Policy have not been proved by the Complainant.

The Panel finds it unproved that Mr. Ricks' use of a proxy registration service is an indication of bad faith. There can be many legitimate reasons for using a proxy registration service, many of them consistent with good faith.

Although Mr. Ricks does not comment on the *Playboy* dispute or the two WIPO decisions where he was found to be in default, there is insufficient evidence to infer a course of registrations of domain names in bad faith.

## 8. Decision

For all the foregoing reasons the Complaint is denied.


_____
Sir Ian Barker QC
Presiding Panelist

_____                    _____
Kiyoshi I. Tsuru                                          David E. Sorkin
Panelist                                                    Panelist

Dated: November 1, 2006