# **EXHIBIT C**



ARBITRATION
AND
MEDIATION CENTER

# ADMINISTRATIVE PANEL DECISION
Ritzio Purchase Limited v. WhoisGuard Protected, WhoisGuard, Inc. / Alex Boolop / Davy Kiba-Gaste, Camelot / Zhoselin-Patrick Mandzela, ZP Mandzela
Case No. D2016-1981

## 1. The Parties

The Complainant is Ritzio Purchase Limited of Nicosia, Cyprus, represented by Mapa Trademarks SL, Spain.

The Respondents are WhoisGuard Protected, WhoisGuard, Inc. of Panama, Panama / Alex Boolop of Kiev, Ukraine / Davy Kiba-Gaste, Camelot of Victoria, Seychelles / Zhoselin-Patrick Mandzela, ZP Mandzela of Vernon, France.  The Respondents Davy Kiba-Gaste, Camelot and Zhoselin-Patrick Mandzela, ZP Mandzela are represented by Boston Law Group, PC, United States of America.

## 2. The Domain Names and Registrars

The disputed domain names <online-volcano.com>, <volcanozal.com>, <volcan24.com>, <vulcan-club-online.com>, <vulcan-online-club.com>, <vulcano7.com>, <wulkancasino.com>, <1vulcano.com>, <2vulcano.com>, <3vulcano.com>, <5vulcano.com> and <7vulcano.com> are registered with eNom, Inc.  The disputed domain name <vulcan-club-online.top> is registered with NameCheap, Inc.  The registrars eNom, Inc. and NameCheap, Inc. will hereinafter be referred to as the "Registrars".

## 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on September 29, 2016.  On September 30, 2016, the Center transmitted by email to the Registrars a request for registrar verification in connection with the disputed domain names.  On October 3, 2016, the Registrars transmitted by email to the Center their verification responses disclosing registrant and contact information for the disputed domain names which differed from the named Respondent and contact information in the Complaint.  The Center sent an email communication to the Complainant on October 11, 2016 providing the registrant and contact information disclosed by the Registrars, and inviting the Complainant to submit an amendment to the Complaint.  The Complainant filed an amended Complaint on October 16, 2016.

The Center verified that the Complaint together with the amended Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified the Respondents of the Complaint, and the proceedings commenced on October 21, 2016.  In accordance with the Rules, paragraph 5, the due date for Response was November 10, 2016.  The Respondent filed a request for an additional four calendar days to file the Response.  In accordance with paragraph 5(b) of the Rules, the Center granted the extension of time.  The Response was filed with the Center on November 14, 2016.

The Center appointed Alistair Payne, Paul M. DeCicco and Robert A. Badgley as panelists in this matter on December 1, 2016.  The Panel finds that it was properly constituted.  Each member of the Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

## 4. Factual Background

The Complainant has since 1992 been in the business of providing gaming, casino and entertainment products and services, including but not limited to the operation and management of gaming halls, the design, development, provision and maintenance of games of chance, including betting bingo and slot machines, the provision of interactive real-money games through a computer network, and other related products and services under the Вулкан and Vulkan brands.  It operates in the Russian Federation and in certain European countries with more than 230 Вулкан and/or Vulkan branded gaming clubs and more than 6,300 gaming machines deployed throughout Europe.  The Complainant owns in particular the VULKAN mark registered in the Russian Federation under number 353692 on June 25, 2008 and the International trade mark registration for VOLCANO under registration number 989103 on August 11, 2008, designating *inter alia* the European Union (the "Vulcan marks"), quite apart from various other registrations around the world.

Four of the disputed domain names were registered in 2013, two in 2014 and seven of them in 2016.

