HON. RICHARD A. JONES

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

9

| | |
|---|---|
| 10  MANDZELA ZHOCELIN-PATRICK a/k/a<br>MANDZELA ZHOSELIN-PATRICK, | Case No.:<br>2:17-cv-00002-RAJ |
| 11  an Individual, | |
| 12      Plaintiff, | |
| 13          v. | **PLAINTIFF'S OPPOSITION TO**<br>**MOTION TO SET ASIDE CLERK'S**<br>**ENTRY OF DEFAULT** |
| 14  RITZIO PURCHASE LIMITED, | |
| 15  a Cyprus company, | Noted for: October 27, 2017 |
| 16      Defendant. | |

17

18          Plaintiff Mandzela Zhocelin-Patrick ("Plaintiff") hereby opposes Defendant Ritzio

19   Purchase Limited's ("Defendant") Motion to Set Aside Clerk's Entry of Default (Docket No. 15)

20   (the "Motion").  Defendant has been aware of the pendency of this lawsuit since January 5, 2017

21   at the latest – just two days after the case was filed.  Defendant also does not dispute that it was

22   served on June 27, 2017.  There is therefore no excuse for Defendant to have failed to timely

23

respond to the Complaint.  For this reason and as further set forth below, the Court should deny the Motion.

## I.      Background

This dispute arises out of Defendant's filing of an administrative proceeding against Plaintiff under the rules of the Uniform Domain-Name Dispute-Resolution Policy ("UDRP"), alleging that six domain names registered to Plaintiff infringed Defendant's purported trademark right in the term VULKAN.  Complaint, Docket No. 1, ¶ 2.  Defendant brought the UDRP proceeding despite the fact that (1) VULKAN is not a valid trademark as used in connection with gaming in Russia, where it is essentially prohibited, (2) all the asserted country-level trademark registrations were issued in Russia prior to the prohibition and those registration are not valid, (3) Defendant never had the exclusive right to use the term VULKAN in connection with gaming in Ukraine, and (4) all of Defendant's international trademark registrations rely upon those invalid Russian registration.  *Id.*, ¶ 3.  Furthermore, Defendant has been using the UDRP as part of a fraudulent scheme to steal the domain names of legitimate competitors without a proper adjudication of rights allowed under the UDRP and by any comprehensive and legitimate legal system.  *Id.*, ¶ 4.  And just as Plaintiff stated he feared in the Complaint, by way of its Motion Defendant is yet again attempting an end-run around legal procedures in order to harm Plaintiff.  *See Id.*, ¶¶ 4, 30-36.

On or about October 16, 2017, Defendant filed a complaint against Plaintiff under the UDRP, seeking to have Plaintiff's domain names transferred to Defendant.  *Id*, ¶ 45.  Plaintiff disputes the allegations of Defendant and denied that Defendant was entitled to the domain names.  *Id.*, ¶¶ 47-48.  Notwithstanding Plaintiff's arguments, the administrative panel that

Opposition to Motion to
Set Aside Default
**Page 2**

**Boston Law Group PC**
825 Beacon St Ste 20, Newton, MA 02459
617-928-1800

1    decided the UDRP proceeding issued a decision directing that the domain names should be

2    transferred to Defendant.  *Id.*, ¶ 49.

3         Pursuant to the UDRP, the decision of the administrative panel in a UDRP proceeding is

4    non-final.  Specifically, paragraph 4 of the UDRP states that even if a proceeding is initiated

5    under the UDRP, it "shall not prevent either you or the complainant from submitting the dispute

6    to a court of competent jurisdiction for independent resolution...."  The UDRP further states that

7    if the administrative panel decides that the domain names should be transferred, the registrant of

8    the domain names (in this case Plaintiff) may file a lawsuit against the complainant (in this case

9    Defendant) relating to those domain names within 10 days of the administrative panel's decision

10   and the administrative panel's decision will not be implemented until that lawsuit is resolved.

11   *See*, Complaint, p. 9, n. 1.

12        In accordance with paragraph 4 of the UDRP, Plaintiff filed the instant lawsuit to halt

13   implementation of the administrative panel's decision and to allow for a full and proper

14   adjudication of Plaintiff's rights.  Complaint, ¶¶ 51-54.  The Complaint contains one count for

15   declaratory and injunctive relief pursuant to 15 U.S.C. §§ 114(2)(D)(v) and one count for a

16   declaration of non-infringement of trademark.  Complaint, ¶¶ 55-68.