## 5. Parties' Contentions

### A. Complainant

The Complainant submits that even though the Respondents appear to be different according to the WhoIs data, there is only one real respondent who controls all the disputed domain names for the reasons outlined below:

(a) All websites that are located at the disputed domain names have absolutely identical design, graphics, layout, text, the same set of games, and all other instruments;

(b) On the "Support-page" of all 13 websites at each of the disputed domain names the contact information for each is exactly the same;

(c) There is one registrar for 12 out of 13 of the disputed domain names and combinations of them were registered on the same day;

(d) The owner of all disputed domain names is hidden behind a privacy service;

(e) After the Center's request for Registrar verification, the registrar disclosed names of domain name owners who according to this information are:  (a) One nickname with non-existing Ukrainian street address;

(b) Seychelles legal entity which are commonly used to hold domain name holders hidden; and (c) Zhoselin-Patrick Mandzela of Vernon, France has already been a respondent in *Ritzio Purchase Limited v. Whoisguard Protected, Whoisguard, Inc / Zhoselin-Patrick Mandzela*, WIPO Case No. D2015-0295 with the same website and same trade mark infringement.

The Complainant submits that since there are no other distinctive criteria applicable, all websites look the same, work the same and are connected with each other by same network, it believes that there is only person that controls each of the websites, such that common control is being exercised over the disputed domain names or websites to which they resolve and hence the Complainant requests consolidation into one proceeding.

The Complainant submits that it owns the Vulcan marks noted above and also a suite of marks incorporating the word "vulcan" in Russian into combined word and logo marks. It says that each of the disputed domain names is basically identical to the English translation of its marks that are registered internationally and sound identical to various of its Vulcan marks. It says that the disputed domain name <wulkancasino.com> has been created according to the same principle, namely that the Russian letter "в" sound like "v" in English, although in the disputed domain name it is written as "w". The reason for this is that since the Russian language has no equivalent for the English sound "w", it sounds like "v". Thus, says the Complainant, in Russian, the word "wulkan" is pronounced as "vulkan". As such submits the Complainant, the mark and the disputed domain names are virtually identical, which renders them confusingly similar.

In addition, says the Complainant, each of the disputed domain names wholly incorporates one of the Complainant's registered trade marks adding only the generic words "club", "online", "casino" and "zal" (word "zal" is a transliteration of Russian word "зал" and it means "hall") and mixing some of them with Arabic numerals, that are considered irrelevant under the Policy and that do not affect the confusing similarity of domain names and trade marks. The addition of the words "club", "casino", "online" and "zal" create extra confusion says the Complainant, due to the direct association with the reputation of the Complainant's Vulcan marks and its operation and management of casinos and gaming halls, the design development, provision and maintenance of games of chance, including betting bingo and slot machines, and the provision of interactive real-money games through a computer network.

As a consequence and coupled with the very high level of similarity and near identity of the website at each of the disputed domain names, the Complainant submits that each of the disputed domain names is confusingly similar to one of its registered trade marks.

The Complainant submits that the Respondent is not a licensee of the Complainant and that it has not authorised or consented to the Respondent's use of any of the Vulcan marks or of the disputed domain names and that the Respondent is not commonly known by and does not have any prior rights in any of the disputed domain names and is not making a *bona fide* use of the disputed domain names or using them for noncommercial purposes.

In summary the Complainant submits that the Respondent is using each of the disputed domain names to resolve to a website that is almost identical to the Complainant's websites and which even reproduces the Complainant's Вулкан (& design) trade mark. The Complainant submits that (1) the Respondent's sites copy the look-and-feel of Ritzio's gaming clubs; (2) the Respondent provides online gaming services that are competitive to those offered by the Complainant in connection with the Vulcan Marks; and (3) the disputed domain names are aimed at attracting consumers' interested in Ritzio's products and services, (4) the Complainant' trademarks are used all over the websites and (5) references to the Vulcan brand created and maintained by Complainant can be seen everywhere on Respondent's websites. This all amounts, says the Complainant, to the Respondent attempting to confuse Internet users into mistaking the disputed domain names and the websites to which they resolve with the Complainant's websites and business with a view to trading off the goodwill attaching to the Complainant's business for its own commercial purposes. This, submits the Complainant, is not legitimate or *bona fide* conduct and as a result the Respondent has no rights or legitimate interests in any of the disputed domain names for the purposes of the second element of the Policy.