17        In accordance with Section 1114(2)(D)(v), on January 2, 2017, prior to filing the

18   Complaint in this action, Plaintiff's counsel emailed Defendant's counsel to provide notice of

19   Plaintiff's intent to file suit.  *See* Declaration of Matthew Shayefar in Support of Opposition to

20   Motion to Set Aside ["Shayefar Decl."], filed herewith, ¶ 3 and Exhibit 1 thereto.   Plaintiff then

21   filed the Complaint on January 3, 2017.  On the same day, Plaintiff's counsel emailed the

22   domain name registrar Enom to notify it of the filing of the lawsuit and to request that Enom not

23   implement the decision in accordance with its obligations pursuant to paragraph 4 of the UDRP.

Opposition to Motion to
Set Aside Default
**Page 3**

**Boston Law Group PC**
825 Beacon St Ste 20, Newton, MA 02459
617-928-1800

*Id.*, ¶ 4 and Exhibit 2 thereto.  On January 5, 2017, Enom emailed Defendant's counsel, notifying Defendant that the lawsuit had been filed and that the domain names would not be transferred in accordance with the UDRP decision.  *Id.*, ¶ 5 and Exhibit 3 thereto.

Contrary to Defendant's assertions in the Motion, Plaintiff did *not* thereafter intentionally delay in attempting to serve Defendant, which is a foreign corporation.  The process to serve a foreign defendant under the Hague convention is lengthy because it first requires the translation of the Complaint and Summons (which Plaintiff performed), then engaging an international process server to then engage a local process server to attempt to serve the Defendant.  Shayefar Decl., ¶¶ 6-8.  This process was additionally delayed because of the extensive size of the Complaint and supporting documents, numbering nearly 800 pages.  The process was additionally delayed because the first local process server simply disappeared without completing service or providing notice.  *See* Declaration of Nelson Tucker, filed herewith.

Defendant was served on June 27, 2017.  Docket No. 10.  Defendant's response to the Complaint was therefore due on July 18, 2017.  F.R.C.P 12(a)(1).  Plaintiff filed for entry of default on July 20, 2017.  Docket No. 11.  Defendant did not make an appearance or indicate its intention to participate in this case until August 31, 2017, 65 days after service and 44 days after a response was due.  Docket No. 14.  Defendant then waited another 21 days before it filed its motion to set aside entry of default on September 21, 2017, 86 days after service, and 65 days after a response was due.  Docket No. 15.

## II.    Legal Argument

Federal Rule of Civil Procedure 55(c) only allows a default to be set aside if "good cause" is shown.  "The Ninth Circuit has consistently cited three factors in determining good cause: (1) whether the default was culpable; (2) whether the party in default has a meritorious

Opposition to Motion to
Set Aside Default
**Page 4**

**Boston Law Group PC**
825 Beacon St Ste 20, Newton, MA 02459
617-928-1800

1    defense; and (3) whether granting relief would prejudice the opposing party." Eads v. Holland

2    Am. Line, Inc., 2008 WL 189673 at *1 (W.D. Wash. Jan. 18, 2008) (citing Franchise Holding II,

3    LLC. v. Huntington Restaurants Grp., Inc., 375 F.3d 922, 925-26 (9th Cir. 2004); Am. Ass'n of

4    Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1108 (9th Cir. 2000)).  The defendant bears

5    the burden of showing that a default should be set aside.  Franchise Holding II, 375 F.3d at 926.

6    However, if even a single one of these factors is not shown in favor of the defendant, the court

7    may deny the motion to set aside.  Am. Ass'n of Naturopathic Physicians, 227 F.3d at 1108;

8    Eads, 2008 WL 189673 at *1.

9         In this case, there is no question that Defendant was culpable and that therefore the

10   Motion should be denied.  "If a defendant 'has received actual or constructive notice of the filing

11   of the action and failed to answer,' its conduct is culpable."  Franchise Holding II, 375 F.3d at

12   926 (quoting Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 690

13   (9th Cir.1988)).  Defendant received actual notice of Plaintiff's intent to file the action the day

14   before the action was filed.  Shayefar Decl., ¶ 3.  Defendant then received actual notice of the

15   pendency of the action two days after it was filed when the domain name registrar emailed

16   Defendant's counsel stating that the lawsuit had been filed and that the domain names would not

17   be transferred.  Shayefar Decl., ¶ 5.  Defendant then had constructive notice of the filing of the

18   action when the domain names were not transferred in the months that followed.  Defendant was

19   then served on June 27, 2017, constituting actual notice yet again.  Docket No. 10.  Defendant

20   was served with both an English version and certified Greek translation of the Summons, which

21   stated that Defendant had 21 days to respond to the Complaint.  Shayefar Decl., ¶ 9 and Exhibit 4

22   thereto.  Despite all of the foregoing, Defendant still failed to respond to the Complaint in a

23   timely manner.