The Complainant's case in relation to bad faith is that the Respondent has used each of the disputed domain names in terms of paragraph 4(b)(iv) of the Policy and as described above, to attract Internet users to its websites intentionally and for its own commercial gain by creating a likelihood of confusion with the Complainant's Vulcan marks.  It notes that the Respondent is operating a fully functional on-line casino at each of the disputed domain names and that clearly the Respondent is using the disputed domain names to divert Internet users to these websites for its own commercial purposes.

The Complainant notes that the Respondent even attempts to associate its websites at the disputed domain names with the Complainant's goodwill and business.  It notes the Respondent's use of the following text on its website as translated from the Russian language:

> "Casino Volcano is undoubtedly the best brands in the gambling business. During the existence of the gaming club Volcano acquired a firm reputation as a reliable playground, loyal to the players and providing permanent access to the highest quality gaming slot.  The famous brand has earned popularity during the time fixed gaming establishments, winning the hearts of millions of gamblers all over the world.  After the volcano became available on the Internet, its range of offered entertainment has become much wider, which attracted a new audience.  The official representative of the brand casino volcano on the worldwide web is the site vulcan-club-online.com.  He has a license of the famous places the game, which is an excellent indicator of the quality of services and the guarantee of fair play".

This says the Complainant is a blatant attempt to deceive Internet users into thinking that they are dealing with an authorised licensee of the Complainant when this is not the case.  The Complainant also notes that trade mark rights notices are placed at the foot of each page of the Respondent's websites in order to reinforce the impression that the website are official.

Similarly the Complainant notes that the Respondent's websites feature a special plug-in to enable Internet users who may be blocked from reaching the Respondent's websites to effect a work around solution.  The fact that Respondent has created a by-pass instrument to overcome Internet Service Providers' or local Regulators block for intellectual property infringements or other legal abuses says the Complainant, is another argument to prove that the Respondent acts in bad faith.

Further the Complainant notes the Respondent's use of a privacy service in relation to each of the disputed domain names in a manner that suggests bad faith and also a prior case involving a near identical set of circumstances.  The Complainant submits that in this case the Respondent used websites that looked absolutely identical to the websites at the disputed domain names and suggests that the same key person in the background, namely Zhoselin-Patrick Mandzela, of Vernon, France, the respondent in *Ritzio Purchase Limited v. Whoisguard Protected, Whoisguard, Inc / Zhoselin-Patrick Mandzela*, *supra*.  It notes that the design, graphics, layout, text, the same set of games, and all other instruments are absolutely identical to those in that case.  The Complainant believes that in the current case the disputed domain names are owned/controlled or associated with the respondent in *Ritzio Purchase Limited v. Whoisguard Protected, Whoisguard, Inc. / Zhoselin-Patrick Mandzela*, *supra*, who after losing the case had no other legitimate options but to register new domain names and to use some of the previously registered domain names in order to maintain its illegal business**.**

**B. Respondent**

Firstly, says the Respondent, the Complaint should be dismissed because Complainant has impermissibly consolidated the UDRP proceeding against multiple respondents with multiple domain names and websites not under common control.  Specifically, the disputed domain name <vulcanclub-online.top> is not under common control with any of the other domain names subject to these proceedings as currently drafted and the consolidation is unfair to all Registrants.  The disputed domain names <1vulcano.com>, <2vulcano.com>, <3vulcano.com>, <5vulcano.com>, <7vulcano.com>, and <vulcano7.com> are all registered to the Respondent Davy Kiba-Gaste.  The Respondent Zhoselin-Patrick Mandzela registered the