Opposition to Motion to
Set Aside Default
**Page 5**

**Boston Law Group PC**
825 Beacon St Ste 20, Newton, MA 02459
617-928-1800

And far from showing excusable neglect, Defendant's declaration in support of the Motion only proves that there was culpable conduct on Defendant's behalf. Nowhere in the Motion or in the declaration of Doxa Pericleous in support of the Motion does Defendant dispute that it was actually served with the Complaint and Summons on June 27, 2017. To the contrary, Defendant's only defense appears to be that its lawyer didn't tell it that it had to answer until it was already too late. Pericleous Decl., Docket No. 16, ¶ 3. The declaration then goes on to only detail all the reasons they knew or should have known that the lawsuit was pending, given that the domain names were still owned by and controlled by Plaintiff. *Id.*, ¶ 7 ("Even though Ritzio filed the WIPO arbitration[1] demand on September 29, 2016 and thereafter prevailed, Ritzio is <u>still</u> not in custody of the domain names that were ordered transferred to us.").

The end result of this is that Defendant knew about the lawsuit before it was filed, immediately after it was filed and continued to know about it because the lawsuit halted the transfer of the domain names as it was expecting. And yet, even after being served in this matter Defendant failed to timely respond to the Complaint. This is absolutely culpable conduct and the default should not be set aside.

Finally, Plaintiff has in fact been prejudiced by Defendant's failure to timely respond to the Complaint. The uncertainty in the proceedings, specifically whether Defendant would immediately receive unencumbered right to the domain names by way of a default judgment rather than now potentially having to go through protracted litigation, damages Defendant's

---

[1] Defendant is incorrect when it refers to the UDRP/WIPO proceeding as an "arbitration." A UDRP proceeding is not an arbitration because it is not intended to be a binding or final decision on the matter and explicitly permits the parties to submit the dispute to a court of competent jurisdiction for full adjudication after the end of the proceeding. A UDRP proceeding is only meant to be a fast method of alternative dispute resolution, which by its very terms does <u>not</u> consider all issues that would otherwise be tried by a full court proceeding. Plaintiff would be happy to further brief the Court about this issue should the Court deem it necessary or desirable.

ability to properly plan for the future and operate the websites at the domain names.  Second, Defendant has suffered prejudice because it has had to expect additional legal fees in connection with the Motion which it otherwise would not have had to expend if not for Defendant's clear negligence in failing to respond to the Complaint in a timely manner.

**III.     Conclusion**

On the basis of the foregoing, Plaintiff requests that this court DENY Defendant's Motion to Set Aside Clerk's Entry of Default because Defendant is culpable for the default and Plaintiff would be prejudiced if the default would be set aside.  However, if despite the foregoing the Court finds that it will set aside the default, Plaintiff requests that the Court order that Defendant pay Plaintiff's attorney's fees and costs incurred in connection with the request to enter the default and Plaintiff's opposition of the Motion.

Respectfully submitted this 23rd day of October, 2017.

/s/ Matthew Shayefar
Matthew Shayefar (*pro hac vice*)
Valentin Gurvits (*pro hac vice*)
Boston Law Group, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Tel:     (617) 928-1800
Fax:     (617) 928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

/s/ Philip P Mann
Philip P Mann (WSBA# 28860)
Mann Law Group
1218 3rd Avenue, Suite 1809
Seattle, Washington 98101-3060
Tel:     (206) 436-0900
Fax:     (866) 341-5140
phil@mannlawgroup.com

Attorneys for Plaintiff

Opposition to Motion to
Set Aside Default
**Page 7**

**Boston Law Group PC**
825 Beacon St Ste 20, Newton, MA 02459
617-928-1800

**CERTIFICATE OF SERVICE**

 I hereby certify that, on the date indicated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties who have appeared in this matter.

Executed October 23, 2017        /s/ Matthew Shayefar

                Matthew Shayefar

Opposition to Motion to
Set Aside Default
**Page 8**

**Boston Law Group PC**
825 Beacon St Ste 20, Newton, MA 02459
617-928-1800