disputed domain names <wulkancasino.com>, <volcan24.com>, <vulcan-online-club.com>, <volcanozal.com>, <onlinevolcano.com>, and <vulcan-club-online.com> for the benefit of Mr. Kiba-Gaste. Mr. Kiba-Gaste does not know the registrant of <vulcan-club-online.top>, the so called "Alex Boolop". Mr. Kiba-Gaste did not register the disputed domain name <vulcan-club-online.top> nor did anyone register it on his behalf.  Mr. Kiba-Gaste, says the Respondent, does not control the disputed domain name <vulcan-club-online.top> or the website at the disputed domain name.  The disputed domain name <Vulcan-club-online.top> is not even registered with the same registrar as the other domain names.

Consolidation of this case against these two separate groups results in an unfair and inequitable situation for both sets of respondents because their defences may contradict each other and/or otherwise taint each other's positions.

The Respondent submits that this Complaint is not validly brought because (1) VULKAN is not a valid trademark as used in connection with gambling in the Russian Federation, where gambling is essentially illegal;  (2) all the asserted country-level trademark registrations were issued in the Russian Federation prior to the prohibition and those registrations are now invalid;  (3) all of the Complainant's international trade mark registrations rely upon those invalid Russian registrations;  (4) this is the incorrect forum to resolve this dispute, as two prior UDRP decisions have held;  and (5) the Complainant has used the UDRP process to perpetrate a fraud upon the Center and registrants in prior cases noted and in this case.

Apart from challenging the validity of the Complainant's Russian marks, the Respondent submits that more than seven years after the Russian Federation banned Internet gambling, more than five years after Complainant was legally prohibited from operating physical casinos in the Russian Federation, and more than five years after Complainant thus ceased using its trade marks, the Respondents began registering the disputed domain names.  It says that the Respondents did so with the knowledge that trade mark rights no longer could exist in the Russian Federation for any gambling related activities.  After registering the disputed domain names registered in his name, the Respondent Zhoselin-Patrick Mandzela transferred the operation and control to the Respondent Davy Kiba-Gaste.  The Respondent notes that most, if not all, of the visitors of the websites at the disputed domain names come from the Russian Federation or Ukraine where the Complainant can possess no rights in the putative trade marks.

As far as registration in bad faith is concerned, the Respondent says that the disputed domain names were not registered in bad faith because the Respondent had a legitimate and non-infringing reason for registering them in that the Complainant had not been operating in the Russian Federation or Ukraine under the VULKAN trade mark for four years by the time the Respondent registered any of the disputed domain names.  Moreover, Complainant's casino and online gambling operations in the Russian Federation had been made illegal, and therefore could not have formed the basis for any legitimate trade mark rights. Therefore, the Respondent had a good faith belief that it was not infringing any trade mark rights upon registration of the disputed domain names.

The Respondent says that the websites located at the disputed domain names are not "copycat" websites that compete with the Complainant, because the Complainant does not operate online gaming services, either in the Russian Federation or Ukraine (where Mr. Kiba-Gaste's websites are used), or elsewhere in the world.  Moreover, well before the filing of the Complaint, Mr. Kiba-Gaste had been operating his websites openly and in full view and with the implicit consent of the Complainant for over three years.  The Complainant certainly knew, or should have known, about Mr. Kiba-Gaste's operation of the disputed domain names.  Therefore, to the extent that the Complainant's trade mark registrations are valid, the Complainant's actions constituted acquiescence to and implied consent for the Respondents' activities.  In addition the Respondent submits that there are no other indicia of bad faith and that the use of a privacy service is of no relevance.

The Respondent says that the issues raised in these proceedings, like those in the nearly identical *EvoPlay LLC v. Ziganshin*, WIPO Case No. D2015-0222 and in *EvoPlay LLP v. Haladjian*, WIPO Case No. D2015-0252, are outside the scope contemplated by the Policy and are instead properly decided by traditional means.  Therefore, submits the Respondent, the Complaint should be dismissed.

The Respondent also submits that the Complainant's actions in bringing these proceedings amounts to an abuse of process.  It says that the Complainant filed complaints in two previous UDRP actions with a representation that it would agree to the jurisdiction of the Seychelles and English courts, respectively, if respondents chose to challenge the decisions of the panels.  The Complainant was required to submit to these jurisdictions in order to file its complaints and was not entitled to a decision from the panels if it did not submit.  However, after the Complainant received the panels' decisions in its favour, it completely ignored its obligations to submit to the mutual jurisdiction.  The Respondent submits that there is no question that if the Complainant is successful in its Complaint here that it will continue to use the same fraudulent scheme to deny the Respondents their rights under paragraph 4(k) of the Policy to have this dispute resolved by a court of competent jurisdiction before their domain names are irretrievably stripped.  It says that the Policy was never intended to be the last stop for disputes between the parties and that on this basis the Complainant's requested relief should be denied and the Panel should declare in its decision that the Complaint was brought in bad faith and constitutes an abuse of the administrative proceedings.

The Respondent further submits that the Complainant has not controlled and have acquiesced in the use by other parties of its trade marks in previous years and in this case have operated the websites at the disputed domain names for years in full view of the Complainant, which has taken no action until now.  Having at the very least impliedly consented to so many third parties using the marks for so many years in the same way, the Complainant should not now be permitted to hijack the domain names of others to use for its own purposes.  Therefore, to the extent that the Complainant may possess any rights in the putative trademarks, the Complainant's inaction over the past five years constitutes acquiescence and implied consent to the Respondents' use of the marks.

**6. Discussion and Findings**

**A. Consolidation**

The principles that previous panels have applied to case consolidation against different respondents are set out under paragraph 4.16 of the WIPO Overview of WIPO Panel Views on Selected UDRP Questions, Second Edition.  In general for a case to qualify for consolidation it must be equitable and procedurally efficient to permit the consolidation;  and in the case of complaints brought against more than one respondent, (i) the domain names or the websites to which they resolve must be subject to common control, and (ii) the consolidation must be fair and equitable to all parties.

The Complainant submits that consolidation is appropriate in this case because:

(a) All websites that are located at the disputed domain names have absolutely identical design, graphics, layout, text, the same set of games, and all other instruments;

(b) On the "Support-page" of all 13 websites at each of the disputed domain names the contact information for each is exactly the same;

(c) There is one registrar for 12 out of 13 of the disputed domain names and combinations of them were registered on the same day;

(d) The owner of all disputed domain names is hidden behind privacy services;

(e) After the Center's request for Registrar verification, the registrar disclosed names of domain name owners who according to this information are:  (a) one nickname with non-existing Ukrainian street address;  (b) Seychelles legal entity which are commonly used to hold domain name holders hidden;  and (c) Zhoselin-Patrick Mandzela of Vernon who has already been a respondent in a very similar case, same UDRP case *Ritzio Purchase Limited v. Whoisguard Protected, Whoisguard, Inc. / Zhoselin-Patrick Mandzela*, *supra*, with the same website and same trade mark infringement.

(f) all websites look the same, work the same and are connected with each other by same network;

(g) it believes that there is only one person that controls each of the websites, such that common control is being exercised over the disputed domain names or websites to which they resolve.

The Respondent does not appear to challenge this request other than in relation to the disputed domain name <vulcan-club-online.top>. In this regard it is submitted on behalf of the Respondent that neither of the registrants of the other disputed domain names in this case has any knowledge of the disputed domain name <vulcan-club-online.top> or of its owner Alex Boolop and it would be unfair and inequitable to bring this domain name into the present proceedings.

The Panel has considered the submissions made by both parties. In circumstances that the website at disputed domain name <vulcan-club-online.top> appears to be exactly similar to those at the other disputed domain names and includes equally with the other sites the statement:

> "Casino Volcano is undoubtedly the best brands in the gambling business. During the existence of the gaming club Volcano acquired a firm reputation as a reliable playground, loyal to the players and providing permanent access to the highest quality gaming slot. The famous brand has earned popularity during the time fixed gaming establishments, winning the hearts of millions of gamblers all over the world. After the volcano became available on the Internet; its range of offered entertainment has become much wider, which attracted a new audience. The official representative of the brand casino volcano on the worldwide web is the site vulcan-club-online.com. He has a license of the famous places the game, which is an excellent indicator of the quality of services and the guarantee of fair play"

and also the same trade marks rights notice and is registered through the same privacy service, the Panel finds on the balance of probabilities that the disputed domain name <vulcan-club-online.top> is under common control with the other disputed domain names and it is therefore appropriate to be consolidated with the other disputed domain names into this Complaint.

**B. Identical or Confusingly Similar**

The Complainant has demonstrated that it owns registered trade mark rights in various jurisdictions in its Вулкан1, Вулкан (& Design), Vulkan and Volcano trade marks including other Вулкан, Vulcan, Vulkan and Volcano composite marks. In particular it owns word mark registrations for the VULKAN mark which was registered in the Russian Federation under number 353692 on June 25, 2008 and the VOLCANO mark registered in the European Union under registration number 989103 on August 11, 2008.

These trade mark registrations are current and *prima facie* valid on their respective registers. It is not for the Panel to look behind the *prima facie* validity of these registrations as suggested by the Respondent. In any event as far as registrations based on an International application are concerned the Panel notes that the European Union registrations are in any event more than five years old and therefore not susceptible to central attack.

Each of the disputed domain names contains the term "volcano" or "vulkan" or a term very closely derived from it or which sounds identical or similar to it. The Panel finds that this element is the dominant and central element in each of the disputed domain names and that the addition to each of the disputed domain names of terms such as "zal", "online", "club" or "casino" or a series of numbers does not distinguish any of the disputed domain names from the Complainant's VOLCANO or VULKAN registered word marks or from any term closely derived from them which may sound identical or similar in a language such as Russian or German, such as "wulkan".

As a consequence the Panel finds that each of the disputed domain names is confusingly similar to one or other of the Complainant's registered trade marks as set out above.

### C. Rights or Legitimate Interests

It is apparent that the Complainant has made a very substantial use of its Vulcan marks both in the Russian Federation and in neighboring countries and in certain countries in Europe as a result of operating in the Russian Federation and in certain European countries with more than 230 Вулкан and/or Vulkan branded gaming clubs and more than 6,300 gaming machines deployed throughout Europe.

The Complainant has submitted that the Respondent is not a licensee of the Complainant and that it has not authorised or consented to the Respondent's use of any of the Vulcan marks or of the disputed domain names and that the Respondent is not commonly known by and does not have any prior rights in any of the disputed domain names and is not making a *bona fide* use of the disputed domain names or using them for noncommercial purposes.

It appears to the Panel, based on the use of the Complainant's trade marks in the disputed domain names together with the extremely high degree of similarity between the websites at each of the disputed domain names and the Complainant's websites including the wholesale reproduction of the Complainant's Вулкан (& design) trade mark, that the Respondent is indeed, as suggested by the Complainant, using each of the disputed domain names to confuse and subsequently divert Internet users to its own on-line casino websites. This impression is only reinforced by the statement on one of the Respondent's websites that obviously refers back to the Complainant's well reputed business:

> "Casino Volcano is undoubtedly the best brands in the gambling business. During the existence of the gaming club Volcano acquired a firm reputation as a reliable playground, loyal to the players and providing permanent access to the highest quality gaming slot. The famous brand has earned popularity during the time fixed gaming establishments, winning the hearts of millions of gamblers all over the world. After the volcano became available on the Internet, its range of offered entertainment has become much wider, which attracted a new audience. The official representative of the brand casino volcano on the worldwide web is the site vulcan-club-online.com. He has a license of the famous places the game, which is an excellent indicator of the quality of services and the guarantee of fair play".

The Panel also notes the fact that trade mark rights notices are placed at the foot of each page of the Respondent's websites in order to reinforce falsely the impression that the websites are officially endorsed by the Complainant or its businesses when clearly this is not the case.

The Respondent's argument that its websites are not copycat sites because the Complainant does not operate on-line gaming services in the Russian Federation or Ukraine does not get around the fact that the Respondent is blatantly seeking to trade off the reputation and goodwill attaching to the Complainant's name and marks from its current operations in the Russian Federation and the Ukraine and in Europe. This is not *bona fide* business activity, the Panel does not accept that the VULCAN or VOLCANO are so widely used in relation to gaming and casinos that they could only be generic, and the Respondent has not demonstrated that it has rights in these marks or the disputed domain names.

Accordingly the Panel finds that the Complainant has made out a *prima facie* case that the Respondent has no rights or legitimate interests in each of the disputed domain names. This case has not been rebutted by the Respondent and as a result the Complaint succeeds under the second element of the Policy.

### D. Registered and Used in Bad Faith

The earliest date of registration of the disputed domain names is 2013. By that date the Complainant's business under the Vulcan marks had been established for many years in the Russian Federation and in Europe since its commencement in 1992. Considering the number of disputed domain names registered by the Respondents containing the VULCAN or VOLCANO marks or a close derivation of that mark as described above, the high degree of similarity between the Respondent's websites and also the reproduction

of the Complainant's combined word and design mark on the Respondent's websites and the fact that both businesses operate in the gaming industry, the Panel infers that the Respondent was well aware of the Complainant's business and of its use of the Vulcan marks when it registered each of the disputed domain names.  It is apparent that it did so for its own commercial purposes and therefore the Panel finds that the Respondent registered each of the disputed domain names in bad faith.

Paragraph 4(b)(iv) of the Policy deems there to be evidence of registration and use in bad faith where a respondent has intentionally used a domain name to attract, for commercial gain, Internet users to its website or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of its website.  In this case the Respondent has used each of the disputed domain names to confuse Internet users into visiting its website.  At its website and as further described above, the Respondent has sought to confuse Internet users into thinking that its business is associated with the Complainant when the Respondent is actually offering on-line casino services for its own commercial gain from its websites.

The Panel does not accept the Respondent's argument that it had a legitimate and non-infringing reason for registering the disputed domain names because the Complainant had not been operating in the Russian Federation or Ukraine under the VULKAN trade mark for four years by the time the Respondent registered any of the disputed domain names, or that on-line gambling operations in the Russian Federation had been made illegal, and therefore could not have formed the basis for any legitimate trade mark rights.  The fact remains that the Complainant has developed a very well established business under its Vulcan marks and even if it had ceased operating in the Russian Federation four years ago (which the Panel does not accept based on the Complainant's evidence) the Respondent's conduct would still in the particular blatant circumstances of this case amount to bad faith under paragraph 4(b)(iv) of the Policy.  Further, the Respondent's point concerning on-line gambling being made illegal and therefore could not in any event be the basis of trade mark rights is irrelevant in circumstances that the Policy simply requires a registered trade mark right.

It follows that the Panel finds that each of the disputed domain names have been both registered and used in bad faith and that the Complaint succeeds under this element of the Policy.


**7. Decision**

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain names:

<online-volcano.com>
<volcanozal.com>
<volcan24.com>
<vulcan-club-online.com>
<vulcan-club-online.top>
<vulcan-online-club.com>
<vulcano7.com>
<wulkancasino.com>
<1vulcano.com>
<2vulcano.com>
<3vulcano.com>
<5vulcano.com>
<7vulcano.com>

be transferred to the Complainant.


**Alistair Payne**
Presiding Panelist

**Paul M. DeCicco**
Panelist


**Robert A. Badgley**
Panelist
Date:  December 15, 2016